UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------- X

ARUBA HOTEL ENTERPRISES N.V.,

         Plaintiff,

   -against-                                    **CIVIL ACTION NO.**:  07 CV 7564 (PAC)

MICHAEL BELFONTI, BELFONTI
HOLDINGS LLC, and BELFONTI CAPITAL                 **ORAL ARGUMENT REQUESTED**
PARTNERS, LLC,

        Defendants.


-------------------------------------- X


**<u>DEFENDANTS MICHAEL BELFONTI, BELFONTI HOLDINGS LLC, AND
BELFONTI CAPITAL PARTNERS LLC'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO DISMISS DECLARATORY JUDGMENT COMPLAINT</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT .................................................................................................. 1

BACKGROUND ........................................................................................................................ 2

LEGAL ARGUMENT ................................................................................................................ 3

    I.    THIS COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT FOR
    DECLARATORY JUDGMENT FOR LACK OF SUBJECT MATTER JURISDICTION. ...... 3

        A.   Standard of Review ........................................................................................... 3

        B.   Plaintiff's Complaint Does Not Satisfy The "Actual Controversy" Requirement For A
        Declaratory Judgment Action Because The Complaint Is A Brazen Attempt At Forum
        Shopping Designed to Race to Res Judicata. ............................................................. 4

        C.   Even If This Case Satisfied The DJA, This Court Should Exercise Its Discretion To
        Dismiss Plaintiff's Complaint. ................................................................................ 7

    II.    ALTERNATIVELY, AHE'S DECLARATORY JUDGMENT COMPLAINT
    SHOULD BE DISMISSED ON GROUNDS OF *FORUM NON CONVENIENS*. .................. 12

        A.   Standard of Review ......................................................................................... 12

        B.   Where Neither AHE Nor This Dispute Has A "Bona Fide" Connection To The United
        States, Much Less To The Southern District of New York, AHE's Choice Of Forum Should
        Not Be Afforded Any Deference. ........................................................................... 13

        C.   Aruba is an Available and Adequate Forum. ............................................................ 14

        D.   Public and Private Interest Factors Dictate That This Action Proceed In Aruba. ........ 15

CONCLUSION ......................................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Alfadda v. Fenn*, 159 F.3d 41 (2d Cir. 1998) ........................................................................ 14, 16

*Apotex, Inc. v. Sanofi-Synthelabo*, 386 F.Supp.2d 549 (S.D.N.Y. 2005) ...................................... 9

*Basic v. Fitzroy Eng'g, Ltd.*, 949 F.Supp. 1333 (N.D. Ill. 1996)............................................. 6, 10

*Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974 (2d Cir. 1993).................................... 15

*Camofi Master LDC v. College P'ship, Inc.*, 452 F.Supp.2d 462 (S.D.N.Y. 2006)...................... 6

*Dow Jones & Co., Inc. v. Harrods*, 237 F.Supp.2d 394 (S.D.N.Y. 2002) (2d Cir. 2003) . 2, 3, 4, 5, 6, 8, 10, 11

*Farrell Lines, Inc. v. Columbus Cello-Poly Corp.*, 32 F.Supp.2d 118 (S.D.N.Y. 1997)............... 9

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) ............................................................... 12, 15, 16

*Ioannides v. Marika Maritime Corp.*, 928 F.Supp. 374 (S.D.N.Y. 1996) ................................... 17

*Iragorri v. United Technologies Corp.*, 274 F.3d 65 (2d Cir. 2001) .......................................... 13

*Irragorri v. United Technologies Corp.*, 274 F.3d 65 (2d Cir. 2001).......................................... 13

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000) .............................................................. 4

*Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941) ............................................ 4

*Nat'l Union Fire Ins. Co. v. Int'l Wire Group, Inc.*, No. 02 Civ. 10338, 2003 WL 21277114 (S.D.N.Y. June 2, 2003)............................................................................................................ 10

*Pergo, Inc. v. Alloc, Inc.*, 262 F.Supp.2d 122 (S.D.N.Y. 2003) ................................................... 9

*Pollux Holding, Ltd.  v. Chase Manhattan Bank*, 329 F.3d 64 (2d Cir. 2003) ................. 13, 15, 16

*Scottish Air Intern., Inc. v. British Caledonian Group, PLC*, 81 F.3d 1224 (2d Cir. 1996)......... 12

*Transunion Corp. v. Pepsico, Inc.*, 640 F.Supp. 1211 (S.D.N.Y. 1986) ......................... 14, 15, 17

*Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243 (5th Cir. 1983).............................................. 14

*Vlasic v. Wyndham Int'l, Inc.*, 451 F.Supp.2d 1005 (C.D. Ill. 2006)........................................... 14

