UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
ARUBA HOTEL ENTERPRISES N.V.,

       Plaintiff,

  -against-

MICHAEL BELFONTI, BELFONTI
HOLDINGS LLC, and BELFONTI CAPITAL
PARTNERS, LLC,

       Defendants.

CIVIL ACTION NO.: 07 CV 7564 (PAC)

---------------------------------------- X

## AFFIDAVIT OF ALLAN F. KUSTER
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

    Allan F. Kuster declares under penalty of perjury under the laws of the United States of America that the foregoing is true and correct:

    1.    I am over eighteen years of age. I have knowledge of the facts contained in this Affidavit based on my firm's representations of the Defendants, Michael Belfonti, Belfonti Holdings LLC, and Belfonti Capital Partners, LLC (collectively "Defendants"), my firm's participation in the litigation in Aruba described herein, and my firm's review of relevant documents, including this declaratory judgment action filed by the plaintiff, Aruba Hotel Enterprises ("AHE").

    2.    My firm, Sjiem Fat & Kuster Law Offices, is counsel of record for the Defendants named in this case, in the matter of *Belfonti Holdings, LLC, et al. v. Aruba Hotel Enterprises*, which is pending in the Court of the First Instance in Aruba. I am submitting this Affidavit in support of Defendant's Motion to Dismiss the Declaratory Judgment Complaint.

3.  I am a lawyer admitted to practice before the Bar of the Netherlands Antilles and Aruba, and I am a Partner in Sjiem Fat & Kuster, a law firm located at Emanstraat 49-A, Oranjestad, Aruba, Dutch Caribbean. I received a L.L.M. from the University of Aruba in 1999, and was admitted to the bar the same year.

### Factual Background

4.  On August 21, 2007, my partner, Johan Sjiem Fat wrote to AHE on behalf of the defendants, Belfonti Holdings, LLC, and Belfonti Capital Partners, as well as MCR Property Management Inc. ("MCR") and CEB Irrevocable Trust ("CEB").

5.  In that letter of August 21, 2007, Attorney Sjiem Fat demanded repayment of loans that the defendants paid to AHE. In particular, Attorney Sjiem Fat demanded the repayment of the following relevant loans, among others: (1) on July 25, 2006, Belfonti Holdings LLC paid $499,950 for the purpose of working capital for AHE; and (2) on December 8, 2006, Belfonti Capital Partners LLC paid $393,000 to Wachovia Bank for AHE's mortgage payment. These loans were either paid directly to AHE, an Aruban entity, or to AHE's mortgage lender, who had financed the purchase of AHE's property in Aruba. A copy of this letter and the draft complaint are attached hereto as Exhibit A.

6.  The letter further provided that failure to repay these loans, in addition to those made by MCR and CEB, by August 24, 2007, would result in the filing of the claim for monetary judgment. A draft of this claim was attached to the letter.

7.  On August 23, 2007, AHE responded through Aruban counsel that it denied the defendants' claims and that it would "forcefully defend any proceeding that may be brought by [my] clients." A copy of AHE's response is attached hereto as Exhibit B. I understand that MCR and CEB ("Connecticut defendants") have been named as defendants in a declaratory

judgment action that is identical to the instant case, but which has been filed in the District Court of Connecticut.

8. Subsequently, on August 24, 2007, Attorney Sjiem Fat filed the claim for monetary judgment in the Court of First Instance of Aruba. A copy of the complaint is attached hereto as Exhibit C. Based on my review of the Complaint in this action, I can confirm that the same legal and factual issues before this Court are pending in the Court of First Instance, including whether the payments to AHE are properly classified as enforceable loans. The claim for monetary judgment is currently pending in the Court of First Instance. AHE was scheduled to file its answer to the claim on November 7, 2007, but availed itself of a four-week extension. On December 5, 2007, rather than file its answer, AHE chose to file a request to implead Michael Belfonti into the case for the purpose of seeking indemnity. As a result of that request, AHE's time to file an answer to the claim is tolled until the court rules on the impleader request. Once the court rules on AHE's request, AHE will have a reasonable amount of time (likely a couple weeks) to file its answer. Afterwards the parties will each have a chance to file rejoinders. The presiding judge may then instruct either or both parties to present the relevant documents and/or witnesses to substantiate their respective positions. Subsequently the parties may submit legal briefs arguing the conclusions the court should derive from the evidence submitted. A judgment will then in principle follow. This all can take approximately 9 to 12 months.

