UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ARUBA HOTEL ENTERPRISES N.V., | : | |
| | : | |
| PLAINTIFF | : | Civil Action No. |
| | : | 3:07 CV 1297 (JCH) |
| v. | : | |
| | : | |
| MICHAEL BELFONTI, | : | |
| MCR PROPERTY MANAGEMENT INC. | : | |
| and CEB IRREVOCABLE TRUST, | : | |
| | : | |
| DEFENDANTS | : | |
| | : | November 30, 2007 |

## DEFENDANTS MCR PROPERTY MANAGEMENT, INC. AND CEB IRREVOCABLE TRUST'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS DECLARATORY JUDGMENT COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b), Defendants, MCR Property Management, Inc., and CEB Irrevocable Trust (collectively "Defendants"), respectfully submit this Memorandum of Law in Support of their Motion to Dismiss the Complaint for Declaratory Judgment filed by Aruba Hotel Enterprises ("AHE" or "plaintiff"). For reasons set forth more fully below, this Court should dismiss this action for lack of subject matter jurisdiction or, in the alternative, on grounds of *forum non conveniens*. This dispute was first filed and is properly before the Aruban courts. It is a dispute regarding loans to an Aruban entity for use in connection with an Aruban hotel and will necessarily involve the application of Aruban law. This action involves the same parties and issues as are presented in the Aruban proceeding. Instead of litigating the Aruban matter to conclusion to determine if it will prevail in that forum, Plaintiff has attempted to press this Court (and the United States District Court for the Southern District of New York, where Plaintiff has filed an identical action) to decide the issue which is

already pending before the Aruban courts, i.e. whether Defendants are entitled to repayment of monies lent to Plaintiff.

Accordingly, this dispute is not the proper subject of a declaratory judgment action because Plaintiff cannot satisfy the "actual case or controversy" requirement where this is not an action to "settle the controversy or serve a useful purpose in clarifying legal relations," but rather is an action brought "merely for the purpose of 'procedural fencing' or to provide an arena for a race for res judicata." See Dow Jones & Co., Inc. v. Harrods, 237 F.Supp.2d 394, 408, 431 (S.D.N.Y. 2002), aff'd 346 F.3d 357 (2d Cir. 2003). In any event, the complaint should be dismissed on grounds of *forum non conveniens* because an action was filed first in Aruba by Defendants, Aruba is an adequate forum for litigating this dispute, and the balance of private and public factors, such as access to proof, location of witnesses, the process for compelling the attendance of witnesses, and all other practical problems, dictate that this action proceed in Aruba.

## BACKGROUND

This declaratory judgment action, which follows closely on the heels of an action that was filed by defendants in Aruba seeking the repayment of loans made by the defendants to AHE, is a classic example of improper forum shopping.

AHE is the current owner of the Westin Hotel & Resort (the "Hotel"), which is located in Aruba and is at the heart of this dispute. On August 21, 2007, Aruban counsel for the entities that are now declaratory judgment defendants wrote to AHE demanding repayment of certain loans paid to AHE by Belfonti Holdings, LLC, Belfonti Capital Partners, and Defendants MCR Property Management, Inc. and CEB Irrevocable Trust. (Kuster Aff. ¶ 5). The letter indicated that failure to repay these loans by August 24, 2007, would result in the filing of a monetary

judgment claim in the Aruban courts, a draft of which was attached to the letter. (Kuster Aff. ¶ 6). On August 23, 2007, Aruban counsel for AHE responded by indicating that AHE refused to repay the loans and stating that AHE would defend itself against any claims that were filed. (Kuster Aff. ¶ 7). Upon receiving this letter from AHE, the entities that are now declaratory judgment defendants filed a complaint in Aruba seeking repayment of their loans. (Kuster Aff. ¶ 8).

