UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

ARUBA HOTEL ENTERPRISES N.V.,       :

                                     :

                Plaintiff,      :   Civil Action No.

                                     :   3:07 CV 7564 (PAC)

v.                                 :

                                     :   **ORAL ARGUMENT REQUESTED**

MICHAEL BELFONTI, BELFONTI HOLDINGS :
LLC, and BELFONTI CAPITAL PARTNERS,  :
LLC,                              :

                                     :

                Defendants.    :

                                     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

 

**PROSKAUER ROSE LLP**
Richard M. Goldstein
Michael T. Mervis
Stacy L. Ceslowitz
Patrick J. Dempsey
1585 Broadway
New York, New York  10036
(212) 969-3000

*Attorneys for Aruba Hotel Enterprises N.V.*

**Table of Contents**

Page

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................4

ARGUMENT .........................................................................................................7

I.     THIS COURT CLEARLY HAS, AND SHOULD EXERCISE, SUBJECT
       MATTER JURISDICTION OVER THIS DISPUTE...........................................7

       A.     An "Actual Case Or Controversy" Exists..............................................7

       B.     This Court Should Not Accept Defendants' Invitation To Decline
              Jurisdiction.....................................................................................10

              1.     A Declaratory Judgment Will Settle The Controversy Between The
                     Parties.....................................................................................11

              2.     A Declaratory Judgment In This Case Will Serve A Useful Purpose .......13

              3.     AHE Is Not "Forum Shopping"..................................................14

              4.     Adjudication Of This Action Will Not Increase Friction Between The
                     American And Aruban Legal Systems ........................................17

              5.     Litigation In Aruba Would Not Be A Better Or More Effective
                     Alternative................................................................................20

II.    THERE IS NO BASIS TO CONCLUDE THAT NEW YORK IS AN
       INCONVENIENT FORUM ...............................................................................20

       A.     AHE's Choice of Forum Should Be Given Deference ...........................21

       B.     Aruba Is Adequate, But It Is Not A *Better* Forum.................................23

       C.     Public And Private Interest Factors Favor Denial Of Defendants' Motions .........23

              1.     Private Interest Factors ............................................................24

              2.     Public Interest Factors.............................................................24

CONCLUSION.....................................................................................................25

i

## Table of Authorities

**Page**

**Cases**

*Apotex, Inc. v. Sanofi-Synthelabo,*
  386 F. Supp. 2d 549 (S.D.N.Y. 2005), *aff'd,* 175 Fed. Appx. 349 (Fed. Cir. 2006) 13, 14

*Basic* v. *Fitzroy Eng'g, Ltd.,*
  949 F. Supp. 1333 (N.D. Ill. 1996), *aff'd without op.,* 132 F.3d 36 (7th Cir. 1997)..... 9

*Camofi Master LDC v. College Partnership, Inc.,*
  452 F. Supp. 2d 462 (S.D.N.Y. 2006) ............................................................... 10

*China Trade & Dev. Corp. v. M V. Choong Yong,*
  837 F.2d 33 (2d Cir. 1987) ............................................................................. 17

*Cyberscan Tech., Inc. v. Sema Ltd.,*
  2006 WL 3690651 (S.D.N.Y. Dec. 13, 2006) ............................................. 20, 21, 24

*Dow Jones & Co. v. Harrods, Ltd.,*
  237 F. Supp. 2d 394 (S.D.N.Y. 2002), *aff'd,* 346 F.3d 357 (2d Cir. 2003) ......... 9, 10, 11

*Farrell Lines, Inc. v. Ceres Terminals Inc.,*
  161 F.3d 115 (2d Cir. 1998) ........................................................................... 16

*Farrell Lines Inc. v. Columbus Cello-Poly Corp.,*
  32 F. Supp. 2d 118 (S.D.N.Y. 1997), *aff'd sub nom.,* 161 F.3d 115 (2d Cir. 1998) 11

*Fieger v. Pitney Bowes Credit Corp.,*
  251 F.3d 386 (2d Cir. 2001), *aff'd,* 69 Fed. Appx. 31 (2d Cir. 2003) .................. 13, 18

*Fusco v. Rome Cable Corp.,*
  859 F. Supp. 624 (N.D.N.Y. 1994) ................................................................... 8

*Greenery Rehabilitation Group, Inc. v. Sabol,*
  841 F. Supp. 58 (N.D.N.Y. 1993) ..................................................................... 19

*Gulf Oil Corp. v. Gilbert,*
  330 U.S. 501 (1947) ...................................................................................... 20

*In re Air Crash Near Nantucket Island, Mass., on Oct. 31, 1999,*
  392 F. Supp. 2d 461 (E.D.N.Y. 2005), *aff'd, in part, appeal dismissed in part,*
  2007 WL 1315716 (2d Cir. May 7, 2007) ......................................... 12, 16, 15, 19, 20

*In re Metiom, Inc.,*
  2002 WL 433588 (S.D.N.Y. Feb. 25, 2002) ........................................................8

*Iragorri v. United Techs. Corp.,*
    74 F.3d 65 (2d Cir. 2001) ...............................................................................20, 21, 22

*Klaxon Co. v. Stentor Elec. Mfg. Co.,*
    13 U.S. 487 (1941) ...................................................................................................18

*Manu Int'l, S.A. v. Avon Prods., Inc.,*
    41 F.2d 62 (2d Cir. 1981) ...................................................................................23, 24

*Md. Cas. Co. v. Conti Cas. Co.,*
    32 F.3d 145 (2d Cir. 2003) ......................................................................................18

*Pergo, Inc. v. Alloc, Inc.,*
    262 F. Supp. 2d 122 (S.D.N.Y. 2003) .....................................................................17

*Pollux Holding, Ltd. v. Chase Manhattan Bank,*
    329 F.3d 64 (2d Cir. 2003) .................................................................................22, 23

*Quackenbush v. Allstate Ins. Co.,*
    517 U.S. 706 (1996) .................................................................................................20

*Stewart v. IRS,*
    157 F.R.D. 153 (E.D.N.Y. 1994) .............................................................................19

*Texport Oil Co. v. M/V Amolyntos,*
    11 F.3d 361 (2d Cir. 1993) ......................................................................................11

*Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.,*
    84 N.Y.2d (1994) .....................................................................................................18

iii

Plaintiff, Aruba Hotel Enterprises N.V. ("AHE"), respectfully submits this memorandum of law in opposition to Defendants' motion to dismiss. For the reasons set forth below, Defendants' motion should be denied.

