# EXHIBIT A

# LOAN AGREEMENT

Dated as of May 3, 2006

By and Among

## ARUBA HOTEL ENTERPRISES N.V.,
as Borrower,

and

## WIBC ARUBA N.V.,
as Lender

NYLIB4 753059 14

## LOAN AGREEMENT

THIS LOAN AGREEMENT, dated as of May 3, 2006 (as amended, restated, replaced, supplemented or otherwise modified from time to time, this "Agreement"), between WIBC ARUBA N.V., an Aruban limited liability company having an address c/o Wachovia Bank, National Association, 301 South College Street, NC 0166, Charlotte, North Carolina 28288-0166, Attention: Real Estate Capital Markets, Commercial Real Estate Finance ("Lender"), and ARUBA HOTEL ENTERPRISES N.V., an Aruban limited liability company having an address c/o Belfonti Capital Partners, 31 West 52nd Street, Suite 1770, New York, New York 10019 ("Borrower").

All capitalized terms used herein shall have the respective meanings set forth in Article I hereof.

### W I T N E S S E T H:

WHEREAS, Borrower desires to obtain the Loan from Lender; and

WHEREAS, Lender is willing to make the Loan to Borrower subject to and in accordance with the conditions and terms of this Agreement and the other Loan Documents.

NOW, THEREFORE, in consideration of the covenants set forth in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree, represent and warrant as follows:

## I.    DEFINITIONS; PRINCIPLES OF CONSTRUCTION

### Section 1.1    Definitions.

For all purposes of this Agreement, except as otherwise expressly provided:

"Affiliate" shall mean, as to any Person, any other Person that, directly or indirectly, is in control of, is controlled by or is under common ownership or control with such Person or is a director or officer of such Person or of an Affiliate of such Person. As used in this definition, the term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management, policies or activities of a Person, whether through ownership of voting securities, by contract or otherwise.

"Agent" shall mean Wachovia Bank, National Association and any successor Eligible Institution thereto.

"AHE Holding" shall mean AHE Holding N.V., the one hundred percent (100%) owner of Borrower.

"Alteration Threshold" shall mean Five Million and No/100 Dollars ($5,000,000.00).

such prepayment date), the Exit Fee, a prepayment fee equal to one percent (1%) of the amount of principal being repaid and a Spread Maintenance Premium calculated with respect to the amount of principal being repaid and Breakage Costs.

**2.3.4 Late Payment Charge.** If any principal, interest, Exit Fee, Asset Management Fee or any other sum due under the Loan Documents, other than the payment of principal due on the Maturity Date, is not paid by Borrower on the date on which it is due, Borrower shall pay to Lender upon demand an amount equal to the lesser of five percent (5%) of such unpaid sum or the maximum amount permitted by applicable law in order to defray the expense incurred by Lender in handling and processing such delinquent payment and to compensate Lender for the loss of the use of such delinquent payment. Any such amount shall be secured by the Mortgage and the other Loan Documents.

2.3.5 **Method and Place of Payment.** (a) Except as otherwise specifically provided herein, all payments and prepayments under this Agreement and the Note shall be made to Lender not later than 1:00 P.M., New York City time, on the date when due and shall be made in lawful money of the United States of America in immediately available funds at Lender's office, and any funds received by Lender after such time shall, for all purposes hereof, be deemed to have been paid on the next succeeding Business Day.

(b)     Whenever any payment to be made hereunder or under any other Loan Document shall be stated to be due on a day which is not a Business Day, the due date thereof shall be the Business Day immediately preceding such day.

(c)     All payments required to be made by Borrower hereunder or under the Note or the other Loan Documents shall be made irrespective of, and without deduction for, any setoff, claim or counterclaim and shall be made irrespective of any defense thereto.

Section 2.4    Prepayments.

