# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------- X
PETRA FUND REIT CORP.,                :    Index No. 07/602487
                                      :
                    Plaintiff,        :    Hon. Richard B. Lowe
                                      :
        v.                            :    **AFFIDAVIT OF**
                                      :    **HENDRIK S. CROES**
MICHAEL BELFONTI, RICHARD BELFONTI,   :
BELFONTI CAPITAL PARTNERS, LLC, BCP   :
FLORIN, LLC and DIAMOND GAMING        :
CORPORATION, N.V.,                    :
                                      :
                    Defendants.       :
------------------------------------- X

<u>I, HENDRIK S. CROES, being duly sworn, depose and say as follows:</u>

1. I am a member of Croes Wever Tchong, a law firm located in Aruba. I received an LL.M. from the University of Leiden, in The Netherlands, in 1967, after which I was admitted to practice before the Bar of the Netherlands Antilles and Aruba. Throughout my career I have served in numerous governmental positions, including as the Minister of Justice of Aruba, the Minister of Public Health of the Netherlands Antilles, the Minister of Preparing the New Constitutional Status of Aruba, the Minister of Justice & Constitutional Affairs of the Netherlands Antilles and the Minister of Education & Constitutional Affairs of the Netherlands Antilles. I have also served as Deputy Prime Minister of the Netherlands Antilles, and I was a member of the Kingdom Committee to advise on future relations with the European Union.

2. I am counsel of record for Aruba Hotel Enterprises N.V. ("AHE") in two proceedings in Aruba between AHE and Diamond Gaming Corporation, N.V. ("Diamond Gaming"). I have reviewed a copy of an Affidavit signed by Diamond Gaming's counsel in these two cases (collectively, the "Aruban Litigation"), Johan P. Sjiem Fat L.L.M., which I understand was submitted by certain of the defendants in the above-captioned action (the "New York Litigation") in support of their motion to block all discovery in the New York

Litigation pending the conclusion of the Aruban Litigation. I believe that Mr. Sjiem Fat's Affidavit contains certain misstatements, which I will address herein.

3. The Aruban Litigation concerns the validity of an alleged amendment to an agreement between AHE and Diamond Gaming (the "Casino Lease") concerning Diamond Gaming's operation of the casino located in the Westin Aruba Resort and Hotel. AHE and Diamond Gaming are the only parties to the Aruban Litigation and the relief sought by the parties is narrow in scope.

4. The Aruban Litigation began when Diamond Gaming filed an action in the Court of First Instance in Aruba on May 25, 2007. In that proceeding (the "Main Proceeding"), Diamond Gaming seeks a judicial declaration that the alleged amendment to the Casino Lease is valid and binding on AHE.

5. On July 23, 2007, AHE filed a summary proceeding against Diamond Gaming (the "Short Proceeding") in the Court of First Instance in Aruba. In the Short Proceeding AHE sought to have Diamond Gaming summarily removed as the operator of the casino. The evidence in the Short Proceeding was submitted through written submissions. The submission of evidence was completed on August 21, 2007 and the court heard argument from counsel on August 22, 2007. There was no live testimony in the Short Proceeding and, although written statements of certain witnesses were submitted, the statements were not made under oath. There was no opportunity to cross-examine any of the witnesses -- including Michael Belfonti, a defendant in the New York Litigation -- for whom Diamond Gaming submitted witness statements.

6. On September 5, 2007, the Court of First Instance issued a decision denying AHE's requests for Relief in the Short Proceeding. The decision relied heavily on the expert report of Jeff Litvak, which was submitted by Diamond Gaming, pursuant to the applicable procedural rules, the day before the August 22 oral argument was held. Because of this

timing, AHE did not have an opportunity to submit its own expert report in response to the Litvak report.

7. The Short Proceeding decision was preliminary in nature. The judge in the Main Proceeding, who is not the same as the judge who rendered the decision in the Short Proceeding, is free to reach a different result after weighing the evidence presented and to be presented in the Main Proceeding.

