UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
ARUBA HOTEL ENTERPRISES N.V.,          :

    Plaintiff,                       :

  -against-                             :  Civil Action No.:07 Civ. 7564 (PAC)

MICHAEL BELFONTI, BELFONTI             :  **ORAL ARGUMENT REQUESTED**
HOLDINGS LLC, and BELFONTI CAPITAL
PARTNERS, LLC,                         :

    Defendants.                     :

                                                                  :
------------------------------------- X

**DEFENDANTS MICHAEL BELFONTI, BELFONTI HOLDINGS LLC AND BELFONTI CAPITAL PARTNERS LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

For the reasons set forth in Defendants' Memorandum of Law in Support of their Motion to Dismiss the Complaint for Declaratory Judgment ("Complaint") filed by Aruba Hotel Enterprises ("AHE" or "Plaintiff"), we respectfully submit that this Court should dismiss the Complaint for lack of subject matter jurisdiction and/or on grounds of *forum non conveniens*. To address certain arguments raised by AHE in its Opposition to Defendants' Motion to Dismiss the Complaint, we respectfully submit this Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss Plaintiff's Complaint.

**ARGUMENT**

**I.     *AHE's Claim That The Relief Sought By This Action Has Nothing To Do With The Parallel Aruban Action Is Wishful Thinking That Should Be Rejected***

AHE claims in its opposition that its action satisfies the "actual controversy" prong of the Declaratory Judgment Act (the "DJA") and Defendants' suggestion otherwise is "premised on an erroneous mischaracterization of AHE's Complaint." (Plaintiff's Brief in Opposition to

Defendant's Motion to Dismiss ("Pl. Br.") at 8). According to AHE, this action has nothing to do with the fact that it was threatened with (and ultimately served with) *a lawsuit in Aruba* if it did not repay the money that Defendants claimed it owed them. Rather, as AHE tells it, its complaint in this case is premised solely on the facts that: (1) Defendants demanded repayment of the loans; and (2) AHE refused. Thus, AHE argues, the dispute is ripe for decision now, regardless of what is happening in the parallel Aruban litigation involving the same transactions at issue in this case.

AHE's argument that it can avoid dismissal here because it managed to draft its complaint without actually referencing the Aruban litigation is absurd on its face. As an initial matter, AHE seeks a declaratory judgment that the "loans" at issue in this dispute are not loans *or, alternatively, cannot be enforced as loans*. (Compl. ¶¶ 40-41). The reason, of course, that AHE is seeking a ruling that the transactions at issue cannot be "enforced as loans" is that it knew at the time it drafted its Complaint that it was about to be served in Aruba with a lawsuit against it that claimed that the transactions should be enforced as loans.[1] The obvious reality of the situation is that AHE raced to pull the instant lawsuit together in direct response to a letter it received from Defendants' Aruban counsel that threatened them with a lawsuit in Aruba (*and attached a copy of the complaint Defendants were prepared to file*) if AHE refused to pay them back. In this context, it is plain that the relief requested here is exactly what AHE contends it is not: "a request for relief with respect to a hypothetical judgment by an Aruban court." (Pl. Br., p. 9).

---

[1] On August 21, 2007, Defendants' Aruban counsel sent a copy of Defendants' Aruban complaint to AHE's Managing Director and indicated that the complaint would be filed if AHE refused to repay its debt. On August 23, 2007, AHE's Aruban counsel sent a letter back refusing to pay and stating that AHE would vigorously defend itself in the Aruban action Defendants were about to file. On August 24, 2007, Defendants' Aruban counsel filed its lawsuit in Aruba seeking repayment of the loans at issue in this case. That same day, AHE raced to this Court to file the instant action and, several days later, filed a similar action against other defendants (and Michael Belfonti) in federal court in Connecticut. (Memorandum of Law in Support of Defendants' Motion to Dismiss at 2-3)

2

Building off the fiction that its complaint in this case seeks relief completely independent from the Aruban action, AHE attempts to distinguish the cases cited by Defendants that show that declaratory judgment complaints such as this one should be dismissed. For example, *Dow Jones & Co. v. Harrods, Ltd.*, 237 F.Supp.2d 394, 403 (S.D.N.Y. 2002), involved a situation in which: (1) the plaintiff in a declaratory judgment action sought a ruling that would preclude defendants from obtaining relief against it in London; and (2) the court found that it lacked subject matter jurisdiction because, *inter alia*, the judgment that the plaintiff sought to preclude in the London litigation was too speculative to constitute an actual controversy within the meaning of the DJA. In arguing that *Dow Jones* is not fatal to its action here, AHE claims that the relief requested in this case is "in no way speculative or contingent" upon what happens in the Aruban litigation. (Pl. Br., p. 10).

