A. H. Stronks
Member of The Netherlands Society of Interpreters and Translators

Judgment no. 720 of September 5, 2007.
Belonging to KG number 2292 of 2007.

## COURT OF FIRST INSTANCE OF ARUBA

### JUDGMENT

in the **SUMMARY PROCEEDINGS** between:

**the corporation ARUBA HOTEL ENTERPRISES N.V.**
domiciled in Aruba,
PLAINTIFF,
to be named hereinafter: AHE,
attorney: the lawyer *mr.* H.S. Croes,

versus:

**the corporation DIAMOND GAMING CORPORATION N.V.**
domiciled in Aruba,
DEFENDANT,
to be named hereinafter: DG,
attorney: the lawyer *mr.* J.P. Sjiem Fat

**1.   THE PROCEEDINGS:**
1.1.   The course of the proceedings appears from:
-   the petition with exhibits filed at the court registry on July 23, 2007;
-   the interlocutory judgment of July 27, 2007 by which a measure of order was given;
-   the notes of the clerk of the proceedings during the session on August 22, 2007;
-   the pleadings with exhibits (sent in advance) of the attorneys of AHE and DG.

1.2   Judgment was scheduled for this day.

**ARUBA:** Seroe Biento 17-A, P.O. Box 1031, Oranjestad. Tel.: (297) 585-8512, Fax: (297) 585-8002
E-mail: strotran@setarnet.aw

**2.     THE ESTABLISHED FACTS**

2.1    AHE is the owner of the building in which the Westin Aruba Resort & Hotel is established. There is also a casino established in this hotel. AHE dispose of the casino license issued for this purpose by the Land Aruba.

2.2    DG has operated the casino as of January 1, 2006. A lease agreement was concluded for this purpose between AHE and DG on November 1, 2005 for a term of one year, in which the rent was fixed at $ 220,000.-- per month, to be paid in advance each time on the first day of the month. Furthermore, the agreement stipulated, among other things:

10. ADMINISTRATION
Tenant shall be in primary control of the administration of the Casino during the entire term of this agreement. In the event he shall not continue to exercise said control regardless of the cause, Lessor may terminate this Agreement.
Landlord may exercise its right to inspect the Tenant at any time and Tenant is obligated to share any and all information and administration regarding the exploitation of the casino with landlord.
The internal control system to be used in the operation of the casino shall be established by Landlord and Tenant shall adhere strictly to such system, and to the applicable Governmental reporting systems.
The entire accounting system for the casino shall be approved by an independent Public Accountant, subject to prior approval by Landlord.
Tenant shall keep such records and books of account as the independent Public Accountant shall from time to time direct, shall preserve such records and books of account as required by law, and shall permit Landlord and/or the independent Public Accountant, or their authorized representatives, to examine and audit such records and books of account at all reasonable times.
[…]
15. SECURITY
Landlord will maintain a camera system throughout the casino at Landlord's expense. This camera system will be separate and independently from Tenant's own camera system.
[…]
21. COMPLIANCE WITH RULES AND REGULATIONS
Tenant shall abide by all rules and regulations of Landlord in respect to the demised premises as may now or hereafter be established by Landlord as well as comply with all ordinances and Laws of Aruba. The initial Rules and Regulations promulgated by Landlord are attached hereto as "Exhibit E" and made a part hereof.
[…]

2.3    On April 21, 2006 AHE and DG agreed on a new rent of $ 275,000.-- per month in an 'Amendment Agreement to the Lease Agreement dated November 1, 2005'. In this agreement the term of the lease agreement was changed into 10 years, and furthermore the possibility of premature termination by either of the contracting parties was introduced with a notice term of 30 days.

2

2.4    As a result of a shares transaction, the beneficial ownership of AHE came into the hands of Michael Belfonti on May 3, 2006. In connection with this shares transaction two loan agreements were concluded, one of $ 230 million by WIBC Aruba N.V. to AHE, and one of $ 19.45 million by Petra Mortgage Capital Corp. LLC to a subsidiary in the group of companies of Belfonti.

2.5    Also on May 3, 2006, the Articles of Incorporation of AHE were amended. In this document it is stated, among other things in as far as of importance in these proceedings:

<u>Article 13-A</u>
As long as any obligation is outstanding under a loan of  TWO HUNDRED AND THIRTY MILLION UNITED STATES DOLLARS [...] between the corporation and the corporation WIBC Aruba N.V., domiciled in Aruba [...] the Board of Managing Directors:
 1. will be obligated to observe the following in the performance of its tasks:
a.    [...]
f.    except for payments of capital  and capital distributions permitted under the provisions of these Articles of Incorporation, effect no transactions with an affiliated company of the corporation, except on commercially reasonable conditions comparable with those that are available for non-affiliated parties in "an at arms length" transaction;
[...]
<u>Article 15</u>
1. Without prejudice to the provisions elsewhere in these Articles of Incorporation, the following resolutions of the Board of Managing Directors concerning shall be subject to the approval of the Board of Supervisory Directors:
a.    [...]
j.    the acquisition, alienation, encumbrance, leasing and leasing out registered properties.

