PROSKAUER ROSE LLP
*Attorneys for Plaintiff*
*Aruba Hotel Enterprises N.V.*
Richard M. Goldstein
Michael T. Mervis
Eric H. Blinderman
Patrick J. Dempsey
1585 Broadway
New York, New York  10036
(212) 969-3000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

ARUBA HOTEL ENTERPRISES N.V.,                  :
                                                                                       :
              Plaintiff,                          :
                                                                                       :        **AMENDED COMPLAINT**
         v.                                        :
                                                                                       :
MICHAEL BELFONTI, BELFONTI HOLDINGS :      3:07 Civ. 07564 (PAC)
LLC, and BELFONTI CAPITAL PARTNERS,      :
LLC,                                                                              :
                                                                                       :
              Defendants.                     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Plaintiff, Aruba Hotel Enterprises N.V. ("AHE"), by its attorneys Proskauer Rose

LLP, for its Amended Complaint, alleges upon information and belief, except as to matters

pertaining to itself and as otherwise indicated, as follows:

## PRELIMINARY STATEMENT

1.     This case arises from a fraudulent scheme orchestrated and perpetrated by

defendant Michael Belfonti ("Belfonti") to strip AHE of important assets and rights during a

time when Belfonti was the controlling principal of AHE.

2.     In 2006, Belfonti, through two corporate entities which, upon information

and belief, he beneficially owned and controlled, obtained two loans to finance the purchase of

the Wyndham Aruba Beach Resort & Casino – now known as the Westin Aruba Resort and Hotel – a resort hotel property located in Aruba (the "Hotel").

3.    One of the loans (the "Mezzanine Loan") was non-recourse and was secured by the equity in a holding company that owned the Hotel through its indirect subsidiary, AHE. The other loan (the "First Mortgage Loan") was secured by the Hotel itself.

4.    Upon information and belief, by early 2007, Belfonti anticipated that he would shortly default on both the Mezzanine and First Mortgage Loans. Accordingly, prior to the default on the Mezzanine Loan, he secretly and fraudulently amended a critical provision in the lease agreement for operation of the Hotel's casino to his personal advantage without the knowledge or consent of either of the lenders. The lenders' consent was required for any amendment to the lease agreement. This fraudulent conduct was carried out without the lenders' knowledge or consent and is presently the subject of pending litigation in both New York State Supreme Court and in Aruba.

5.    Following Belfonti's loan defaults, the lender of the Mezzanine Loan, Petra Fund REIT Corp., through its nominee Petra Mortgage Capital Corp. LLC (collectively, "Petra"), foreclosed on the loan and became the beneficial – and current – owner of AHE.

6.    In response to the claims brought against Belfonti – and the various entities that, upon information and belief, he beneficially owns and controls – in New York and Aruba, Belfonti and the other Defendants have suddenly adopted the position that they are entitled to repayment of alleged "loans" made to AHE during the period of time when AHE was owned and controlled by Belfonti.

7.    Upon information and belief, this new "claim" was fabricated by Belfonti in an attempt to gain leverage in the pending litigations concerning the fraudulent casino lease amendment.

8.    Even if any monies were actually paid by Defendants, and even if any such monies were "advanced" to AHE – as opposed to being paid directly to the lenders in satisfaction of the loan obligations – such payments would have been payments by the Hotel's then beneficial owner and cannot be characterized nor enforced as "loans".

9.    If those monies (assuming any were actually paid) are characterized as "loans," it would cause AHE, and its new ownership, to be in default on the First Mortgage Loan. This would cause serious, irreparable harm to AHE.

10.    For this reason, AHE brings this action for a declaratory judgment, pursuant to 28 U.S.C. § 2201(a), that the monies allegedly advanced by Defendants to AHE (assuming that such monies were so advanced) were not "loans" to AHE. AHE also seeks injunctive relief precluding the Defendants from seeking to enforce the alleged "loans."

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the dispute is between citizens of one or more United States' states on the one hand and a citizen of a foreign state on the other hand.

12.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) and/or (a)(3) because a substantial part of the events or omissions giving rise to AHE's claim occurred, or a substantial part of property that is the subject of the action is situated, in this judicial district and because Defendants are subject to personal jurisdiction in this judicial district.

## PARTIES

13.    AHE is an Aruban limited liability company with its principal place of business in Aruba.

14.    Belfonti is an individual citizen of the State of Connecticut.

15.    Upon information and belief, Belfonti Holdings, LLC ("Belfonti Holdings") is a Delaware limited liability company with its principal place of business in New York City.

16.    Upon information and belief, Belfonti Capital Partners, LLC ("BCP") is a Delaware limited liability company with its principal place of business in New York City.

## STATEMENT OF FACTS

17.    To finance the purchase of the Hotel, Belfonti – through two of the corporate entities which he, upon information and belief, beneficially owns and controls – obtained two loans.  The first loan was the First Mortgage Loan, which was made to AHE by WIBC Aruba N.V. (an affiliate of Wachovia Bank, National Association) in the amount of $230,000,000.00.  The terms of the First Mortgage Loan were memorialized in a loan agreement between AHE and WIBC Aruba N.V., dated May 3, 2006 (the "Mortgage Loan Agreement"). Petra participated in the First Mortgage Loan as the holder of the most junior interest therein, in the amount of $30,000,000.00.

18.    The second loan was the Mezzanine Loan, which was made by Petra to a Belfonti-controlled entity known as BCP Florin, LLC ("BCP Florin") in the amount of $19,450,000.00.  The terms of the Mezzanine Loan were memorialized in a loan and security agreement executed on or about June 9, 2006 (the "Mezzanine Loan Agreement").

19.    The Mezzanine Loan was secured by a first priority security interest in one hundred percent of the issued and outstanding equity of Twilight Holdings, LLC ("Twilight").

Twilight – a Delaware limited liability company that was, at the time, upon information and belief, beneficially owned and controlled by Belfonti – is an indirect subsidiary of BCP Florin.

20.    At the time the Mezzanine Loan was made, the Hotel was owned by AHE, an indirect subsidiary of BCP Florin and Twilight which, like those entities, was, upon information and belief, beneficially owned and controlled by Belfonti.

21.    Belfonti was a signatory to both the Mortgage Loan Agreement and the Mezzanine Loan Agreement and was aware of all of the material terms set forth therein.

22.    Under section 3.1.24(d) of the Mortgage Loan Agreement, AHE was not permitted to incur indebtedness of the type alleged by Defendants to have been created by AHE to them.

23.    A breach of section 3.1.24(d) of the Mortgage Loan Agreement gives rise to a default under the Mortgage Loan Agreement for which there is no right to cure.

24.    In April 2007, AHE defaulted on the First Mortgage Loan and BCP Florin defaulted on the Mezzanine Loan.  Thereafter, Petra voluntarily cured the default on the First Mortgage Loan, foreclosed on its security interest in Twilight under the Mezzanine Loan and, in consequence, became the beneficial – and current – owner of Twilight's indirect subsidiary, AHE.

25.    In July 2007, AHE commenced an action in Aruba against Diamond Gaming Corporation, N.V. ("Diamond Gaming") – a company beneficially owned and controlled by Belfonti that was used by Belfonti in connection with the above-described scheme involving the casino lease – seeking, *inter alia*, immediate termination of Diamond Gaming's involvement in the operation of the casino.

26.     On July 23, 2007, Petra commenced an action in New York State Supreme Court, against Belfonti and a number of the corporate entities that, upon information and belief, he beneficially owns and controls, seeking to recover for fraudulent conveyances and for tortious interference with the Mezzanine Loan Agreement, and to enforce a personal guaranty made by Belfonti and his father and an indemnity obligation owed to Petra by BCP Florin and Belfonti. That action also arises out of Belfonti's fraudulent scheme concerning the casino lease. A copy of the Complaint filed in the New York action, without exhibits, is annexed hereto as Exhibit A.

27.     On August 21, 2007, AHE received a letter from the law firm representing Diamond Gaming in the pending Aruban litigation. A copy of the letter, and its English translation, is annexed hereto as Exhibit B.

28.     The letter, which was sent on behalf of Belfonti Holdings, BCP, MCR Property Management Inc. ("MCR") and CEB Irrevocable Trust ("CEB"), claims that all four of these entities made purported "loans" to AHE during the time that Belfonti was the controlling principal of AHE. The letter demands repayment of the purported "loans" by August 24, 2007 at 12:00 noon. The letter describes the purported "loans" as follows:

- US $4,873,702.86 purportedly given to AHE by BCP for operating expenses;

- US $499,950.00 purportedly given to AHE by Belfonti Holdings for working capital contribution to the Hotel's management company;

- US $393,000.00 purportedly given to AHE by BCP for AHE's mortgage payment;

- US $1,307,611.80 purportedly given to AHE by MCR for AHE's mortgage payment;

- US $548,250.00 purportedly given to AHE by CEB for AHE's mortgage payment;

- US $1,161,874.00 purportedly given to AHE by MCR for AHE's mortgage payment.

29.    Upon information and belief, BCP, Belfonti Holdings, MCR and CEB are all entities beneficially owned and controlled by Belfonti.

30.    If any monies were advanced to AHE as alleged by Defendants, they cannot be characterized as "loans".

31.    Alternatively, if the monies purportedly advanced to AHE are construed as loans, they cannot be enforced.

32.    The purported "loans" allegedly made to AHE are prohibited by Section 3.1.24(d) of the Mortgage Loan Agreement.

33.    As signatory to the Mortgage Loan Agreement, Belfonti was well aware of its terms and knew that any purported "loans" would be in violation of the Mortgage Loan Agreement.

34.    In addition to violating the plain language of the Mortgage Loan Agreement, any attempt to enforce the purported "loans" could force AHE to default on the First Mortgage Loan.

35.    Any claim by the Defendants that any monies allegedly advanced to AHE were intended to be repaid constitutes a breach of Belfonti's duties to AHE as former principal of AHE.

36.    Moreover, any transaction by the Defendants which could be characterized as an indebtedness to be repaid by AHE would, upon information and belief, constitute a breach of Belfonti's duties to AHE under applicable law.

37.    Additionally, if the monies purportedly advanced to AHE are construed as loans, they cannot be enforced insofar as they were made in direct violation of AHE's Articles of Incorporation.

## COUNT ONE
**(For Declaratory Judgment under 28 U.S.C. § 2201(a) and a Permanent Injunction)**

38.     AHE repeats and realleges paragraphs 1 through 37 as if fully set forth herein.

39.     An actual justiciable case or controversy exists between AHE and the Defendants as to the Defendants' right to demand repayment of the monies allegedly advanced to AHE.