**Statutes**

28 U.S.C. § 2201(a) ........................................................................................................................... 10

## PRELIMINARY STATEMENT

Pursuant to Federal Rule of Civil Procedure 12(b), Defendants, Michael Belfonti, Belfonti Holdings LLC, and Belfonti Capital Partners LLC (collectively "Defendants"), respectfully submit this Memorandum of Law in Support of their Motion to Dismiss the Complaint for Declaratory Judgment filed by Aruba Hotel Enterprises ("AHE" or "Plaintiff"). For reasons set forth more fully below, this Court should dismiss this action for lack of subject matter jurisdiction or, in the alternative, on grounds of *forum non conveniens* in favor of a first-filed Aruban proceeding.

This dispute, which concerns loans made to an Aruban entity for use in connection with an Aruban hotel, necessarily involves the application of Aruban law and is currently being litigated in the Aruban courts. The Aruban proceeding involves the same parties and issues as are presented in this action. The most notable difference between the Aruban and American proceedings is that the Aruban proceeding is the only one where all of the parties (from both this action, as well a parallel Connecticut action) are present, and where one set of uniform laws can apply. Rather than litigate the Aruban matter to conclusion in the most appropriate and efficient forum, Plaintiff has attempted to press this Court (and the U.S. District Court for the District of Connecticut) to decide the matters that are properly before the Aruban courts including whether Defendants are entitled to repayment of monies lent to Plaintiff.

This court should dismiss Plaintiff's declaratory judgment complaint because this dispute is not the proper subject of a declaratory judgment action. Plaintiff cannot satisfy the "actual case or controversy" requirement of the Declaratory Judgment Act ("DJA") because this is not an action to "settle the controversy" or "serve a useful purpose in clarifying legal relations," but rather is an action brought "merely for the purpose of 'procedural fencing' or to 'provide an

arena for a race for res judicata.'" *See Dow Jones & Co., Inc. v. Harrods*, 237 F.Supp.2d 394, 408, 432 (S.D.N.Y. 2002), *aff'd* 346 F.3d 357 (2d Cir. 2003) (dismissing case brought for forum shopping purposes). The complaint should also be dismissed on the independent ground of *forum non conveniens* because the Aruban action is first filed, Aruba is the most adequate forum for litigating this dispute, and many of the relevant witnesses and proof will likely be located in Aruba beyond the subpoena power of this court.

## **BACKGROUND**

This declaratory judgment action is a classic example of improper forum shopping as it follows an action that was first-filed by Defendants in Aruba seeking the repayment of loans made by the Defendants to AHE.

AHE is the current owner of the Westin Hotel & Resort (the "Hotel"), which is located in Aruba and is at the heart of this dispute. On August 21, 2007, Aruban counsel for the entities that are now declaratory judgment Defendants (the entities that lent money to AHE) wrote to AHE demanding repayment of certain loans paid to AHE by Belfonti Holdings, LLC, Belfonti Capital Partners, MCR Property Management, Inc. and CEB Irrevocable Trust. (Affidavit of Allan Kuster ("Kuster Aff.") ¶ 5). The letter indicated that failure to repay these loans by August 24, 2007, would result in the filing of a monetary judgment claim in the Aruban courts, a draft of which was attached to the letter. (Kuster Aff. ¶ 6). On August 23, 2007, Aruban counsel for AHE responded by indicating that AHE refused to repay the loans and stating that AHE would defend itself against any claims that were filed. (Kuster Aff. ¶ 7). Upon receiving this letter from AHE, the entities that are now declaratory judgment Defendants filed a complaint in Aruba seeking repayment of their loans. (Kuster Aff. ¶ 8). AHE has never indicated to the Aruban courts that there is any impediment to adjudicating this dispute in Aruba. In fact, AHE has made

further use of the Aruban courts and filed a third-party complaint in the Aruban action against Michael Belfonti, for contribution-type claims in case AHE is held liable. *Id*.

But AHE is trying to have its cake and eat it too. *After* Defendants filed suit in Aruba, and even while litigating this case in Aruba, AHE raced to Connecticut and to New York to file identical declaratory judgment actions seeking, *inter alia*, a declaration from a U.S. court that the aforementioned loans advanced to AHE, which monies were demanded in the August 21 letter, are not loans or cannot be enforced as loans. (*See* Complaint in *Aruba Hotel Enterprises v. Belfonti, et al.*, No. 03cv1297 (JCH) (D.Conn.)) (Kuster Aff. ¶ 9). In the alternative, Plaintiff seeks an injunction precluding Defendants from obtaining repayment of the monies advanced to AHE "until the resolution of this action." (*See* Compl. ¶ 43). Although AHE plainly wishes this Court or the District of Connecticut to functionally halt the Aruban action, notably the first-filed Aruban action is the only forum in which Plaintiff and the Defendants in both this action and the parallel action in the District of Connecticut are all subject to personal jurisdiction. (Kuster Aff. ¶ 11).