9. Attorney Sjiem Fat learned that on the same day he filed the claim for monetary judgment in Aruba, August 24, 2007, AHE filed a declaratory judgment action against Michael Belfonti, Belfonti Holdings, and Belfonti Capital Partners, in New York. Three days later, on August 27, 2007, AHE filed the identical declaratory judgment action in Connecticut, naming

Michael Belfonti, MCR and CEB as defendants. Attached hereto as Exhibit D is a true and correct copy of the Complaint filed in *Aruba Hotel Enterprises v. Belfonti, et al.*, No. 03cv1297 (JCH) (D.Conn.). In both actions, AHE seeks the identical relief: (1) a declaration that the monies advanced to AHE were not loans or could not be enforced as loans, and (2) an injunction prohibiting the declaratory judgment defendants from attempting to obtain repayment of the monies advanced to AHE.

### Jurisdiction under Aruban Law

10. Based on my review of AHE's declaratory judgment complaint and my knowledge of Aruban law, I believe that Aruba provides an adequate forum in which this dispute may be resolved.

11. Personal jurisdiction would not be in dispute in Aruba. AHE is an Aruban limited liability company with its principal place of business in Aruba. The defendants in this action have subjected themselves to the jurisdiction of Aruba by commencing the Aruba case.

12. In addition, this dispute is properly governed by Aruban law, in particular the European Convention on the Law Applicable to Contractual Obligations of Rome 1980 (the "Treaty"), which convention was made applicable to Aruba, as part of the Dutch Kingdom, in 1993. A copy of the Treaty is attached hereto as Exhibit E.

13. Article 3 of the Treaty provides that parties are free to choose the law that will govern a contract between them. Where, as here, there is no written contract, Article 4 provides that "[t]o the extent that the law applicable to the contract has not been chosen in accordance with Article 3, the contract shall be governed by the law of the country with which it is most closely connected."

14.     Although certain provisions of Article 4 reference the domicile of the contracting party, those provisions are immaterial where it "appears from the circumstances as a whole that the contract is more closely connected with another country."  The transactions between the parties are clearly more closely connected with Aruba where the defendants made payments to AHE, an Aruban entity, or to its mortgage lender, who had financed the purchase of real property situated in Aruba.

15.     Furthermore, subsection 3 of Article 4 provides that if the subject matter of the contract is a right in immovable property or a right to use immovable property, it shall be presumed that the contract is most closely connected with the contract where the immovable property is located.  The only relevant property to this dispute is situated in Aruba.

16.     Therefore, based upon my experience and knowledge of Aruban law, and my review of the relevant Treaty governing this action, I believe that Aruban law would govern the resolution of this action.

17.     In the event AHE prevails on its defense in the Aruban action, the law provides that AHE would recover some portion of its fees in an amount determined by the Aruban court. This amount is calculated using a tariff set by the court, and is based on the number of pleadings filed.

### Compelling Testimony

18.     Witnesses may be compelled to testify in Aruba. The court has the authority to force a witness to appear.

19.     The Aruban courts in principle do not distinguish between a party and non-party witness in the sense that both can be heard as witness.

20. Based on the foregoing, I believe that Aruba is the appropriate forum for this case. The Aruban case was filed first, Aruban law governs the dispute between the parties, and it is clearly the more convenient forum for this action.

### **Aruban Legal System**

21. The Aruban legal system is a modern, Western-style legal system based on the civil law system used throughout most of the world, and particularly that of The Netherlands, that provides all parties with substantive and procedural due process, presided over in part by Judges from the Netherlands' legal system and litigated by advocates trained in continental Western European legal traditions.

22. Attached hereto as Exhibit F is a true and correct copy of an English translation of AHE's Petition in the Aruban Summary Proceeding filed on July 23, 2007. Also attached is a true and correct copy of the Petition in the original Dutch language.

23. Attached hereto as Exhibit G is a true and correct copy of the November 30, 2007 Motion to Dismiss filed by the Connecticut defendants in the District of Connecticut action.

24. Attached hereto as Exhibit H is a true and correct copy of the Initial Disclosure Statement filed by AHE on November 26, 2007.

_____
Allan F. Kuster

Subscribed and sworn to before
me this 20th day of December, 2007.

Dr. Faride Eloisa Elixie Tjon Ajong
~~Notary Public~~ Civil law notary

My commission expires on  Indefinitely