After defendants filed suit in Aruba seeking repayment of their loans, AHE raced to Connecticut and to New York to file identical declaratory judgment actions seeking, *inter alia*, a declaration from a U.S. court that the aforementioned loans advanced to AHE, which monies were demanded in the August 21 letter, are not loans or cannot be enforced as loans. (See Complaint in Aruba Hotel Enterprises v. Michael Belfonti, et al., No. 07cv7564 (PAC)(HBP) (S.D.N.Y.)) (Exhibit A). In the alternative, plaintiff seeks an injunction precluding defendants from obtaining repayment of the monies advanced to AHE "until the resolution of this action." (See Compl. ¶¶ 40-41).

Given the first-filed proceeding in Aruba, which deals with issues that are identical to those raised in the matter before this Court, plaintiff's complaint should be dismissed for lack of subject matter jurisdiction on the grounds that, *inter alia*, there is no "actual controversy" as required under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) (the "DJA"). In addition, this Court should exercise its discretion and decline to entertain this action where the plaintiff is clearly using this procedural device to forum shop the instant litigation between the parties. Finally, even if this Court had subject matter jurisdiction over this case, this Court should dismiss this complaint on grounds of *forum non conveniens*, as Aruba is the more convenient forum in which to litigate this dispute.

## LEGAL ARGUMENT

**I.    THIS COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT FOR LACK OF SUBJECT MATTER JURISDICTION.**

### A.    Standard of Review

A motion filed pursuant to Fed. R. Civ. P. 12(b)(1) that seeks to dismiss a complaint for lack of subject matter jurisdiction may attack either the facial sufficiency of the pleadings or the simple existence of subject matter jurisdiction. Dow Jones & Co., Inc. v. Harrods, Ltd., 237 F.Supp.2d 394, 404 (S.D.N.Y. 2002), aff'd, 346 F.3d 357 (2d Cir. 2003). In the instant case, defendants are challenging the existence of subject matter jurisdiction,[1] in particular the plaintiff's claim that this dispute amounts to an "actual controversy." Yet, it is ultimately incumbent upon the plaintiff, as the party asserting jurisdiction, to prove that this Court properly has jurisdiction over the subject matter of the dispute. Makarova v. U.S., 201 F.3d 110, 113 (2d Cir. 2000).

As discussed more fully below, in light of the action properly pending in the Aruban courts, plaintiff cannot meet its burden of establishing subject matter jurisdiction because this declaratory judgment action: (1) does not raise an "actual controversy" to satisfy the DJA, and (2) presents circumstances that warrant this Court exercising its discretion to deny the relief requested.

---

[1] A party challenging whether subject matter jurisdiction exists may properly submit affidavits in support of its motion. Dow Jones, 237 F.Supp.2d at 404.

B.  **Plaintiff's Complaint Does Not Satisfy The "Actual Controversy" Requirement For A Declaratory Judgment Action Because The Complaint Is A Brazen Attempt At Forum Shopping Designed to Race to Res Judicata.**

1. Overview of DJA

To bring a proper declaratory judgment action,[2] there must be an "actual controversy" between the parties. An "actual controversy" can only be found if "the facts alleged, under the circumstances, show that there is a substantial controversy, between the parties having adverse legal interest, of <u>sufficient immediacy and reality</u> to warrant the issuance of a declaratory judgment." Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941) (emphasis added). To be "of sufficient immediacy and reality," the relief sought must pertain to a "dispute where the alleged liability has already accrued or the threatened risk occurred," as opposed to a "feared legal consequence [that] remains a mere possibility, or even probability of some contingency that may or may not come to pass." Dow Jones, supra, 237 F.Supp.2d at 407 (citing Thomas v. Union Carbide Agric. Prod. Co., 473 U.S. 568, 580-81 (1985)).

2. Plaintiff's Complaint Is Not Of Sufficient Immediacy to Satisfy The "Actual Controversy" Prong of the DJA.

Courts regularly dismiss declaratory judgment complaints like AHE's where, although there is a controversy between the parties, that dispute is not "of sufficient immediacy" to satisfy the "actual controversy" prong of the DJA. Indeed, Dow Jones, supra, 237 F.Supp.2d at 407-08, a case affirmed by the Second Circuit, is on all fours with the instant case.

---

[2] The DJA provides that "[i]n a case of <u>actual controversy</u> within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interest party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added).