## INTRODUCTION

By their motion to dismiss, Defendants -- two New York businesses that claim to have "loaned" money to AHE and their owner (who works in New York and resides in nearby Connecticut) -- are attempting to have their claims for alleged "loan" repayment litigated in a foreign jurisdiction thousands of miles from their homes and, as part of that effort, are arguing that foreign law should apply to this dispute. In the face of these strange maneuvers, Defendants have the temerity to argue that it is AHE, whose owner is likewise located in New York, that is engaged in "forum shopping," not Defendants. Even more remarkable is Defendants' claim that it would be "inconvenient" for them to litigate in New York, notwithstanding that the corporate defendants are located here and the individual defendant works here and lives next door in Connecticut. As we show below, these contentions are as meritless as they are transparent, as are all of the other arguments advanced by Defendants in support of their motion.

For example, Defendants argue that, even though they have demanded "repayment" of their alleged "loans," and the alleged "borrower," AHE, has denied that it owes Defendants any money, this Court lacks subject matter jurisdiction over this case because, supposedly, no actual case or controversy is presented. Predictably, to support this argument, Defendants completely mischaracterize AHE's complaint, claiming it seeks relief as to hypothetical "future judgments" in the case that the two corporate defendants filed in Aruba on *the very same day* that this action was filed in this Court. But AHE's complaint seeks no such relief and, indeed, makes no reference to any litigation in Aruba. On the contrary, AHE's complaint seeks a declaration of

AHE's rights with respect to Defendants' claimed "loans"; relief that is clearly ripe for adjudication in this Court under the Declaratory Judgment Act.

Defendants' plea that this Court should decline to exercise the subject matter jurisdiction that it clearly has also fails. In fact, the factors (discussed *infra*, at Section I.B) that courts within the Second Circuit examine to determine whether to take jurisdiction over a declaratory judgment action overwhelmingly favor the exercise of jurisdiction here. In this regard, it is notable that:

- Although Defendants attempt to portray themselves as the "natural plaintiffs," this ignores AHE's urgent interest in adjudicating Defendants' claims which, if proven, imperil AHE's very existence by potentially triggering a devastating foreclosure by AHE's lender.

- The transactions at issue in this case are most closely related to New York, and it is New York law, not the law of Aruba, that should be applied to the claims about them.[1]

- AHE, which is owned by a New York-based investment firm, is no more "guilty" of "forum shopping" by bringing this action against New York residents (and their Connecticut resident owner) in New York than are Defendants in bringing their claims in Aruba and moving this Court to dismiss AHE's claims in favor of the Aruban litigation.

Finally, Defendants' fall-back *forum non conveniens* argument deserves little response. Indeed, the very notion that Defendants would attempt to invoke this rarely-applied doctrine after being sued in the very city where they operate on a day-to-day basis (New York) is perhaps the best evidence that the "forum shopping" moniker Defendants seek to impose upon AHE is really suited for Defendants themselves.

Simply put, most (if not all) of the relevant witnesses and documents are located in New York, not in Aruba, and to the extent that any AHE witness or documents are relevant, AHE will

---

[1] To the extent there is any dispute that New York substantive law should be applied -- and there should be none -- the Court should permit AHE basic discovery regarding the alleged transactions, the "facts" of which are peculiarly within the knowledge of the Defendants. AHE expects that such discovery will lead to the incontestable conclusion that the "center of gravity" regarding the alleged "loans" is New York and, for that reason, New York substantive law applies to this dispute.

bring them here.  Thus, there is no basis to deprive AHE of the right to litigate in its chosen forum, particularly given that the relevant public and private interests at issue all favor New York as the forum.  Indeed, New York plainly has a keen interest in claimed loan obligations asserted by its citizens, whether the claims are legitimate or, as in this case, are a fabrication.

Equally clear is the motive behind Defendants' Aruba strategy -- their hope that because of the vastly more limited scope of discovery in Aruba, litigating there will permit defendant Michael Belfonti ("Belfonti") to prolong these fabricated claims about "loans" and thereby provide him with leverage in the *real* dispute that underlies all of the litigation involving him and his many entities, here and in other courts:  his default on a $19.5 million loan by AHE's current owner and his fraudulent efforts to convert the collateral that secured that loan and avoid his obligations under a personal guaranty.  To fully appreciate this, it is worth considering what Defendants' claimed "loans" really are.  To begin with, there are, as Defendants admit, no written loan agreements.  (*See* Affidavit of Allan F. Kuster ("Kuster Aff.") (submitted with Defendants' motion), ¶13).  What Defendants describe as "loans" to AHE are really monies that Belfonti evidently took from the bank accounts of the various entities he controlled and used to pay the loan and other obligations of another entity he then owned, AHE.  Belfonti then caused AHE to default on its loan obligations and thereby lost control of AHE to its new (and current) owner, which acquired AHE through a foreclosure after Belfonti's default.  Now, after defaulting on his loans and fraudulently converting collateral on his "way out the door," Belfonti wants AHE's new owner, which has already been victimized by Belfonti's default and fraudulent asset stripping scheme, to "repay" Belfonti the money he used to maintain control of AHE for as long as he did.

3

It is no wonder, then, that Belfonti and his entities are desperately seeking to avoid the harsh light of discovery under the Federal Rules of Civil Procedure by doing everything in their power to perpetuate their bad faith loan claims in a jurisdiction, Aruba, where Belfonti will not have to testify under oath in deposition (and may never have to testify under oath at all) and may not have to produce to AHE documents out of his own files. If ever there were a case of forum shopping for an improper purpose, it is Defendants' effort to dismiss this case in favor of the litigation that they raced to commence in the Caribbean, thousands of miles away from their homes and businesses, for the sole and obvious purpose of avoiding discovery.

## BACKGROUND

The relationship between AHE and Belfonti began back in 2006, when Belfonti set out to obtain financing for his purchase of a resort hotel property located in Aruba -- formerly the Wyndham Aruba Beach Resort & Casino, now known as the Westin Aruba Resort and Hotel (the "Hotel"). (*See* Complaint, ¶2). Belfonti ultimately obtained two loans. (*Id.* ¶¶1-2). One of these loans (the "First Mortgage Loan") was made directly to AHE by WIBC Aruba N.V. ("WIBC") (an affiliate of Wachovia Bank, National Association ("Wachovia")) in the amount of $230,000,000.00 and was secured by the Hotel. (*Id.* ¶17). The terms of the First Mortgage Loan were memorialized in a loan agreement between AHE and WIBC dated May 3, 2006 (the "Mortgage Loan Agreement"). (*Id.*).