2.4.1 **Voluntary Prepayments.**     Except as otherwise provided herein, Borrower shall not have the right to prepay the Loan in whole or in part. On and after the Permitted Prepayment Date, and provided no Event of Default has occurred, Borrower may, at its option, prepay the Debt in whole but not in part, provided, the following conditions are satisfied:

(a)     Borrower shall provide prior written notice to Lender specifying the date upon which the prepayment is to be made (the "Prepayment Date"), which notice shall be delivered to Lender not less than thirty (30) days prior to such Prepayment Date (or such shorter period of time as may be permitted by Lender in its sole discretion) and which notice shall be irrevocable;

(b)     Borrower shall pay to Lender simultaneously with such prepayment the Prepayment Fee, if any, the Exit Fee and all other amounts due to Lender under the Loan Documents;

(c)     no prepayment shall be permitted on any date during the period commencing on the first calendar day immediately following a Monthly Payment Date to, but

execution, delivery, recordation, filing, registration, perfection or enforcement of any of the Loan Documents, including, without limitation, the Mortgage, the Security Documents (Aruba) and the Assignment Documents, have been paid or are being paid simultaneously herewith. All taxes and governmental assessments due and owing in respect of the Property have been paid.

### 3.1.24 Single Purpose.

Borrower hereby represents and warrants to, and covenants with, Lender that as of the date hereof (or, where specifically noted below, in each case to the best of Borrower's knowledge, since the date of formation of Borrower) and until such time as the Debt shall be paid in full:

(a)    Borrower has never owned, does not own and will not own any asset or property other than (i) the Property, and (ii) incidental personal property necessary for the ownership or operation of the Property.

(b)    Borrower has not engaged and is not engaged (and will not engage) in any business other than the ownership, management and operation of the Property and the ownership of fifty percent (50%) of the common shares in the Restaurant Operator and Spa Operator and Borrower will conduct and operate its business as presently conducted and operated.

(c)    Borrower has not entered into or, except for capital contributions and capital distributions, will not enter into any contract or agreement with any Affiliate of Borrower, any constituent party of Borrower or any Affiliate of any constituent party, except upon terms and conditions that were (or are) intrinsically fair and substantially similar to those that would be available on an arm's-length basis with third parties other than any such party.

(d)    Borrower has not incurred and will not incur any Indebtedness other than (i) the Debt, (ii) unsecured trade payables and operational debt not evidenced by a note and (iii) Indebtedness incurred in the financing of equipment and other personal property used on the Property provided that any Indebtedness incurred pursuant to subclauses (ii) and (iii) shall be (x) not in excess of $500,000.00 in the aggregate, (y) paid not more than sixty (60) (days) incurred as to the matters in subclause (ii) above and not more than sixty (60) days from the date due as to the matters in subclause (iii) above and (z) incurred in the ordinary course of business. No Indebtedness other than the Debt may be secured (subordinate or pari passu) by the Property.

(e)    Borrower has not made and will not make a loan or advance to any third party (including any Affiliate or constituent party), other than the Inter-Company Loan, and has not and shall not acquire obligations or securities of its Affiliates, and has not and shall not form, hold or acquire any subsidiaries.

(f)    Borrower will remain solvent; and Borrower has paid and will pay its debts and liabilities (including, as applicable, shared personnel and overhead expenses) from its assets as the same shall become due.

(g)    Borrower has done or caused to be done and will do all things necessary to observe organizational formalities and preserve its existence, and Borrower will not, nor will Borrower permit any constituent party to amend, modify or otherwise change the articles of incorporation and bylaws or other organizational documents of Borrower or such constituent

(within the meaning of <u>Section 11(f)</u> of the Securities Act) shall be entitled to contribution from any Person who was not guilty of such fraudulent misrepresentation. In determining the amount of contribution to which the respective parties are entitled, the following factors shall be considered: (i) Wachovia's and Borrower's relative knowledge and access to information concerning the matter with respect to which the claim was asserted; (ii) the opportunity to correct and prevent any statement or omission; and (iii) any other equitable considerations appropriate in the circumstances. Lender and Borrower hereby agree that it would not be equitable if the amount of such contribution were determined by pro rata or per capita allocation.

(f)     The liabilities and obligations of Borrower and Lender under this <u>Section 9.2</u> shall survive the termination of this Agreement and the satisfaction and discharge of the Debt.