8. On August 29, 2007, AHE filed its statement of defense and counterclaim in the Main Proceeding. In that submission AHE requested (a) a judicial declaration that the alleged amendment to the Casino Lease is not valid or binding on AHE, (b) damages from Diamond Gaming for amounts owed by Diamond Gaming to AHE under the Casino Lease and (c) an order requiring Diamond Gaming to return to AHE certain files that AHE alleges Diamond Gaming stole from AHE in April 2007. AHE also requested that the court hear the Main Proceeding on an expedited basis, but the court rejected that request.

9. In his Affidavit, Mr. Sjiem Fat claims that he subsequently "came to a verbal agreement with [me] to proceed with briefing on an expedited schedule in the" Main Proceeding. *See* Sjiem Fat Affidavit, ¶ 7. This is not so. Although Mr. Sjiem Fat did propose an expedited briefing schedule and I did initially express some interest in it, I never agreed to such a schedule. Indeed, I was somewhat surprised by the proposal, particularly given the known fact that Mr. Sjiem Fat is, in my experience with him, not prone to offering compromises. My concerns regarding Mr. Sjiem Fat's motives, and those of his client, intensified when he sent me two e-mails (which are attached as Exhibits A and B to his Affidavit) urging that I accept the proposal for expedited briefing. Again, in my experience with Mr. Sjiem Fat this type of seemingly cooperative spirit was very unusual and it intensified my concern that he and his client likely had an undisclosed ulterior motive. Ultimately, AHE and I determined that AHE should not accept Mr. Sjiem Fat's proposal and I informed him of this.

10. In his Affidavit (at ¶ 2), Mr. Sjiem Fat states that he expects "a final decision on the merits from the Court of First Instance will issue within the next few months." I do not believe this is at all likely.

11. Diamond Gaming filed its reply papers in the Main Proceeding on September 26, 2007. Under the applicable procedures, AHE has until October 24, 2007 to file its next submission but will be granted an extension upon request, if needed. Diamond Gaming will then have up to twelve weeks to file a further response. However, beginning in late December, the Aruban court system takes a three-week recess. This three-week hiatus is excluded from Diamond Gaming's twelve-week response time. As such, Diamond Gaming's twelve-week response period is actually fifteen weeks. Under this timeline, then, the Main Proceeding may not be fully briefed until February 2008, or later.

12. After all necessary papers are submitted to the court in the Main Proceeding, either party may request that the case be argued by counsel in court. The parties must then wait an additional four to six weeks for the court to review the papers and prepare for the arguments of counsel. This means that the court may not hear arguments in the Main Proceeding until mid-March, 2008, or later. In practice, the court is unlikely to decide the case until several months or more following the argument.

13. Further, the parties have vigorously litigated the issues thus far and an appeal by one of the parties following a decision in the Main Proceeding seems likely.

14. AHE has filed an appeal of the September 5 decision in the Short Proceeding. After AHE files its appeal arguments this week, Diamond Gaming will have three weeks to file responsive papers. After Diamond Gaming files its papers, all of the appeal papers will be sent to the Common Appeals Court of the Netherlands Antilles and Aruba, located in Curaçao, where a hearing will be scheduled on the Aruba agenda of that Court when that Appeals Court holds a session in Aruba. That hearing could occur at the earliest date around

mid-January 2008, and a judgment could be issued as late as February or March 2008 (or possibly even later).

15. I am familiar with the American discovery process that the defendants in the New York Litigation are trying to block. There are no similar discovery procedures in Aruba. Parties are not required to exchange any documents until one or a few days before a court argument and, even then, are only required to produce documents they seek to introduce (as opposed to documents from their internal files that might be damaging to their case). Likewise, there is no procedure for depositions or any other form of pre-trial examination of witnesses under oath, comparable to the American discovery process.

16. Similarly, as was the case in the Short Proceeding, the parties may submit written witness statements without any requirement that that the statements be made under oath. The court in the Main Proceeding may reach a final decision without requiring any sworn or live testimony or any cross-examination.

_____
HENDRIK S. CROES

Subscribed and sworn before me this
16th day of October, 2007.

_____
Notary Public
Dr. Faride Eloisa Elixie Tjon Ajong,
civil law notary in Aruba.