As noted above, however, this is simply not true. Indeed, notwithstanding AHE's claims to the contrary, it is clear that AHE is asking this Court to rule that if the Aruban court issues a judgment requiring AHE to repay these loans, that judgment would be unenforceable under United States law. (*See* Compl. ¶ 41, "if the monies allegedly advanced to AHE are construed as 'loans,' AHE seeks a declaratory judgment that they cannot be enforced as such under applicable law."). AHE's failure to specifically state that "if the [Aruban court] construes these monies . . . as loans" in its pleadings does not change the fact that this is the precise relief it seeks. Indeed, if AHE were to be taken seriously, it would mean that any plaintiff could avoid dismissal on the grounds contemplated by *Dow Jones* and the other cases cited by Defendants simply by re-wording its complaint to omit reference to other pending litigation (*i.e.*, as AHE would have it, the plaintiff in *Dow Jones* could have survived dismissal if it had only sought a ruling that its

3

conduct did not constitute defamation or could not be enforced as defamation under U.S. law).[2] That, of course, is not the law.

### II. AHE Is Attempting To Enlist This Court In Fashioning A Proceeding In Which Only A Part Of The Facts Would Be Examined

Despite the fact that AHE raced to this Court to file its Complaint in this action three days after receiving from Defendants' Aruban counsel a copy of the complaint that Defendants were planning on filing in Aruba if they were not repaid, AHE contends that it is Defendants (and, in particular, Michael Belfonti) that have engaged in improper forum shopping. However, a closer examination of AHE's arguments shows that AHE is hoping that litigating before this Court will make it more difficult for Mr. Belfonti to obtain relevant testimony from Aruban witnesses.

According to AHE, the "motive" behind Defendants' decision to bring their case in Aruba and move to dismiss this action is that Defendants "hope that because of the vastly more limited scope of discovery in Aruba, litigating there will permit [Michael Belfonti] to prolong these fabricated claims about 'loans' and thereby provide him with leverage in the *real* dispute that underlies all of the litigation involving him and his many entities, here and in other courts: his default on a $19.5 million loan by AHE's current owner and his fraudulent efforts to convert the collateral that secured that loan and avoid his obligations under a personal guaranty." (Pl. Br., p. 3). AHE goes on to speculate that Mr. Belfonti is "desperately seeking to avoid the harsh light of [U.S.] discovery" so that Mr. Belfonti "will not have to testify under oath in deposition (and may never have to testify under oath at all)…" *Id.* at 4.

---

[2] The two cases cited by AHE in response to defendants' arguments are wholly inapposite to this action, as neither case cited addresses a declaratory judgment action in the context of a parallel proceeding. *See In re Metiom, Inc.*, 2002 WL 433588, at *3-4 (S.D.N.Y. Feb. 25, 2002) (whether denial of liability under note that was not yet due constituted an "actual controversy"); *Fusco v. Rome Cable Corp.*, 859 F.Supp. 624, 630-31 (N.D.N.Y. 1994) (same).

AHE's speculation that Mr. Belfonti sued AHE in Aruba in order to "avoid [U.S.] discovery" is nonsensical. As a threshold matter, it is reasonable that Mr. Belfonti would petition the Aruban courts given this controversy involves loans made to an Aruban entity to be used solely in connection with its Aruban hotel. In any event, although AHE speculates that Defendants must be trying to hide something from being revealed through U.S. discovery, it never actually bothers to explain what that "something" may be, or how the Aruban judicial process would fail to uncover the same facts. Instead, AHE speculates that if Mr. Belfonti were to be placed under oath in a U.S. proceeding, he would be forced to admit that he "fabricated" these loans allegations. (Pl. Br., pp. 4, 19, 23).[3] However, this speculation is not a reason for this Court to entertain this action. In Aruba, witnesses (including persons in Mr. Belfonti's position) are questioned in open court by a judicial officer, with the benefit of document production that occurs in advance, under the supervision of the Court. (*See* Declaration of Jonathan D. Cogan ("Cogan Decl."), Ex. A at ¶¶ 19-20 and Ex. B at ¶6). There is no basis to conclude, as AHE implies, that an Aruban judge is incapable of asking the questions relevant to a determination of this dispute. Presumably an Aruban judge in an Aruban proceeding would be able to ask the same questions to Mr. Belfonti under oath that could have been asked in a U.S. proceeding, and receive the same answers that Mr. Belfonti would have given in a U.S. deposition.