2.6    In December 2006, also the casino came into the beneficial ownership of Belfonti by a shares transaction.

2.7    In a letter written on January 22, 2007 by Nigel Barrow, managing director of DG, to Belfonti, amendments to the lease agreement between AHE and DG are enumerated, on which agreement was reached with Belfonti according to Barrow. In as far as of importance to these proceedings, this enumeration states:

1. Diamond Gaming shall be responsible for providing at its expense all gaming equipment and furnishings, all of which so acquired shall be owned solely by Diamond Gaming. The existing equipment and furnishings [...] may be replaced and disposed of free of any claims of Aruba Hotel Enterprises N.V. and/or to the hotel at any time by Diamond Gaming. The Casino Bar ownership and operations shall be assumed by Diamond Gaming as of February 1, 2007.
2. The current lease term will run until 31 March 2017, and there will be 1 ten year and 2 five year option periods. Aruba Hotel Enterprises N.V. as landlord shall not have the right to cancel the lease except upon default by Diamond Gaming.

3. Commencing in April 2007, monthly rent shall be at the rate of USD $ 60,000.00 per month, increasing to USD $ 70,000.00 per month during the 10 year option and to USD $ 80,000.00 per month during each of the following 5 year option periods [...]

This letter was signed in evidence of approval by Belfonti and Marieta Ras, managing director of AHE.

2.8    During a telephone meeting op April 17, 2007 of the Board of Supervisory Directors of AHE, 2 of the 3 members of this Board agreed to the amendments to the casino lease agreement described in the letter of January 22, 2007.

2.9    In May 2007, Petra Mortgage Capital Corp. LLP exercised its right to levy execution, and acquired control of the AHE shares.

2.10   By letter of July 17, 2007 to DG, AHE invoked the nullity of the resolutions by which it consented earlier to the amendments to the casino lease agreement described in the letter of January 22, 2007. In that same letter AHE terminated the casino lease agreement. Furthermore, in as far as necessary AHE gave DG notice of the extrajudicial dissolution of that agreement by letter of August 6, 2007.

2.11   On August 20, 2007, the Board of Supervisory Directors of AHE resolved not to approve of the amendments to the casino lease agreement described in the letter of January 22, 2007, and DG was informed of this resolution.

2.12   A principal action between DG and AHE is pending before the Court, in which DG claims that the Court rule that the agreement concluded between it and AHE on January 22, 2007 is a perfect agreement, binding on parties, and furthermore to order AHE to fully comply with this agreement.

**3.    THE DISPUTE AND THE EVALUATION THEREOF**
3.1    AHE principally claims briefly stated, after change of its claim, vacation by DG of the casino within twice 24 hours after service of the judgment to be given, and alternatively, to order DG to promptly continue all inspection procedures and instructions of AHE existing prior to April 2006 (meant is: 2007) concerning the operation of the casino, as well as to promptly see to it that AHE gets back the filing cabinets with contents belonging to AHE, removed by DG on April 14, 2007, and presently in the custody of DG, and this on pain of forfeiture of penalties.

3.2    DG put up a reasoned defense.

3.3    DG put first in its defense that, because of its factual and legal complexity, the case is unsuitable for being decided on in summary

proceedings, so that, if only for this reason, the relief sought should be denied pursuant to Article 228, Code of Civil Procedure. The Court does not agree with DG on this point.
It is true that there is question on both sides of an abundant presentation of facts (of their own), within the framework of the facts established above it is not impossible, as will appear hereinafter, to arrive at a provisional judgment. That this judgment is against the party, AHE, which used essential allegations the correctness of which can only be determined by preliminary inquiry because of the reasoned disputation, which summary proceedings as a matter of fact do not lend themselves for, does not alter the above. As regards the presumed legal complexity of the case, this does not mean the judge in summary proceedings is free to withdraw form giving a provisional judgment, however tempting this might be.

3.4     The court puts first, as regards the principal claim, that a claim for eviction is only allowable in summary proceedings if two conditions have been met. There must be question of an urgent interest, <u>and</u> it has to be plausible that the judge in the principal action will (also) award the claim. In this case last-mentioned condition has not been met. Therefore it can be left out of consideration whether the first condition has been met. The Court takes the following ground for this.

3.5     The essence of the case is about the considerable reduction of the rent. As this reduction was effected during a period in which Belfonti had the beneficial control of both contracting parties, the burden of proof whether the criterion formulated in Article 13-A, under f, of the Articles of Incorporation of AHE was complied with, rests with DG in principle. In the Court's provisional judgment DG will succeed in providing this proof in the principal action based on the report of the party expert Litvak, in which it is explained that the rent on market terms in Aruba for casino space comparable with the one of AHE has to be fixed at an amount between $ 40,000.-- and $ 70,0000.-- per month. Also as regards the other lease conditions in force between AHE and DG as of 2007 it appears from the report that there is question of conditions in accordance with the market conditions. It is true that AHE disputed the correctness of the report during the session, but for lack of its own overview and analysis of the market by AHE, this disputation is ignored. For the time being it is not plausible that the market price is at a (much) higher level than the amount of $ 60,000.-- per month fixed by DG in the letter of January 22, 2007 approved on behalf of AHE of April 1, 2007. After having been asked, AHE did not allege either that prospective tenants have addressed it who are willing to pay an amount in respect of casino rent in the amount of some $ 275,000.---. If it were decided in the principal action to ask for an expert opinion at all, then it is too premature to proceed on the assumption at this moment that this will provide an essentially different picture.