40.     AHE seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201(a), that the monies allegedly advanced to AHE (if such monies were, in fact, advanced) were not "loans" and that said sums of money are not repayable to Defendants.

41.     Alternatively, if the monies allegedly advanced to AHE are construed as "loans", AHE seeks a declaratory judgment that they cannot be enforced as such under applicable law.

42.     Creation of indebtedness by AHE, to and through the Defendant entities beneficially owned and controlled by Belfonti, would violate the restrictions on indebtedness set forth in the Mortgage Loan Agreement and cause AHE to be in default on the First Mortgage Loan.  As such, any attempt by Defendants to seek repayment of the purported "loans" threatens to cause AHE immediate irreparable harm.

43.     Accordingly, Defendants should be preliminarily and permanently enjoined from making any attempt to obtain repayment of the monies allegedly advanced to AHE, by litigation or otherwise.

### PRAYER FOR RELIEF

WHEREFORE, AHE prays for judgment against Defendants as follows:

      A.      A declaration that the monies allegedly advanced to AHE by the Defendants were not loans or, alternatively, cannot be enforced as loans;

      B.      A preliminary and permanent injunction enjoining the Defendants from attempting to obtain repayment of the monies allegedly advanced to AHE, by pursuing litigation in another forum or otherwise;

      C.      An award of all attorney's fees, costs and other litigation expenses incurred by AHE to the extent recoverable under applicable law; and

      D.      Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
      April 23, 2008

                    PROSKAUER ROSE LLP

                    By:   _____
                          Richard M. Goldstein
                          Michael T. Mervis
                          Eric H. Blinderman
                          Patrick J. Dempsey
                    1585 Broadway
                    New York, New York  10036
                    (212) 969-3000

                    *Attorneys for Aruba Hotel Enterprises N.V.*

PROSKAUER ROSE LLP
*Attorneys for Plaintiff*
*Aruba Hotel Enterprises N.V.*
Richard M. Goldstein
Michael T. Mervis
Eric H. Blinderman
Patrick J. Dempsey
1585 Broadway
New York, New York  10036
(212) 969-3000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

ARUBA HOTEL ENTERPRISES N.V.,                                :
                                                             :
                             Plaintiff,                      :
                                                             :          **CERTIFICATE OF SERVICE**
               v.                                            :
                                                             :          07 Civ. 7564 (PAC)(HBP)
MICHAEL BELFONTI, BELFONTI HOLDINGS :
LLC, and BELFONTI CAPITAL PARTNERS,                          :
LLC,                                                         :
                                                             :
                             Defendants.                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

        I HEREBY CERTIFY that service of the Amended Complaint in the above-

captioned action was made upon the defendants by service upon their counsel:

Michael S. Kim
Kobre & Kim LLP
800 Third Avenue
New York, New York 10022
Direct tel: 212.488.1201
Direct fax: 212.488.1221
www.kobrekim.com

Service was made by electronic and overnight mail and deemed complete on April 24, 2008.

Dated:        New York, New York
              April 24, 2008

                                            _____
                                                  Patrick J. Dempsey

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
PETRA FUND REIT CORP.,

                            Plaintiff,

              v.

MICHAEL BELFONTI, RICHARD BELFONTI,
BELFONTI CAPITAL PARTNERS, LLC, BCP
FLORIN, LLC and DIAMOND GAMING
CORPORATION, N.V.,

                            Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Index No. *07/602487*

**COMPLAINT**

Plaintiff, Petra Fund REIT Corp. ("Petra REIT"), by its attorneys Proskauer Rose

LLP, for its Complaint, alleges upon information and belief, except as to matters pertaining to

itself and as otherwise indicated, as follows:

## NATURE OF THE CASE

       1.     This case arises from a fraudulent scheme orchestrated and perpetrated by

defendant Michael Belfonti ("Belfonti"). Petra REIT brings this case to recover a fraudulent

conveyance for which Belfonti, and defendants Belfonti Capital Partners, LLC ("BCP") and

Diamond Gaming Corporation N.V. ("Diamond Gaming"), are liable; to enforce a personal

guaranty made by Belfonti and defendant Richard Belfonti (collectively, the "Belfontis"); to

enforce an indemnity obligation owed to Petra REIT by defendant BCP Florin, LLC ("BCP

Florin") and by Belfonti, as BCP Florin's alter ego; and to recover against Diamond Gaming for

its tortious interference with a Mezzanine Loan Agreement (defined below) with BCP Florin.

Petra REIT seeks damages and injunctive relief.

2.  In June 2006, Petra Mortgage Capital Corp. LLC ("Petra Mortgage") made a loan (the "Mezzanine Loan") in the principal amount of $19,450,000.00 to BCP Florin, a Delaware limited liability company that is beneficially owned and controlled by Belfonti and served as one of his many corporate alter egos.  The Mezzanine Loan was to be used in connection with the purchase by another Belfonti entity of the Wyndham Aruba Beach Resort & Casino -- now known as the Westin Aruba Resort and Hotel -- a resort hotel property located in Aruba (the "Hotel").

3.  The Mezzanine Loan was "non-recourse"; it was secured only by the equity in a holding company that owned the Hotel through its indirect subsidiary, Aruba Hotel Enterprises, N.V. ("AHE").  Thus, in the event that BCP Florin failed to repay the Mezzanine Loan or make any required Mezzanine Loan payment, as against BCP Florin Petra Mortgage would only be able to look to the equity in BCP Florin (and its direct and indirect subsidiaries, including AHE) to recoup the millions of dollars owed to it.

4.  In order to provide Petra Mortgage with an additional measure of security for the Mezzanine Loan, the Belfontis executed a personal guaranty in favor of Petra Mortgage ensuring the performance of certain obligations relating to the Mortgage Loan (the "Guaranty").

5.  Pursuant to an assignment (the "Assignment"), Petra Mortgage assigned its rights under the Mezzanine Loan Agreement (defined below) and the Guaranty to Petra REIT.  (Hereafter, Petra Mortgage and Petra REIT are sometimes referred to, individually and collectively, as "Petra.")  Among other things, the Assignment specifically conveyed to Petra REIT the right to enforce the rights assigned to it by Petra Mortgage under the Mezzanine Loan Agreement and the Guaranty.  The Assignment also provided that Petra Mortgage could act, at the direction of Petra REIT, to enforce and/or exercise the rights assigned to Petra REIT.

-2-

6.    At the time Petra agreed to make the Mezzanine Loan, a significant portion of AHE's revenue (and thus AHE's value) was derived from an operating agreement for the casino (the "Casino") located in the Hotel. This agreement -- which was between AHE as lessor and Diamond Gaming as lessee -- was originally dated as of November 1, 2005, and was amended on April 21, 2006. As amended, the agreement (the "Casino Lease") required Diamond Gaming to make monthly rental payments to AHE in the amount of $275,000.00. It was also cancelable at will by either party on thirty days' notice.

7.    Unbeknownst to Petra, and before it made the Mezzanine Loan, Belfonti -- through BCP, his real estate investment vehicle based in New York City -- secretly entered into an agreement with the then-owner of Diamond Gaming whereby Belfonti would be able to cause BCP to purchase Diamond Gaming for a nominal sum. After Petra made the Mezzanine Loan, Belfonti did just that by causing BCP to secretly purchase the stock in the company that owned Diamond Gaming for only $1,000.00. Thus, from that point forward, both parties to the Casino Lease were owned and controlled by Belfonti. All of this was intentionally concealed from Petra by Belfonti.

8.    In or about early 2007, it became apparent to Belfonti that BCP Florin was likely to default on the Mezzanine Loan. Belfonti knew that, in the event of a default, Petra would likely foreclose on its security interest under the Mezzanine Loan, in which case Petra would become the beneficial owner of AHE. For this reason, sometime between January and April 2007, Belfonti caused the two entities he then controlled -- AHE and Diamond Gaming -- to secretly "amend" the Casino Lease. This "amendment" (the "Purported Amendment") purported to reduce Diamond Gaming's monthly rental payment from $275,000.00 to only $60,000.00. The Purported Amendment also purported to eliminate the at-will termination

provision contained in the Casino Lease, thus ostensibly binding AHE to a thirty-year lease, at a drastically reduced rental rate, that could only be terminated for cause.

9.    The Purported Amendment was intentionally concealed from Petra. Belfonti knew that the agreements documenting the Mezzanine Loan explicitly required Petra's consent for any modifications to a "Major Lease," including the Casino Lease. Belfonti knowingly disregarded this requirement (and the similar consent rights of other parties) and -- acting as the beneficial owner of both parties to the transaction -- entered into the Purported Amendment without disclosing it to Petra and without obtaining Petra's consent (or the consent of other parties whose consent was required).

10.    The Purported Amendment was a classic self-dealing transaction. It provided AHE (the entity that Belfonti fully expected would soon come under Petra's ownership) with no consideration and caused it to lose substantial value. At the same time, the "amendment" provided a substantial, undeserved economic benefit (*i.e.*, $215,000.00 per month, possibly for the next thirty years) to Diamond Gaming (the entity that Belfonti would continue to own).

11.    In April 2007, BCP Florin defaulted on the Mezzanine Loan. Thereafter, Petra foreclosed on its security interest and, in consequence, became the beneficial owner of AHE.

12.    Petra has learned that, for the months of April through July 2007, Diamond Gaming has failed to pay AHE the required monthly rent of $275,000.00 and, instead, has paid only $60,000.00 per month. Thus, through July 2007, AHE has been deprived of $860,000.00, the entire value of which has been received by Diamond Gaming for its benefit and the benefit of its direct and beneficial owners, BCP and Belfonti.

13.    The above-described acts constitute a fraudulent conveyance under applicable law. They also trigger the Belfontis' obligations under the Guaranty because, among other things, these acts have caused a reduction in AHE's revenues and, thus, the value of Petra's security for the Mezzanine Loan.