## LEGAL ARGUMENT

**I.    THIS COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT FOR LACK OF SUBJECT MATTER JURISDICTION.**

### A.    Standard of Review

A motion filed pursuant to Fed. R. Civ. P. 12(b)(1) that seeks to dismiss a complaint for lack of subject matter jurisdiction may attack either the facial sufficiency of the pleadings or the simple existence of subject matter jurisdiction. *Dow Jones*, 237 F.Supp.2d at 404. In the instant case, Defendants are challenging the existence of subject matter jurisdiction,[1] in particular the

---

[1] A party challenging whether subject matter jurisdiction exists may properly submit affidavits in support of its motion. *Dow Jones*, 237 F.Supp.2d at 404.

Plaintiff's claim that this dispute amounts to an "actual controversy." Yet, it is ultimately incumbent upon the Plaintiff, as the party asserting jurisdiction, to prove that this Court properly has jurisdiction over the subject matter of the dispute. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). As discussed more fully below, in light of the action properly pending in the Aruban courts, Plaintiff cannot meet its burden of establishing subject matter jurisdiction because this declaratory judgment action: (1) does not raise an "actual controversy" to satisfy the DJA, and (2) presents circumstances that warrant this Court exercising its discretion to deny the relief requested.

**B.    Plaintiff's Complaint Does Not Satisfy The "Actual Controversy" Requirement For A Declaratory Judgment Action Because The Complaint Is A Brazen Attempt At Forum Shopping Designed to Race to Res Judicata.**

1.    Overview of DJA

To bring a proper declaratory judgment action, there must be an "actual controversy" between the parties which can only exist if "there is a substantial controversy, between the parties having adverse legal interests, of *sufficient immediacy and reality* to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (emphasis added). To be "of sufficient immediacy and reality," the relief sought must pertain to a "dispute where the alleged liability has already accrued or the threatened risk occurred," as opposed to a "feared legal consequence [that] remains a mere possibility, or even probability of some contingency that may or may not come to pass." *Dow Jones*, 237 F.Supp.2d at 407 (citing *Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 580-81 (1985)). As described below, Plaintiff has not—because it cannot—satisfied the actual controversy prong because the dispute is not of sufficient immediacy so as to satisfy the DJA.

2.    Plaintiff's Complaint Is Not Of Sufficient Immediacy to Satisfy The "Actual Controversy" Prong of the DJA.

Plaintiff's complaint is not of sufficient immediacy to satisfy the DJA because it is based on a string of conjectures about what may transpire in Aruba.   Courts regularly dismiss declaratory judgment complaints like AHE's where, although there is a controversy between the parties, that dispute is not "of sufficient immediacy" to satisfy the "actual controversy" prong of the DJA.   Indeed, *Dow Jones*, *supra*, 237 F.Supp.2d at 407-08, a case affirmed by the Second Circuit, is on all fours with the instant case.

In *Dow Jones*, the plaintiff filed a declaratory judgment action in the Southern District of New York to preclude Harrods and others from pursing a defamation claim against it in London. *Id.* at 399.   Following the publication of an allegedly defamatory news article, parties for both sides exchanged correspondence asserting their respective positions, culminating in a letter from Harrods' London counsel seeking pre-action disclosure and setting a date by which Harrods intended to file suit in London.   *Id.* at 402.   Instead of responding to Harrods, however, Dow Jones filed a declaratory judgment action in New York seeking a declaration that any libel claim brought by Harrods would be insufficient as a matter of law.   *Id.*   Dow Jones also sought an injunction barring Harrods from pursuing the action in London or elsewhere.  *Id.* at 402-03.  Five days later, Harrods filed suit in London.