5

In <u>Dow Jones</u>, the plaintiff filed a declaratory judgment action in the Southern District of New York to preclude Harrods and others from pursing a defamation claim against it in London. <u>Id.</u> at 399. Following the publication of an allegedly defamatory news article, parties for both sides exchanged correspondence asserting their respective positions, culminating in a letter from Harrods' London counsel seeking pre-action disclosure and setting a date by which Harrods intended to file suit in London. <u>Id.</u> at 402. Instead of responding to Harrods, however, Dow Jones filed a declaratory judgment action in New York seeking a declaration that any libel claim brought by Harrods would be insufficient as a matter of law. <u>Id.</u>. Dow Jones also sought an injunction barring Harrods from pursuing the action in London or elsewhere. <u>Id.</u> at 402-03. Five days later, Harrods filed suit in London.

After thoroughly articulating the meaning of "actual controversy," the court held that the action filed by Dow Jones in New York did not meet that threshold requirement:

> The Court does not find enough immediacy and reality in Dow Jones' claim at this early stage of the London Action to warrant declaratory relief. In essence, Dow Jones' complaint is grounded on a string of apprehensions and conjectures about future possibilities: that the court in the London Action will find a basis to assert jurisdiction and will recognize the pleading as a sufficient claim; that an adverse ruling on the merits may be rendered against Dow Jones; that the adjudication may award Harrods compensatory damages or enjoin Dow Jones from publishing [the relevant] article; that Harrods may seek to enforce such judgment in the United States and elsewhere; that if enforcement is sought, the judgment will be recognized somewhere. <u>At this juncture, however, these protestations and prospects amount to nothing more than what they still are: premature concerns about contingencies that may or may not come to pass.</u>

<u>Id.</u> at 408 (citing <u>Thomas</u>, 473 U.S. at 580-81; <u>Wycoff</u>, 344 U.S. at 244) (emphasis added). Because any relief granted would be speculative and depend upon the outcome in the London action, there was no "actual controversy." <u>Id.</u> <u>See also</u> <u>Basic v. Fitzroy Eng'g, Ltd.</u>, 949 F.Supp. 1333, 1337-38 (N.D. Ill. 1996), <u>aff'd</u>, 132 F.3d 36 (7th Cir. 1997) (attempt to render a future

foreign judgment invalid did not amount to an "actual controversy," particularly where foreign action was in its early stages, the claims in the foreign action could change, and the purpose of the DJA would not be served when the plaintiff was not at risk of imminent harm); Camofi Master LDC v. College P'ship, Inc., 452 F.Supp.2d 462, 480 (S.D.N.Y. 2006) (declaratory judgment action neither served useful purpose or afforded relief from uncertainty where the determination sought was duplicative of its breach of contract claim, the parties had already commenced legal proceedings, and one party was not "left awaiting the initiation of legal proceedings while damages accrue.").

Like the relief sought by the plaintiff in Dow Jones, the declaratory relief that AHE seeks is not of "sufficient immediacy and reality" to amount to an actual controversy under the DJA. In its complaint, AHE asks this Court to declare that the monies advanced to AHE were not "loans," that said sums are not repayable or, alternatively, that if they are construed as loans, they cannot be enforced as a matter of law. This issue regarding the enforceability of the loans is squarely before the Aruban courts in the action filed by the Defendants.

Otherwise stated, AHE is essentially asking this Court to declare unenforceable any judgment that an Aruban court may enter before that court even has the occasion to address the merits of the dispute. Indeed, the Aruban court has not yet had an opportunity to address the merits of the dispute. In addition, AHE has not yet even formally responded to Defendants allegations in the Aruban case. Thus, while the procedures of the courts in Aruba generally allow disputes such as this to be resolved without undue delay, the reality is that the Aruban litigation is, like in Dow Jones, still in its "early stages." Further, AHE's Aruban counsel's letter of August 23, 2007 expressly states that it intends to "forcefully defend" the Aruban loans litigation. Thus, by AHE's own admission, it is far from a foregone conclusion that Defendants

7

are on the verge of prevailing in their action in Aruba. As such, it is clear, under <u>Dow</u> and similar cases, that the relief sought by AHE in the instant matter is based on nothing more than a string of apprehensions and conjectures about the ultimate outcome of the Aruban case and, especially at this early stage fails to constitute an "actual controversy" as required by the DJA.