The other loan (the "Mezzanine Loan") was made by Petra Fund REIT Corp., through its nominee, Petra Mortgage Capital Corp. LLC (collectively, "Petra"), to another Belfonti-controlled entity known as BCP Florin, LLC ("BCP Florin"), in the amount of $19,450,000.00. (*Id.* ¶18). The terms of the Mezzanine Loan were memorialized in an agreement dated June 9, 2006 (the "Mezzanine Loan Agreement"). (*Id.*). The Mezzanine Loan was secured by the equity

4

in another Belfonti entity, Twilight Holdings, LLC ("Twilight"), a holding company that indirectly owned AHE (the owner of the Hotel). (*Id.* ¶19).

Notably, section 3.1.24(d) of the Mortgage Loan Agreement prohibited AHE from incurring any indebtedness other than the First Mortgage and Mezzanine Loans. (*Id.* ¶22; *see also* Declaration of Michael T. Mervis ("Mervis Decl.") (submitted herewith), Ex. A, § 3.1.24(d)). A breach of this provision by AHE gives rise to a default under the Mortgage Loan Agreement, for which there is no right to cure. (Complaint ¶23; Mervis Decl., Ex. A, § 10.1(a)(xii)). In that event, Wachovia has the right to foreclose on the Hotel, AHE's principal asset. (*See* Mervis Decl., Ex. A, § 10.2(b)).

In April 2007, AHE (then Belfonti's entity) defaulted on the First Mortgage Loan (by failing to make the requisite repayments) and BCP Florin (also a Belfonti entity at the time) defaulted on the Mezzanine Loan. (Complaint ¶24). Thereafter, Petra voluntarily cured the default on the First Mortgage Loan, foreclosed on its security interest in Twilight under the Mezzanine Loan and, in consequence, became the beneficial -- and current -- owner of AHE. (*Id.*).

After taking control of AHE, Petra uncovered a fraudulent scheme orchestrated and perpetrated by Belfonti while he was still the controlling principal of AHE, the purpose of which was to strip AHE of valuable assets and rights for his own benefit. (*Id.* ¶4). In July 2007, AHE commenced an action in Aruba against Diamond Gaming ("Diamond Gaming") -- another Belfonti entity -- and Petra commenced an action in New York State Supreme Court against, *inter alia*, Belfonti and a number of his corporate entities. (*Id.* ¶¶25-26). The Aruban litigation is essentially a landlord-tenant dispute in which AHE sought (and seeks) to have Diamond Gaming terminated as the operator of the Hotel's casino. (*See* Mervis Decl., ¶2). In the New

5

York State Court action, Petra seeks, *inter alia*, to enforce a personal guaranty against Belfonti and asserts a claim for breach of the Mezzanine Loan Agreement, both of which are governed by New York law. (*See id.*, ¶3).

In an effort to gain "leverage" over Petra and AHE, Belfonti decided to claim that Defendants Belfonti Holdings LLC ("Belfonti Holdings") and Belfonti Capital Partners, LLC ("BCP"), and two of his Connecticut-based entities (nonparties MCR Property Management Inc. ("MCR") and CEB Irrevocable Trust ("CEB")) had made "loans" to AHE during the time that Belfonti was the controlling principal of AHE. Thus, on August 21, 2007, Defendants' Aruban lawyer sent a letter to AHE demanding immediate "repayment" of these alleged "loans." (*See* Kuster Aff., ¶¶4-5). The letter describes six different transactions that Defendants' lawyer characterized as "loans," only three of which are at issue in this case:

- US $1,873,702.86 purportedly given to AHE by BCP for operating expenses;

- US $499,950.00 purportedly given to AHE by Belfonti Holdings for its working capital contribution to Starwood (the third-party operator of the Hotel);

- US $393,000.00 purportedly given to Wachovia by BCP for an AHE mortgage payment.

(*Id.* ¶5). On August 24, 2007, MCR, CEB, Belfonti Holdings and BCP initiated litigation in Aruba concerning the alleged loans to AHE. (*Id.* ¶8). Also on August 24, AHE commenced this action concerning the alleged New York-based "loans." AHE did not receive notice of the Aruban litigation until September 7, 2007, when the petition in that case was served on AHE. (*Id.* ¶5)

It is undisputed that the claimed "lenders," Belfonti Holdings and BCP, are located here, in New York (not in Aruba). Accordingly, the alleged "loans" presumably originated in New York. Since Belfonti was purportedly "lending" money to himself, any loan "negotiation"

(between Belfonti and himself) would presumably have occurred in New York (or in Connecticut, where Belfonti lives). It is likewise undisputed that if such "loans" were in fact made, which AHE disputes, they are now the ultimate responsibility of AHE's current owner, Petra, a New York-based investment firm. Further, any of Defendants' documents concerning the claimed "loans" are presumably stored here.

According to Defendants, one of the alleged "loans" involved a direct payment to Wachovia, presumably in North Carolina. (*See* Mervis Decl., Ex. A, § 2.3.5 (stating that funds were to be paid to "Lender" "at Lender's office . . . ."); Ex. A, p. 1, first paragraph (listing Lender's office address in Charlotte, North Carolina)). Thus, even under Defendants' version of events, this "loan" never even touched the Island of Aruba.

Defendants contend that there are relevant witnesses and documents located in Aruba. However, other than AHE's Chief Executive, Marieta Ras, Defendants have not identified a single such witness by name.[2] If necessary, AHE is willing to bring Ms. Ras to New York for a deposition in this case. Likewise, to the extent that AHE has any relevant documents, AHE will produce them here.

## ARGUMENT

### I.    THIS COURT CLEARLY HAS, AND SHOULD EXERCISE, SUBJECT MATTER JURISDICTION OVER THIS DISPUTE

#### A.    An "Actual Case Or Controversy" Exists

---

[2]  Defendants claim that resolution of this dispute will "likely" require evidence from AHE's "accountants" and "employees". (Defts' Br., p. 16). However, given that Belfonti was in control of both the alleged "lenders" and the purported "borrower" (AHE) at the time the alleged "loans" were supposedly "made," it is difficult to see how the testimony of AHE's accountants (or other unidentified employees) could be of any significance whatsoever, particularly when any information they were provided about the alleged transactions presumably came from Belfonti himself (or his then employees acting at his direction).

Defendants contend that the dispute between AHE and Defendants "is not 'of sufficient immediacy' to satisfy the 'actual controversy' prong of the DJA." (Defts' Br., p. 5). However, an examination of the relevant facts and the cases relied upon by Defendants in support of this contention reveals that Defendants are wrong. The only relevant facts are these: Defendants have demanded payment of a fixed sum of money and AHE unequivocally denies that it owes this money. AHE is asking this Court to resolve the concrete and ripe question of whether or not the monies allegedly owed by AHE are, or are not, enforceable loan obligations. There is nothing speculative about the declaratory relief AHE seeks, and this Court's ruling on this issue is not dependent upon a finding by any other court.