### Section 9.3    Asset Management.

Borrower understands that Lender may retain an asset manager to manage the Loan, review the operations of Borrower or the Managers and to confirm the compliance, by the Managers, of their obligations under the Management Agreements. Such asset management will be at the expense of Borrower in an amount not to exceed a maximum cost of $200,000 per year (the "<u>Asset Management Fee</u>").

### X.    DEFAULTS

### Section 10.1   Event of Default.

(a)     Each of the following events shall constitute an event of default hereunder (an "<u>Event of Default</u>"):

(i)     if (A) any monthly installment of principal and/or interest due under the Note or the payment due on the Maturity Date is not paid when due or (B) any other portion of the Debt is not paid when due and such non-payment continues for five (5) days following notice to Borrower that the same is due and payable;

(ii)     if any of the Section 2.5 Taxes are not paid when due; or if any Taxes or Other Charges are not paid when due unless any such amount is not paid when due solely as a result of the failure of Lender to cause such amount to be paid out of the Tax Reserve Account provided that sufficient amounts have been deposited therein for the payment of such amounts pursuant to this Agreement and no other Event of Default then exists;

(iii)     if the Policies are not kept in full force and effect, unless any such amount is not paid when due solely as a result of the failure of Lender to cause such amount to be paid out of the Insurance Reserve Account provided that sufficient amounts have been deposited therein for the payment of such amounts pursuant to this Agreement and no other Event of Default then exists;

(iv)     if the Policies are not kept in full force and effect;

(v)      if Borrower, AHE Holding or BCP Sunset, as applicable, breaches or permits or suffers a breach of any provision of the Mortgage, any of the Security Document (Aruba) or any of the Assignment Documents (in each case beyond any notice and/or grace period (if applicable) provided under such documents, with respect to any such breach);

(vi)      if Guarantor breaches or permits or suffers a breach of the Guaranty; or if BCP Sunset or AHE Holding breaches or permits or suffers a breach of the Guaranty of Deed of Pledge (in each case beyond any notice and/or grace period (if applicable) provided under such documents, with respect to any such breach);

(vii)      if any representation or warranty made by Borrower or Guarantor (or AHE Holding or BCP Sunset, as applicable) herein or in any other Loan Document, or in any report, certificate, financial statement or other instrument, agreement or document furnished to Lender shall have been false or misleading in any material respect as of the date the representation or warranty was made;

(viii)      if Borrower, any Guarantor, any SPC Party or Guarantor shall make an assignment for the benefit of creditors;

(ix)      if a receiver, liquidator or trustee shall be appointed for Borrower, any SPC Party or Guarantor, or if Borrower, any SPC Party or Guarantor shall be adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by or against, consented to, or acquiesced in by, Borrower, any SPC Party or Guarantor, or if any proceeding for the dissolution or liquidation of Borrower, any SPC Party or Guarantor shall be instituted; provided, however, if such appointment, adjudication, petition or proceeding was involuntary and not consented to by Borrower, any SPC Party or Guarantor, upon the same not being discharged, stayed or dismissed within thirty (30) days;

(x)      if Borrower, Guarantor or any SPC Party attempts to assign its rights under this Agreement or any of the other Loan Documents or any interest herein or therein in contravention of the Loan Documents;

(xi)      if any of the assumptions contained in the Insolvency Opinion, or in any other non-consolidation opinion delivered to Lender in connection with the Loan, or in any other non-consolidation delivered subsequent to the closing of the Loan, is or shall become untrue in any material respect;

(xii)      if Borrower or any SPC Party breaches any representation, warranty or covenant contained in Section 3.1.24 hereof;

(xiii)      if Borrower fails to comply with the covenants as to Prescribed Laws set forth in Section 4.1.1;

(xiv)      if Borrower shall default in the performance of its obligations under the Cash Management Agreement, the Lockbox Agreement (Caribbean Mercantile Bank)

and/or the Lockbox Agreement (Wachovia) (in each case beyond any notice and/or grace period (if applicable) provided under such documents, with respect to any such breach);