In addition, AHE's revelation that its primary litigation plan is to attack Mr. Belfonti's credibility exposes this declaratory judgment action for what it is: legal gamesmanship designed to make it more difficult for the Defendants to prove that the transactions at issue are loans. In

---

[3] AHE suggests in its brief that there is something inherently wrong with the entities at issue in this dispute lending money to each other since, at the time of the loans, Mr. Belfonti was affiliated with the entities on both sides of the transaction. Even assuming that Mr. Belfonti was so affiliated, AHE cites absolutely no authority for the proposition that such loans are problematic, and Defendants are not aware of the existence of any such authority.

response to Defendants' argument that Aruba is the best forum to litigate this dispute because, *inter alia,* the dispute requires evidence from AHE's accountants (both internal and outside), employees and other professionals involved with the loans (all of whom are located in Aruba, and are arguably outside the subpoena power of a U.S. court), AHE protests that "it is difficult to see how the testimony of AHE's accountants (or other unidentified employees) could be of any significance whatsoever, particularly when any information they were provided about the alleged transactions presumably came from Belfonti himself (or his then employees acting at his direction)." (Pl. Br., p. 7, n.2). Thus, AHE is arguing, on the one hand, that Mr. Belfonti concocted this loan story only after the fact to gain leverage in other litigation with AHE's current owners ("Petra") and on the other hand, that Aruban witnesses' testimony (which we contend would corroborate Mr. Belfonti's testimony) would not be important and should not be examined. Simply put, AHE is attempting to enlist this Court to fashion a proceeding in which AHE gets to attack Mr. Belfonti's credibility but Mr. Belfonti is hampered from drawing upon other witnesses, such as non-party witnesses located in Aruba, to prove that his characterization of these loans is correct.[4]

It is also clear from AHE's opposition brief that another reason it wants to litigate this dispute in the United States instead of in Aruba is so that it can take discovery on issues unrelated to the loan transactions, *i.e.* issues relating to Petra's ongoing litigation regarding the alleged fraud committed by Mr. Belfonti. (Pl. Br., pp. 4-5). What AHE fails to mention in its description of this alleged fraud is that: (1) a court in Aruba, ***in an action initiated by AHE***, has

---

[4] AHE also claims that Defendants' decision to file suit in Aruba instead of New York (where Defendants are domiciled) reveals that Defendants are the ones that are engaging in improper forum shopping. (Pl. Br., p. 2). In making this claim, AHE simply ignores the fact that Aruba was the only place that Defendants could be sure that all of the relevant parties could litigate the dispute in one place. This Court can rest assured that if Defendants had chosen not to file suit in Aruba, and rather filed a lawsuit in this Court instead, we would be litigating a motion to dismiss by AHE right now for lack of personal jurisdiction.

already made formal findings in a preliminary proceeding rejecting Petra/AHE's claims of impropriety by Mr. Belfonti and others; and (2) in related litigation initiated by Petra against Mr. Belfonti and others, which is currently pending in New York Supreme Court before the Honorable Richard B. Lowe, III, Mr. Belfonti's deposition (as well as certain other discovery) is currently stayed.  (*See* Cogan Decl., ¶ 2 and Ex. C).

Apparently, Petra/AHE now wants to use the discovery process in this case (which has absolutely nothing to do with the alleged fraud that it is litigating against Mr. Belfonti and others in New York State Court and Aruba) as an end-run around the stay in New York State court to go on a fishing expedition to try to uncover evidence that it hopes might help it salvage its case in Aruba (which is set to be resolved in the next several months).  We respectfully submit that such maneuvering is not proper and should not be countenanced by this Court.

## **CONCLUSION**

For the reasons set forth above, in addition to the arguments set forth in Defendants' moving brief, Defendants respectfully request that the Court dismiss the Plaintiff's action for declaratory judgment for lack of subject matter jurisdiction or, in the alternative, on grounds of *forum non conveniens*.

Dated: January 9, 2008
      New York, New York

                        Respectfully submitted,

                        KOBRE & KIM LLP

                        /s/ Michael S. Kim
                        Michael S. Kim (MK-0308)
                        Jonathan D. Cogan (JC-4474)
                        Francisco J. Navarro (FN-1874)

                        800 Third Avenue
                        New York, New York 10022
                        Tel 212.488.1200
                        Fax 212.488.1220

                        *Counsel for Defendants*
                        *Michael Belfonti, Belfonti Holdings LLC,*
                        *and Belfonti Capital Partners, LLC.*