5

3.6   To this should be added, not in the last place, the following. DG stated in explanation of the spectacular rent reduction from $ 275,000.-- to $ 60,000.-- per month in a clear and comprehensive manner that the former high rent had been construed for purely fiscal reasons in the situation in which the hotel and the casino were in one hand. DG showed that a considerable fiscal gain can be realized in this way, which is related to the special fiscal status for hotels. According to DG the former Venezuelan owners of AHE managed to transfer in this way $ 15 million in respect of revenue to AHE during the period of 1999-2007. Subsequently, not 35%, but only 6% of profits tax was paid on aforementioned amount.
These allegations of DG were not (seriously) contradicted, so that it is provisionally assumed that till April 1, 2007 the profit of the casino was lowered in an artificial way. That this apparently was not coupled with intentionally making incorrect or incomplete tax returns, nor otherwise by means of a juristic act covered by Article 3:40, Civil Code, does not alter the fact that at the beginning of 2007 AHE (meant is: Belfonti) could and was allowed to use the risk that the tax authorities could "wake up" at certain moment as the reason to agree to a lower, more business-like rent. It cannot be understood that this juristic act in is conflict with the reasonableness and fairness or the standard of due care. On the contrary. The corporate interest of AHE was served by this, taking into account that (high) fiscal penalties can be imposed, and the preservation of its special fiscal status is a relevant interest to AHE.

3.7   The argument of AHE that the juristic act is in violation of the loan agreement(s) concluded with Wachovia and/or Petra, and frustrates the possibilities of recovery of these creditors unlawfully, is ignored. DG rightly pointed out that it is no party to the loan agreements, so that an invocation of nullity, if only for this reason, does not affect it.

3.8   The Court provisionally proceeds on the validity of the internal decision-making in AHE. It is an established fact that between January 22, 2007 and April 17, 2007, Ms. Ras, as managing director, approved of the rent deduction and the other amendments to the lease agreement. She was authorized to do so. For the time being, there is no ground to assume that Ms. Ras' will was brought about unlawfully. What Ras and Belfonti explained each for himself/herself for the purpose these summary proceedings in a written statement is contradictory in essence.
Therefore, witnesses will have to be heard in any possible principal action. That this furnishing of evidence will turn out to be to the detriment of DG is too premature a conclusion. In view of the interview with Ms. Ras in the magazine "Florin", AHE will also run the additional risk that the alleged naïveté and inexperience of this lady - if this would be of any importance at all to a successful invocation of Article 3:44, Civil Code - will not be believed, and that there will not even be need for the furnishing of evidence in that case.

Because it substantially concerned a novation of the (essentials of the) lease agreement, the decision of managing director Ras required the approval of the Board of Supervisory Directors. Provisionally judging, this approval was granted in accordance with the regulations. With this, the agreement between parties became perfect. The subsequent other resolution of the (new) Board of Supervisory Directors cannot change this anymore.

3.9   Based on all the grounds taken above, it is not assumed provisionally that there are rent arrears. Consequently, there is no question of breach of contract as major ground for the termination of the lease agreement, and the eviction order demanded. In addition to this, AHE did enumerate six infringements of the original lease agreement (summons under 35) which in its view also constitute ground for termination/eviction, but they were contradicted in a reasoned manner in the written statement of managing director of DG Barrow drawn up on August 21, 2007.
Now that AHE did not breathe a word on the contents thereof during the session, and opted for it to focus its pleading on the alleged breach of contract, the Court restricts itself to the establishment that in the light of the defense put up against it, the infringements alleged did not become plausible.

3.10   AHE's alternative claim is too vague to be awarded. It has not become (sufficiently) clear what concrete inspection procedures and instructions AHE has in mind. If only in order to avoid execution disputes, this claim has to be dismissed. That DG would have taken possession of filing cabinets of AHE has not become plausible for the time being.
In as far as it concerns inspection and instruction powers of AHE, it is further observed, perhaps unnecessarily, that it seems that, in its explanation of the provisions in the original lease agreement, AHE loses sight of the first sentence of Article 10 thereof.

3.11 As the claims will be dismissed, there is no ground anymore for maintaining the measure of order given in the interlocutory judgment.

3.12   As the unsuccessful party. AHE will have to bear the costs of the proceedings.


**4.     THE DECISION**
The Judge in this Court, giving judgment in summary proceedings:

4.1    refuses the relief sought;

4.2    stipulates that the measure of order given in the interlocutory judgment of July 27, 2007 ceases to have effect;

7

4,3    orders AHE to pay the costs of the proceedings, estimated at an amount of Afl. 3,000.-- in respect of the attorney's fee.

This judgment was given by *mr.* J.T.G. Roovers, Judge in this Court, and was pronounced in the public session on Wednesday, September 5, 2007, in the presence of the Clerk.