## THE PARTIES

14.    Petra REIT is a Maryland corporation with its principal place of business in New York City.

15.    Belfonti is an individual citizen of the State of Connecticut.

16.    Richard Belfonti is an individual citizen of the State of Connecticut.

17.    BCP is a Delaware limited liability company with its principal place of business in New York City.

18.    BCP Florin is a Delaware limited liability company with its principal place of business in New York City.

19.    Diamond Gaming is a limited liability company organized under the laws of Aruba.

## JURISDICTION AND VENUE

20.    Venue is proper in this County pursuant to CPLR 503(a).

21.    This Court has personal jurisdiction over Belfonti pursuant to CPLR 302(a)(1) and (3).

22.    This Court has personal jurisdiction over Richard Belfonti pursuant to CPLR 302(a)(1).

23.    This Court has personal jurisdiction over BCP pursuant to CPLR 301 and/or 302(a)(3).

24.    This Court has personal jurisdiction over BCP Florin pursuant to CPLR 301 and/or 302(a)(1).

25.    This Court has personal jurisdiction over Diamond Gaming pursuant to CPLR 302(a)(3).

## BACKGROUND

### The First Mortgage Loan And Mezzanine Loan

26.    To finance the purchase of the Hotel, Belfonti -- through two of his entities -- obtained two loans. The first loan was made to AHE by WIBC Aruba N.V. (an affiliate of Wachovia Bank, National Association) ("WIBC") in the amount of $230,000,000.00 (the "First Mortgage Loan"). The terms of the First Mortgage Loan were memorialized in a loan agreement between AHE and WIBC Aruba N.V., dated May 3, 2006 (the "Mortgage Loan Agreement"). Petra participated in the First Mortgage Loan as the holder of the most junior interest therein, in the amount of $30,000,000.00. As the holder of the most junior interest in the First Mortgage Loan, Petra stands to lose some or all of this $30,000,000.00 investment in the event that the First Mortgage Loan is not repaid.

27.    The second loan was Petra's Mezzanine Loan to BCP Florin in the amount of $19,450,000.00. The terms of the Mezzanine Loan were memorialized in a loan and security agreement executed on or about June 9, 2006 (the "Mezzanine Loan Agreement").

28.    The Mezzanine Loan was secured by a first priority security interest in one hundred percent of the issued and outstanding equity of Twilight Holdings, LLC ("Twilight"). Twilight -- a Delaware limited liability company that was, at the time, beneficially owned and controlled by Belfonti -- is an indirect subsidiary of BCP Florin.

29.    At the time the Mezzanine Loan was made, the Hotel was owned by AHE, an indirect subsidiary of BCP Florin and Twilight which, like those entities, was beneficially owned and controlled by Belfonti.

30.    A Borrower's Certificate was given to Petra in connection with the Mezzanine Loan. Annexed to the Borrower's Certificate were nine separate agreements and/or documents that were relevant to Petra's entry into the Mezzanine Loan. A copy of the Borrower's Certificate is annexed hereto as Exhibit A.

**Representations And Warranties Under The First Mortgage Loan And Mezzanine Loan And Indemnity Obligations Under The Mezzanine Loan**

31.    Article III of the Mortgage Loan Agreement addresses AHE's "Representations and Warranties." In Section 3.1.34, AHE represented and warranted that no information contained in the First Mortgage Loan Agreement, the associated loan documents or any written statement by AHE contained an untrue statement or omission of material fact. As detailed herein, this representation proved to be false. A copy of Section 3.1.34 of the Mortgage Loan Agreement is annexed hereto as Exhibit B.

32.    In Section 3.1.35 of the First Mortgage Loan Agreement, AHE represented and warranted that there had been no material adverse change in any condition, fact, circumstance or event that would make the documents associated with the First Mortgage Loan inaccurate, incomplete or misleading or that would adversely affect the business operations of AHE. As detailed herein, this representation proved to be false. A copy of Section 3.1.35 of the Mortgage Loan Agreement is annexed hereto as Exhibit B.

33.    Article II of the Mezzanine Loan Agreement addresses BCP Florin's "Representations, Covenants and Warranties." In Section 2.02(aa) of the Mezzanine Loan Agreement, BCP Florin represented and warranted that all of the representations by AHE or its

Affiliates under the Mortgage Loan Agreement were true, complete and accurate. As detailed herein, this representation proved to be false. A copy of Section 2.02(aa) of the Mezzanine Loan Agreement is annexed hereto as Exhibit C.

34.    In Section 2.11 of the Mezzanine Loan Agreement, BCP Florin represented, warranted and covenanted that it would not "without the prior consent of [Petra] . . . allow a Transfer [defined below] to occur . . . or cause or permit [AHE or certain of its direct and indirect parent companies] . . . to . . . impair or otherwise adversely affect the interests of [Petra] in the Collateral [as defined in the Mezzanine Loan Agreement]." As detailed herein, this representation, warranty and covenant was violated. A copy of Section 2.11 of the Mezzanine Loan Agreement is annexed hereto as Exhibit D.

35.    In Section 2.34(c)(viii) of the Mezzanine Loan Agreement, BCP Florin represented, warranted and covenanted that it would not permit AHE to amend any Major Lease without Petra's consent. As used in the Mezzanine Loan Agreement, "Major Lease" includes "the Lease for the Casino." As detailed herein, this representation, warranty and covenant was violated. A copy of Section 2.34(c)(viii) of the Mezzanine Loan Agreement is annexed hereto as Exhibit E.

36.    In reliance upon the foregoing representations, warranties and covenants, and others, Petra agreed to make the Mezzanine Loan and to participate in the First Mortgage Loan. Petra's willingness to make the Mezzanine Loan in the amount it was made, and to participate in the First Mortgage Loan, was based on what was represented to Petra about AHE's revenues and income. Thus, the foregoing representations, warranties and covenants were critical to Petra's lending decision. Had Petra known that it could not rely upon the representations, warranties and covenants described above, it would not have made the

Mezzanine Loan or participated in the Mortgage Loan, or would not have loaned the same amounts.

37.    Article IV of the Mezzanine Loan Agreement addresses BCP Florin's obligation to indemnify Petra.  In Section 4.01(d) of the Mezzanine Loan Agreement, BCP Florin promised to "protect, indemnify and save harmless [Petra] . . . from and against any claims, demands, penalties, fines, liabilities, settlements, damages, costs and expenses of whatever kind or nature, known or unknown, contingent or otherwise, whether incurred or imposed within or outside the judicial process, including, without limitation, reasonable attorneys' fees and disbursements imposed upon or incurred by or asserted against [Petra] by reason of . . . any failure on the part of [BCP Florin] to perform or comply with any of the terms of [the Mezzanine Loan] Agreement . . . ."  A copy of Section 4.01(d) of the Mezzanine Loan Agreement is annexed hereto as Exhibit F.

### The Guaranty

38.    In light of the non-recourse nature of the Mezzanine Loan, Petra required certain assurances that the borrower would live up to its obligations.  Accordingly, at Petra's request, the Belfontis agreed to and did execute the Guaranty, which is dated as of June 9, 2006.  A copy of the Guaranty is annexed hereto as Exhibit G.

39.    In Section 1.1 of the Guaranty, the Belfontis "guarantee to [Petra] (and its successors and assigns), jointly and severally, the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable."  The Belfontis also "covenant and agree that [they are] liable, jointly and severally, for the Guaranteed Obligations as a primary obligor, and that each . . . shall fully perform, jointly and severally, each and every term and provision hereof."

40.     Section 1.2 of the Guaranty provides that "Guaranteed Obligations" "include, and [the Belfontis] shall be liable for, and shall indemnify, defend and hold [Petra] harmless from and against, any and all Losses (as hereinafter defined) incurred or suffered by [Petra] arising out of or in connection with . . . : (a) fraud or intentional misrepresentation by [BCP Florin] or any other Person in connection with the [the Mezzanine Loan Agreement and related loan documents]; (b) the misappropriation by [BCP Florin] or any Affiliate thereof of (i) any tenant security deposits or Rent or any other Property Income . . . ; [and] (e) the . . . willful misconduct of [BCP Florin] o[r] any Affiliate thereof . . . ."

41.     As used in the Guaranty, "Affiliate" means "any other Person directly or indirectly Controlling or Controlled by or under direct or indirect common Control with such specified Person." Section 3.1 of the Guaranty specifically states that Belfonti, personally, is an Affiliate and that he, personally, received a benefit from making the Guaranty.

42.     As used in the Guaranty, "Person" means "any individual, corporation, limited liability company, partnership, joint venture, estate, trust, unincorporated association . . . and any fiduciary acting in such capacity on behalf of any of the foregoing."

43.     As used in the Guaranty, "Rent" means "all rents, operating expense pass throughs, moneys payable as damages or in lieu of rent, forfeited or applied deposits (including, without limitation, prepaid rents and security deposits), accounts, cash, issues, profits, charges for services rendered, and other consideration of whatever form or nature received by or paid to or for the account of or benefit of [BCP Florin] or its or their agents or employees in each case from any Tenants under Leases at the Property." "Property Income" means "all revenue derived by [BCP Florin] arising from the Premises including, without limitation, room revenues, rental revenues (whether denominated as basic rent, additional rent, escalation payments, electrical

payments or otherwise) and other fees and charges payable pursuant to Leases [including the Casino Lease] or otherwise in connection with the Premises . . . "

44.    In Section 1.2 of the Guaranty, "Losses" are defined to include "any and all claims, suits, liabilities (including, without limitation, strict liabilities), actions, proceedings, obligations, debts, damages, losses, costs, expenses, diminutions in value, fines, penalties, charges, fees, expenses, judgments, awards, amounts paid in settlement, punitive damages, foreseeable and unforeseeable consequential damages, of whatever kind or nature (including but not limited to reasonable attorneys' fees and other costs of defense)."

45.    Section 1.2 of the Guaranty also provides that "in the event . . . (ii) of a Transfer by [Belfonti and/or one or more of various Belfonti entities, including BCP Florin and AHE] . . . in violation of the provisions of Section 2.11 of the [Mezzanine Loan Agreement] . . . then the Guaranteed Obligations shall also include the unpaid balance of the Debt [*i.e.*, the unpaid balance of the Mezzanine Loan]."

46.    As used in the Guaranty, "Transfer" means "any convey[ance] . . . whether or not for consideration . . . of all or any portion of any legal or beneficial interest in the Collateral . . . [or] the Property [as defined in the Mezzanine Loan Agreement]."

47.    Rental income to AHE is within the definition of "Collateral." Rental income to AHE is within the definition of "Property."

## The Casino Lease

48.    As noted, the Casino is located on the Hotel's premises. AHE holds a gambling license (the "Gambling License"), issued by the Aruban government, to operate the Casino. AHE is permitted to contract with a third party -- in this case, Diamond Gaming -- to operate the Casino consistent with the terms of AHE's Gambling License.

49. The Casino Lease between AHE and Diamond Gaming was in effect at the time Petra entered into the Mezzanine Loan. At that time, Casablanca Gaming Management Company S.A. ("Casablanca") was the sole shareholder of Diamond Gaming. Under the terms of the Casino Lease, Diamond Gaming was and is obligated to make a monthly rental payment of $275,000.00 to AHE. The Casino Lease expressly provided that Diamond Gaming's rent obligation would not be adjusted during its ten year term. Additionally, under the Casino Lease, Diamond Gaming was and is obligated to pay AHE fifty percent of Diamond Gaming's net profits from the operation of the Casino in excess of $416,667.00 per month (the "Additional Rent"). The Casino Lease was and is terminable at will by either Diamond Gaming or AHE on thirty days notice to the other. A copy of the Casino Lease is annexed hereto as Exhibit H.