After thoroughly articulating the meaning of "actual controversy," the court held that the action filed by Dow Jones in New York did not meet that threshold requirement:

> The Court does not find enough immediacy and reality in Dow Jones' claim at this early stage of the London Action to warrant declaratory relief.   In essence, Dow Jones' complaint is grounded on a string of apprehensions and conjectures about future possibilities: that the court in the London Action will find a basis to assert jurisdiction and will recognize the pleading as a sufficient claim; that an adverse ruling on the merits may be rendered against Dow Jones; that the adjudication may award Harrods compensatory damages or enjoin Dow Jones

5

from publishing [the relevant] article; that Harrods may seek to enforce such judgment in the United States and elsewhere; that if enforcement is sought, the judgment will be recognized somewhere. *At this juncture, however, these protestations and prospects amount to nothing more than what they still are: premature concerns about contingencies that may or may not come to pass.*

*Id.* at 408 (citing *Thomas*, 473 U.S. at 580-81; *Wycoff*, 344 U.S. at 244) (emphasis added); *see also Basic v. Fitzroy Eng'g, Ltd.*, 949 F.Supp. 1333, 1337-38 (N.D. Ill. 1996), *aff'd*, 132 F.3d 36 (7th Cir. 1997) (attempt to render a future foreign judgment invalid did not amount to an "actual controversy," particularly where foreign action was in its early stages, the claims in the foreign action could change, and the purpose of the DJA would not be served when the plaintiff was not at risk of imminent harm); *Camofi Master LDC v. College P'ship, Inc.*, 452 F.Supp.2d 462, 480 (S.D.N.Y. 2006) (declaratory judgment action neither served useful purpose or afforded relief from uncertainty where the determination sought was duplicative of its breach of contract claim, the parties had already commenced legal proceedings, and one party was not "left awaiting the initiation of legal proceedings while damages accrue.").

Like the relief sought by the plaintiff in *Dow Jones*, the declaratory relief that AHE seeks is not of "sufficient immediacy and reality" to amount to an actual controversy under the DJA. In its complaint, AHE asks this Court to declare that the monies advanced to AHE were not "loans," that said sums are not repayable or, alternatively, that if they are construed as loans, they cannot be enforced as a matter of law. This issue regarding the enforceability of the loans, however, is squarely before the Aruban courts in the action filed by the Defendants. In other words, AHE is essentially asking this Court to declare unenforceable any judgment that an Aruban court *might* enter *before* that court even has the occasion to address the merits of the

6

dispute.  Indeed, AHE has not yet even formally responded to Defendants allegations in the Aruban case and instead purposely delayed the Aruban case.[2]

Thus, while Aruban procedures generally allow disputes such as this to be resolved without undue delay, the reality is that it is too speculative to determine at this stage how the Aruban courts will ultimately deal with the dispute.[3]  Further, as demonstrated by AHE's Aruban counsel's letter of August 23, 2007 stating that it intends to "forcefully defend" the Aruban loans litigation as well as AHE's delay tactics, it is far from a foregone conclusion that Defendants are on the verge of prevailing in the Aruban action.   As such, it is clear, under *Dow Jones* and similar cases that the relief sought by AHE in the instant matter is based on nothing more than a string of apprehensions and conjectures about the possible ultimate outcome of the Aruban case and fails to constitute an "actual controversy" as required by the DJA.

### C.    Even If This Case Satisfied The DJA, This Court Should Exercise Its Discretion To Dismiss Plaintiff's Complaint.

This Court should dismiss this action in any event because ruling on its merits would serve no meaningful purpose.  The DJA confers upon the court considerable discretion to decline to rule in declaratory judgment actions.  *See* 28 U.S.C. § 2201(a) ("[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . *may* declare the rights and other legal relations of any interested party . . ..") (emphasis added).  To that end, courts are guided by the following factors, which strongly favor dismissal of this action:

---

[2]AHE was scheduled to file its answer to the claim on November 7, 2007, but availed itself of a four-week extension.  On December 5, 2007, rather than file its answer, AHE chose to file a request to implead Michael Belfonti into the case for the purpose of seeking indemnity.  As a result of that request, AHE's time to file an answer to the claim is tolled until the court rules on the impleader request.  Once the court rules on AHE's request, AHE will have a reasonable amount of time (likely a couple of weeks) to file its answer.  Afterwards the parties will each have a chance to file rejoinders. The presiding judge may then instruct either or both parties to present the relevant documents and/or witnesses to substantiate their respective positions.  Subsequently the parties may submit legal briefs arguing the conclusions the court should derive from the evidence submitted. A judgment will then in principle follow.  (Kuster Aff. ¶ 8).

[3] Indeed, AHE's delay tactics, as described above, are in large part responsible for the current procedural posture of the Aruban proceeding.

(1) whether the declaratory action would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race to res judicata;' (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Dow Jones,* 237 F.Supp.2d at 432.