### C. Even If This Case Satisfied The DJA, This Court Should Exercise Its Discretion To Dismiss Plaintiff's Complaint.

Even assuming, *arguendo*, that there was an "actual controversy," which there is not, this Court should dismiss this action because ruling on its merits would serve no meaningful purpose. The DJA confers upon the court considerable discretion to decline to rule in declaratory judgment actions, stating that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . <u>may</u> declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). To that end, courts are guided by the following factors, which strongly favor dismissal of this action:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race to res judicata;' (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

Dow Jones, 237 F.Supp.2d at 431.

### 1. This Declaratory Judgment Action Would Not Settle The Controversy Between the Parties.

First, this declaratory action would not settle the controversy over the repayment of the disputed loans. As the <u>Dow Jones</u> court aptly noted, a declaratory judgment issued by a United States court does little to settle the controversy between the parties to a foreign litigation. <u>Id.</u> at

8

437. Where, as here, the foreign suit is proceeding under the proper law of a foreign court, a decision from an American court would have little effect save for engendering more litigation. Id. The loan transactions at the heart of this declaratory judgment are governed by Aruban law. (Kuster Aff. ¶¶ 12-16). The Aruban Court is not bound to follow a decision of this Court, especially where, as here, the dispute originated in the courts of Aruba and was filed in the United States simply to try to undermine any decision by the Aruban justice system.

The circumstances for dismissal are even more compelling here because, in addition to the Aruban case, there are two parallel federal court declaratory judgment actions that seek identical relief from two different sets of defendants. Thus, there is a significant risk of inconsistent judgments between and among our own district courts. That is, the instant case names Michael Belfonti, MCR and CEB as defendants (but not other relevant parties such as Belfonti Holdings and Belfonti Capital Partners), whereas the New York action names Michael Belfonti, Belfonti Holdings, and Belfonti Capital Partners (but not MCR and CEB). As such, permitting this case to proceed may result in inconsistent judgments. The Aruban litigation, on the other hand, is not vulnerable to the same problem since all of the parties to this dispute are properly before that court.

In short, declaratory relief from this Court would amount to an academic exercise that would likely engender further discord and litigation between the parties without actually settling anything in Aruba where the Plaintiff is incorporated and the subject property is located.

    2. <u>Declaratory Relief Would Serve No Useful Purpose in Clarifying the Legal Relations Between the Parties</u>

Similarly, the declaratory relief sought by AHE would have no "useful purpose in clarifying the legal relations between the parties." AHE has filed a declaratory judgment action that is identical to the action it filed in the United States District Court for the Southern District

9

of New York, save for the fact that it names different defendants. Both of these federal actions were filed after AHE had notice of the Aruban case, which names all of the relevant parties. A judgment from this Court would only serve to complicate the legal relations between the parties because it may lead to inconsistent judgments. Therefore, permitting both cases to proceed simultaneously will do little but generate more costs and litigation. See Apotex, Inc. v. Sanofi-Synthelabo, 386 F.Supp.2d 549, 552 (S.D.N.Y. 2005), aff'd 175 Fed. Appx. 342 (Fed. Cir. 2006) (dismissing declaratory judgment where the existence of another pending action concerning the same issues could lead to inconsistent results, and "multiply and muddy the legal issues involved.").