As the authorities make clear, the facts presented in this case -- where one side denies liability in response to a demand for payment by the other side -- give rise to an actual case or controversy. *See, e.g., In re Metiom, Inc.*, 2002 WL 433588, at *3-4 (S.D.N.Y. Feb. 25, 2002) (finding that a "present, actual controversy" existed where the positions of the two parties as to payments due and payable under a promissory note were "diametrically opposed"); *Fusco v. Rome Cable Corp.*, 859 F. Supp. 624, 630-31 (N.D.N.Y. 1994) (finding that an actual controversy existed where, after receiving a demand for payment, a party expressly denied liability for the demanded payment).

Defendants' entire argument on this point is premised on an erroneous mischaracterization of AHE's Complaint. According to Defendants, "AHE is essentially asking this Court to declare unenforceable any judgment that an Aruban court *might* enter . . . ." (Defts' Br., p. 6) (emphasis in original). This is simply not so. AHE's claims in this case are not addressed to the proceedings that Defendants raced to file in Aruba and, indeed, there is no reference in AHE's Complaint to the Aruban litigation (which AHE did not know had been filed

when this case was commenced), much less a request for relief with respect to a hypothetical judgment by an Aruban court.

For this very reason, *Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394 (S.D.N.Y. 2002), *aff'd*, 346 F.3d 357 (2d Cir. 2003), the case upon which Defendants primarily rely, is completely inapposite, let alone "on all fours with the instant case." (Defts' Br., p. 5). In *Dow Jones*, the plaintiff sought a declaratory judgment that a libel claim pending in a London court would ultimately be legally unenforceable under U.S. law standards. *Id.* at 403. In other words, the plaintiff in *Dow Jones* sought a declaratory judgment that *if* the London court issued a judgment finding plaintiff liable for defamation, and *if* the defendant sought to enforce that judgment in the United States, then, as a matter of public policy, that hypothetical judgment would be unenforceable. The court held that the declaratory judgment action did not present an "actual case or controversy" because the relief sought pertained to events that might or might not occur in and after the conclusion of the foreign litigation and was entirely dependent upon the outcome in that foreign litigation. *Id.* at 408.[3]

That is *not* the fact pattern before this Court. AHE is not seeking any relief from this Court concerning the potential consequences of any litigation in Aruba. Rather than ignore Defendants' demand for payment, as the plaintiff did in *Dow Jones*, AHE responded to Defendants' trumped-up demand for "repayment" of their alleged "loans" by unequivocally denying liability. AHE seeks a determination from this Court as to whether or not the monies

---

[3] *Basic v. Fitzroy Engineering, Ltd.*, 949 F. Supp. 1333 (N.D. Ill. 1996), *aff'd without op.*, 132 F.3d 36 (7th Cir. 1997), also cited by Defendants, presents essentially the same inapposite fact pattern -- plaintiff sought "to have the court declare a future foreign judgment invalid and unenforceable even before [defendant] ha[d] the opportunity to have the future judgment entered by the New Zealand court and confirmed in a United States federal court."

allegedly owed are in fact owed, a determination that is in no way speculative or contingent upon the outcome of another litigation in a foreign court.

Similarly inapposite is *Camofi Master LDC v. College Partnership, Inc.*, 452 F. Supp. 2d 462 (S.D.N.Y. 2006). The dispute at issue in that case centered in part on a banking agreement between the parties which contained a New York *forum selection clause*. The court dismissed plaintiff's declaratory judgment claim, which was originally filed in Colorado and then transferred to the Southern District of New York. The court viewed the fact that plaintiff had originally filed the action in Colorado as an attempt at "preempting the Note holders' choice of forum . . . ." *Camofi*, 452 F. Supp. 2d at 480-81. In this case, as Defendants have admitted, there are no loan agreements (*see* Kuster Aff., ¶13 ("[w]here, as here, there is no written contract . . .")), much less a forum selection clause specifying that claims about the purported "loans" must be litigated in Aruba. On the contrary, Defendants find themselves in the very strange position of arguing that a *foreign* jurisdiction is preferable (and that application of *foreign* law to their alleged loan agreements is warranted and desirable).[4]

**B.    This Court Should Not Accept Defendants' Invitation To Decline Jurisdiction**

Defendants also argue, in the alternative, that even if this Court finds that it has subject matter jurisdiction, it should nonetheless dismiss this action because "ruling on its merits would serve no meaningful purpose." (Defts' Br., p. 7). To be sure, in certain circumstances it is appropriate for a court to exercise its discretion to dismiss a declaratory judgment action, but "a court *must* entertain a declaratory judgment action '(1) when the judgment will serve a useful

---

[4] As Defendants can hardly contest, it is, at the very least, highly unusual for a U.S. lender to bargain for, much less advocate for, the application of foreign law to the lender's loan. That Defendants are arguing so strenuously for the application of Aruban law when they are neither located in nor do business in Aruba speaks volumes as to Defendants' true motives -- *i.e.*, the very forum shopping of which they repeatedly (and wrongly) accuse AHE.

purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Farrell Lines Inc. v. Columbus Cello-Poly Corp.*, 32 F. Supp. 2d 118, 124 (S.D.N.Y. 1997), *aff'd sub nom.*, 161 F.3d 115 (2d Cir. 1998) (quoting *Texport Oil Co. v. M/V Amolyntos*, 11 F.3d 361, 366 (2d Cir. 1993)) (emphasis added).  As we will now show, these conditions, as examined through application of the factors typically applied by courts within the Second Circuit, are amply satisfied here.[5]

        1.     A Declaratory Judgment Will Settle The Controversy Between The Parties

Defendants fundamentally mischaracterize the dispute between AHE and Defendants as one that "originated in the courts of Aruba." (Defts' Br., p. 8).  Because this action and the Aruba action were filed on the *very same day*, there is no basis upon which to conclude that this dispute "originated" in Aruba or that the Aruba action was the "first-filed" proceeding (as Defendants repeatedly claim in their brief).  (*See* Defts' Br., pp. 1-3, 9-10, 12, 14-17).  This dispute arose *not* by virtue of Defendants' peculiar decision to run to court in Aruba, thousands of miles from their home jurisdiction, but when they demanded that AHE "repay" the alleged "loans" that were supposedly made to AHE during the time it was controlled by Belfonti.