(xv)    if (A) Borrower shall fail in the payment of any rent, additional rent or other charge mentioned in or made payable by the Ground Lease as and when such rent or other charge is payable (unless waived in writing by the landlord under the Ground Lease), (B) there shall occur any default by Borrower, as tenant under the Ground Lease, in the observance or performance of any term, covenant or condition of the Ground Lease on the part of Borrower, to be observed or performed (unless waived in writing by the landlord under the Ground Lease), (C) if any one or more of the events referred to in the Ground Lease shall occur which would cause the Ground Lease to terminate without notice or action by the landlord under the Ground Lease or which would entitle the landlord to terminate the Ground Lease and the term thereof by giving notice to Borrower, as tenant thereunder (unless waived in writing by the landlord under the Ground Lease), (D) if the leasehold estate created by the Ground Lease shall be surrendered or the Ground Lease shall be terminated or canceled for any reason or under any circumstances whatsoever or (E) if any of the terms, covenants or conditions of the Ground Lease shall in any manner be modified, changed, supplemented, altered, or amended without the consent of Lender except as otherwise permitted by this Agreement;

(xvi)    if Borrower is in default under any of the Management Agreements or any of the Starwood Agreements beyond any applicable cure period set forth therein which would give the Manager thereunder or Starwood, as applicable, the right to terminate such Management Agreement or Starwood Agreement;

(xvii)    if Borrower shall fail to perform the work described in the PIP in accordance with the provisions hereof and of the Westin Management Agreements;

(xviii)    if Borrower shall continue to be in Default under any of the other terms, covenants or conditions of this Agreement not specified in subsections (i) to (xvii) above, for ten (10) days after notice to Borrower from Lender, in the case of any Default which can be cured by the payment of a sum of money, or for thirty (30) days after notice from Lender in the case of any other Default; provided, however, that if such non-monetary Default is susceptible of cure but cannot reasonably be cured within such 30-day period and provided further that Borrower shall have commenced to cure such Default within such 30-day period and thereafter diligently and expeditiously proceeds to cure the same, such 30-day period shall be extended for such time as is reasonably necessary for Borrower in the exercise of due diligence to cure such Default, such additional period not to exceed sixty (60) days; or

(xix)    if there shall be default under any of the other Loan Documents beyond any applicable cure periods contained in such Loan Documents, whether as to Borrower, any Affiliate of Borrower or the Property, or if any other such event shall occur or condition shall exist, if the effect of such event or condition is to accelerate the maturity of any portion of the Debt or to permit Lender to accelerate the maturity of all or any portion of the Debt.

(b)    Upon the occurrence of an Event of Default (other than an Event of Default described in clause (vii), (viii) or (ix) above) and at any time thereafter Lender may, in addition to any other rights or remedies available to it pursuant to this Agreement and the other Loan Documents or at law or in equity, take such action, without notice or demand, that Lender deems advisable to protect and enforce its rights against Borrower or any other Person and in and to the Property, including, without limitation, declaring the Debt to be immediately due and payable, and Lender may enforce or avail itself of any or all rights or remedies provided in the Loan Documents against Borrower or any other Person and the Property, including, without limitation, all rights or remedies available at law or in equity; and upon any Event of Default described in clauses (vi), (vii) or (viii) above, the Debt and all other obligations of Borrower hereunder and under the other Loan Documents shall immediately and automatically become due and payable, without notice or demand, and Borrower hereby expressly waives any such notice or demand, anything contained herein or in any other Loan Document to the contrary notwithstanding.

Section 10.2    Remedies.

(a)    Upon the occurrence of an Event of Default, all or any one or more of the rights, powers, privileges and other remedies available to Lender against Borrower or any other Person under this Agreement or any of the other Loan Documents executed and delivered by, or applicable to, Borrower or at law or in equity may be exercised by Lender at any time and from time to time, whether or not all or any of the Debt shall be declared due and payable, and whether or not Lender shall have commenced any foreclosure proceeding or other action for the enforcement of its rights and remedies under any of the Loan Documents with respect to the Property. Any such actions taken by Lender shall be cumulative and concurrent and may be pursued independently, singly, successively, together or otherwise, at such time and in such order as Lender may determine in its sole discretion, to the fullest extent permitted by law, without impairing or otherwise affecting the other rights and remedies of Lender permitted by law, equity or contract or as set forth herein or in the other Loan Documents. Without limiting the generality of the foregoing, if an Event of Default is continuing (i) Lender is not subject to any "one action" or "election of remedies" law or rule, and (ii) all liens and other rights, remedies or privileges provided to Lender shall remain in full force and effect until Lender has exhausted all of its remedies against the Property and the Mortgage has been foreclosed, sold and/or otherwise realized upon in satisfaction of the Debt or the Debt has been paid in full.