### The Put And Call Agreement

50. At a time presently unknown to Petra, BCP, Casablanca and its principal, Alfonso Riveroll Estrada ("Riveroll"), secretly entered into a so-called "put and call" agreement dated April 21, 2006 (the "Put and Call Agreement"). A copy of the Put and Call Agreement is annexed hereto as Exhibit I.

51. The Put and Call Agreement was a vehicle by which Belfonti, through BCP, could gain control over Diamond Gaming by purchasing Diamond Gaming's stock for a nominal sum.

52. The Put and Call Agreement was deliberately concealed from Petra by Belfonti; Petra did not learn of its existence until after BCP Florin defaulted on the Mezzanine Loan and Petra assumed control over AHE. The Put and Call Agreement was not listed on the Borrower's Certificate given to Petra in connection with the Mezzanine Loan. Furthermore,

-12-

Belfonti's failure to disclose the existence of the Put and Call Agreement was a direct violation of Section 2.02(aa) of the Mezzanine Loan Agreement.

53.     Pursuant to the Put and Call Agreement, on December 4, 2006, BCP purchased Diamond Gaming's stock for only $1,000.00. As a result, Belfonti assumed control of Diamond Gaming and thereby controlled both parties to the Casino Lease.

54.     Belfonti's purchase of Diamond Gaming's stock was deliberately concealed from Petra by Belfonti. Petra did not learn of Belfonti's purchase of Diamond Gaming's stock until after BCP Florin defaulted on the Loan and Petra assumed control over AHE.

### The Purported January 2007 "Amendment" To The Casino Lease

55.     In or about January 2007, AHE began to experience cash flow difficulties attributable to the rapidly deteriorating financial performance of the Hotel. At or about that time, Belfonti concluded that BCP Florin would likely soon default on its obligations to Petra under the Mezzanine Loan. Belfonti recognized that, upon such a default, Petra would likely foreclose on its security interest for the Mezzanine Loan and, as a result, assume ownership of and control over AHE.

56.     Thus, some time between January and April 2007, Belfonti, as the beneficial owner of both AHE and Diamond Gaming, caused those entities to enter into the Purported Amendment of the Casino Lease, dated January 22, 2007. A copy of the Purported Amendment is annexed hereto as Exhibit J.

57.     In material part, the Purported Amendment purports to reduce Diamond Gaming's rent obligation from $275,000.00 per month to $60,000.00 per month. The Purported

-13-

Amendment also purports to negate the at-will termination provision in the Casino Lease and bind AHE to a possible thirty year lease term.

58.    Diamond Gaming gave no consideration to AHE for these concessions. The Purported Amendment is a completely one-sided transaction; it benefits only Diamond Gaming, and BCP and Belfonti as Diamond Gaming's direct and beneficial owners.

59.    The Purported Amendment was concealed from Petra by Belfonti; Petra did not learn of its existence until after BCP Florin defaulted on the Mezzanine Loan and Petra assumed control of AHE. Notably, under Section 2.34(c)(viii) of the Mezzanine Loan Agreement, Belfonti and his entities were prohibited from amending the Casino Lease without obtaining Petra's prior consent. Even though Belfonti, who was well aware of Petra's consent rights, controlled both parties to the Purported Amendment, Petra's consent for the Purported Amendment was neither sought nor obtained. By letter dated June 8, 2007, Petra notified Belfonti and Diamond Gaming that the Purported Amendment was not valid because, among other things, Petra had not consented to it.

60.    In addition, Section 2.34(a) of the Mezzanine Loan Agreement afforded Petra the same consent rights as WIBC under the First Mortgage Loan Agreement. Under the First Mortgage Loan Agreement, AHE was required to obtain WIBC's consent before amending certain leases, including the Casino Lease. WIBC's consent for the Purported Amendment was neither sought nor obtained. By letters dated May 4 and June 1, 2007, WIBC, through its agent, notified Belfonti and Diamond Gaming that the Purported Amendment was not valid because, among other things, WIBC had not consented to it.

-14-

61.   Further, AHE's operating agreement with the operator of the Hotel, Westin Aruba Hotel Management LLC ("Westin"), provided Westin with a similar consent right. Westin's consent for the Purported Amendment was neither sought nor obtained.

62.   Because the Purported Amendment purports to reduce AHE's rental income under the Casino Lease, it constitutes a Transfer in violation of Section 2.11 of the Mezzanine Loan Agreement.

63.   In apparent "reliance" upon the terms of the Purported Amendment, for the months of April through July 2007, Diamond Gaming has failed to meet its obligation to make monthly rental payments to AHE of $275,000.00 and, instead, has only paid AHE $60,000.00 per month. As a result, the value of AHE, part of Petra's security interest under the Mezzanine Loan, has been substantially diminished. Critical assets -- a most valuable contract right and $860,000.00 in rental payments thus far -- have been conveyed, for no consideration, to Diamond Gaming and its owners, BCP and Belfonti.

64.   In April 2007, BCP Florin defaulted on the Mezzanine Loan and did not cure its default. In May 2007, Petra foreclosed on its security interest in Twilight and, in so doing, assumed beneficial ownership of, and control over, AHE.

65.   The unpaid balance of the Mezzanine Loan is presently in excess of $35,000,000.00.

66.   The Casino Lease unequivocally provides that "[AHE] may exercise its rights to inspect [Diamond Gaming] at any time and [Diamond Gaming] is obligated to share any and all information and administration regarding the exploitation of the casino with [AHE]." The Casino Lease further provides that AHE or its representatives shall have the right to examine and audit the Casino's records and books. Notwithstanding these unambiguous terms, AHE has

not had access to the Casino's security camera feeds ever since Belfonti relinquished control over AHE.  Additionally, Belfonti and Diamond Gaming have failed to provide AHE with the financial statements for Diamond Gaming, and have failed to provide proof that it is satisfying its insurance and tax obligations as required under the Casino Lease.

67.    AHE also recently received a letter from Aruba's Ministry of Finance and Economic Affairs (the "MOF") warning that various governmental ordinances designed to minimize the risk that the Casino will be "used as a vehicle for money laundering and/or financing of terrorism" are not being followed.  These violations occurred while Diamond Gaming was responsible for the operation of the Casino.

68.    Petra has also learned that, the day after he was put on notice by Petra of BCP Florin's default under the Mezzanine Loan Agreement, Belfonti removed two filing cabinets and all of their contents from AHE's offices.  The cabinets contained, among other things, AHE's documents concerning the operation of the Casino covering the entire period in which Belfonti secretly controlled Diamond Gaming as well as periods that pre-dated Diamond Gaming's operation of the Casino.

**FIRST CAUSE OF ACTION**
**(Against The Belfontis For Full Recovery Of The Unpaid Balance**
**Of The Mezzanine Loan Pursuant To The Guaranty)**

69.    Petra repeats and realleges the allegations in paragraphs 1 through 68 as if fully set forth herein.

70.    The Guaranty is a valid and enforceable contract between Petra on the one hand and the Belfontis on the other hand.

71.    Petra has fully performed its obligations relating to the Guaranty.

-16-

72.    Under Section 1.2(a) of the Guaranty, the Belfontis are required to guaranty the payment and performance of all Guaranteed Obligations (as defined in the Guaranty) and to pay Petra for any Losses (as defined in the Guaranty) sustained in connection with the failure to perform Guaranteed Obligations.

73.    As set forth above, Section 1.2 of the Guaranty provides that "in the event . . . (ii) of a Transfer by [Belfonti and/or one or more of various Belfonti entities, including AHE] . . . in violation of the provisions of Section 2.11 of the [Mezzanine Loan Agreement] . . . then the Guaranteed Obligations shall also include the unpaid balance of the" Mezzanine Loan.

74.    The Purported Amendment, and the reduction in rental income to AHE that it purports to effectuate, constitutes a "Transfer" by BCP Florin, AHE and/or Belfonti.

75.    The Transfer was effectuated in violation of the provisions of Section 2.11 of the Mezzanine Loan Agreement because it "impair[ed] or otherwise adversely affect[ed] the interests of [Petra] in the Collateral [as that term is used in the Guaranty] . . . [or] the Property [as that term is used in the Guaranty]"

76.    The Belfontis are thus liable to Petra for the unpaid balance of the Mezzanine Loan.

77.    By reason of the foregoing, Petra is entitled to a judgment against the Belfontis in an amount to be determined at trial but that is believed to be in excess of $35,000,000.00.

## SECOND CAUSE OF ACTION
### (Against The Belfontis To Enforce The Guaranty)

78.    Petra repeats and realleges the allegations in paragraphs 1 through 77 as if fully set forth herein.

-17-

79.    The Guaranty is a valid and enforceable contract between Petra on the one hand and the Belfontis on the other hand.

80.    Petra has fully performed its obligations relating to the Guaranty.

81.    Under Section 1.2(a) of the Guaranty, the Belfontis are required to guaranty the payment and performance of all Guaranteed Obligations (as defined in the Guaranty) and to pay Petra for any Losses (as defined in the Guaranty) sustained in connection with the failure to perform Guaranteed Obligations.

82.    The conduct set forth herein triggers the Belfontis' obligations under the Guarantee. Petra has sustained Losses, including the diminished value of AHE, as a result of Diamond Gaming's failure to pay the $275,000.00 monthly rent under the Casino Lease. Further, those Losses were caused by a failure to perform the Guaranteed Obligations. Specifically, with respect to Section 1.2(a), Belfonti is a "Person" who engaged in "fraud and intentional misrepresentation . . . in connection with" the Mezzanine Loan Agreement and related agreements. With respect to Section 1.2(b), Belfonti, BCP and Diamond Gaming are each an "Affiliate" and each misappropriated "Rent or . . . other Property Income." With respect to Section 1.2(e), Belfonti is an "Affiliate" who has engaged in "willful misconduct."

83.    Belfonti engaged in fraud, intentional misrepresentation and willful misconduct by: (a) secretly causing BCP to enter into the Put and Call Agreement; (b) secretly causing BCP to purchase Diamond Gaming's stock; (c) secretly causing AHE and Diamond Gaming to enter into the Purported Amendment, in violation of Petra' s consent rights under the Mezzanine Loan Agreement; and (d) causing Diamond Gaming not to pay the full amount of its $275,000.00 monthly rent obligation to AHE.

84. Belfonti, BCP and Diamond Gaming are each an "Affiliate" and have each misappropriated "Rent" and/or "Property Income" by virtue of Diamond Gaming's failure to pay to AHE the required $275,000.00 monthly rent and its retention of the unpaid rent for itself.