> 1.   This Declaratory Judgment Action Would Not Settle The Controversy Between the Parties and Would Serve No Useful Purpose in Clarifying the Legal Relations Between the Parties

As an initial matter, this declaratory judgment action would not settle the controversy over the repayment of the disputed loans.  As the *Dow Jones* court aptly noted, a declaratory judgment issued by a United States court does little to settle the controversy between the parties to a foreign litigation.  *Id.* at 437.  Where, as here, the dispute is governed by Aruban law and concerns loans made to an Aruban company for use in Aruba, a decision from an American court would have little effect save for engendering more litigation regarding the validity of that decision.  *Id.*; (*See* Kuster Aff. ¶¶ 12-17).  The Aruban Court is not bound to follow a decision of this Court, especially where, as here, the dispute originated in the courts of Aruba and was filed in the United States simply to try to undermine any decision by the Aruban justice system.

The circumstances for dismissal are even more compelling here because, in addition to the Aruban case, there are two parallel federal court declaratory judgment actions that seek identical relief from two different sets of defendants.  Thus, there is a significant risk of inconsistent judgments between and among our own district courts.  That is, the instant case names Michael Belfonti, Belfonti Holdings LLC, and Belfonti Capital Partners LLC as defendants (but not other relevant parties such as MCR Property Management Inc. and CEB Irrevocable Trust), whereas the Connecticut action names Michael Belfonti, MCR Property

Management Inc. and CEB Irrevocable Trust (but not Belfonti Holdings LLC or Belfonti Capital Partners LLC). As such, permitting this case to proceed may result in inconsistent judgments. The Aruban litigation, on the other hand, is not vulnerable to the same problem since all of the parties to this dispute are properly before that court.

Similarly, the declaratory relief sought by AHE would have no "useful purpose in clarifying the legal relations between the parties." A judgment from this Court would only complicate the legal relations between the parties because it may lead to inconsistent judgments with the Aruban courts and/or the District of Connecticut, which would lead to more costs and litigation. *See Apotex, Inc. v. Sanofi-Synthelabo*, 386 F.Supp.2d 549, 552 (S.D.N.Y. 2005), *aff'd* 175 Fed. Appx. 349 (Fed. Cir. 2006) (dismissing declaratory judgment where the existence of another pending action concerning the same issues could lead to inconsistent results, and "multiply and muddy the legal issues involved").[4]

### 2.     AHE's Conduct Is A Blatant Attempt At Forum Shopping

This action should also be dismissed because it is a blatant attempt by AHE to forum shop a dispute that properly belongs in Aruba. Courts in the Second Circuit have consistently cautioned judges to be "dubious" of declaratory judgment actions that are filed to interfere with another pending action. *See Farrell Lines, Inc. v. Columbus Cello-Poly Corp.*, 32 F.Supp.2d 118, 124 (S.D.N.Y. 1997), *aff'd* 161 F.3d 115 (2d Cir. 1998).[5] AHE's filing of this action after receiving a notice letter from the Defendants, and after the Aruban case was filed, amounts to

---

[4] The Defendants in the Connecticut action have moved to dismiss that case in favor of the Aruban proceeding on grounds similar to those presented herein. (*See* Kuster Aff. ¶ 23).

[5] Notably, the Second Circuit adheres to the first filed rule, whereby the first filed action prevails. *Pergo, Inc. v. Alloc, Inc.*, 262 F.Supp.2d 122, 131 (S.D.N.Y. 2003) ("Traditionally, under the 'first filed' rule, when there are two actions involving the same parties pending concurrently in different districts, the 'first filed' case proceeds, and the second-filed case is either dismissed or stayed.") This principle should apply equally to a first-filed case in a foreign court. Therefore, even if plaintiff's actions did not indicate forum shopping, this case should be dismissed in favor of the first-filed Aruban action.

improper forum shopping designed to obtain a "tactical edge over an opponent." *Dow Jones*, 237 F.Supp.2d at 440. There is simply no credible reason for AHE, an Aruban entity whose sole purpose is to run a hotel in Aruba, to file suit in the Southern District of New York (or the District of Connecticut) regarding loans that relate to its Aruban property.[6] *Dow Jones*, 237 F.Supp.2d at 440. *See also Nat'l Union Fire Ins. Co. v. Int'l Wire Group, Inc.*, No. 02 Civ. 10338, 2003 WL 21277114, at *5 (S.D.N.Y. June 2, 2003) ("anticipatory conduct" may be presumed when the filing of a declaratory judgment action is "triggered by a notice letter") (citations omitted). The court should not countenance these kinds of tactics and should dismiss the case for this reason alone.