    3.    AHE's Conduct Is A Blatant Attempt At Forum Shopping

Courts in the Second Circuit have consistently cautioned judges to be "dubious" of declaratory judgment actions that are filed to interfere with another pending action. See Farrell Lines, Inc. v. Columbus Cello-Poly Corp., 32 F.Supp.2d 118, 124 (S.D.N.Y. 1997), aff'd 161 F.3d 115 (2d Cir. 1998).[3]

AHE's filing of this action six days after receiving a notice letter from the defendants, and three days after the Aruban case was filed, amounts to "strategic forum shopping motivated by pursuit of a tactical edge over an opponent." Dow Jones, 237 F.Supp.2d at 440. There is simply no credible reason for AHE, an Aruban entity whose sole purpose is to run a hotel in Aruba, to file suit in Connecticut regarding loans that relate to its Aruban property. Dow Jones,

---

[3]Notably, the Second Circuit adheres to the first filed rule, whereby the first filed action prevails. Alden Corp. v. Eazypower Corp., 294 F.Supp.2d 233, 235 (D. Conn. 2003) (Hall, J.) ("The first filed rule . . . permits the transfer or dismissal of subsequently commenced litigation involving the same parties and the same issues when both suits are pending in the federal courts."). This principle should apply equally to a first-filed case in a foreign court. Therefore, even if plaintiff's actions did not indicate forum shopping, this case should be dismissed in favor of the first-filed Aruban action.

10

237 F.Supp.2d at 440.  See also Nat'l Union Fire Ins. Co. v. Int'l Wire Group, Inc., No. 02cv10338, 2003 WL 21277114, at *5 (S.D.N.Y. June 2, 2003) (Exhibit B) ("anticipatory conduct" may be presumed when the filing of a declaratory judgment action is "triggered by a notice letter.").  The court should not countenance these kinds of tactics and should dismiss the case for this reason alone.

    4.    The Use of A Declaratory Judgment Could Interfere With The Jurisdiction Of The Aruban Court

Just as a court will abstain from parallel state or federal court proceedings, it is proper for a federal court to abstain from interfering with a foreign court's administration of a prior filed suit, particularly where to do so may improperly encroach on that court's jurisdiction.  The Dow court found this consideration also dictated dismissal of the plaintiff's declaratory judgment action:

> Here . . . the Court considers that by interjecting itself prematurely into the parties' conflict now pending adjudication in the London Action, it would unduly meddle with the orderly administration of justice in the British tribunals.  This Court has no basis at this point, other than positing hypotheticals and surmising what the British tribunals may or may not do, for prejudging the outcome of the London Action, or for presuming that the parties could not achieve a satisfactory voluntary settlement of their conflict in that forum.

Id. at 442.  See also Basic, 949 F.Supp. at 1340-41 (declining to entertain declaratory judgment action when it would interfere with New Zealand court's right to decide the case before it).  Similarly, there is no justification at this early stage of the Aruban proceedings to interject this Court's judgment as to the propriety of the defendants' Aruban monetary claim.

    5.    The Aruban Courts Are The Superior Forum For Deciding the Enforceability of the Loans

A more appropriate form of relief will prompt a court to exercise its discretion not to entertain a complaint for declaratory judgment.  Dow Jones, 237 F.Supp.2d at 442.  This is

11

particularly applicable here where the crux of the dispute arises from loans (which are governed by Aruban law) made to an Aruban entity for use on Aruban real estate, and where there is a parallel action that is pending in Aruba. In this setting, comity overwhelmingly dictates that the action proceed to conclusion in that forum. See id. at 443-44.

## II. ALTERNATIVELY, AHE'S DECLARATORY JUDGMENT COMPLAINT SHOULD BE DISMISSED ON GROUNDS OF *FORUM NON CONVENIENS*.

As discussed herein, the instant case provides a classic instance of a plaintiff forum-shopping a dispute in an effort to dispose of a first-filed parallel proceeding. As discussed more fully below, AHE's choice of Connecticut as a forum should be entitled no more than minimal deference, Aruba is an adequate forum to adjudicate this dispute, and the balancing of private and public interest factors militate in favor of a dismissal. Accordingly, this Court should grant defendants' motion to dismiss on grounds of *forum non conveniens*.

### A. Standard of Review

Under the doctrine of *forum non conveniens*, a court has the discretion to dismiss a case "when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would 'establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems'." Scottish Air Intern., Inc. v. British Caledonian Group, PLC, 81 F.3d 1224, 1232 (2d Cir. 1996) (citations omitted).