Defendants' entire argument on this point is premised on the existence of their case against AHE in Aruba.  Yet Defendants offer no support for their contention (*see* Defts' Br., p. 8) that a judgment in this action would not be binding on a court in Aruba.  In fact, as will be discussed *infra* at Section I.B.4, it is New York law that will be applied, both here *and* in Aruba,

---

[5]  These factors are:  "(1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race [to] res judicata;' (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective."  *Dow Jones*, 237 F. Supp. 2d at 432.

to the question of whether the claimed "loans" by Belfonti Holdings and BCP are loans. Given that an Aruban court would need to examine AHE's alleged obligations under United States law, Defendants "ha[ve] not offered any reasons why [Aruba] would not comply with this Court's interpretation and application of United States law [and] it is likely that the Court's declaratory judgment would resolve the [Aruban action]." *In re Air Crash Near Nantucket Island, Mass., on Oct. 31, 1999*, 392 F. Supp. 2d 461, 478 (E.D.N.Y. 2005), *aff'd in part, appeal dismissed in part*, 2007 WL 1315716 (2d Cir. May 7, 2007).

There is also nothing in AHE's complaint that gives credence to Defendants' contention that this action "was filed in the United States simply to try to undermine any decision by the Aruban justice system." (Defts' Br., p. 8). Though AHE was aware that Defendants had threatened to file suit in Aruba, AHE was unaware that Defendants were making good on that threat and filing the Aruba litigation the very same day this action was filed. (*See* Mervis Decl., ¶5).

Defendants also claim that this Court should decline to exercise the subject matter jurisdiction that it clearly has because Defendants supposedly face "a significant risk of inconsistent judgments" (Defts' Br., p. 8) due to the existence of a companion action to this case pending in the District of Connecticut. This is a red herring for at least two reasons. First, Defendants are demanding repayment of multiple "loans," not just one singular loan. Under their own description of the alleged transactions, the "loans" are separate and distinct from each other. The District of Connecticut has not been asked to determine whether monies allegedly owed to Belfonti Holdings or BCP are actually enforceable obligations. Conversely, this Court has not been asked to determine whether AHE must repay "funds" "loaned" from both MCR and CEB to AHE. There is thus no threat of any inconsistent judgments because, assuming (contrary

to fact) that there is any basis at all to the claims about alleged "loans," it would not be "inconsistent" for there to be different findings with respect to different transactions.

Second, Defendants' claimed fears about inconsistent judgments, even if genuinely held, are easily remedied. AHE commenced the action in the District of Connecticut against Belfonti, MCR and CEB simply because AHE did not believe, at that time, that it had a basis to assert personal jurisdiction over MCR and CEB in New York. (*See* Mervis Decl., ¶4). As AHE's counsel made clear during the initial conference in this case, AHE is perfectly willing to consolidate the two U.S. cases in either Connecticut or New York. Thus, to the extent there are overlapping issues concerning all of the alleged "loans," one court can examine such issues and render uniform rulings with respect to them.[6]

2.    A Declaratory Judgment In This Case Will Serve A Useful Purpose

For the reasons stated above, the relief sought in this case would plainly serve a useful purpose. In arguing to the contrary, Defendants rely, erroneously, on *Apotex, Inc. v. Sanofi-Synthelabo*, 386 F. Supp. 2d 549 (S.D.N.Y. 2005), *aff'd*, 175 Fed. Appx. 349 (Fed. Cir. 2006). The facts of that case bear no relation to the facts of the instant case. *Apotex* involved two competing actions (both filed in United States district courts). Apotex was a defendant in the original action for patent infringement, where it sought leave to amend its answer (for the third time, and after the close of discovery) to include allegations of inequitable conduct. *Id.* at 550. Eight days after this request was denied, Apotex filed a declaratory judgment action setting forth

---

[6] To be sure, New York law would apply to the New York based "loans" and Connecticut "law" would apply to the Connecticut-based "loans." But there is nothing unusual in a federal court applying the laws of different states to different transactions. *See, e.g., Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 397 (2d Cir. 2001), *aff'd*, 69 Fed. Appx. 31 (2d Cir. 2003) ("There is no conflict in applying New York law to one claim and Connecticut law to another."). Further, this circumstance will also present itself should the litigation in Aruba continue because, as is explained *infra* in Section I.B.4, Aruban choice-of-law rules are substantively the same as New York and Connecticut choice-of-law rules. Thus, the Aruban court will, if the Aruban litigation continues, be applying New York law to certain of the alleged transactions and Connecticut law to the other alleged transactions.

13

the same allegations against the same parties that it had previously sought to include in its amended answer. *Id.* In its complaint in the declaratory judgment action, Apotex actually alleged that the action was being brought as a result of the denial of its motion for leave to amend its answer in the first-filed action. *Id.* at 550-51. Seven days after it filed its declaratory judgment complaint, Apotex unsuccessfully moved in the first-filed action for reconsideration of the denial of its motion for leave to amend and cited, as a basis for the motion, the fact that it had filed the declaratory judgment action. *Id.* at 551. Based on this obvious gamesmanship, the *Apotex* court dismissed the declaratory judgment action, reasoning that, *inter alia*, Apotex was using the action to circumvent the denial of its motion for leave to amend in the first-filed case. *Id.* at 552. Here, in contrast, there has been no decision in Aruba that AHE is seeking to circumvent, nor is there any basis to conclude that AHE's motives for commencing this case are any less *bona fide* than Defendants' decision to attempt to enforce their alleged "loans" in a foreign country.[7]

     3.     <u>AHE Is Not "Forum Shopping"</u>

Defendants take issue with AHE's choice of New York as a forum, arguing that AHE is guilty of a "blatant attempt . . . to forum shop [this] dispute . . . ." (Defts' Br., p. 9). According to Defendants, "[t]here is simply no credible reason for AHE . . . to file suit in the Southern District of New York . . . ." (*Id.* p.10). This is wrong. First, and most obviously, New York is an appropriate forum because the alleged lenders, both of which Belfonti beneficially owns and

---

[7] In an unseemly attempt to prejudice AHE by perpetuating their "forum shopping" allegations, Defendants misstate the facts when they say that "[a]fter the Aruban courts ruled against AHE in the preliminary proceeding, AHE (through its parent entities) subsequently commenced litigation in New York Supreme Court against Michael Belfonti and certain related entities . . . ." (Defts' Br., p. 12, fn. 7). In fact, Petra's New York Supreme Court case against Belfonti (to which AHE is *not* a party) was filed only one day after AHE brought suit against Diamond Gaming in Aruba, well before a preliminary ruling in the landlord-tenant dispute was issued by the Aruban court. (Mervis Decl. ¶¶2-3).