(b)    Lender shall have the right from time to time to partially foreclose the Mortgage in any manner and for any amounts secured by the Mortgage then due and payable as determined by Lender in its sole discretion including, without limitation, the following circumstances:  (i) in the event Borrower defaults beyond any applicable grace period in the payment of one or more scheduled payments of principal and interest, Lender may foreclose the Mortgage to recover such delinquent payments, or (ii) in the event Lender elects to accelerate less than the entire outstanding principal balance of the Loan, Lender may foreclose the Mortgage to recover so much of the principal balance of the Loan as Lender may accelerate and such other sums secured by the Mortgage as Lender may elect. Notwithstanding one or more partial foreclosures, the Property shall remain subject to the Mortgage to secure payment of sums secured by the Mortgage and not previously recovered.

(c)     Lender shall have the right from time to time to sever the Note and the other Loan Documents into one or more separate notes, mortgages and other security documents (the "Severed Loan Documents") in such denominations as Lender shall determine in its sole discretion for purposes of evidencing and enforcing its rights and remedies provided hereunder. Borrower shall execute and deliver to Lender from time to time, promptly after the request of Lender, a severance agreement and such other documents as Lender shall request in order to effect the severance described in the preceding sentence, all in form and substance reasonably satisfactory to Lender. Borrower hereby absolutely and irrevocably appoints Lender as its true and lawful attorney, coupled with an interest, in its name and stead to make and execute all documents necessary or desirable to effect the aforesaid severance, Borrower ratifying all that its said attorney shall do by virtue thereof; provided, however, Lender shall not make or execute any such documents under such power until three (3) days after notice has been given to Borrower by Lender of Lender's intent to exercise its rights under such power. Except as may be required in connection with a Securitization pursuant to Section 9.1 hereof, (i) Borrower shall not be obligated to pay any costs or expenses incurred in connection with the preparation, execution, recording or filing of the Severed Loan Documents, and (ii) the Severed Loan Documents shall not contain any representations, warranties or covenants not contained in the Loan Documents and any such representations and warranties contained in the Severed Loan Documents will be given by Borrower only as of the Closing Date.

(d)     Any amounts recovered from the Property or any other collateral for the Loan after an Event of Default may be applied by Lender toward the payment of any interest and/or principal of the Components and/or any other amounts due under the Loan Documents in such order, priority and proportions as Lender in its sole discretion shall determine.

Section 10.3   Right to Cure Defaults.

Lender may, but without any obligation to do so and without notice to or demand on Borrower and without releasing Borrower from any obligation hereunder or being deemed to have cured any Event of Default hereunder, make, do or perform any obligation of Borrower hereunder in such manner and to such extent as Lender may deem necessary. Lender is authorized to enter upon the Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Property for such purposes, and the cost and expense thereof (including reasonable attorneys' fees to the extent permitted by law), with interest as provided in this Section 10.3, shall constitute a portion of the Debt and shall be due and payable to Lender upon demand. All such costs and expenses incurred by Lender in remedying such Event of Default or such failed payment or act or in appearing in, defending, or bringing any action or proceeding shall bear interest at the Default Rate, for the period after such cost or expense was incurred into the date of payment to Lender. All such costs and expenses incurred by Lender together with interest thereon calculated at the Default Rate shall be deemed to constitute a portion of the Debt and be secured by the liens, claims and security interests provided to Lender under the Loan Documents and shall be immediately due and payable upon demand by Lender therefore.