85. The Belfontis are thus liable to Petra for Losses under the Guaranty.

86. Petra lacks an adequate remedy at law.

87. By reason of the foregoing, Petra is entitled to a judgment against the Belfontis in an amount to be determined at trial.

88. By reason of the foregoing, Petra is also entitled to an injunction requiring the Belfontis to cause Belfonti, BCP and Diamond Gaming to fully perform the Guaranteed Obligations, including paying the full amount of the $275,000.00 monthly rental obligation under the Casino Lease, as well as any Additional Rent or other rental income due to AHE under the Casino Lease, for so long as the Casino Lease shall remain in effect.

## THIRD CAUSE OF ACTION
### (Against Belfonti for Fraudulent Conveyance in Violation of NY Debtor and Creditor Law §276)

89. Petra repeats and realleges the allegations in paragraphs 1 through 88 as if fully set forth herein.

90. By virtue of the Guaranty, Petra is a creditor of Belfonti.

91. Belfonti actively participated in planning and executing the scheme described herein by causing: (a) BCP to enter into the Put and Call Agreement; (b) BCP to purchase Diamond Gaming's stock; (c) AHE and Diamond Gaming to enter into the Purported Amendment, in violation of Petra's consent rights under the Mezzanine Loan Agreement; and (d) Diamond Gaming to pay only $60,000.00 in monthly rent to AHE, rather than the $275,000.00 monthly payment required under the Casino Lease.

-19-

92.     The above-described scheme benefited Belfonti, as the beneficial owner of Diamond Gaming, inasmuch as Diamond Gaming has avoided its obligations under the Casino Lease as a result of Belfonti's self-dealing and purported release of valuable economic obligations under the Casino Lease.

93.     Such purported release of contractual obligations, and the resulting retention of cash to which Diamond Gaming was not entitled to retain, and which is current and continuing, constitute a conveyance under Section 270 of the New York Debtor and Creditor Law.  Belfonti, as the beneficial owner of Diamond Gaming, benefited from the conveyance.

94.     The conveyance was made without fair consideration or equivalent value and was intended to hinder, delay and/or defraud Belfonti's creditor, Petra.

95.     As such, the conveyance was fraudulent and impairs Petra's ability to recover on any judgment it may obtain against Belfonti under the Guaranty.

96.     Accordingly, Belfonti is liable to Petra for violation of Section 276 of the New York Debtor and Creditor Law.

97.     The foregoing acts by Belfonti were willful, intentional, malicious and purposeful, or in reckless disregard of, or with callous indifference to, Petra's rights.

98.     Petra lacks an adequate remedy at law.

99.     By reason of the foregoing, Petra is entitled to a judgment against Belfonti in an amount to be determined at trial.

100.    By reason of the foregoing, Petra is also entitled to equitable relief in the form of a constructive trust over funds transferred to him or any entity owned or controlled by him from Diamond Gaming, either directly or indirectly.  Petra is also entitled to equitable relief

-20-

to prevent Belfonti from further diminishing the value of Petra's security interest under the Mezzanine Loan Agreement through further fraudulent conveyances.

### FOURTH CAUSE OF ACTION
**(Against Belfonti for Fraudulent Conveyance in Violation of NY Debtor and Creditor Law §274)**

101.   Petra repeats and realleges the allegations in paragraphs 1 through 100 as if fully set forth herein.

102.   By virtue of the Mezzanine Loan from Petra to BCP Florin, Petra is a creditor of BCP Florin.

103.   Belfonti exercised complete domination and control over BCP Florin and its direct and indirect subsidiaries, including AHE, abused the corporate form, and treated the various entities under his control as his mere instrumentality or agent.

104.   Belfonti (a) controlled in excess of the majority of the outstanding equity of each entity; (b) completely dominated BCP Florin's (and its direct and indirect subsidiaries') (i) financial operations, (ii) business practices and corporate policies and (iii) boards of directors, supervisors and/or managers to the extent that the boards have no independence; and (c) treated the companies as a mere subsidiary and conduit to extract additional income for himself.

105.   Accordingly, Petra is, and should be deemed, a creditor of all of BCP Florin's direct and indirect subsidiaries, including AHE.

106.   Belfonti actively participated in planning and executing the scheme described herein by causing: (a) BCP to enter into the Put and Call Agreement; (b) BCP to purchase Diamond Gaming's stock; (c) AHE and Diamond Gaming to enter into the Purported Amendment, in violation of Petra's consent rights under the Mezzanine Loan Agreement; and (d)

-21-

Diamond Gaming to pay only $60,000.00 in monthly rent to AHE, rather than the $275,000.00 monthly payment required under the Casino Lease.

107.   The above-described scheme benefited Belfonti, as the beneficial owner of Diamond Gaming, inasmuch as Diamond Gaming has avoided its obligations to AHE under the Casino Lease as a result of Belfonti's self-dealing and purported release of valuable economic obligations under the Casino Lease.

108.   Such purported release of contractual obligations, and the resulting retention of cash to which Diamond Gaming was not entitled to retain, and which is current and continuing, constitute a conveyance under Section 270 of the New York Debtor and Creditor Law. Belfonti, as the beneficial owner of Diamond Gaming, benefited from the conveyance.

109.   The conveyance from AHE to Diamond Gaming was made without fair consideration or equivalent value and left AHE with unreasonably small capital.

110.   As such, the conveyance was fraudulent and impairs Petra's rights as AHE's creditor.

111.   Accordingly, Belfonti is liable to Petra for violation of Section 274 of the New York Debtor and Creditor Law.

112.   The foregoing acts by Belfonti were willful, intentional, malicious and purposeful, or in reckless disregard of, or with callous indifference to, Petra's rights.

113.   Petra lacks an adequate remedy at law.

114.   By reason of the foregoing, Petra is entitled to a judgment against Belfonti in an amount to be determined at trial.

115. By reason of the foregoing, Petra is also entitled to equitable relief in the form of a constructive trust over funds transferred to him or any entity owned or controlled by him from Diamond Gaming, either directly or indirectly. Petra is also entitled to equitable relief to prevent Belfonti from further diminishing the value of Petra's security interest under the Mezzanine Loan Agreement through further fraudulent conveyances.

## FIFTH CAUSE OF ACTION
### (Against Belfonti for Fraudulent Conveyance in Violation of NY Debtor and Creditor Law §275)

116. Petra repeats and realleges the allegations in paragraphs 1 through 115 as if fully set forth herein.

117. By virtue of the Mezzanine Loan from Petra to BCP Florin, Petra is a creditor of BCP Florin.

118. Belfonti exercised complete domination and control over BCP Florin and its direct and indirect subsidiaries, including AHE, abused the corporate form, and treated the various entities under his control as his mere instrumentality or agent.

119. Belfonti (a) controlled in excess of the majority of the outstanding equity of each entity; (b) completely dominated BCP Florin's (and its direct and indirect subsidiaries') (i) financial operations, (ii) business practices and corporate policies and (iii) boards of directors, supervisors and/or managers to the extent that the boards have no independence; and (c) treated the companies as a mere subsidiary and conduit to extract additional income for himself.

120. Accordingly, Petra is, and should be deemed, a creditor of all of BCP Florin's direct and indirect subsidiaries, including AHE.

121. Belfonti actively participated in planning and executing the scheme described herein by causing: (a) BCP to enter into the Put and Call Agreement; (b) BCP to

purchase Diamond Gaming's stock; (c) AHE and Diamond Gaming to enter into the Purported

Amendment, in violation of Petra's consent rights under the Mezzanine Loan Agreement; and (d)

Diamond Gaming to pay only $60,000.00 in monthly rent to AHE, rather than the $275,000.00

monthly payment required under the Casino Lease.

122.   The above-described scheme benefited Belfonti, as the beneficial owner of

Diamond Gaming, inasmuch as Diamond Gaming has avoided its obligations to AHE under the

Casino Lease as a result of Belfonti's self-dealing and purported release of valuable economic

obligations under the Casino Lease.

123.   Such purported release of contractual obligations, and the resulting

retention of cash to which Diamond Gaming was not entitled to retain, and which is current and

continuing, constitute a conveyance under Section 270 of the New York Debtor and Creditor

Law.  Belfonti, as the beneficial owner of Diamond Gaming, benefited from the conveyance.

124.   The conveyance was made without fair consideration or equivalent value at

a time when Belfonti intended or believed that AHE would incur debts beyond its ability to pay

them as they matured.

125.   As such, the conveyance was fraudulent and impairs Petra's rights as

AHE's creditor.

126.   Accordingly, Belfonti is liable to Petra for violation of Section 275 of the

New York Debtor and Creditor Law.

127.   The foregoing acts by Belfonti were willful, intentional, malicious and

purposeful, or in reckless disregard of, or with callous indifference to, Petra's rights.

128.   Petra lacks an adequate remedy at law.

-24-

129.  By reason of the foregoing, Petra is entitled to a judgment against Belfonti in an amount to be determined at trial.

130.  By reason of the foregoing, Petra is also entitled to equitable relief in the form of a constructive trust over funds transferred to him or any entity owned or controlled by him from Diamond Gaming, either directly or indirectly.  Petra is also entitled to equitable relief to prevent Belfonti from further diminishing the value of Petra's security interest under the Mezzanine Loan Agreement through further fraudulent conveyances.

**SIXTH CAUSE OF ACTION**
**(Against Belfonti for Fraudulent Conveyance in Violation of NY Debtor and Creditor Law §276)**

131.  Petra repeats and realleges the allegations in paragraphs 1 through 130 as if fully set forth herein.

132.  By virtue of the Mezzanine Loan from Petra to BCP Florin, Petra is a creditor of BCP Florin.

133.  Belfonti exercised complete domination and control over BCP Florin and its direct and indirect subsidiaries, including AHE, abused the corporate form, and treated the various entities under his control as his mere instrumentality or agent.

134.  Belfonti (a) controlled in excess of the majority of the outstanding equity of each entity; (b) completely dominated BCP Florin's (and its direct and indirect subsidiaries') (i) financial operations, (ii) business practices and corporate policies and (iii) boards of directors, supervisors and/or managers to the extent that the boards have no independence; and (c) treated the companies as a mere subsidiary and conduit to extract additional income for himself.

135.  Accordingly, Petra is, and should be deemed, a creditor of all of BCP Florin's direct and indirect subsidiaries, including AHE.

-25-

136.  Belfonti actively participated in planning and executing the scheme described herein by causing: (a) BCP to enter into the Put and Call Agreement; (b) BCP to purchase Diamond Gaming's stock; (c) AHE and Diamond Gaming to enter into the Purported Amendment, in violation of Petra's consent rights under the Mezzanine Loan Agreement; and (d) Diamond Gaming to pay only $60,000.00 in monthly rent to AHE, rather than the $275,000.00 monthly payment required under the Casino Lease.