3.    The Use of A Declaratory Judgment Could Interfere With The Jurisdiction Of The Aruban Court

Just as a court will abstain from parallel state or federal court proceedings, it is proper for a federal court to abstain from interfering with a foreign court's administration of a first-filed suit, particularly where to do so may improperly encroach on that court's jurisdiction. As noted by the *Dow Jones* court, such potential interference militates in favor of dismissal:

> Here . . . the Court considers that by interjecting itself prematurely into the parties' conflict now pending adjudication in the London Action, it would unduly meddle with the orderly administration of justice in the British tribunals. This Court has no basis at this point, other than positing hypotheticals and surmising what the British tribunals may or may not do, for prejudging the outcome of the London Action, or for presuming that the parties could not achieve a satisfactory voluntary settlement of their conflict in that forum.

*Id.* at 442. *See also Basic*, 949 F.Supp. at 1340-41 (declining to entertain declaratory judgment action when it would interfere with New Zealand court's right to decide the case before it). Similarly, there is no justification at this stage of the Aruban proceedings to interject this Court's judgment as to the propriety of the Defendants' Aruban monetary claim.

---

[6] *See* Section II, *infra*.

4.    The Aruban Courts Are The Superior Forum For Deciding the Enforceability of the Loans

A more appropriate form of available relief, as provided here by the Aruban litigation, counsels in favor of this court declining to entertain AHE's complaint for declaratory judgment. *Dow Jones*, 237 F.Supp.2d at 442.  This is particularly applicable here where the crux of the dispute arises from loans (which are governed by Aruban law) made to an Aruban entity for use on Aruban real estate, and where there is a parallel action that is pending in Aruba.  In this setting, comity overwhelmingly dictates that the action proceed to conclusion in that forum.  *See id.* at 443-44.

The Aruban legal system is a modern, Western-style legal system based on the civil law system used throughout most of the world, and particularly that of The Netherlands that provides all parties with substantive and procedural due process, presided over in part by Judges from the Netherlands' legal system and litigated by advocates trained in continental Western European legal traditions.  (Kuster Aff. ¶ 21).  As such, the Aruban judicial system is competent to handle the dispute between the parties and Plaintiff will have the opportunity to have the issues decided by an impartial tribunal based on neutral principles of law.  Indeed, Plaintiff's own conduct shows that, until they saw an opportunity for forum shopping in this matter, Plaintiff also believed that Aruba was the proper place for adjudicating disputes relating to the Hotel. Specifically, on July 23, 2007, about one month before this action was commenced, Petra, a U.S. lender, and current owner of AHE, directed AHE to file a summary proceeding in Aruba concerning an amendment to the lease between the casino operator and the very same Westin Hotel in Aruba.  (Kuster Aff. ¶ 22).  It is reasonable to conclude that Petra directed AHE to file

that action in Aruba because it pertained to a hotel located in Aruba and because it apparently

believed Aruba was the most suitable forum in which to decide the lease dispute.[7]

## II.    ALTERNATIVELY, AHE'S DECLARATORY JUDGMENT COMPLAINT SHOULD BE DISMISSED ON GROUNDS OF *FORUM NON CONVENIENS*.

As discussed herein, the instant case provides a classic instance of a plaintiff forum-shopping a

dispute in an effort to dispose of a first-filed parallel proceeding.  AHE's choice of the Southern

District of New York as a forum should be entitled no more than minimal deference as Aruba is an

adequate forum to adjudicate this dispute and the balancing of private and public interest factors

militate in favor of a dismissal.  Accordingly, this Court should grant Defendants' motion to dismiss

on grounds of *forum non conveniens*.

### A.    Standard of Review

A court has the discretion to dismiss a case "when an alternative forum has jurisdiction to hear

the case, and when trial in the chosen forum would 'establish ... oppressiveness and vexation to a

defendant ... out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is]

inappropriate because of considerations affecting the court's own administrative and legal problems'."

*Scottish Air Intern., Inc. v. British Caledonian Group, PLC*, 81 F.3d 1224, 1232 (2d Cir. 1996)

(citations omitted).  A court may dismiss a complaint on grounds of *forum non conveniens* after

determining (1) the degree of deference accorded to the plaintiff's choice of forum; (2) that the

proposed alternative forum is adequate to adjudicate the dispute; and (3) that the balance between the

private and public interests articulated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), dictate that

---

[7] After the Aruban courts ruled against AHE in the preliminary proceeding, AHE (through its parent entities) subsequently commenced litigation in New York Supreme Court against Michael Belfonti and certain related entities based on the same set of facts.  The Defendants in that action have moved to dismiss and/or requested that the court issue a protective order regarding certain discovery served by Plaintiffs while threshold issues are decided by the Aruban courts in a parallel case. Defendants' motions are *sub judice*.

the action proceed in the defendant's proposed alternative forum. *Pollux Holding, Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 71 (2d Cir. 2003), *cert. denied* 540 U.S. 1149 (2004).