A court may dismiss a complaint on grounds of *forum non conveniens* after determining (1) the degree of deference accorded to the plaintiff's choice of forum; (2) that the proposed alternative forum is adequate to adjudicate the dispute; and (3) that the balance between the private and public interests articulated in Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947), dictate that the action proceed

12

in the defendant's proposed alternative forum. Pollux Holding v. The Chase Manhattan Bank, 329 F.3d 64, 71 (2d Cir. 2003), cert. denied 540 U.S. 1149 (2004).

B.  **Where Neither AHE Nor This Dispute Has A "Bona Fide" Connection To The United States, Much Less To The District of Connecticut, AHE's Choice Of Forum Should Not Be Afforded Any Deference.**

Although courts sometimes defer to the plaintiff's choice of forum, a foreign plaintiff's choice of forum is accorded "less deference," in large part because a foreign plaintiffs' distance from home undermines any claim that they are in a more convenient forum. See Pollux Holding, supra, 329 F.2d at 71. This is particularly true where the plaintiff's or lawsuit's connection to the jurisdiction is not "bona fide," but instead is emblematic of some dilatory purpose. See id. Accordingly, courts look at the totality of the circumstances in resolving this question:

> The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice. Stated differently, the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens* .... On the other hand, the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons ... the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a *forum non conveniens* motion by showing that convenience would be better served by litigating in another country's courts.

Irragorri v. United Technologies Corp., 274 F.3d 65, 71-2 (2d Cir. 2001). In addition to forum shopping considerations, which clearly constitute dilatory conduct, courts also consider whether there is "little reason to assume that [the foreign plaintiff's choice of forum] is convenient for it."[4] Id. See

---

[4] The question of whether the choice was motivated by convenience can be determined by factors such as the plaintiff's residence relative to the chosen forum, the availability of witnesses and evidence in the forum, the defendant's amenability to suit, the availability of appropriate legal assistance, and other reasons related to convenience or expense. Irragorri, 274 F.3d at 72. Factors that are emblematic of forum shopping, however, include attempts to win a tactical advantage from local laws,

13

also <u>Pollux Holding</u>, 329 F.3d at 71-72 (plaintiff's decision to bring suit in defendants' home forum was not entitled to deference in absence of a "bona fide" connection to that forum).

Here, the plaintiff, an Aruban entity whose sole business purpose is to run a hotel on the island of Aruba, is seeking declaratory relief for monies it received relative to its Aruban property. The action's only connection to Connecticut is that the defendants reside here. The relevant business transactions, however, are primarily connected to Aruba. There is simply nothing about a Connecticut forum that makes it more convenient to resolve this dispute than Aruba. Accordingly, the Court should not give any deference to AHE's choice of Connecticut as a forum for this dispute.

### C. Aruba is an Available and Adequate Forum.

The availability of an adequate, alternative forum further counsels in support of Defendants' motion to dismiss. An alternative forum is "available" if (1) the defendant is amenable to process in that jurisdiction, and (2) the forum permits the "litigation of the subject matter of the dispute." <u>Alfadda v. Fenn</u>, 159 F.3d 41, 45 (2d Cir. 1998). The first prong of the test is clearly satisfied. The defendants are amenable to process by virtue of the fact that they commenced the litigation in Aruba. The second prong is also satisfied as Aruba clearly permits litigation of the subject matter in dispute. Indeed, the first-filed action in Aruba concerns the same essential issues that are before the Court in this case.

Under these principles, Aruba is clearly an adequate alternative forum with jurisdiction to hear the instant case. <u>See</u> <u>Transunion Corp. v. Pepsico, Inc.</u>, 640 F.Supp. 1211, 1215 (S.D.N.Y. 1986), <u>aff'd</u>, 811 F.2d 127 (2d Cir. 1987) (Philippines deemed an adequate forum under analogous circumstances). Moreover, other federal courts have recognized Aruba and the Dutch courts as

---

the "habitual generosity of juries in the United States" or in the forum, the popularity or unpopularity of a party, or the inconvenience or expense resulting from litigation in the chosen forum. <u>Id.</u>