14

controls, are located here, in New York. (*See* Complaint, ¶¶ 15-16, 29). As noted, and as discussed in greater detail *infra*, at Section II.C.1, all or substantially all of the relevant witnesses and documents with respect to the transactions at issue are likely located in New York. Further, as discussed in greater detail *infra*, at Section I.B.4, New York law applies to the transactions at issue in this case.

Indeed, the only connection that Aruba has to the alleged "loans" is the physical location of AHE's hotel and the place of AHE's incorporation. Yet even this connection is, at least for practical purposes, irrelevant. AHE is now beneficially owned by Petra (*see* Complaint, ¶24), which is located in New York City, and was previously beneficially owned by Belfonti, a Connecticut resident, during the relevant time period. (*Id.* ¶¶14, 17).

Defendants also argue that "Petra, a U.S. lender, and current owner of AHE," also chose to litigate a dispute concerning the Hotel in Aruba. (Defts' Br., p. 11). Defendants are referring to litigation between AHE and Diamond Gaming over the validity of a casino operating agreement between the parties, in which AHE filed a proceeding in Aruba to have Diamond Gaming removed as the operator. (*Id.*). In that case, all of the parties are Aruban entities and the lease agreement at issue explicitly states that the lease is governed by Aruban law. (*See* Mervis Decl. ¶2). Thus, Aruba is the natural, and perhaps only, forum in which to litigate that particular dispute. But just because AHE chose to litigate one case in Aruba hardly means that it is *required to* litigate disputes against U.S. entities and a U.S. citizen in Aruba or that its decision to bring this litigation in the U.S. somehow constitutes "forum shopping."[8] "[S]ince it was entirely appropriate for [AHE] to seek declaratory relief in a United States court, it cannot be

---

[8]   Notably, Petra is suing Belfonti in New York under a guaranty signed by Belfonti which specifies New York as the forum for the resolution of disputes. (*See* Mervis Decl. ¶3).

15

accused of forum shopping." *In re Air Crash Near Nantucket Island*, 392 F. Supp. 2d 461 at 478.

Defendants cite to *Farrell Lines, Inc. v. Ceres Terminals Inc.*, 161 F.3d 115, 117 (2d Cir. 1998), for the proposition that "courts should be dubious of declaratory judgment actions when the plaintiff files suit to interfere with an action already filed or in anticipation of defendant filing suit in another forum." (Defts' Br., p. 9).  But *Farrell Lines* actually counsels *against* a finding that AHE is "guilty" of forum shopping.  *Farrell Lines* teaches that, where the plaintiff filed a declaratory judgment action seeking resolution of a real controversy in a forum related to that controversy, then the declaratory judgment plaintiff has done nothing improper, *even if the action was filed in anticipation of defendant's foreign action. Id.* at 124. Here, there is nothing wrong in AHE choosing the forum where the alleged "lenders" can be found and where the funds at issue presumably originated from.

Further, according to Defendants, because AHE received a demand letter from Defendants' Aruban counsel about the claimed "loans," AHE's filing of this lawsuit was improper "anticipatory conduct." (Defts' Br., pp. 9-10).  This ignores the fact that Defendants' bad-faith demands regarding their claimed "loans" triggered a real and immediate need for AHE to vindicate its position with respect to Defendants' bogus claims.  Specifically, Defendants' claims, if true, would mean that Belfonti violated the restriction in the Mortgage Loan Agreement that prohibited AHE from incurring indebtedness.  This, in turn, would expose AHE to the risk of a claim of default by Wachovia and the very real possibility that Wachovia would opt to foreclose on the Hotel, thereby bankrupting AHE.  Given this potentially life-threatening exposure to Wachovia, it was very much in AHE's interest to have Defendants' claims

adjudicated promptly and in the forum of AHE's choosing.  In this regard, AHE is just as much the "natural plaintiff" as Defendants claim to be.

Defendants also argue, incorrectly, that the "first-filed rule," as described in *Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122 (S.D.N.Y. 2003), should be applied as a basis for dismissing this case.  "Traditionally, under the 'first filed' rule, when there are two actions involving the same parties *pending concurrently in different districts*, the "first filed" case proceeds, and the second-filed case is either dismissed or stayed." *Id.* at 131 (emphasis added).  The rule has no application here.  To begin with, Defendants offer no evidence that their Aruban lawsuit was the "first-filed" case and, in fact, that case and this one were filed on the same day.  In any event, even if Defendants' Aruban action could be construed as "first-filed," their action was filed in Aruba, not, as the "first-filed" doctrine contemplates, another U.S. federal court.

    4.    <u>Adjudication Of This Action Will Not Increase Friction Between The American And Aruban Legal Systems</u>

Without any basis, Defendants contend that adjudication of this case "could" interfere with the jurisdiction of the court in Aruba. (Defts' Br., p. 10).  This conjecture is apparently based on the possibility that this case and the case in Aruba could both proceed at the same time. If that were to happen, however -- and it would only happen if Defendants persisted with their bizarre zeal to litigate their claimed "loans" in a foreign jurisdiction -- it would hardly be uncommon or unprecedented.  In fact, parallel proceedings occurring simultaneously in the United States and in a foreign forum are "ordinarily tolerable" and "should ordinarily be allowed to proceed simultaneously . . . ." *See, e.g.*, *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 36 (2d Cir. 1987).

Defendants also summarily conclude that "the dispute is governed by Aruban law" and that, in consequence, "a decision from an American court would have little effect save for

engendering more litigation." (Defts' Br., p. 8).[9]  However, Defendants' conclusion about the

applicable law, whether in this Court or in Aruba, is incorrect.  As for this Court, in a diversity

suit such as this one the Court must apply the choice-of-law rules of the state in which it sits.

*See, e.g., Md. Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 151 (2d Cir. 2003) (citing *Klaxon Co. v.*

*Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  In accordance with New York's choice-of-

law analysis for contract claims, "the court evaluates the 'center of gravity' or 'grouping of

contacts', with the purpose of establishing which state has 'the most significant relationship to

the transaction and the parties.'"  *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 394 (2d

Cir. 2001), *quoting Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309 (1994).  "In

developing this test, the New York Court of Appeals relied on the Second Restatement of

Conflict of Laws," which considers the "place of contracting," as well as "the places of

negotiation and performance; the location of the subject matter; and the domicile or place of

business of the contracting parties."  *Id.* at 394.

It is New York, and not Aruba, that has the most significant relationship with this case.

The two alleged "lenders" in this case -- Belfonti Holdings and BCP -- are located in New York.