## Section 10.4  Remedies Cumulative.

The rights, powers and remedies of Lender under this Agreement shall be cumulative and not exclusive of any other right, power or remedy which Lender may have against Borrower or any other Person pursuant to this Agreement or the other Loan Documents, or existing at law or in equity or otherwise. Lender's rights, powers and remedies may be pursued singly, concurrently or otherwise, at such time and in such order as Lender may determine in Lender's sole discretion. No delay or omission to exercise any remedy, right or power accruing upon an Event of Default shall impair any such remedy, right or power or shall be construed as a waiver thereof, but any such remedy, right or power may be exercised from time to time and as often as may be deemed expedient. A waiver of one Default or Event of Default with respect to Borrower or any other Person shall not be construed to be a waiver of any subsequent Default or Event of Default by Borrower or any other Person or to impair any remedy, right or power consequent thereon.

## XI.    MISCELLANEOUS

### Section 11.1  Successors and Assigns.

All covenants, promises and agreements in this Agreement, by or on behalf of Borrower, shall inure to the benefit of the legal representatives, successors and assigns of Lender. Notwithstanding any provision hereof to the contrary, provided no Event of Default shall have occurred and be continuing, Lender agrees that it shall not assign the Loan or any of the Loan Documents.

### Section 11.2  Lender's Discretion.

Whenever pursuant to this Agreement Lender exercises any right given to it to approve or disapprove, or any arrangement or term is to be satisfactory to Lender, the decision of Lender to approve or disapprove or to decide whether arrangements or terms are satisfactory or not satisfactory shall (except as is otherwise specifically herein provided) be in the sole discretion of Lender and shall be final and conclusive. Prior to a Securitization, whenever pursuant to this Agreement the Rating Agencies are given any right to approve or disapprove, or any arrangement or term is to be satisfactory to the Rating Agencies, the decision of Lender to approve or disapprove or to decide whether arrangements or terms are satisfactory or not satisfactory, based upon Lender's determination of Rating Agency criteria, shall be substituted therefore.

### Section 11.3  Governing Law.

(A)    THIS AGREEMENT WAS NEGOTIATED IN THE STATE OF NEW YORK, THE LOAN WAS MADE BY LENDER AND ACCEPTED BY BORROWER IN THE STATE OF NEW YORK, AND THE PROCEEDS OF THE LOAN DELIVERED PURSUANT HERETO WERE DISBURSED FROM THE STATE OF NEW YORK, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING, WITHOUT LIMITING

THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY, PERFORMANCE AND ENFORCEABILITY (OTHER THAN, WITH RESPECT TO THE SECURITY DOCUMENTS (ARUBA), MATTERS RELATING TO THE CREATION, PERFECTION AND ENFORCEMENT OF THE LIENS AND SECURITY INTERESTS CREATED PURSUANT THERETO, AS DESCRIBED IN PARAGRAPH (B) BELOW), THIS AGREEMENT, THE NOTE AND THE OTHER LOAN DOCUMENTS AND THE OBLIGATIONS ARISING HEREUNDER AND THEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICT OF LAWS) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA.  TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER AND LENDER HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVE ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS AGREEMENT, THE NOTE AND THE OTHER LOAN DOCUMENTS (OTHER THAN, WITH RESPECT TO THE SECURITY DOCUMENTS (ARUBA), ANY MATTER RELATING TO THE CREATION, PERFECTION AND ENFORCEMENT OF THE LIENS AND SECURITY INTERESTS CREATED PURSUANT THERETO, WHICH SHALL BE GOVERNED BY THE LAWS OF ARUBA, AS DESCRIBED IN PARAGRAPH (B) BELOW), AND THIS AGREEMENT, THE NOTE AND THE OTHER LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK PURSUANT TO SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW.

(B)     BORROWER AND LENDER HEREBY UNDERSTAND AND AGREE THAT THE CREATION, PERFECTION, AND ENFORCEMENT OF THE LIENS AND SECURITY INTERESTS CREATED PURSUANT TO THE SECURITY DOCUMENTS (ARUBA) (AND THE PROVISIONS OF THE SECURITY DOCUMENTS (ARUBA) RELATING TO SUCH MATTERS) SHALL BE GOVERNED BY THE LAWS OF ARUBA.