137.  The above-described scheme benefited Belfonti, as the beneficial owner of Diamond Gaming, inasmuch as Diamond Gaming has avoided its obligations to AHE under the Casino Lease as a result of Belfonti's self-dealing and purported release of valuable economic obligations under the Casino Lease.

138.  Such purported release of contractual obligations, and the resulting retention of cash to which Diamond Gaming was not entitled to retain, and which is current and continuing, constitute a conveyance under Section 270 of the New York Debtor and Creditor Law.  Belfonti, as the beneficial owner of Diamond Gaming, benefited from the conveyance.

139.  The conveyance was made without fair consideration or equivalent value and was intended to hinder, delay and/or defraud Belfonti's creditor, Petra.

140.  As such, the conveyance was fraudulent and impairs Petra's rights as AHE's creditor.

141.  Accordingly, Belfonti is liable to Petra for violation of Section 276 of the New York Debtor and Creditor Law.

142.  The foregoing acts by Belfonti were willful, intentional, malicious and purposeful, or in reckless disregard of, or with callous indifference to, Petra's rights.

-26-

143. Petra lacks an adequate remedy at law.

144. By reason of the foregoing, Petra is entitled to a judgment against Belfonti in an amount to be determined at trial.

145. By reason of the foregoing, Petra is also entitled to equitable relief in the form of a constructive trust over funds transferred to him or any entity owned or controlled by him from Diamond Gaming, either directly or indirectly. Petra is also entitled to equitable relief to prevent Belfonti from further diminishing the value of Petra's security interest under the Mezzanine Loan Agreement through further fraudulent conveyances.

### SEVENTH CAUSE OF ACTION
**(Against Belfonti for Aiding and Abetting Fraudulent Conveyances)**

146. Petra repeats and realleges the allegations in paragraphs 1 though 145 as if fully set forth herein.

147. By virtue of the Mezzanine Loan from Petra to BCP Florin, Petra is a creditor of BCP Florin.

148. Belfonti exercised complete domination and control over BCP Florin and its direct and indirect subsidiaries, including AHE, abused the corporate form, and treated the various entities under his control as his mere instrumentality or agent.

149. Belfonti (a) controlled in excess of the majority of the outstanding equity of each entity; (b) completely dominated BCP Florin's (and its direct and indirect subsidiaries') (i) financial operations, (ii) business practices and corporate policies and (iii) boards of directors, supervisors and/or managers to the extent that the boards have no independence; and (c) treated the companies as a mere subsidiary and conduit to extract additional income for himself.

-27-

150. Accordingly, Petra is, and should be deemed, a creditor of all of BCP Florin's direct and indirect subsidiaries, including AHE.

151. Belfonti -- through his beneficial ownership of and control over AHE, BCP, and Diamond Gaming -- aided, abetted and induced AHE to make the fraudulent conveyance to Diamond Gaming complained of herein.

152. Diamond Gaming -- and Belfonti, as beneficial owner of Diamond Gaming -- benefited from the conveyance inasmuch as Diamond Gaming has avoided its obligations to AHE under the Casino Lease as a result of Belfonti's self-dealing and purported release of valuable economic obligations under the Casino Lease.

153. Such purported release of contractual obligations, and the resulting retention of cash to which Diamond Gaming was not entitled to retain, and which is current and continuing, constitute a conveyance under Section 270 of the New York Debtor and Creditor Law. Belfonti, as the beneficial owner of Diamond Gaming, benefited from the conveyance.

154. The conveyance from AHE to Diamond Gaming was made without fair consideration or equivalent value and left AHE with unreasonably small capital at a time when Belfonti intended or believed that AHE would incur debts beyond its ability to pay them as they matured. The conveyance was also intended to hinder, delay and/or defraud creditors, including, specifically, Petra.

155. As such, the conveyance was fraudulent and impairs Petra's rights as AHE's creditor.

156. Accordingly, Belfonti is liable to Petra for aiding and abetting the fraudulent conveyance complained of herein.

-28-

157.   The foregoing acts by Belfonti were willful, intentional, malicious and purposeful, or in reckless disregard of, or with callous indifference to, Petra's rights.

158.   Petra lacks an adequate remedy at law.

159.   By reason of the foregoing, Petra is entitled to a judgment against Belfonti in an amount to be determined at trial.

160.   By reason of the foregoing, Petra is also entitled to equitable relief in the form of a constructive trust over funds transferred to him or any entity owned or controlled by him from Diamond Gaming, either directly or indirectly.  Petra is also entitled to equitable relief to prevent Belfonti from further diminishing the value of Petra's security interest under the Mezzanine Loan Agreement through further fraudulent conveyances.

### EIGHTH CAUSE OF ACTION
**(Against Belfonti Capital Partners and Diamond Gaming for Fraudulent Conveyance in Violation of NY Debtor and Creditor Law §274)**

161.   Petra repeats and realleges the allegations in paragraphs 1 through 160 as if fully set forth herein.

162.   By virtue of the Mezzanine Loan from Petra to BCP Florin, Petra is a creditor of BCP Florin.

163.   Belfonti exercised complete domination and control over BCP Florin and its direct and indirect subsidiaries, including AHE, abused the corporate form, and treated the various entities under his control as his mere instrumentality or agent.

164.   Belfonti (a) controlled in excess of the majority of the outstanding equity of each entity; (b) completely dominated BCP Florin's (and its direct and indirect subsidiaries') (i) financial operations, (ii) business practices and corporate policies and (iii) boards of directors,

-29-

supervisors and/or managers to the extent that the boards have no independence; and (c) treated the companies as a mere subsidiary and conduit to extract additional income for himself.

165. Accordingly, Petra is, and should be deemed, a creditor of all of BCP Florin's direct and indirect subsidiaries, including AHE.

166. The fraudulent conveyance complained of herein benefited Diamond Gaming and BCP, as the owner of Diamond Gaming, inasmuch as Diamond Gaming has avoided its obligations to AHE under the Casino Lease as a result of Belfonti's self-dealing and purported release of valuable economic obligations under the Casino Lease.

167. Such purported release of contractual obligations, and the resulting retention of cash to which Diamond Gaming was not entitled to retain, and which is current and continuing, constitute a conveyance under Section 270 of the New York Debtor and Creditor Law. BCP, as the owner of Diamond Gaming, benefited from the conveyance.

168. The conveyance from AHE to Diamond Gaming was made without fair consideration or equivalent value and left AHE with unreasonably small capital.

169. As such, the conveyance was fraudulent and impairs Petra's rights as AHE's creditor.

170. Accordingly, Diamond Gaming and BCP are liable to Petra for violation of Section 274 of the New York Debtor and Creditor Law.

171. The foregoing acts by Diamond Gaming and its owner, BCP, were willful, intentional, malicious and purposeful, or in reckless disregard of, or with callous indifference to, Petra's rights.

172. Petra lacks an adequate remedy at law.

173.  By reason of the foregoing, Petra is entitled to a judgment against Diamond Gaming and BCP in an amount to be determined at trial.

174.  By reason of the foregoing, Petra is also entitled to equitable relief in the form of a constructive trust over funds sufficient to allow Diamond Gaming to make the full amount of the $275,000.00 per month lease payments that AHE should be receiving under the Casino Lease, all but $60,000.00 of which has been withheld on a monthly basis as a result of Belfonti's fraudulent conveyance to Diamond Gaming, as well as any Additional Rent or other rental income due to AHE under the Casino Lease.  Petra is also entitled to equitable relief to prevent Diamond Gaming and BCP from further diminishing the value of Petra's security interest in AHE through further fraudulent conveyances.

### NINTH CAUSE OF ACTION
**(Against Diamond Gaming and Belfonti Capital Partners for Fraudulent Conveyance in Violation of NY Debtor and Creditor Law §275)**

175.  Petra repeats and realleges the allegations in paragraphs 1 through 174 as if fully set forth herein.

176.  By virtue of the Mezzanine Loan from Petra to BCP Florin, Petra is a creditor of BCP Florin.

177.  Belfonti exercised complete domination and control over BCP Florin and its direct and indirect subsidiaries, including AHE, abused the corporate form, and treated the various entities under his control as his mere instrumentality or agent.

178.  Belfonti (a) controlled in excess of the majority of the outstanding equity of each entity; (b) completely dominated BCP Florin's (and its direct and indirect subsidiaries') (i) financial operations, (ii) business practices and corporate policies and (iii) boards of directors,

supervisors and/or managers to the extent that the boards have no independence; and (c) treated the companies as a mere subsidiary and conduit to extract additional income for himself.

179.  Accordingly, Petra is, and should be deemed, a creditor of all of BCP Florin's direct and indirect subsidiaries, including AHE.

180.  The fraudulent conveyance complained of herein benefited Diamond Gaming and BCP, as the owner of Diamond Gaming, inasmuch as Diamond Gaming has avoided its obligations to AHE under the Casino Lease as a result of Belfonti's self-dealing and purported release of valuable economic obligations under the Casino Lease.

181.  Such purported release of contractual obligations, and the resulting retention of cash to which Diamond Gaming was not entitled to retain, and which is current and continuing, constitute a conveyance under Section 270 of the New York Debtor and Creditor Law.  BCP, as the owner of Diamond Gaming, benefited from the conveyance.

182.  The conveyance from AHE to Diamond Gaming was made without fair consideration or equivalent value and left AHE with unreasonably small capital.

183.  As such, the conveyance was fraudulent and impairs Petra's rights as AHE's creditor.

184.  Accordingly, Diamond Gaming and BCP are liable to Petra for violation of Section 274 of the New York Debtor and Creditor Law.

185.  The foregoing acts by Diamond Gaming and its owner, BCP, were willful, intentional, malicious and purposeful, or in reckless disregard of, or with callous indifference to, Petra's rights.

186.  Petra lacks an adequate remedy at law.

187.   By reason of the foregoing, Petra is entitled to a judgment against Diamond Gaming and BCP in an amount to be determined at trial.

188.   By reason of the foregoing, Petra is also entitled to equitable relief in the form of a constructive trust over funds sufficient to allow Diamond Gaming to make the full amount of the $275,000.00 per month lease payments that AHE should be receiving under the Casino Lease, all but $60,000.00 of which has been withheld on a monthly basis as a result of Belfonti's fraudulent conveyance to Diamond Gaming, as well as any Additional Rent or other rental income due to AHE under the Casino Lease. Petra is also entitled to equitable relief to prevent Diamond Gaming and BCP from further diminishing the value of Petra's security interest in AHE through further fraudulent conveyances.