    **B.    Where Neither AHE Nor This Dispute Has A "Bona Fide" Connection To The United States, Much Less To The Southern District of New York, AHE's Choice Of Forum Should Not Be Afforded Any Deference.**

Although courts may defer to the plaintiff's choice of forum, a foreign plaintiff's choice of forum is accorded "less deference," in large part because a foreign plaintiffs' distance from home undermines any claim that they are in a more convenient forum. *See Pollux Holding*, 329 F.2d at 71. This is particularly true where the plaintiff's or lawsuit's connection to the jurisdiction is not "bona fide," but instead is emblematic of some dilatory purpose. *See id.* Accordingly, courts look at the totality of the circumstances in resolving this question:

> The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice. Stated differently, the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens* .... On the other hand, the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons ... the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a *forum non conveniens* motion by showing that convenience would be better served by litigating in another country's courts.

*Irragorri v. United Technologies Corp.,* 274 F.3d 65, 71-2 (2d Cir. 2001). Courts also consider whether there is "little reason to assume that [the foreign plaintiff's choice of forum] is convenient for it."[8] *Id.*; *see also Pollux Holding*, 329 F.3d at 71-72 (plaintiff's decision to bring suit in defendants' home forum was not entitled to deference in absence of a "bona fide" connection to that forum).

---

[8] The question of whether the choice was motivated by convenience can be determined by factors such as the plaintiff's residence relative to the chosen forum, the availability of witnesses and evidence in the forum, the defendant's amenability to suit, the availability of appropriate legal assistance, and other reasons related to convenience or expense. *Iragorri*, 274 F.3d at 72. Factors that are emblematic of forum shopping, however, include attempts to win a tactical advantage from local laws, the "habitual generosity of juries in the United States" or in the forum, the popularity or unpopularity of a party, or the inconvenience or expense resulting from litigation in the chosen forum. *Id.*

Here, the Plaintiff, an Aruban entity whose sole business purpose is to run a hotel on the island of Aruba, is seeking declaratory relief for monies it received relative to its Aruban property. The action's only connection to the Southern District of New York is that two of the Defendants reside here. The relevant business transactions, however, are primarily connected to Aruba. There is simply nothing about a New York forum that makes it more convenient to resolve this dispute than Aruba. Accordingly, the Court should not give any deference to AHE's choice of the Southern District of New York as a forum for this dispute.

### C.     Aruba is an Available and Adequate Forum.

The availability of an adequate, alternative forum further counsels in support of Defendants' motion to dismiss. An alternative forum is "available" if (1) the defendant is amenable to process in that jurisdiction, and (2) the forum permits the "litigation of the subject matter of the dispute." *Alfadda v. Fenn*, 159 F.3d 41, 45 (2d Cir. 1998) (citations omitted). The first prong of the test is clearly satisfied. The Defendants are amenable to process by virtue of the fact that they commenced the litigation in Aruba. The second prong is also satisfied as Aruba clearly permits litigation of the subject matter in dispute. Indeed, the first-filed action in Aruba concerns the same essential issues that are before the Court in this case. Under these principles, Aruba is clearly an adequate alternative forum with jurisdiction to hear the instant case. *See Transunion Corp. v. Pepsico, Inc.*, 640 F.Supp. 1211, 1215 (S.D.N.Y. 1986), *aff'd*, 811 F.2d 127 (2d Cir. 1987) (Philippines deemed an adequate forum under analogous circumstances).

Moreover, other federal courts have recognized Aruba and the Dutch courts as adequate forums for the purposes of deciding a motion to dismiss for *forum non conveniens*. *See e.g., Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1249 (5th Cir. 1983); *Vlasic v. Wyndham Int'l, Inc.*, 451 F.Supp.2d 1005, 1008 (C.D. Ill. 2006). Finally, even the Plaintiff has acknowledged the adequacy of

14

Aruba as a forum by initiating litigation in Aruba regarding the same Hotel against some of the Defendants in this case. (*See* Kuster Aff. ¶ 22).

**D.    Public and Private Interest Factors Dictate That This Action Proceed In Aruba.**

To permit the instant case to proceed simultaneously with the Aruban case would amount to an "unwarranted waste of judicial resources."  *Transunion*, 640 F.Supp. at 1218.  The Defendants would be forced to litigate these issues in up to three forums instead of proceeding in Aruba, the forum where the first-filed and more convenient action may be found.  Indeed, the public and private factors enunciated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), counsel in favor of dismissal.