14

adequate forums for the purposes of deciding a motion to dismiss for *forum non conveniens*. See e.g., Veba-Chemie A.G. v. M/V Getafix, 711 F.2d 1243, 1249 (5th Cir. 1983); Vlasic v. Wyndham Int'l, Inc., 451 F.Supp.2d 1005, 1008 (C.D. Ill. 2006). Finally, even the plaintiff has acknowledged the adequacy of Aruba as a forum by initiating litigation in Aruba against another entity affiliated with some of the defendants in the instant loans disputes.[5]

### D. Public and Private Interest Factors Dictate That This Action Proceed In Aruba.

To permit the instant case to proceed simultaneously with the Aruban case would amount to an "unwarranted waste of judicial resources." Transunion, 640 F.Supp. at 1218. The defendants would be forced to litigate these issues in up to three forums instead of proceeding in Aruba, the forum where the first-filed and more convenient action may be found. Because Aruba is an adequate forum in which to resolve this dispute, the Court should proceed to the next stage of analysis whereby it balances the public and private factors articulated in Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947).

#### 1. The Private Factors Favor Dismissal of the Action

The private factors generally include the "practical problems that make trial of a case easy, expeditious and inexpensive," including the ease of access to sources of proof, and the availability of compulsory process for attendance of unwilling witnesses. Id. at 508. Courts have consistently dismissed actions on grounds of *forum non conveniens* where, as here, the relevant documents and witnesses are found predominantly in the foreign jurisdiction, there are procedures for compelling the attendance of unwilling witnesses, and all other practical

---

[5] On July 23, 2007, AHE instituted a summary proceeding action in Aruba relative to the dispute between AHE and Diamond Gaming, an entity affiliated with some of the defendants in the loans disputes that operates the casino at the Hotel. Additionally, in August 2007, AHE brought voluntary counterclaims against Diamond Gaming in an action regarding the casino lease that was initiated by Diamond Gaming.

15

problems indicate that the case be tried in the foreign court. See e.g., Pollux Holding Ltd., supra, 329 F.3d at 75s (relevant documents found in both jurisdictions, most of the witnesses to appear at trial resided in England, and several of the defendants' witnesses could only be compelled to testify in England); Transunion Corp., supra, 640 F.Supp. at 1216 (all of plaintiff's witnesses and documents were located in the Philippines, several non-party witnesses beyond the subpoena power would also be called to testify, and some witnesses would require an interpreter); Gunneco Lifting A.B. v. Vetterlein, 814 F.Supp. 231, 232 (D. Conn. 1992) (Eginton, J.) (majority of relevant witnesses located in Sweden and speak Swedish, and although the relevant sales agreements between the parties were located in United States, information concerning contract located in Sweden); Alfadda, supra, 159 F.3d at 47-8 (all witnesses and documents were located in France, thereby reducing cost of producing witnesses); Von Spee v. Von Spee, No. 3:05cv1488, 2007 WL 2874696, at *7 (D.Conn. Sept. 27, 2007) (Exhibit C) (relevant witnesses in Germany).

Considering these factors in the context of this case, it is clear that this action should be dismissed in favor of the Aruban action. First, the relevant proof will be found predominantly in Aruba. AHE's place of business is in Aruba. Any witnesses to testify on behalf of AHE will similarly be found in Aruba, as demonstrated by plaintiff's initial disclosures in the parallel case pending in the Southern District of New York. See AHE's Initial Disclosures (disclosing Marieta Ras, Chief Executive Officer of AHE and an Aruban resident, as an individual likely to have discoverable information) (Exhibit D). To the extent there are witnesses who are unwilling to appear before the Aruban court, they may be ordered to do so, regardless of whether the witness is a party or a non-party. (See Kuster Aff. ¶ 22-23).

16

Moreover, any resolution of this dispute will likely require the parties to obtain evidence from AHE's accountants (both internal and outside), employees, and other professionals involved with company loans which individuals will be found in Aruba. Indeed, the only witnesses to be found in Connecticut are the defendants.