Belfonti, the individual who owns and controls both entities (and controlled AHE at the time),

works in New York.  (Complaint, ¶29).  The money allegedly "loaned" to AHE supposedly came

from these "lenders" and was presumably disbursed from New York (and, in the case of one

alleged transaction, the funds at issue were evidently never even sent to Aruba, but were instead

paid directly to Wachovia, here in the U.S.).  AHE's current owner, Petra, which would

ultimately suffer the impact of any loan collection, is here in New York.  "Given that American

---

[9]  Defendants cite to the affidavit of their Aruban lawyer, Mr. Kuster, as supposed support for this assertion. Nowhere, however, does Mr. Kuster opine that an Aruban court would not consider itself to be bound by a judgment of this Court.

law is at the heart of [this dispute], [this] Court's resolution of such law could hardly be viewed as increasing friction between the American and [Aruban] legal systems or compromising principles of international comity." *In re Air Crash Near Nantucket Island*, 392 F. Supp. 2d at 478.

As for the litigation in Aruba, based on Defendants' Aruban counsel's recitation of Aruban choice-of-law principles, the test in Aruba is essentially the same. (*See* Kuster Aff., ¶ 13 (contract to be governed by law of country to which contract is most closely connected)). Thus, if this matter is litigated in Aruba, the Aruban court will also be applying New York law to the transactions at issue in this case.[10]

To the extent there is any doubt that New York substantive law should be applied, at a bare minimum AHE should be afforded basic discovery as to the alleged "facts" surrounding the alleged "loans." Because the "loans" were made between entities controlled by the same person, Belfonti, only Defendants have knowledge of the relevant circumstances. The claim letter from their Aruban counsel and their Aruban pleading offer, at best, only scant details about the alleged "loans" and certainly do not allow for the conclusion that Aruba is the "center of gravity" with respect to them. In these circumstances, if the Court has any doubt as to the applicable substantive law, limited discovery as to the "who, what, where, when and why" of the alleged "loans" is warranted. *See, e.g.*, *Stewart v. IRS*, 157 F.R.D. 153 (E.D.N.Y. 1994) (granting discovery relevant to subject matter jurisdiction); *Greenery Rehabilitation Group, Inc. v. Sabol*, 841 F. Supp. 58 (N.D.N.Y. 1993) (same).

---

[10] In their brief, Defendants claim that Mr. Kuster's affidavit provides "a detailed explanation of why Aruban law would govern this dispute." (Defts' Br., p. 17). This is not so. Rather, Mr. Kuster merely explains Aruban choice-of-law rules -- which, as noted, are substantively the same as New York's choice-of-law rules -- and then concludes that Aruban law would be applied by an Aruban court based solely on the unsupported conclusion that the "transactions between the parties are clearly more closely connected with Aruba . . . ." (Kuster Aff. ¶14). For the reasons discussed directly *supra*, that conclusion is plainly incorrect.

19

    5.    <u>Litigation In Aruba Would Not Be A Better Or More Effective Alternative</u>

Defendants base their argument that Aruba is a superior forum on the misguided argument that this dispute is most closely connected to Aruba and will be decided under Aruban law. (Defts' Br., p. 11). However, as has already been discussed, it is New York (and New York law) that has the most substantial relationship to this case. Further, "considerations of comity are only relevant when there is . . . a true conflict between domestic and foreign law." *In re Air Crash Near Nantucket Island*, 392 F. Supp. 2d at 478. Here, because, as discussed directly *supra*, New York law will apply regardless of venue, comity is irrelevant.[11]

## II.    THERE IS NO BASIS TO CONCLUDE THAT NEW YORK IS AN INCONVENIENT FORUM

Defendants alternatively ask this Court to dismiss this case on the basis of *forum non conveniens*. In doing so, Defendants imply that such relief is unremarkable. In reality, however, the doctrine of *forum non conveniens* should only be applied in "rare" situations. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722 (1996) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)). This case -- where two New York businesses and their Connecticut resident owner are making the extraordinary argument that *New York* is somehow an inconvenient forum -- can hardly be "one of those rather rare cases where the [*forum non conveniens*] doctrine should be applied." *Gulf Oil*, 330 U.S. at 509.

In considering a motion for *forum non conveniens*, the Court should "first determine the degree of deference to be accorded the plaintiff's choice of forum, since 'the plaintiff's choice of forum should rarely be disturbed.'" *Cyberscan Tech., Inc. v. Sema Ltd.*, 2006 WL 3690651, at *7 (S.D.N.Y. Dec. 13, 2006) (quoting *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir.

---

[11] As explained in Section I.B.3, *supra*, the fact that AHE is litigating another dispute in Aruba against a Belfonti entity hardly means that Aruba is a superior forum for the litigation of *all* such disputes.

2001)).  "After determining the appropriate level of deference, courts must determine whether an adequate alternative forum exists, and finally the court must balance two sets of factors, relating to the private and public interests at stake, to determine which forum is most appropriate." *Cyberscan*, 2006 WL 3690651, at *7.  Given this standard, and given that AHE chose this forum -- a forum that has the most substantial relationship with this case -- the second prong of Defendants' motion fares no better than the first.

### A.    **AHE's Choice of Forum Should Be Given Deference**

Defendants claim that, because AHE is incorporated in Aruba, AHE's choice of forum should essentially be ignored.  Defendants make this argument despite the fact that:  (a) AHE chose to file this lawsuit in the forum in which two of the Defendants reside and where the third Defendant works; (b) this forum has the most substantial relationship to the dispute and (c) New York law will apply to the claimed "loans" at issue.

*Iragorri v. United Technologies Corp.*, 274 F.3d 65 (2d Cir. 2001), cited by Defendants, does not support their position.  In reversing a district court's dismissal based on *forum non conveniens*, the Second Circuit, in *Iragorri*, actually said that the District Court should have accorded *greater* deference to plaintiff's choice of forum.  *Id.*  Indeed, the excerpt from *Irragorri* included in Defendants' own brief shows the fallacy of Defendants' argument:

> The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice.  Stated differently, the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*.

*Id.* at 71-72; *see also* Defts' Br., p. 13.  New York clearly has a *bona fide* connection to this case, for all the reasons discussed previously.  Further, AHE is owned by Petra, which is located here.