(C)     BORROWER AGREES THAT LENDER MAY INSTITUTE ANY LEGAL SUIT, ACTION OR PROCEEDING (AND ENFORCE ANY JUDGMENT) AGAINST BORROWER ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE NOTE OR THE OTHER LOAN DOCUMENTS EITHER IN THE COURTS OF ARUBA OR IN ANY FEDERAL OR STATE COURT IN THE CITY OF NEW YORK, COUNTY OF NEW YORK, PURSUANT TO SECTION 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, AS LENDER SHALL ELECT. NOTHING HEREIN SHALL, HOWEVER, PRECLUDE OR PREVENT LENDER FROM BRINGING ACTIONS AGAINST ANY PARTY IN ANY OTHER JURISDICTION AS MAY BE NECESSARY TO ENFORCE THIS AGREEMENT OR REALIZE UPON ANY SECURITY FOR THE LOAN. BORROWER HEREBY WAIVES ANY OBJECTION IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND BORROWER HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUCH SUIT, ACTION OR PROCEEDING.     IN ADDITION, BORROWER AGREES THAT, IF IT INSTITUTES ANY LEGAL SUIT, ACTION OR

PROCEEDING AGAINST LENDER ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE NOTE OR THE OTHER LOAN DOCUMENTS, THAT IT SHALL INSTITUTE ANY SUCH SUIT IN FEDERAL OR STATE COURT IN THE CITY OF NEW YORK, COUNTY OF NEW YORK, AND HEREBY WAIVES ANY OBJECTION IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING.

      (D)   BORROWER HEREBY DESIGNATES AND APPOINTS:

    Corporation Service Company
    1133 Avenue of the Americas, Suite 3100
    New York, New York 10036

AS ITS AUTHORIZED AGENT TO ACCEPT AND ACKNOWLEDGE ON ITS BEHALF SERVICE OF ANY AND ALL PROCESS WHICH MAY BE SERVED IN ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY FEDERAL OR STATE COURT IN NEW YORK, NEW YORK, AND AGREES THAT SERVICE OF PROCESS UPON SAID AGENT AT SAID ADDRESS AND WRITTEN NOTICE OF SAID SERVICE MAILED OR DELIVERED TO BORROWER IN THE MANNER PROVIDED HEREIN SHALL BE DEEMED IN EVERY RESPECT EFFECTIVE SERVICE OF PROCESS UPON BORROWER, IN ANY SUCH SUIT, ACTION OR PROCEEDING IN THE STATE OF NEW YORK. BORROWER (I) SHALL GIVE PROMPT NOTICE TO LENDER OF ANY CHANGED ADDRESS OF ITS AUTHORIZED AGENT HEREUNDER, (II) MAY AT ANY TIME AND FROM TIME TO TIME DESIGNATE A SUBSTITUTE AUTHORIZED AGENT WITH AN OFFICE IN NEW YORK, NEW YORK (WHICH SUBSTITUTE AGENT AND OFFICE SHALL BE DESIGNATED AS THE PERSON AND ADDRESS FOR SERVICE OF PROCESS), AND (III) SHALL PROMPTLY DESIGNATE SUCH A SUBSTITUTE IF ITS AUTHORIZED AGENT CEASES TO HAVE AN OFFICE IN NEW YORK, NEW YORK OR IS DISSOLVED WITHOUT LEAVING A SUCCESSOR.

### Section 11.4   Modification, Waiver in Writing.

No modification, amendment, extension, discharge, termination or waiver of any provision of this Agreement or of any other Loan Document, nor consent to any departure by Borrower therefrom, shall in any event be effective unless the same shall be in a writing signed by the party against whom enforcement is sought, and then such waiver or consent shall be effective only in the specific instance, and for the purpose, for which given. Except as otherwise expressly provided herein, no notice to, or demand on Borrower shall entitle Borrower to any other or future notice or demand in the same, similar or other circumstances.

### Section 11.5   Delay Not a Waiver.

Neither any failure nor any delay on the part of Lender in insisting upon strict performance of any term, condition, covenant or agreement, or exercising any right, power, remedy or privilege hereunder, or under any other Loan Document, shall operate as or constitute a waiver thereof, nor shall a single or partial exercise thereof preclude any other future exercise,