## TENTH CAUSE OF ACTION
**(Against Diamond Gaming and Belfonti Capital Partners for Fraudulent Conveyance in Violation of NY Debtor and Creditor Law §276)**

189.   Petra repeats and realleges the allegations in paragraphs 1 through 188 as if fully set forth herein.

190.   By virtue of the Mezzanine Loan from Petra to BCP Florin, Petra is a creditor of BCP Florin.

191.   Belfonti exercised complete domination and control over BCP Florin and its direct and indirect subsidiaries, including AHE, abused the corporate form, and treated the various entities under his control as his mere instrumentality or agent.

192.   Belfonti (a) controlled in excess of the majority of the outstanding equity of each entity; (b) completely dominated BCP Florin's (and its direct and indirect subsidiaries') (i) financial operations, (ii) business practices and corporate policies and (iii) boards of directors,

supervisors and/or managers to the extent that the boards have no independence; and (c) treated the companies as a mere subsidiary and conduit to extract additional income for himself.

193.  Accordingly, Petra is, and should be deemed, a creditor of all of BCP Florin's direct and indirect subsidiaries, including AHE.

194.  The fraudulent conveyance complained of herein benefited Diamond Gaming and BCP, as the owner of Diamond Gaming, inasmuch as Diamond Gaming has avoided its obligations to AHE under the Casino Lease as a result of Belfonti's self-dealing and purported release of valuable economic obligations under the Casino Lease.

195.  Such purported release of contractual obligations, and the resulting retention of cash to which Diamond Gaming was not entitled to retain, and which is current and continuing, constitute a conveyance under Section 270 of the New York Debtor and Creditor Law.  BCP, as the owner of Diamond Gaming, benefited from the conveyance.

196.  The conveyance from AHE to Diamond Gaming was made without fair consideration or equivalent value and left AHE with unreasonably small capital.

197.  As such, the conveyance was fraudulent and impairs Petra's rights as AHE's creditor.

198.  Accordingly, Diamond Gaming and BCP are liable to Petra for violation of Section 274 of the New York Debtor and Creditor Law.

199.  The foregoing acts by Diamond Gaming and its owner, BCP, were willful, intentional, malicious and purposeful, or in reckless disregard of, or with callous indifference to, Petra's rights.

200.  Petra lacks an adequate remedy at law.

201.  By reason of the foregoing, Petra is entitled to a judgment against Diamond Gaming and BCP in an amount to be determined at trial.

202.  By reason of the foregoing, Petra is also entitled to equitable relief in the form of a constructive trust over funds sufficient to allow Diamond Gaming to make the full amount of the $275,000.00 per month lease payments that AHE should be receiving under the Casino Lease, all but $60,000.00 of which has been withheld on a monthly basis as a result of Belfonti's fraudulent conveyance to Diamond Gaming, as well as any Additional Rent or other rental income due to AHE under the Casino Lease.  Petra is also entitled to equitable relief to prevent Diamond Gaming and BCP from further diminishing the value of Petra's security interest in AHE through further fraudulent conveyances.

## ELEVENTH CAUSE OF ACTION
### (Against BCP Florin and Belfonti To Enforce Indemnity Right)

203.  Petra repeats and realleges the allegations in paragraphs 1 through 202 as if fully set forth herein.

204.  The Mezzanine Loan Agreement is a valid and enforceable contract between Petra on the one hand and BCP Florin on the other hand.

205.  Petra has fully performed its obligations relating to the Mezzanine Loan Agreement.

206.  As set forth above, under Section 4.01(d) of the Mezzanine Loan Agreement BCP Florin is required to "protect, indemnify and save harmless [Petra] . . . from and against any claims, demands, penalties, fines, liabilities, settlements, damages, costs and expenses of whatever kind or nature, known or unknown, contingent or otherwise, whether

-35-

incurred or imposed within or outside the judicial process, including, without limitation, reasonable attorneys' fees and disbursements imposed upon or incurred by or asserted against [Petra] by reason of . . . any failure on the part of [BCP Florin] to perform or comply with any of the terms of [the Mezzanine Loan] Agreement . . . ."

207.  By virtue of (a) the Put and Call Agreement (which violated Section 2.02(aa) of the Mezzanine Loan Agreement) and (b) AHE's failure to seek or obtain Petra's consent to the Purported Amendment (which violated Section 2.34(c)(viii) of the Mezzanine Loan Agreement), Petra (as the now beneficial owner of AHE) has suffered damages caused by Diamond Gaming's failure to pay to AHE the full amount of the $275,000.00 monthly rent that is required under the Casino Lease.  Accordingly, BCP Florin must indemnify Petra for the full amount of all such damages.

208.  Belfonti exercised complete domination and control over BCP Florin, abused the corporate form, and treated BCP Florin as his mere instrumentality or agent.

209.  Belfonti (a) controlled in excess of the majority of the outstanding equity of BCP Florin; (b) completely dominated BCP Florin's (i) financial operations, (ii) business practices and corporate policies and (iii) board of directors, supervisors and/or managers to the extent that the board had no independence; and (c) treated BCP Florin as a mere subsidiary and conduit to extract additional income for himself.

210.  BCP Florin should thus be deemed Belfonti's alter ego and, as such, Belfonti is personally liable for BCP Florin's contractual obligations to Petra.  Accordingly, Petra is entitled to enforce against Belfonti personally the above-described indemnity obligation that is owed to Petra by BCP Florin.

211. By reason of the foregoing, Petra is entitled to a judgment against BCP Florin and Belfonti in an amount to be determined at trial.

## TWELFTH CAUSE OF ACTION
### (Against Diamond Gaming for Tortious Interference with Contractual Relations)

212. Petra repeats and realleges the allegations in paragraphs 1 through 211 as if fully set forth herein.

213. At all times relevant to this Complaint, the Mezzanine Loan Agreement between Petra and BCP Florin was a legal and binding agreement.

214. In Article II, Section 2.34(c)(viii), of the Mezzanine Loan Agreement, BCP Florin represented and warranted that it would not permit AHE to amend any Major Lease without Petra's consent. The Casino Lease constitutes such a "Major Lease."

215. Diamond Gaming -- through Belfonti -- knew of the existence of the Mezzanine Loan Agreement and its explicit requirement that Petra consent to any modification to a "Major Lease."

216. Notwithstanding Diamond Gaming's knowledge of BCP Florin's obligations under the Mezzanine Loan Agreement, Diamond Gaming entered into the Purported Amendment with AHE with the intention of influencing or inducing BCP Florin to violate its obligation under the Mezzanine Loan Agreement to obtain Petra's consent.

217. Diamond Gaming's conduct was wrongful and without reasonable justification or excuse.

218. Accordingly, Diamond Gaming is liable to Petra for tortiously interfering with BCP Florin's Mezzanine Loan Agreement with Petra.

219. The foregoing acts by Diamond Gaming were willful, intentional, malicious and purposeful, or in reckless disregard of, or with callous indifference to, Petra's rights.

220.  By reason of the foregoing, Petra is entitled to a judgment against Diamond Gaming in an amount to be determined at trial.

### THIRTEENTH CAUSE OF ACTION
### (Against Belfonti for Breach of the Implied Covenant of Good Faith and Fair Dealing)

221.  Petra repeats and realleges the allegations in paragraphs 1 through 220 as if fully set forth herein.

222.  The Guaranty has an implied in law covenant of good faith and fair dealing.

223.  The actions of Belfonti complained of herein were and are designed to impair Petra's ability to realize the full benefit of the Guaranty.  As such, Belfonti's actions constitute a breach of the implied covenant of good faith and fair dealing.

224.  Petra lacks an adequate remedy at law.

225.  By reason of the foregoing, Petra is entitled to a judgment against Belfonti in an amount to be determined at trial.

226.  By reason of the foregoing, Petra is also entitled to an injunction preventing Belfonti from taking any further action that would frustrate Petra's ability to realize the full benefit of the Guaranty.

### PRAYER FOR RELIEF

WHEREFORE, Petra prays for judgment against Defendants as follows:

1.      On the First Cause of Action: awarding compensatory damages to Petra as against the Belfontis, jointly and severally, in an amount to be determined at trial but that is believed to be in excess of $35,000,000.00;

2.      On the Second Cause of Action:  (a) awarding compensatory damages to Petra as against the Belfontis, jointly and severally, in an amount to be determined at trial; and

-38-

(b) granting Petra an injunction requiring the Belfontis to cause Belfonti, BCP and Diamond Gaming to fully perform the Guaranteed Obligations, including paying the full amount of the $275,000.00 monthly rental obligation under the Casino Lease, as well as any Additional Rent or other rental income due to AHE under the Casino Lease, for so long as the Casino Lease shall remain in effect;

2.     On the Third, Fourth, Fifth and Sixth Causes of Action:  (a) awarding compensatory and punitive damages to Petra as against Belfonti in an amount to be determined at trial; (b) imposing a constructive trust over funds transferred to him or any entity owned or controlled by him from Diamond Gaming, either directly or indirectly; and (c) granting Petra an injunction prohibiting Belfonti from further diminishing the value of Petra's security interest in AHE through further fraudulent conveyances;

3.     On the Seventh Cause of Action, awarding compensatory and punitive damages to Petra as against Belfonti in an amount to be determined at trial;

4.     On the Eighth, Ninth and Tenth Causes of Action:  (a) awarding compensatory and punitive damages to Petra as against BCP and Diamond Gaming in an amount to be determined at trial; (b) imposing a constructive trust over funds sufficient to allow Diamond Gaming to make the full amount of the $275,000.00 per month lease payments that AHE should be receiving, as well as any Additional Rent or other rental income due to AHE under the Casino Lease; and (c) granting Petra an injunction prohibiting Diamond Gaming and BCP from further diminishing the value of Petra's security interest in AHE through further fraudulent conveyances;

5.     On the Eleventh Cause of Action, awarding compensatory damages to Petra as against BCP Florin and Belfonti in an amount to be determined at trial;

6.     On the Twelfth Cause of Action, awarding compensatory and punitive damages to Petra as against Diamond Gaming in an amount to be determined at trial;

7.     On the Thirteenth Cause of Action: (a) awarding compensatory damages to Petra as against Belfonti in an amount to be determined at trial; and (b) granting Petra an injunction preventing Belfonti from taking any further action that would frustrate Petra's ability to realize the full benefit of the Guaranty.