**1.    The Private Factors Favor Dismissal of the Action**

The private factors delineated by the Supreme Court generally include the "practical problems that make trial of a case easy, expeditious and inexpensive," including the ease of access to sources of proof, and the availability of compulsory process for attendance of unwilling witnesses. *Id.* at 508. Courts have consistently dismissed actions on grounds of *forum non conveniens* where, as here, the relevant documents and witnesses are found predominantly in the foreign jurisdiction, there are procedures for compelling the attendance of unwilling witnesses, and all other practical problems indicate that the case be tried in the foreign court.  *See e.g., Pollux Holding Ltd.*, 329 F.3d at 75 (relevant documents found in both jurisdictions, most of the witnesses to appear at trial resided in England, and several of the defendants' witnesses could only be compelled to testify in England); *Transunion Corp.*, 640 F.Supp. at 1216 (all of plaintiff's witnesses and documents were located in the Philippines, several non-party witnesses beyond the subpoena power would also be called to testify, and some witnesses would require an interpreter); *Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 982-83 (2d Cir. 1993)

(majority of witnesses located in Venezuela, most documentary evidence in Spanish, and premises at issues located in Venezuela); *Alfadda*, 159 F.3d at 47-8 (all witnesses and documents were located in France, thereby reducing cost of producing witnesses).

Considering these factors in the context of this case, it is clear that this action should be dismissed in favor of the Aruban action. First, the relevant proof will likely be found predominantly in Aruba. Second, AHE's place of business and the hotel are located in Aruba. Third, many witnesses will likely be found in Aruba, as demonstrated by Plaintiff's initial disclosures in this case. *See* AHE's Initial Disclosures (disclosing Marieta Ras, Chief Executive Officer of AHE and an Aruban resident, as an individual likely to have discoverable information) (Kuster Aff. ¶ 24). To the extent there are witnesses who are unwilling to appear before the Aruban court, they may be ordered to do so, regardless of whether the witness is a party or a non-party. (*See* Kuster Aff. ¶¶ 18-19). Moreover, any resolution of this dispute will likely require the parties to obtain evidence from AHE's accountants (both internal and outside), employees, and other professionals involved with company loans which individuals will be found in Aruba.

### 2.    The Public Factors Also Favor Dismissal

The public factors address concerns such as the administrative difficulties attributable to court congestion, the alternative forum's interest in litigating this dispute, the interest in having the trial of a diversity case in the forum governed by the applicable law, and the avoidance of conflict of laws or the application of foreign law. *Gulf Oil Corp.*, 330 U.S. at 509; *see also*, *Pollux Holding Ltd.*, 329 F.3d at 76 (disputed notes were purchased in England, London had stronger interest in the dispute, and the claims were predominantly governed by English law);

*Transunion Corp.*, 640 F.Supp. at 1217 (plaintiff could assert its action as a counterclaim in the prior filed proceeding in the Philippines, and application of foreign law warranted dismissal).

There are significant practical reasons why this action should proceed in Aruba as opposed to this court. First, Aruba has a significant interest in this dispute. The Hotel, which is at the center of this matter, is a prominent resort in a country whose economy is overwhelmingly dependent on tourism as a source of revenue. Consequently, Aruba has a significant interest in governing the contracts and financial relations between the Hotel and others. New York, on the other hand, has little interest in the resolution of this dispute. Certainly, the balance favors a forum that is the epicenter of the relevant activity.

Second**,** although any dispute about the applicable law does not need to be resolved to justify this Court's decision to dismiss this action, it is clear, based upon the allegations in AHE's complaint and the declaration of Aruban counsel, that Aruban law will govern this dispute. *See* Kuster Aff. ¶¶ 11-17 (providing a detailed explanation of why Aruban law would govern this dispute); *Ioannides v. Marika Maritime Corp.*, 928 F.Supp. 374, 379 (S.D.N.Y. 1996) ("While the Court need not definitively resolve the choice of law issue at this point, the likelihood that foreign law will apply weighs against retention of the action."). Accordingly, the application of foreign law also favors a dismissal in this case.

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, Defendants respectfully request that the Court dismiss the plaintiff's action for declaratory judgment for lack of subject matter jurisdiction or, in the alternative, on grounds of *forum non conveniens*.


Dated: December 20, 2007
     New York, New York

                KOBRE & KIM LLP


                By:  /s/ Michael S. Kim
                Michael S. Kim (MK-0308)
                Jonathan D. Cogan (JC-4474)
                Francisco J. Navarro (FN-1874)
                800 Third Avenue
                New York, New York 10017
                Tel:  (212) 488-1200
                Fax: (212) 488-1220

                *Counsel for Defendants Michael Belfonti, Belfonti*
                *Holdings LLC, and Belfonti Capital Partners, LLC.*