Second, there are practical problems of language and governing law which dictate that this case should proceed in Aruba. Many of the documents relevant to this dispute are likely located in Aruba and are likely to be written in one of Aruba's national languages, Dutch or Papiamento, thereby necessitating additional resources for translations. These practical considerations tip the balance in favor of a dismissal where the trial of this matter in Connecticut would be far from "easy, expeditious and inexpensive." Bybee v. Oper der Standt Bonn, 899 F.Supp. 1217, 1223 (S.D.N.Y. 1995) (the necessity of translators and interpreters were the type of "practical" problems contemplated by Gulf Oil).

2.   The Public Factors Also Favor Dismissal

The public factors address concerns such as the administrative difficulties attributable to court congestion, the alternative forum's interest in litigating this dispute, the interest in having the trial of a diversity case in the forum governed by the applicable law, and the avoidance of conflict of laws or the application of foreign law. Id. at 509. Where the above factors weigh in favor of the Aruban forum, this action should be dismissed. See e.g., Pollux Holding Ltd., supra, 329 F.3d at 76 (disputed notes were purchased in England, London had stronger interest in the dispute, and the claims were predominantly governed by English law); Transunion Corp., supra, 640 F.Supp. at 1217 (plaintiff could assert its action as a counterclaim in the prior filed proceeding in the Philippines, and application of foreign law warranted dismissal); Helog AG v. Kaman Aerospace Corp., 228 F.Supp.2d 91, 93 (D. Conn. 2002) (Chatigny, J.) (applicability of

17

German law supported dismissal of Connecticut action); Gunneco Lifting, supra, 814 F.Supp. at 232-33 (relevant documents and witnesses would require a translator, and Swedish law applied); Von Spee, supra, 2007 WL 2874696, at *8 (no local interest in dispute, save for plaintiff's residence in Connecticut, and German courts would be conversant in relevant law and language).

There are significant practical reasons why this action should proceed in Aruba as opposed to this court. First, Aruba has a significant interest in this dispute. The Hotel, which is at the center of this matter, is a prominent resort in a country whose economy is overwhelmingly dependent on tourism as a source of revenue. Consequently, Aruba has a significant interest in governing the contracts and financial relations between the Hotel and others. Connecticut, on the other hand, has no interest in the resolution of this dispute. Indeed, Connecticut's only connection is that it is the state in which the defendant entities happened to be located. Certainly, the balance favors a forum that is the epicenter of the relevant activity.

Second, although any dispute about the applicable law does not need to be resolved to justify this Court's decision to dismiss this action, it is clear, based upon the allegations in AHE's complaint and the declaration of Aruban counsel, that Aruban law will govern this dispute. See Kuster Aff. ¶ 12-16; Ioannides v. Markia Maritime Corp., 928 F.Supp. 374, 379 (S.D.N.Y. 1996) ("While the Court need not definitively resolve the choice of law issue at this point, the likelihood that foreign law will apply weighs against retention of the action."). Accordingly, the application of foreign law also favors a dismissal in this case.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, defendants respectfully request that the Court dismiss the plaintiff's action for declaratory judgment for lack of subject matter jurisdiction or, in the alternative, on grounds of *forum non conveniens*.

THE DEFENDANTS
MCR PROPERTY MANAGEMENT, INC.
CEB IRREVOCABLE TRUST

By _____
David A. Slossberg CT 13116
Allison M. Near CT 27241
Hurwitz, Sagarin, Slossberg & Knuff, LLC
147 N. Broad Street
P.O. Box 112
Milford, CT 06460
Tel: (203) 877-8000
Fax: (203) 878-9800
DSlossberg@hssklaw.com
ANear@hssklaw.com

19

## Certificate of Service

This is to certify that on November 30, 2007, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to all parties that are unable to accept electronic filing. Parties may access this filing through the Court's electronic system.

David A. Slossberg

Copies to:

Lissa J. Parris
Murtha Cullina LLP
Whitney Grove Square
2 Whitney Avenue
New Haven, CT 06510

Richard M. Goldstein
Michael T. Mervis
Stacy L. Ceslowitz
Patrick J. Dempsey
Proskauer Rose LLP
1585 Broadway
New York, NY 10036

Warren L. Holcomb, Esq.
Berchem, Moses & Devlin, P.C.
75 Broad Street
Milford, CT 06460