21

As for Defendants' repeated refrain that AHE has engaged in forum shopping, that claim

fares no better under a *forum non conveniens* analysis than it does under a subject matter

jurisdiction analysis.  As the Second Circuit has observed, circumstances that generally indicate

forum shopping include:  attempts to win a tactical advantage resulting from local laws favoring

plaintiff's case; habitual generosity of juries in the United States or the forum district; the

plaintiff's popularity or the defendant's unpopularity in the region; or the inconvenience and

expense to the defendant from litigating in that forum.  *Iragorri*, 274 F.3d at 72.  Defendants, in

their brief, do not even attempt to argue that any of these factors are present, other than to make

the strange and factually incorrect and unsupported argument that it will somehow be

inconvenient and expensive for them to litigate in their home state.

Notably, *Iragorri* also counsels this Court to be wary of Defendants' motives for filing

these motions to begin with:

> Courts should be mindful that, just as plaintiffs sometimes choose a forum
> for forum-shopping reasons, defendants also may move for dismissal
> under the doctrine of *forum non conveniens* not because of genuine
> concern with convenience but because of similar forum-shopping reasons.
> District courts should therefore arm themselves with an appropriate degree
> of skepticism in assessing whether the defendant has demonstrated
> genuine inconvenience and a clear preferability of the foreign forum.  And
> the greater the degree to which the plaintiff has chosen a forum where the
> defendant[s'] witnesses and evidence are to be found, the harder it should
> be for the defendant to demonstrate inconvenience.

*Iragorri*, 274 F.3d at 75.  Two New York residents and their owner (who lives in Connecticut

and works in New York) arguing that New York is an inconvenient forum is perhaps the clearest

example of forum shopping possible.

To be sure, *Pollux Holding, Ltd. v. Chase Manhattan Bank*, 329 F.3d 64 (2d Cir. 2003),

was a case that was dismissed on *forum non conveniens* grounds even though it was filed in the

defendant's home forum.  In that case, Liberian corporations filed suit in the Southern District of

New York against Chase Manhattan Bank, headquartered in New York. *Id.* at 68. The Second Circuit found that the District Court did not abuse its discretion in finding that London, England was a more convenient forum. However, at least two significant facts distinguish *Pollux* from this case. *Id.* at 68-69. First, most of the actions at issue in that case were centered in London. Here, by contrast, the facts are, as previously discussed, centered predominantly in New York. Second, and more importantly, Chase had a number of affiliates and subsidiaries located in London that were central to the dispute. *Id.* at 68. Here, there is no evidence that Defendants have any Aruban affiliates, much less any that have anything to do with Defendants' claimed "loans." As is obvious, that Belfonti Holdings and BCP reside here weighs very heavily against Defendants' *forum non conveniens* arguments. Though "the residence of the parties is no longer considered dispositive in forum non conveniens cases, it remains a significant factor . . . . [P]laintiff chose this forum and defendant[s] reside here. This weighs heavily against dismissal." *Manu Int'l, S.A. v. Avon Prods., Inc.*, 641 F.2d 62, 67 (2d Cir. 1981) (internal citation omitted).

**B.    Aruba Is Adequate, But It Is Not A *Better* Forum**

AHE acknowledges that Aruba is an adequate forum in which to litigate this dispute. However, that does not make it a *better* forum. Notably, the Aruban system does *not* afford litigants the same procedural safeguards that are available here. (*See generally* Mervis Decl., Ex. B (Affidavit of Hendrik S. Croes ¶¶15-16)). Most critically, in Aruba Belfonti will not be subject to a deposition and may not be required to give sworn testimony at all. (*Id.*).

**C.    Public And Private Interest Factors Favor Denial Of Defendants' Motions**

The third step in a *forum non conveniens* analysis is to evaluate the overall comparative convenience of the fora by considering the various private and public interest factors involved. "To prevail, a defendant normally has the burden to demonstrate that both the private and public

23

factors '*strongly*' favor dismissal." *Cyberscan*, 2006 WL 3690651, at *9 (emphasis in original); *see also Manu Int'l*, 641 F.2d at 65. Defendants have not come close to carrying this burden.

### 1.    Private Interest Factors

The private interest factors concern the practical problems that make trial of a case easy, expeditious and inexpensive. *Cyberscan*, 2006 WL 3690651, at *10. Defendants rely upon the conclusory assertion that "the relevant proof will *likely* be found predominantly in Aruba." (Defts' Br., p. 16) (emphasis in original). As discussed *supra*, this is not so and, to the extent that AHE has any relevant documents or witnesses in Aruba, AHE will bring them here. "[D]efendants offer no reason to think that transporting this evidence to [New York] would pose any insurmountable or even significant hardship on the parties." *Cyberscan*, 2006 WL 3690651, at *10. In fact, the most (and arguably only) relevant witness is Belfonti (who works in New York and lives in Connecticut) and the most relevant documents will be those belonging to Defendants. It defies reason that Defendants would maintain their documents in Aruba, thousands of miles away from where Defendants reside.

### 2.    Public Interest Factors

The public interest factors to be considered include administrative difficulties associated with court congestion; the unfairness of imposing jury duty on a community with no relation to the litigation; the local interest in having localized controversies decided at home; and avoiding difficult problems in conflict of laws and the application of foreign law. *See, e.g.*, *Manu Int'l*, 641 F.2d at 64-65. These, too, weigh in favor of denying Defendants' motion.

First, as already discussed, it is New York law, and not the law of Aruba, that will apply to this dispute. Second, New York has a significant interest in loan collection claims made by its citizens, including an interest in ensuring that its residents are not permitted to perpetuate bogus claims against other parties.

Ignoring this, Defendants again focus on the fact that the Hotel is located in Aruba.  But, in fact, the location of AHE in Aruba is comparatively immaterial.  The important relationship is not the nature or the locale of the alleged "borrower," or even how the alleged "loans" were "used" by the "borrower"; because the controversy centers, in the first instance, on whether there were loans at all, the important relationship is the location of the lender.  If it is true, as AHE contends, that Defendants have fabricated their "loan" story, then New York has a keen interest in adjudicating such bad-faith conduct on the part of its citizens.[12]

### CONCLUSION

For the foregoing reasons, AHE respectfully submits that the Defendants' motion to dismiss should be denied.

Dated: January 2, 2008
      New York, New York


      By     /s/ Michael T. Mervis
             Michael T. Mervis

      PROSKAUER ROSE LLP
      Richard M. Goldstein
      Michael T. Mervis
      Stacy L. Ceslowitz
      Patrick J. Dempsey
      1585 Broadway
      New York, New York  10036
      Telephone:  (212) 969-3000
      Facsimile:  (212) 969-2900

      *Attorneys for Aruba Hotel Enterprises N.V.*

---

[12] Conversely, assuming, arguendo, that Defendants did in fact "loan" money to AHE, then New York also has an interest in ensuring that lenders domiciled in New York are repaid.

25