8.     Awarding Petra its costs, disbursements and reasonable attorneys' fees; and

9.     Awarding Petra such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       July 23, 2007

PROSKAUER ROSE LLP

By: _____
    Richard Goldstein
    Michael T. Mervis
    Stacy L. Ceslowitz
    Patrick J. Dempsey
    1585 Broadway
    New York, New York  10036
    (212) 969-3000

*Attorneys for Plaintiff Petra Fund REIT Corp.*

-40-

# EXHIBIT B

---

28/H8531918        LAW OFFICE SJIEM FA                                    09 44 14 p m        08 21 2007        9 A

**SJIEM FAT & KUSTER**

Aan het Gerecht in
Eerste Aanleg van Aruba
Alhier

Geven eerbiedig te kennen:

De rechtspersonen naar het recht van de V.S :
-BELFONTI  HOLDINGS LLC, een limited liability company naar het recht van de
(deel)staat Delaware, gevestigd aldaar;
-BELFONTI CAPITAL PARTNERS LLC, een limited liability company naar het recht van
de staat Delaware, ook gevestigd aldaar;
-MCR PROPERTY MANAGEMENT INC, een corporation naar het recht van de staat
Connecticut, gevestigd en kantoorhoudende te Connecticut;
-CEB IRREVOCABLE TRUST, een irrevocable trust, waarvan de heer Dana Eric
Friedman optreedt als trustee;
Ten deze allen woonplaats kiezende aan de Emanstraat 49-A ten kantore van de
advocaten Sjiem Fat & Kuster, zijnde ieder der aan dit kantoor  verbonden advocaten
gemachtigd te occuperen in deze.

1. gedaagde ten deze is de Arubaanse naamloze vennootschap ARUBA HOTEL
   ENTERPRISES N.V., gevestigd en kantoorhoudende aan de J.E. Irausquin
   Boulevard # 77 te Aruba, hierna ook "AHE".

2. AHE is de eigenaar van het hotelgebouw gelegen aan de J.E. Irausquin
   Boulevard # 77 te Aruba, in welk gebouw thans het "Aruba Westin Resort"
   gevestigd is, hierna ook "het Hotel".

3. eisers hebben in 2006 en 2007 diverse betalingen aan AHE gedaan, dan wel ten
   behoeve van AHE aan derden, ten titel van geldlening, welke bedragen AHE,
   niettegenstaande ingebrekestelling, nog niet heeft terugbetaald.

4. eisers hebben derhalve een opeisbare vordering op AHE terzake deze aan AHE
   geleende gelden. De voormelde betalingen aan AHE kunnen als volgt
   gespecificeerd worden.

6. op 3 mei 2006 heeft  BELFONTI CAPITAL PARTNERS LLC een bedrag groot
   US$ 4.673.702.86 aan AHE geleend. Dit bedrag staat in AHE's boeken ook
   opgenomen als zijnde verschuldigd aan deze entiteit.

7. voorts hebben eisers diverse andere leningen aan AHE verstrekt. Te weten:
   a. op 25 juli 2006; lening van BELFONTI HOLDINGS LLC groot US$
      498.950.00 ten behoeve van werkkapitaal dat AHE nodig had ingevolge
      een met Westin Aruba Hotel Management LLC gesloten exploitatie-
      overeenkomst m.b.t. het Hotel.

1

9074563010        LAW OFFICE SJIEM FA                                          09 44 56 p m      08 21 2007        3 b

b.    op 8 december 2006; betaling VAN BELFONTI CAPITAL PARTNERS LLC aan WACHOVIA NATIONAL BANK ASSOCIATION, hierna WACHOVIA, groot US$ 393.000.00, zodat AHE aan haar maandelijkse aflossingsverplichting kon voldoen, jegens deze bank, tevens hypotheekhouder, die de aankoop van het hotel gefinancierd had, middels een lening groot US$ 230 miljoen.

c.    op of omstreeks 8 januari 2006; lening van MCR PROPERTY MANAGEMENT INC groot US$ 1,307.611,80 zodat AHE de maandelijkse aflossing aan WACHOVIA kon voldoen. Betaling van dit bedrag geschiedde aan het advocatenkantoor Harlow, Adams & Friedman, PC, die vervolgens dit bedrag heeft overgemaakt naar WACHOVIA ten behoeve van AHE.

d.    op 8 januari 2006; lening van CEB IRREVOCABLE TRUST groot US$ 548.250,--, zodat AHE de maandelijkse aflossing aan WACHOVIA kon voldoen. Dit bedrag werd door DANA FRIEDMAN rechtstreeks aan WACHOVIA betaald ten behoeve van AHE.

e.    op 9 maart 2007; lening van MCR PROPERTY MANAGEMENT INC groot US$ 1,161,874.--, zodat AHE de maandelijkse aflossing aan WACHOVIA kon voldoen.

9.    eisers hebben er derhalve recht op en belang bij deze vordering in te stellen tegen AHE. Zij verwijzen naar de aangehechte spreadsheet voor een ander overzicht van de bedoelde betalingen / leningen.

DAT MITSDIEN EGA moge behagen om AHE te veroordelen bij vonnis uitvoerbaar bij voorraad aan eisers de volgende betalingen te doen:

-BELFONTI HOLDINGS LLC                    US$ 499.950,--
-BELFONTI CAPITAL PARTNERS LLC            US$ 5.206.702,96
-MCR PROPERTY MANAGEMENT INC              US$ 2.459.485,90
-CEB IRREVOCABLE TRUST                    US$ 548. 250.--

een en ander vermeerderd met de wettelijke rente vanaf heden. Kosten rechtens.


                                        Johan P. Sjiem Fat, advocaat


Aruba, .... augustus 2007


                                                              2

28749831918     LAW OFFICE SLIM-M FA                        02 45 36 p m   08 21 2007      4 /b

| | | | | |
|---|---|---|---|---|
| May 3, 2006 | US$4,873,702.86 | Belfonti Capital Partners LLC | AHE | Operating expenses |
| July 25, 2006 | US$499,950 | Belfonti Holdings LLC | AHE | Loan for AHE's working capital contribution to Starwood |
| December 8, 2006 | US$393,000 | Belfonti Capital Partners LLC | Wachovia | AHE mortgage payment |
| January 8, 2006 | US$1,307,611.80 | MCR Property Management, Inc. | Harlow, Adams & Friedman, P.C. | AHE mortgage payment |
| January 8, 2006 | US$1,307,611.80 | Harlow, Adams & Friedman, P.C. | Wachovia | AHE mortgage payment [same funds as above entry] |
| January 8, 2006 | US$548,250.00 | CHB Irrevocable Trust | Wachovia | AHE mortgage payment |
| March 9, 2007 | US$1,161,874 | MCR Property Management, Inc. | Wachovia | AHE mortgage payment |

## Sjiem Fat & Kuster

To the Court
Of First Instance in Aruba
Of this city.

Wishes to state respectfully:

The legal entities under the law of the United States of America:
- **BELFONTI HOLDINGS LLC,** a limited liability company under the law of the (federal) state of Delaware, statutorily based there;
- **BELFONTI CAPITAL PARTNERS LLC,** a limited liability company under the law of the state of Delaware, also statutorily based there;
- **MCR PROPERTY MANAGEMENT INC,** a property under the law of the state of Connecticut, statutorily based and holding offices in Connecticut;
- **CEB IRREVOCABLE TRUST,** an irrevocable trust, for which Mr. Dana Eric Friedman acts as the trustee:

For this case all selecting residence at the Emanstraat 49-A at the offices of Sjiem Fat & Kuster, of which each of its associated attorneys are authorized to appear in the case at hand.

1. The defendant in this case is the Aruba public limited company **ARUBA HOTEL ENTERPRISES N.V.,** statutorily based at and holding offices at the J. E. Irausquin Boulevard # 77 in Aruba, hereafter also referred to as "AHE"

2. AHE is the owner of the hotel property located at the J. E. Irausquin Boulevard # 77 in Aruba, in which building the "Aruba Westin Resort", hereafter also referred to as "the Hotel" is based

3. The plaintiffs have made various payments to AHE in 2006 and 2007, or to third parties on behalf of AHE, under the heading of money loan, which amounts AHE has not yet paid back, despite the fact that they have been served with a notice of default

4. The plaintiffs therefore have a due and payable claim against AHE in this case for the monies loaned to AHE. The afore-mentioned payments to AHE can be specified as follows.

5. On May 3, 2006 BELFONTI CAPITAL PARTNERS LLC has lent an amount the size of US$ 4,873,702.86 to Belfonti. This amount is also included in the ledgers of AHE as being owed to this entity.

6. Furthermore, the plaintiffs have provided various other loans to AHE. To wit:
    a. On July 25, 2006: loan by the BELFONTI HOLDINGS LLC in the amount of US$ 499,950.00 for the purpose of working capital that AHE needed as result of an operating agreement entered into with Westin Aruba Hotel Management LLC pertaining to the Hotel

   b. On December 8, 2006: payment BY BELFONTI CAPITAL PARTNERS LLC to WACHOVIA NATIONAL BANK ASSOCIATION, hereafter referred to as WACHOVIA, in the amount of US$ 393,000.00 so AHE could meet its' monthly monthly [sic] repayment obligation towards this bank, also the mortgage holder, which had financed the purchase of the Hotel, through a loan in the amount of US$ 230 million

   c. On or around January 8, 2006: loan by the MCR PROPERTY MANAGEMENT INC. in the amount of US$ 1,307,611.80 so AHE could meet its' monthly repayment to WACHOVIA. Payment of this amount took place at the attorney's office of Harlow, Adams & Friedman, PC, who subsequently transferred this amount to WACHOVIA on behalf of AHE

   d. On January 8, 2006: loan by the CEB IRREVOCABLE TRUST in the amount of US$ 548,250.00 so AHE could meet its' monthly repayment to WACHOVIA. This amount was paid directly to WACHOVIA by DANA FRIEDMAN on behalf of AHE

   e. On March 7, 2007: loan by the MCR PROPERTY MANAGEMENT INC. in the amount of US$ 1,161,874.00 so AHE could meet its' monthly repayment to WACHOVIA.

9. Plaintiffs as such have the right and interest in filing this demand against AHE. They point to the attached spreadsheet for another overview of the indicated payments/loans.

**THAT CONSEQUENTLY THE COURT OF FIRST INSTANCE** may be pleased by to issue a provisionally enforceable judgment to have the following payments paid to the plaintiffs:

| | |
|---|---|
| - BELFONTI HOLDINGS LLC | **US$ 499,950.00** |
| - BELFONTI CAPITAL PARTNERS LLC | **US$ 5,266,702.00** |
| - MCR PROPERTY MANAGEMENT INC | **US$ 2,469,485.80** |
| - CEB IRREVOCABLE TRUST | **US$ 548,250.00** |

All of which increased by the legally chargeable interest as of today. Costs to be determined by the Court.

Johan. P. Sjiem Fat, Attorney

Aruba, ... August 2007