# EXHIBIT B

Aruba

## LOAN AND SECURITY AGREEMENT
### (Mezzanine Loan)

THIS LOAN AND SECURITY AGREEMENT (this "Agreement") is made as of the 9th day of June 2006, between BCP FLORIN, LLC, a Delaware limited liability company, having an address c/o Belfonti Capital Partners 31 West 52nd Street, Suite 1770, New York, New York 10019 ("Borrower") and PETRA MORTGAGE CAPITAL CORP. LLC, having an address at 1370 Avenue of the Americas, 23rd Floor, New York, New York 10019 ("Lender").

## W I T N E S S E T H:

WHEREAS, Aruba Hotel Enterprises N.V., a limited liability company (naamloze vennootschap) incorporated under the laws of Aruba ("Owner"), is the owner of the leasehold estate in the premises described in Exhibit A attached hereto and all buildings, foundations, structures, and improvements of any kind or nature now or hereafter located thereon (collectively, the "Premises");

WHEREAS, Twilight Holdings, LLC, a Delaware limited liability company ("Twilight"), BCP Sunset Holdings N.V., a limited liability company (naamloze vennootschap) incorporated under the laws of the Netherlands Antilles, BCP Sunset II Holdings N.V., a limited liability company (naamloze vennootschap) incorporated under the laws of the Netherlands Antilles, and AHE Holding N.V., a limited liability company (naamloze vennootschap) incorporated under the laws of Aruba (collectively, "Equity Holders") are the direct or indirect owners of one hundred percent (100%) of the equity in Owner;

WHEREAS, Borrower is the present owner and holder directly of one hundred percent (100%) of the equity in Twilight, evidenced by Certificate No. 1 (the "Certificate"), a copy of which is attached hereto as Schedule 5, which is the present owner and holder directly or indirectly of one hundred percent (100%) of the equity in the other Equity Holders and Owner;

WHEREAS, Owner delivered certain promissory notes (collectively, the "Mortgage Note") to WIBC Aruba N.V., a limited liability company (naamloze vennootschap) incorporated under the laws of Aruba ("Mortgage Lender"), which evidences a loan (the "Mortgage Loan") in the original principal amount of $230,000,000 made pursuant to a loan agreement (the "Mortgage Loan Agreement") which is secured by a mortgage (the "Mortgage" and together with the Mortgage Note, the Mortgage Loan Agreement and all other documents executed and delivered in connection with the making of the Mortgage Loan, collectively, the "Mortgage Loan Documents") encumbering the Premises;

WHEREAS, Lender has agreed to make a loan (the "Loan") to Borrower, which Loan, together with interest thereon, shall be evidenced by and payable in accordance with the provisions of the promissory note issued by Borrower, as maker, to Lender, as holder (the "Note", and together with this Agreement and all other documents executed and delivered in connection with the making of the Loan, collectively, the "Loan Documents") in the original principal amount of $19,450,000 (the "Loan Amount" and together with interest and all other sums which may or shall become due or to which Lender shall be entitled under the Note or this

Agreement or the other Loan Documents being hereinafter collectively referred to as the "Debt"); and

WHEREAS, Lender is willing to make the Loan to Borrower only if Borrower grants and assigns to Lender, as security for the payment of the Debt and the observance and performance by Borrower of all of the terms, covenants and provisions of the Note and the other Loan Documents on the part of Borrower to be observed and performed, a security interest in the Collateral (hereinafter defined) in the manner hereinafter set forth;

NOW, THEREFORE, in consideration of the making of the Loan and other good and valuable consideration, the receipt of which is hereby acknowledged, Borrower hereby represents and warrants to and covenants and agrees with Lender as follows:

## ARTICLE I. DEFINITIONS

Section 1.01. Defined Terms. Capitalized terms used herein that are not otherwise defined shall have the respective meanings ascribed thereto in the definitions list on Exhibit C attached hereto and if not defined therein shall have the meaning set forth in the Mortgage Loan Agreement. Any references to defined terms or provisions of the Mortgage Loan Agreement incorporated by reference in the Loan Documents shall survive the repayment of the Mortgage Loan and termination of the Mortgage Loan Agreement unless expressly agreed to the contrary by the parties hereto. All citations to the Mortgage Loan Agreement in this Agreement shall refer to the Mortgage Loan Agreement as it exists as of the date of this Agreement; provided, however, that in the event the cited provision is amended and such amendment is approved in writing by Lender, then such citation shall be to the amended provision. All references to sections and schedules are to sections and schedules in or to this Agreement unless otherwise specified.

## ARTICLE II. REPRESENTATIONS, COVENANTS AND WARRANTIES OF BORROWER

Section 2.01. Pledge of Collateral. (a) As security for the due and punctual payment and performance of all of the Debt (whether at stated maturity, by required prepayment, declaration, acceleration, demand or otherwise, including, without limitation, the payment of amounts that would become due but for the operation of the automatic stay under Section 362(a) of the Bankruptcy Code, 11 U.S.C. §362(a)), whether allowed or allowable as claims, and the observance and performance by Borrower of all of the terms, covenants and provisions of the Note and the other Loan Documents on the part of Borrower to be observed or performed, Borrower hereby (i) pledges, transfers, grants, hypothecates and assigns to Lender all of Borrower's right, title and interest in, to and under the Collateral, whether now or hereafter acquired, and (ii) grants to Lender a continuing first priority lien on and security interest in and to all Collateral in which Borrower now or hereafter has rights. For the better perfection of Lender's rights in and to the Pledged Interests, Borrower shall cause such Pledged Interests to be registered in the name of such nominee or nominees of Lender as Lender shall direct subject only to the revocable rights specified in Article II. Lender is hereby authorized: (i) to transfer to the account of Lender or its designee any Pledged Interests whether in the possession of, or registered in the name of, The Depository Trust Company (the "DTC") or other clearing

corporation or held otherwise; (ii) to transfer to the account of Lender or its designee with any Federal Reserve Bank any Pledged Interests held in book entry form with any such Federal Reserve Bank; and (iii) to exchange certificates representing or evidencing the Pledged Interests for certificates of smaller or larger denominations. To the extent that the Pledged Interests have not already been transferred to Lender or its designee in a manner sufficient to perfect Lender's security interest therein, Borrower shall promptly deliver or cause to be delivered to Lender all certificates or instruments evidencing the Pledged Interests, together with duly executed transfer powers or other appropriate endorsements. With respect to any Collateral in the possession of or registered in the name of a custodian bank or nominee therefor, or any Collateral represented by entries on the books of any financial intermediary, Borrower agrees to cause such custodian bank or nominee either to enter into an agreement with Lender satisfactory to Lender in form and content confirming that the Collateral is held for the account of Lender, or at the discretion of Lender and subject to the written instructions of Lender, deliver any such Collateral to Lender and/or cause any such Collateral to be put in bearer form, registered in the name of Lender or its nominee, or transferred to the account of Lender with any Federal Reserve Bank, DTC, or other clearing corporation. With respect to any Collateral held in an account maintained by Lender as financial intermediary, Borrower hereby gives notice to Lender of Lender's security interest in such Collateral. In addition, Borrower agrees that in the event that any Collateral is held by Lender in a fiduciary capacity for or on behalf of Borrower as the beneficial owner thereof, any agreements executed by Borrower in connection therewith are hereby amended to authorize and direct the pledge, hypothecation and/or transfer of such Collateral to Lender, as lender, by Lender, as fiduciary, in accordance with the terms, covenants and conditions of this Agreement. The rights granted to Lender pursuant to this Agreement are in addition to the rights granted to Lender pursuant to any such agreements. In case of conflict between the provisions of this Agreement and those of any other such agreement, the provisions hereof shall prevail. In the event that Borrower purchases or otherwise acquires or obtains any additional Equity Interests in any Corporation, LLC or Partnership, or any rights, or options, subscriptions or warrants to acquire such Equity Interests, all such Equity Interests, rights, options, subscriptions or warrants shall automatically be deemed to be a part of the Collateral pledged by Borrower. If any such Equity Interests are to be evidenced by a certificate, such additional certificates shall be promptly delivered to Lender, together with Powers related thereto, or other instruments appropriate to a certificate representing an Equity Interest, duly executed in blank. Borrower shall deliver to Lender all subscriptions, warrants, options and all such other rights, and upon delivery to Lender, Lender shall hold such subscriptions, warrants, options and other rights as additional collateral pledged to secure the Debt; provided, however, that if Lender determines, in its sole discretion, that the value of any such subscriptions, warrants, options or other rights shall terminate, expire or be materially reduced in value by holding the same as Collateral, Lender shall have the right (but not the obligation), in its sole discretion, to sell or exercise the same, and if exercised, then the monies disbursed by Lender in connection therewith shall become part of the Debt and all of the stock, securities, evidences of indebtedness and other items so acquired shall be titled in the name of Borrower and shall become part of the Collateral.

Section 2.02. <u>Representations of Borrower</u>. Borrower represents and warrants to Lender:

(a)    <u>Existence</u>. Borrower (i) is a limited liability company, general partnership, limited partnership or corporation, as the case may be, duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation, (ii) has all requisite power and

authority and all necessary licenses and permits to enter into the transactions contemplated by the Note and this Agreement and to carry on its business as now conducted and as presently proposed to be conducted and (iii) is duly qualified, authorized to do business and in good standing in each jurisdiction where the conduct of its business or the nature of its activities makes such qualification necessary. If Borrower is a limited liability company, limited partnership or general partnership, each general partner or managing member, as applicable, of Borrower which is a corporation is duly organized, validly existing, and in good standing under the laws of the jurisdiction of its incorporation.

(b)     Power.  Borrower and, if applicable, each General Partner has full power and authority to execute, deliver and perform, as applicable, the Loan Documents to which it is a party, to make the borrowings thereunder, to execute and deliver the Note and to grant to Lender a first priority, perfected and continuing lien on and security interest in the Collateral.

(c)     Authorization of Borrower.  The execution, delivery and performance of the Loan Documents to which Borrower is a party, the making of the borrowings thereunder, the execution and delivery of the Note, the grant of the lien and security interest on and in the Collateral pursuant to the Loan Documents to which Borrower is a party and the consummation of the Loan are within the powers of Borrower and have been duly authorized by Borrower and, if applicable, the General Partners, by all requisite action (and Borrower hereby represents that no approval or action of any member, limited partner or shareholder, as applicable, of Borrower is required to authorize any of the Loan Documents to which Borrower is a party) and will constitute the legal, valid and binding obligation of Borrower, enforceable against Borrower in accordance with their terms, except as enforcement may be stayed or limited by bankruptcy, insolvency or similar laws affecting the enforcement of creditors' rights generally and by general principles of equity (whether considered in proceedings at law or in equity) and will not (i) violate any provision of its Organizational Documents, or, to its knowledge, any law, judgment, order, rule or regulation of any court, arbitration panel or other Governmental Authority, domestic or foreign, or other Person affecting or binding upon Borrower or the Collateral, or (ii) violate any provision of any indenture, agreement, mortgage, deed of trust, contract or other instrument to which Borrower or, if applicable, any General Partner is a party or by which any of their respective property, assets or revenues are bound, or be in conflict with, result in an acceleration of any obligation or a breach of or constitute (with notice or lapse of time or both) a default or require any payment or prepayment under, any such indenture, agreement, mortgage, deed of trust, contract or other instrument, or (iii) result in the creation or imposition of any lien, except those in favor of Lender as provided in the Loan Documents to which it is a party.

(d)     Consent.  Neither Borrower nor, if applicable, any General Partner, is required to obtain any consent, approval or authorization from, or to file any declaration or statement with, any Governmental Authority or other agency in connection with or as a condition to the execution, delivery or performance of this Agreement, the Note or the other Loan Documents which has not been so obtained or filed.

(e)     Interest Rate.  The rate of interest paid under the Note and the method and manner of the calculation thereof do not violate any usury or other law or applicable Legal Requirement.

(f)     Other Agreements.  Borrower is not a party to or otherwise bound by any

4

agreements or instruments which, individually or in the aggregate, are reasonably likely to have a Material Adverse Effect. Neither Borrower nor, if applicable, any General Partner, is in violation of its organizational documents or other restriction or any agreement or instrument by which it is bound, or any judgment, decree, writ, injunction, order or award of any arbitrator, court or Governmental Authority, or any Legal Requirement, in each case, applicable to Borrower, except for such violations that would not, individually or in the aggregate, have a Material Adverse Effect.

(g)    Maintenance of Existence. (i) Borrower and, if applicable, each General Partner at all times since their formation have been duly formed and existing at all times and at all times has preserved and shall preserve and has kept and shall keep in full force and effect their existence as a Single Purpose Entity.

(ii)    Borrower and, if applicable, each General Partner, at all times since their organization have complied, and will continue to comply, with the provisions of its certificate of limited partnership and agreement of limited partnership or certificate of incorporation and by-laws or articles of organization, certificate of formation and operating agreement, as applicable, and the laws of its jurisdiction of organization relating to partnerships, corporations or limited liability companies, as applicable.

(iii)    Borrower and, if applicable, each General Partner have done or caused to be done and will do all things necessary to observe organizational formalities and preserve their existence and Borrower and, if applicable, each General Partner will not amend, modify or otherwise change the certificate of limited partnership and agreement of limited partnership or certificate of incorporation and by-laws or articles of organization, certificate of formation and operating agreement, as applicable, or other organizational documents of Borrower and, if applicable, each General Partner.

(iv)    Borrower and, if applicable, each General Partner, have at all times accurately maintained, and will continue to accurately maintain, their respective financial statements, accounting records and other partnership, company or corporate documents separate from those of any other Person and Borrower, have filed and will file its own tax returns or, if Borrower and/or, if applicable, General Partner is part of a consolidated group for purposes of filing tax returns, Borrower and, General Partner, as applicable, has been shown and will be shown as separate members of such group. Borrower and, if applicable, each General Partner have not at any time since their formation commingled, and will not commingle, their respective assets with those of any other Person and each has maintained and will maintain their assets in such a manner such that it will not be costly or difficult to segregate, ascertain or identify their individual assets from those of any other Person. Borrower and, if applicable, each General Partner has not permitted and will not permit any Affiliate independent access to their bank accounts. Borrower and, if applicable, each General Partner have at all times since their formation accurately maintained and utilized, and will continue to accurately maintain and utilize, their own separate bank accounts, payroll and separate books of account, stationery, invoices and checks.

(v)    Borrower and, if applicable, each General Partner, have at all times paid, and will continue to pay, their own liabilities from their own separate assets and each has

allocated and charged and shall each allocate and charge fairly and reasonably any overhead which Borrower and, if applicable, any General Partner, shares with any other Person, including, without limitation, for office space and services performed by any employee of another Person.

(vi)     Borrower and, if applicable, each General Partner, have at all times identified themselves, and will continue to identify themselves, in all dealings with the public, under their own names and as separate and distinct entities and shall correct any known misunderstanding regarding their status as separate and distinct entities. Borrower and, if applicable, each General Partner, have not at any time identified themselves, and will not identify themselves, as being a division of any other Person.

(vii)     Borrower and, if applicable, each General Partner, have been at all times, and will continue to be, adequately capitalized in light of the nature of their respective businesses.

(viii)     Borrower and, if applicable, each General Partner, (A) have not owned, do not own and will not own any assets or property other than the Collateral, (B) have not engaged and will not engage in any business other than the ownership, management and servicing of the Collateral, (C) have not incurred and will not incur any debt, secured or unsecured, direct or contingent (including guaranteeing any obligation), other than, with respect to Borrower the Loan, (D) have not pledged and will not pledge their assets for the benefit of any other Person, and (E) have not made and will not make any loans or advances to any Person (including any Affiliate).

(ix)     Neither Borrower nor, if applicable, any General Partner will change its name or principal place of business.

(x)     Neither Borrower nor, if applicable, any General Partner has, and neither of such Persons will have, any subsidiaries (other than, (A) with respect to General Partner, Borrower, Owner and the Equity Holders, and (B) with respect to Borrower, Owner and the Equity Holders).

(xi)     Borrower has preserved and maintained and will preserve and maintain its existence as a Delaware limited liability company and all material rights, privileges, tradenames and franchises.

(xii)     Neither Borrower, nor, if applicable, any General Partner, will merge or consolidate with, or sell all or substantially all of its respective assets to any Person, or liquidate, wind up or dissolve itself (or suffer any liquidation, winding up or dissolution). Neither Borrower, nor, if applicable, any General Partner has acquired nor will acquire any business or assets from, or capital stock or other ownership interest of, or be a party to any acquisition of, any Person.

(xiii)     Borrower and, if applicable, each General Partner, have not at any time since their formation assumed, guaranteed or held themselves out to be responsible for, and will not assume, guarantee or hold themselves out to be responsible for the liabilities or the decisions or actions respecting the daily business affairs of their partners, shareholders or members or any predecessor company, corporation or partnership, each as applicable, any Affiliates, or any other

6

Persons. Borrower and, if applicable, each General Partner, have not at any time since their formation acquired, and will not acquire, obligations or securities of its partners or shareholders, members or any predecessor company, corporation or partnership, each as applicable, or any Affiliates (other than, with respect to General Partner, its interest in Borrower). Borrower and, if applicable, each General Partner, have not at any time since their formation made, and will not make, loans to its partners, members or shareholders or any predecessor company, corporation or partnership, each as applicable, or any Affiliates of any of such Persons. Borrower and, if applicable, each General Partner, have no known contingent liabilities nor do they have any material financial liabilities under any indenture, mortgage, deed of trust, loan agreement or other agreement or instrument to which such Person is a party or by which it is otherwise bound other than under the Loan Documents.

(xiv) Borrower and, if applicable, each General Partner, have not at any time since their formation entered into and was not a party to, and, will not enter into or be a party to, any transaction with its Affiliates, members, partners or shareholders, as applicable, or any Affiliates thereof except in the ordinary course of business of such Person on terms which are no less favorable to such Person than would be obtained in a comparable arm's length transaction with an unrelated third party.

(xv) If Borrower is a limited partnership or a limited liability company, the General Partner shall be a corporation or limited liability company whose sole asset is its interest in Borrower and the General Partner will at all times comply, and will cause Borrower to comply, with each of the representations, warranties, and covenants contained in this Section 2.02(g) as if such representation, warranty or covenant was made directly by such General Partner.

(xvi) Borrower shall at all times cause there to be at least two duly appointed members (each, an "Independent Director") of the board of directors or board of managers or other governing board or body, as applicable, of, if Borrower is a corporation, Borrower, if Borrower is a limited partnership, of the General Partner, and if Borrower is a limited liability company, of the General Partner or of Borrower, reasonably satisfactory to Lender who shall not have been at the time of such individual's appointment, and may not be or have been at any time (A) a shareholder, officer, director, attorney, counsel, partner, member or employee of Borrower or any of the foregoing Persons or Affiliates thereof, (B) a customer or creditor of, or supplier or service provider to, Borrower or any of its shareholders, partners, members or their Affiliates, (C) a member of the immediate family of any Person referred to in (A) or (B) above or (D) a Person Controlling, Controlled by or under common Control with any Person referred to in (A) through (C) above.

(xvii) Borrower and, if applicable, each General Partner, shall not cause or permit the board of directors or board of managers or other governing board or body, as applicable, of Borrower or, if applicable, each General Partner, to take any action which, under the terms of any certificate of incorporation, by-laws certificate of formation, operating agreement or articles of organization with respect to any common stock, requires a vote of the board of directors of Borrower, or, if applicable, the General Partner, unless at the time of such action there shall be at least two members who are Independent Directors.

(xviii)  Borrower and, if applicable, each General Partner has paid and shall pay the salaries of their own employees and has maintained and shall maintain a sufficient number of employees in light of their contemplated business operations.

(xix)  Borrower shall, and shall cause its Affiliates to, conduct its business so that the assumptions made with respect to Borrower and, if applicable, each General Partner, in that certain opinion letter relating to substantive non-consolidation dated the date hereof (the "Insolvency Opinion") delivered in connection with the Loan shall be true and correct in all respects.

Notwithstanding anything to the contrary contained in this Section 2.02(g), provided Borrower is a Delaware single member limited liability company which satisfies the single purpose bankruptcy remote entity requirements of each Rating Agency for a single member limited liability company, the foregoing provisions of this Section 2.02(g) shall not apply to the General Partner.

(h)  No Default.  No Default or Event of Default has occurred and is continuing or would occur as a result of the consummation of the transactions contemplated by the Loan Documents.  Borrower is not in default in the payment or performance of any of its Contractual Obligations in any respect.

(i)  Governmental Consents and Approvals.  Borrower and, if applicable, each General Partner, have obtained or made all necessary (i) consents, approvals and authorizations, and registrations and filings of or with all Governmental Authorities and (ii) consents, approvals, waivers and notifications of partners, stockholders, members, creditors, lessors and other nongovernmental Persons, in each case, which are required to be obtained or made by Borrower or, if applicable, the General Partner, in connection with the execution and delivery of, and the performance by Borrower of its obligations under, the Loan Documents.

(j)  Investment Company Act Status, etc.  Borrower is not (i) an "investment company," or a company "controlled" by an "investment company," as such terms are defined in the Investment Company Act of 1940, as amended, (ii) a "holding company" or a "subsidiary company" of a "holding company" or an "affiliate" of either a "holding company" or a "subsidiary company" within the meaning of the Public Utility Holding Company Act of 1935, as amended, or (iii) subject to any other federal or state law or regulation which purports to restrict or regulate its ability to borrow money.

(k)  Compliance with Law.  Borrower is and shall remain in compliance in all material respects with all Legal Requirements to which it or the Collateral are subject, including, without limitation, ERISA.

(l)  Transaction Brokerage Fees.  Borrower has not dealt with any financial advisors, brokers, underwriters, placement agents, agents or finders in connection with the transactions contemplated by this Agreement.  All brokerage fees, commissions and other expenses payable in connection with the transactions contemplated by the Loan Documents have been paid in full by Borrower contemporaneously with the execution of the Loan Documents and the funding of the Loan.  Borrower hereby agrees to indemnify and hold Lender harmless for, from and against

any and all claims, liabilities, costs and expenses of any kind in any way relating to or arising from (i) a claim by any Person that such Person acted on behalf of Borrower in connection with the transactions contemplated herein or (ii) any breach of the foregoing representation. The provisions of this subsection (l) shall survive the repayment of the Loan.

(m)   Federal Reserve Regulations.  No part of the proceeds of the Loan will be used for the purpose of "purchasing" or "carrying" any "margin stock" within the meaning of Regulations T, U or X of the Board of Governors of the Federal Reserve System or for any other purpose which would be inconsistent with such Regulations T, U or X or any other Regulations of such Board of Governors, or for any purposes prohibited by Legal Requirements or by the terms and conditions of the Loan Documents.

(n)   Pending Litigation.  There are no actions, suits or proceedings pending or, to the best knowledge of Borrower, threatened against or affecting Borrower, Equity Holders, Owner, Guarantor or the Premises in any court or before any Governmental Authority which if adversely determined either individually or collectively has or is reasonably likely to have a Material Adverse Effect. The High Point Litigation will not affect the ability of Borrower, Guarantor or any other Person to carry out the transactions contemplated in this Agreement or the Mortgage Loan Documents or to operate the Property, renovate the Hotel and implement the transactions contemplated herein (or in any of the other Loan Documents), in the Mortgage Loan Documents and/or in the Management Agreements and Starwood Agreements. The equity interest (e.g., shares, limited liability company interest, etc.) in Twilight, each other Equity Holder and Owner are free (beyond any final appeal) of any restriction, embargo or injunction restricting transfer, and no such restriction, embargo or injunction is in place or continues on the date hereof.

(o)   Solvency; No Bankruptcy.  Each of Borrower and, if applicable, the General Partner, (i) is and has at all times been Solvent and will remain Solvent immediately upon the consummation of the transactions contemplated by the Loan Documents and (ii) is free from bankruptcy, reorganization or arrangement proceedings or a general assignment for the benefit of creditors and is not contemplating the filing of a petition under any state or federal bankruptcy or insolvency laws or the liquidation of all or a major portion of such Person's assets or property and Borrower has no knowledge of any Person contemplating the filing of any such petition against it or, if applicable, the General Partner. None of the transactions contemplated hereby will be or have been made with an intent to hinder, delay or defraud any present or future creditors of Borrower and Borrower has received reasonably equivalent value in exchange for its obligations under the Loan Documents. Borrower's assets do not, and immediately upon consummation of the transaction contemplated in the Loan Documents will not, constitute unreasonably small capital to carry out its business as presently conducted or as proposed to be conducted. Borrower does not intend to, nor believe that it will, incur debts and liabilities beyond its ability to pay such debts as they may mature.

(p)   Use of Proceeds.  The proceeds of the Loan shall be applied by Borrower to, inter alia, (i) acquire an interest in the Collateral, (ii) pay certain transaction costs incurred by Borrower in connection with the Loan and (iii) and for any other lawful purpose.  No portion of the proceeds of the Loan will be used for family, personal, agricultural or household use.

(q)   Tax Filings.  Borrower and, if applicable, each General Partner, have filed all

9

federal, state and local tax returns required to be filed and have paid or made adequate provision for the payment of all federal, state and local taxes, charges and assessments payable by Borrower and, if applicable, the General Partners. Borrower and, if applicable, the General Partners, believe that their respective tax returns properly reflect the income and taxes of Borrower and said General Partner, if any, for the periods covered thereby, subject only to reasonable adjustments required by the Internal Revenue Service or other applicable tax authority upon audit.

(r)    Not Foreign Person.  Borrower is not a "foreign person" within the meaning of §1445(f)(3) of the Code.

(s)    ERISA.  (i)  The assets of Borrower are not and will not become treated as "plan assets", whether by operation of law or under regulations promulgated under ERISA. Each Plan and Welfare Plan, and, to the knowledge of Borrower, each Multiemployer Plan, is in compliance in all material respects with, and has been administered in all material respects in compliance with, its terms and the applicable provisions of ERISA, the Code and any other applicable Legal Requirement, and no event or condition has occurred and is continuing as to which Borrower would be under an obligation to furnish a report to Lender under clause (ii)(A) of this Section.  Other than an application for a favorable determination letter with respect to a Plan, there are no pending issues or claims before the Internal Revenue Service, the United States Department of Labor or any court of competent jurisdiction related to any Plan or Welfare Plan under which Borrower or any ERISA Affiliate, directly or indirectly (through an indemnification agreement or otherwise), could be subject to any material risk of liability under Section 409 or 502(i) of ERISA or Section 4975 of the Code.  No Welfare Plan provides or will provide benefits, including, without limitation, death or medical benefits (whether or not insured) with respect to any current or former employee of Borrower or any ERISA Affiliate beyond his or her retirement or other termination of service other than (A) coverage mandated by applicable law, (B) death or disability benefits that have been fully provided for by fully paid up insurance or (C) severance benefits.

(ii)    Borrower will furnish to Lender as soon as possible, and in any event within ten (10) days after Borrower knows or has reason to believe that any of the events or conditions specified below with respect to any Plan, Welfare Plan or Multiemployer Plan has occurred or exists, an Officer's Certificate setting forth details respecting such event or condition and the action, if any, that Borrower or its ERISA Affiliate proposes to take with respect thereto (and a copy of any report or notice required to be filed with or given to PBGC (or any other relevant Governmental Authority) by Borrower or an ERISA Affiliate with respect to such event or condition, if such report or notice is required to be filed with the PBGC or any other relevant Governmental Authority:

(A)    any reportable event, as defined in Section 4043 of ERISA and the regulations issued thereunder, with respect to a Plan, as to which PBGC has not by regulation waived the requirement of Section 4043(a) of ERISA that it be notified within thirty (30) days of the occurrence of such event (provided that a failure to meet the minimum funding standard of Section 412 of the Code and of Section 302 of ERISA, including, without limitation, the failure to make on or before its due date a required installment under Section 412(m) of the Code and of

Section 302(e) of ERISA, shall be a reportable event regardless of the issuance of any waivers in accordance with Section 412(d) of the Code), and any request for a waiver under Section 412(d) of the Code for any Plan;

(B)    the distribution under Section 4041 of ERISA of a notice of intent to terminate any Plan or any action taken by Borrower or an ERISA Affiliate to terminate any Plan;

(C)    the institution by PBGC of proceedings under Section 4042 of ERISA for the termination of, or the appointment of a trustee to administer, any Plan, or the receipt by Borrower or any ERISA Affiliate of a notice from a Multiemployer Plan that such action has been taken by PBGC with respect to such Multiemployer Plan;

(D)    the complete or partial withdrawal from a Multiemployer Plan by Borrower or any ERISA Affiliate that results in liability under Section 4201 or 4204 of ERISA (including the obligation to satisfy secondary liability as a result of a purchaser default) or the receipt by Borrower or any ERISA Affiliate of notice from a Multiemployer Plan that it is in reorganization or insolvency pursuant to Section 4241 or 4245 of ERISA or that it intends to terminate or has terminated under Section 4041A of ERISA;

(E)    the institution of a proceeding by a fiduciary of any Multiemployer Plan against Borrower or any ERISA Affiliate to enforce Section 515 of ERISA, which proceeding is not dismissed within thirty (30) days;

(F)    the adoption of an amendment to any Plan that, pursuant to Section 401(a)(29) of the Code or Section 307 of ERISA, would result in the loss of tax-exempt status of the trust of which such Plan is a part if Borrower or an ERISA Affiliate fails to timely provide security to the Plan in accordance with the provisions of said Sections; or

(G)    the imposition of a lien or a security interest in connection with a Plan.

(iii)    Borrower shall not knowingly engage in or permit any transaction in connection with which Borrower or any ERISA Affiliate could be subject to either a civil penalty or tax assessed pursuant to Section 502(i) or 502(l) of ERISA or Section 4975 of the Code, permit any Welfare Plan to provide benefits, including without limitation, medical benefits (whether or not insured), with respect to any current or former employee of Borrower or any ERISA Affiliate beyond his or her retirement or other termination of service other than (A) coverage mandated by applicable law, (B) death or disability benefits that have been fully provided for by paid up insurance or otherwise or (C) severance benefits, permit the assets of Borrower to become "plan assets", whether by operation of law or under regulations promulgated under ERISA or adopt, amend (except as may be required by applicable law) or increase the amount of any benefit or amount payable under, or permit any ERISA Affiliate to adopt, amend (except as may be required by applicable law) or increase the amount of any

benefit or amount payable under, any employee benefit plan (including, without limitation, any employee welfare benefit plan) or other plan, policy or arrangement, except for normal increases in the ordinary course of business consistent with past practice that, in the aggregate, do not result in a material increase in benefits expense to Borrower or any ERISA Affiliate.

(t)  <u>Labor Matters</u>.  Borrower is not a party to any collective bargaining agreements and has no employees.

(u)  <u>Borrower's Legal Status</u>.  Borrower's exact legal name that is indicated on the signature page hereto, organizational identification number and place of business or, if more than one, its chief executive office, as well as Borrower's mailing address, if different, which were identified by Borrower to Lender and contained in this Agreement, are true, accurate and complete.  Borrower will not change its name, its place of business or, if more than one place of business, its chief executive office, or its mailing address or organizational identification number if it has one without giving Lender at least thirty (30) days prior written notice of such change, if Borrower does not have an organizational identification number and later obtains one, Borrower shall promptly notify Lender of such organizational identification number and Borrower will not change its type of organization, jurisdiction of organization or other legal structure.

(v)  <u>Owner's Legal Status</u>.  (i)  The owner of the Premises and the maker of the Mortgage Note is and shall be Owner, (ii) there are no defaults existing under the Mortgage Loan Documents, and, to the best of Borrower's knowledge, there is no event which, but for the passage of time or the giving of notice, or both, would constitute an event of default under the Mortgage Loan Documents, (iii) the Mortgage Loan Documents and the provisions thereof have not been amended, modified or altered in any manner whatsoever, (iv) the Mortgage constitutes a valid and enforceable first lien covering the Premises subject only to items set forth as exceptions to or subordinate matters in the title insurance policy insuring the lien of the Mortgage, none of which, individually or in the aggregate, materially interfere with the benefits of the security intended to be provided by the Mortgage, materially and adversely affect the value of the Premises, impair the use or operation of the Premises for the use currently being made thereof or impair Borrower's ability to pay its obligations in a timely manner (such items being the "<u>Permitted Encumbrances</u>"), (v) the Premises are improved and income-producing and the improvements located thereon have not been damaged by fire or other casualty, (vi) no condemnation or other eminent domain proceedings have been commenced with respect to the Premises and Borrower has no knowledge that any such proceedings are contemplated, (vii) Borrower knows of no fact or circumstance which would affect the enforceability, validity or priority of the Mortgage Loan Documents, or which would affect the ability or willingness of Owner and any other Person liable under the Mortgage Loan Documents to continue to perform and observe the terms, covenants and provisions of the Mortgage Loan Documents, (viii) the unpaid principal balance of the Mortgage Note as of the date of this Agreement is as set forth on <u>Exhibit B</u> attached hereto.

(w)  <u>Title</u>.  Borrower (i) is the record and beneficial owner of, and has good and marketable title to, (x) the Equity Interests set forth in <u>Schedule 1</u> attached hereto and (y) all of the other Collateral owned by Borrower as of the date hereof, and (ii) will have good and marketable title to the Equity Interests and all other Collateral hereafter acquired, in any case, free and clear of all claims, liens, options and encumbrances of any kind, and Borrower has the

right and authority to pledge and assign its portion of the Equity Interests and grant a security interest therein as herein provided.

(x)    Securities Laws. The transactions contemplated by this Agreement do not violate and do not require that any filing, registration or other act be taken with respect to any and all laws pertaining to the registration or transfer of securities, including without limitation the Securities Act of 1933, as amended, and the Securities and Exchange Act of 1934, as amended, and any and all rules and regulations promulgated thereunder (collectively, the "Securities Laws"), as such laws are amended and in effect from time to time. Borrower shall at all times comply with the Securities Laws as the same pertain to all or any portion of the Collateral or any of the transactions contemplated by this Agreement. Lender agrees not take any action with respect to the Collateral that, without the consent of Borrower, requires Borrower to file a registration statement with the SEC or apply to qualify a sale of a security under the securities laws of any state.

(y)    Ownership Structure. The ownership chart attached hereto as Schedule 2 is true, correct and complete as of the Closing Date. Except as set forth on Schedule 2, no other Person has any direct or indirect interest in Owner, Equity Holders or Borrower.

(z)    Control of Owner. Borrower has the power and authority and the requisite ownership interests to control the actions of Owner and at all times during the term of the Loan shall maintain the power and authority to control the actions of Owner.

(aa)    Representations and Warranties of Owner. All of the representations and warranties of Owner or any Affiliate of Owner under the Mortgage Loan Documents are true, complete and correct in all material respects.

(bb)    Management Agreements; Starwood Agreements. The Management Agreements are in full force and effect. There is no default, breach or violation existing under the Management Agreements, and no event has occurred (other than payments due but not yet delinquent) that, with the passage of time or the giving of notice, or both, would constitute a default, breach or violation thereunder, by either party thereto. The Starwood Agreements are in full force and effect. There is no default, breach or violation existing under the Starwood Agreements, and no event has occurred (other than payments due but not yet delinquent) that, with the passage of time or the giving of notice, or both, would constitute a default, breach or violation thereunder, by any party thereto.

(cc)    Operating Company Status. Borrower qualifies as an "operating company," as such term is defined in the regulation issued by the U.S. Department of Labor known as the "plan assets regulation," 29 C.F.R. §2510.3-101 and, as long as the Loan is outstanding, Borrower will remain at all times an operating company, as so defined.

(dd)    Affiliation. Neither Borrower nor any Affiliate of Borrower is an Affiliate of Lender.

(ee)    Insurance. Borrower has obtained and delivered, or has caused Owner to obtain and deliver, to Lender certified copies of all insurance policies reflecting the insurance coverages, amounts and other requirements set forth in this Agreement. Borrower has not, and to

the best of Borrower's knowledge no other Person has, done by act or omission anything which would impair the coverage of any such policy.

(ff)    Absence of UCC Financing Statements, Etc.  Except with respect to the Mortgage Loan Documents and the Loan Documents, there is no financing statement, security agreement, chattel mortgage, real estate mortgage or other document filed or recorded with any filing records, registry, or other public office, that purports to cover, affect or give notice of any present or possible future lien on, or security interest or security title in the interest in the Premises or any of the Collateral.

(gg)    Financial Information.  All financial data that has been delivered by Borrower to Lender (i) is true, complete and correct in all material respects, (ii) accurately represents the financial condition and results of operations of the Persons covered thereby as of the date on which the same shall have been furnished, and (iii) has been prepared in accordance with GAAP (or such other accounting basis as is reasonably acceptable to Lender) throughout the periods covered thereby.  As of the date hereof, neither Borrower nor, if applicable, any General Partner, has any contingent liability, liability for taxes or other unusual or forward commitment not reflected in such financial statements delivered to Lender.  Since the date of the last financial statements delivered by Borrower to Lender, except as otherwise disclosed in such financial statements or notes thereto, there has been no change in the assets, liabilities or financial position of Borrower, Owner nor, if applicable, any General Partner, or in the results of operations of Borrower or Owner which would have a Material Adverse Effect.  None of Borrower, Owner nor, if applicable, any General Partner, has incurred any obligation or liability, contingent or otherwise not reflected in such financial statements which would have a Material Adverse Effect.

(hh)    Article 8 "Opt In" Language.  The Organizational Documents of Equity Holders shall be modified, as necessary, to include the language set forth on Exhibit D and such language shall remain in each organizational document for so long as any portion of the Debt is outstanding.  Except for the Certificate reflecting ownership of the Equity Interest there are no certificates or instruments representing any of the Equity Interests.

(ii)    Mezzanine Lockbox Account.

(i)    Pursuant to the irrevocable direction letter delivered by Borrower to Equity Holders on the Closing Date, Borrower shall direct Equity Holders to cause all Remaining Rents to be deposited into the Mezzanine Lockbox Account;

(ii)    there are no other accounts maintained by Owner, Borrower or any other Person with respect to the collection of rents, revenues, proceeds or other income from the Premises or for the collection of Rents, except for the Mortgage Lockbox Account and the Mezzanine Lockbox Account; and

(iii)    so long as any of the Debt shall be outstanding, neither Borrower, Owner nor any other Person shall open any other accounts with respect to the collection of rents, revenues, proceeds or other income from the Premises or for the collection of Rents.

(jj)    Compliance with Anti-Terrorism, Embargo and Anti-Money Laundering Laws. (i) None of Borrower, General Partner, any Guarantor, or any Person who owns any equity

14

interest in or Controls Borrower, General Partner or any Guarantor currently is identified on the OFAC List or otherwise qualifies as a Prohibited Person, and Borrower has implemented procedures, approved by General Partner, to ensure that no Person who now or hereafter owns an equity interest in Borrower or General Partner is a Prohibited Person or Controlled by a Prohibited Person, (ii) no proceeds of the Loan will be used to fund any operations in, finance any investments or activities in or make any payments to, Prohibited Persons, and (iii) none of to anti-money laundering or anti-terrorism, including, without limitation, Legal Requirements relating related to transacting business with Prohibited Persons or the requirements of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, U.S. Public Law 107-56, and the related regulations issued thereunder, including temporary regulations, all as amended from time to time. No tenant at the Premises currently is identified on the OFAC List or otherwise qualifies as a Prohibited Person, and, to the best of Borrower's knowledge, no tenant at the Premises is owned or Controlled by a Prohibited Person. Borrower has determined that Manager has implemented procedures, approved by Borrower, to ensure that no tenant at the Premises is a Prohibited Person or owned or Controlled by a Prohibited Person.

(kk)  Perfected Security Interest. This Agreement creates a valid security interest in the Collateral, securing the payment of the Debt, and upon the filing in the appropriate filing offices of the financing statements to be executed and delivered pursuant to this Agreement and the delivery of the Certificates representing the Equity Interests to Lender, such security interests will be perfected, first priority security interests, and all filings and other actions necessary to perfect such security interests will have been duly taken. Lender's first priority security interests in the Collateral are enforceable against the Borrower and any Person purporting to purchase any portion of such Collateral. The Equity Interests are "certificated securities" as defined under Article 8 of the UCC and "investment property" as defined under Article 9 of the UCC. Lender may perfect a security interest in the Equity Interests by either (i) taking possession of such Equity Interests in accordance with Section 9-313 of the UCC or (ii) control of such Equity Interests in accordance with Section 9-314 of the UCC.

Section 2.03. Further Acts, Etc. Borrower will, at the cost of Borrower, and without expense to Lender, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, reasonably require for the better assuring, conveying, assigning, transferring, and confirming unto Lender the property, security interest and rights hereby given, granted, bargained, sold, alienated, enfeoffed, conveyed, confirmed, pledged, assigned and hypothecated, or which Borrower may be or may hereafter become bound to convey or assign to Lender, or for carrying out or facilitating the performance of the terms of this Agreement or for filing, registering or recording this Agreement and, on demand, will execute and deliver and hereby authorizes Lender to execute in the name of Borrower or without the signature of Borrower to the extent Lender may lawfully do so, one or more financing statements, chattel mortgages or comparable security instruments to evidence more effectively the lien hereof upon the Collateral. Without limiting the generality of the foregoing, Borrower will: (i) if any Collateral shall be evidenced by a promissory note or other instrument or chattel paper, deliver and pledge to Lender hereunder such note or instrument or chattel paper duly indorsed and accompanied by duly executed instruments of transfer or assignment, all in form and substance satisfactory to

Lender; (ii) execute or authenticate and file such financing or continuation statements, or amendments thereto, and such other instruments or notices, as may be necessary or desirable and as Lender may request, in order to perfect and preserve the security interest granted or purported to be granted by Borrower hereunder; (iii) take all action necessary to ensure that Lender has control of any Collateral consisting of deposit accounts, electronic chattel paper, investment property and letter-of-credit rights as provided in Sections 9-104, 9-105, 9-106 and 9-107 of the UCC; and (iv) deliver to Lender evidence that all other action that Lender may reasonably deem necessary or desirable in order to perfect and protect the security interest granted or purported to be granted by Borrower under this Agreement has been taken. Borrower grants to Lender an irrevocable power of attorney coupled with an interest for the purpose of protecting, perfecting, preserving and realizing upon the interests granted pursuant to this Agreement and to effect the intent hereof, all as fully and effectually as Borrower might or could do; and Borrower hereby ratifies all that Lender shall lawfully do or cause to be done by virtue hereof. Upon receipt of an affidavit of an officer of Lender as to the loss, theft, destruction or mutilation of the Note, the Certificate or any other Loan Document which is not of public record, and, in the case of any such mutilation, upon surrender and cancellation of such Note, Certificate or other applicable Loan Document, Borrower will issue, in lieu thereof, a replacement Note, Certificate or other applicable Loan Document, dated the date of such lost, stolen, destroyed or mutilated Note, Certificate or other Loan Document in the same principal amount thereof and otherwise of like tenor.

Section 2.04. <u>Recording of Agreement, etc.</u>  Borrower forthwith upon the execution and delivery of this Agreement and thereafter, from time to time, will, at the request of Lender, cause this Agreement, and any security instrument creating a lien or security interest or evidencing the lien hereof upon the Collateral and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully protect the lien or security interest hereof upon, and the interest of Lender in, the Collateral. Borrower will pay all filing, registration or recording fees, and all expenses incident to the preparation, execution and acknowledgment of this Agreement, any additional security instrument with respect to the Collateral and any instrument of further assurance, and all federal, state, county and municipal, taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Agreement, and any security agreement supplemental hereto, or any instrument of further assurance, except where prohibited by law to do so, in which event Lender may declare the Loan to be immediately due and payable. Borrower shall hold harmless and indemnify Lender, and its successors and assigns, against any liability incurred as a result of the imposition of any tax on the making and recording of this Agreement.

Section 2.05. <u>Cost of Defending and Upholding Lien.</u>  If any action or proceeding is commenced to which Lender is made a party relating to the Loan Documents and/or the Collateral or Lender's interest therein or in which it becomes necessary to defend or uphold the lien of this Agreement or any other Loan Document, Borrower shall, on demand, reimburse Lender for all expenses (including, without limitation, reasonable attorneys' fees and disbursements) incurred by Lender in connection therewith, and such sum, together with interest thereon at the Default Rate from and after such demand until fully paid, shall constitute a part of the Loan.

Section 2.06. Financial Reports. Borrower shall keep accurate and complete books, records and accounts in accordance with generally accepted accounting principles ("GAAP") (or such other accounting basis reasonably acceptable to Lender, including the cash basis of accounting) consistently applied with respect to the financial affairs of Borrower, including, but not limited to, the financial affairs of Borrower which relate to the Collateral and all sums due or which may become due thereunder. Borrower shall, within five (5) Business Days after request and at its sole cost and expense, deliver to Lender any of such books and records as may be requested by Lender. Lender shall have the right from time to time at all times during normal business hours to examine such books, records and accounts at the office of Borrower or other Person maintaining such books, records and accounts and to make copies or extracts thereof as Lender shall desire. Borrower shall, from time to time, within five (5) Business Days after request and at its sole cost and expense, deliver to Lender such information, reports and additional financial information with respect to the financial affairs of Borrower as Lender shall reasonably request. Borrower will furnish Lender annually, within one hundred twenty (120) days following the end of each Fiscal Year of Borrower, with a complete copy of Borrower's financial statement audited by an Independent certified public accountant that is acceptable to Lender in accordance with GAAP (or such other accounting basis reasonably acceptable to Lender, including the cash basis of accounting) consistently applied covering (i) all of the financial affairs of Borrower for such Fiscal Year and containing a statement of revenues and expenses, a statement of assets and liabilities and a statement of Borrower's equity. Together with Borrower's annual financial statements, Borrower shall furnish to Lender an Officer's Certificate certifying as of the date thereof (i) that the annual financial statements accurately represent the results of operations and financial condition of Borrower all in accordance with GAAP (or such other accounting basis reasonably acceptable to Lender, including the cash basis of accounting) consistently applied, (ii) whether there exists an event or circumstance which constitutes, or which upon notice or lapse of time or both would constitute, a Default under the Note or any other Loan Document executed and delivered by Borrower, and if such event or circumstance exists, the nature thereof, the period of time it has existed and the action then being taken to remedy such event or circumstance and (iii) the calculation of Net Cash Flow and Cash Flow Interest (each as defined in the Note), together with reasonably detailed supporting computations thereof. Borrower shall at all times, whether or not the Mortgage Loan is outstanding, deliver or shall cause Owner to deliver to Lender (x) a copy of all financial statements, reports, books, records and accounts required to be delivered to Mortgage Lender pursuant to the terms of the Mortgage Loan Documents within the time frames set forth in the Mortgage Loan Documents for the delivery of such financial statements, reports, books, records and accounts (and, with each monthly statement of revenues and expenses delivered or required to be delivered under the Mortgage Loan Documents, a comparison of such revenues and expenses to the Annual Budget) and (y) monthly, within thirty (30) days following the end of each month, a true, complete and correct rent roll for the Premises, including a list of which tenants are in default under their respective leases, dated as of the end of the preceding month, identifying each tenant, the monthly rent and additional rent, if any, payable by such tenant, the expiration date of such tenant's Lease, the security deposit, if any, held by Owner under the Lease, the space covered by the Lease, each tenant that has filed a bankruptcy, insolvency, or reorganization proceeding since delivery of the last such rent roll, and the arrearages for such tenant, if any, and such rent roll shall be accompanied by an Officer's Certificate, dated as of the date of the delivery of such rent roll, certifying that such rent roll is true, correct and complete in

all material respects as of its date. Borrower shall furnish to Lender, within thirty (30) days after Lender's request therefor, such further detailed information with respect to the operation of the Premises and the financial affairs of Borrower as may be reasonably requested by Lender. Borrower acknowledges that notwithstanding anything to the contrary contained herein or in the Note, all extension fees and exit fees will be treated as additional interest.

Section 2.07. <u>Litigation</u>. Borrower will give prompt written notice to Lender of any litigation or governmental proceedings pending or threatened (in writing) against Borrower, Owner, Equity Holders or Guarantor which might have a Material Adverse Effect and of any claim, option, lien or encumbrance upon or against all or a portion of the Collateral.

Section 2.08. <u>Estoppel Certificates</u>. Borrower shall, or shall cause Owner to, from time to time, request from Mortgage Lender such certificates of estoppel with respect to compliance by Owner with the terms of the Mortgage Loan Documents as may be requested by Lender and required to be given by Mortgage Lender pursuant to the Mortgage Loan Documents

Section 2.09. <u>Budget</u>. Borrower shall submit to Lender for Lender's written approval an annual budget (the "<u>Annual Budget</u>") not later than sixty (60) days prior to the commencement of such Fiscal Year (or with respect to the Fiscal Year in which the Closing Date occurs, within sixty (60) days of the Closing Date), in form satisfactory to Lender setting forth in reasonable detail budgeted monthly operating income and monthly operating capital and other expenses for the Premises. Each Annual Budget shall contain, among other things, limitations on management fees, third party service fees, and other expenses as Borrower may reasonably determine. Lender shall have the right to approve such Annual Budget which approval shall not be unreasonably withheld, conditioned or delayed and may only be withheld if permitted under the Management Agreements, and in the event that Lender objects to the proposed Annual Budget submitted by Borrower, Lender shall advise Borrower of such objections within fifteen (15) days after receipt thereof (and deliver to Borrower a reasonably detailed description of such objections) and Borrower shall, within three (3) days after receipt of notice of any such objections, revise such Annual Budget and resubmit the same to Lender. Lender shall advise Borrower of any objections to such revised Annual Budget within ten (10) days after receipt thereof (and deliver to Borrower a reasonably detailed description of such objections) and Borrower shall revise the same in accordance with the process described herein until Lender approves an Annual Budget, provided, however, that if Lender shall not advise Borrower of its objections to any proposed Annual Budget within the applicable time period set forth in this Section, then such proposed Annual Budget shall be deemed approved by Lender. No budget shall be submitted to Mortgage Lender by Owner for approval pursuant to the Mortgage Loan Documents unless the Annual Budget has been approved by Lender as provided in this Section. Until such time that Lender approves a proposed Annual Budget, the most recently Approved Annual Budget shall apply; provided that, such Approved Annual Budget shall be adjusted to reflect actual increases in Basic Carrying Costs and utilities expenses. In the event that Owner must incur an Extraordinary Expense, then Borrower shall promptly deliver to Lender a reasonably detailed explanation of such proposed Extraordinary Expense for Lender's approval, which approval may be granted or denied in Lender's sole and absolute discretion.

Section 2.10. <u>Failure To Deliver Financial Reports</u>. In the event that Borrower fails to deliver any of the financial statements, reports or other information required to be delivered to

18

Lender pursuant to this Agreement on or prior to their due dates, and any such failure shall continue for ten (10) Business Days following notice thereof from Lender, Borrower shall pay to Lender on each Payment Date for each month or portion thereof that any such financial statement, report or other information remains undelivered, an administrative fee in the amount of One Thousand Dollars ($1,000) multiplied by the number of undelivered statements, reports or other items. Borrower agrees that such administrative fee (i) is a fair and reasonable fee necessary to compensate Lender for its additional administrative costs and increased costs relating to Borrower's failure to deliver the aforementioned statements, reports or other items as and when required hereunder and (ii) is not a penalty.

Section 2.11. <u>Transfers, Etc.</u> Borrower shall not, without the prior consent of Lender, in any manner allow a Transfer to occur or enter into any agreement which expressly restricts Borrower from making amendments, modifications or waivers to the Loan Documents. Without the express prior written consent of Lender, Borrower shall not, and shall not cause or permit Owner or Equity Holders to, enter into any consensual sale or other similar transaction with respect to the Property (or any direct or indirect interest therein) or impair or otherwise adversely affect the interests of Lender in the Collateral or any portion thereof or any interest therein. Notwithstanding the foregoing, the restrictions on Transfers set forth in this Section 2.11 shall not apply to Transfers which are inter vivos or testamentary transfers of indirect equity interests in Borrower (i.e., the direct or indirect equity interests in BCP Aruba I, LLC, a Delaware limited liability company, which is the sole member and holder of 100% of the equity interests in Borrower) to one or more family members of Michael Belfonti or a trust in which all of the beneficial interest is held by one or more family members of Michael Belfonti or a partnership, limited liability company, corporation or other legal entity in which a majority of the capital and profits interests are held by one or more family members of Michael Belfonti, provided that (i) any inter vivos transfer or issuance of capital stock (or other ownership interests) in such indirect equity interests in Borrower is made in connection with bona fide, good faith estate planning of Michael Belfonti and/or one or more of his family members, (ii) prior written notice of any transfer pursuant to this sentence is given to Lender together with such documents relating to the transfer as Lender may reasonably require, (iii) Control over Borrower, each Equity Holder and Owner is retained by Michael Belfonti at all times, (iv) no such transfer has any adverse effect either on the Single Purpose Entity status of Borrower or on the status of Borrower as a continuing legal entity liable for the payment of the Debt and the performance of all other obligations secured by this Agreement and the other Loan Documents, and (v) if after giving effect to any such transfer, more than forty-nine percent (49%) in the aggregate of direct or indirect interests in Borrower are owned by any Person and its Affiliates that owned less than forty-nine percent (49%) direct or indirect interest in Borrower as of the Closing Date, Borrower shall deliver to Lender a substantive non-consolidation opinion acceptable to Lender and the Rating Agencies. As used in this Section 2.11, (i) the term "control" shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management, policies or activities of a Person, whether through ownership of voting securities, by contract or otherwise, and (ii) as used herein, "family members" shall include spouses, children and grandchildren and any trusts for the benefit of any of such spouses, children and grandchildren. In no event shall any sale, assignment or transfer of any direct ownership interests in Borrower, any Equity Holder or Owner be permitted without the prior written consent of Lender, which may be withheld, conditioned or delayed in Lender's sole and absolute discretion.

Section 2.12. <u>Sums Held In Trust</u>. To the extent Borrower receives any sums it is not otherwise entitled to receive pursuant to the terms of this Agreement, Borrower shall hold all such sums sufficient to discharge all sums due or to become due on the Debt, in trust for use in payment of the Debt.

Section 2.13. <u>Notification of Defaults</u>. Borrower shall promptly (and in all events within one (1) Business Day of obtaining knowledge thereof) notify Lender of the occurrence of any default under the Mortgage Loan or of the occurrence of any event, which but for the passage of time or the giving of notice or both, would constitute a default under the Mortgage Loan.

Section 2.14. <u>Compliance With Mortgage Loan Documents</u>. Borrower shall cause Owner (and any Equity Holder that is a party to any of the Mortgage Loan Documents) to comply with all of the terms, covenants and conditions set forth in the Mortgage Loan Documents, notwithstanding any waiver or future amendment of such covenants by Mortgage Lender. Borrower acknowledges that the obligation to comply with such covenants is separate from, and may be enforced independently from, the obligations of Owner (or such Equity Holder) under the Mortgage Loan Documents, and, to the extent such term, covenants and conditions require any consents, approvals or waivers by Mortgage Lender, Lender shall have the same rights to consent, approve or waive.

Section 2.15. <u>No Change of Accounts</u>. Borrower shall not permit Owner or Equity Holders to change the Mortgage Lockbox Account, without the prior written consent of Lender and Mortgage Lender.

Section 2.16. <u>Confirmation of Loan Documents, Etc.</u> (a) After request by Lender, Borrower, within fifteen (15) days and at its expense, will furnish or will cause Owner to furnish to Lender with a statement, duly acknowledged and certified, setting forth with respect to this Agreement, the Note and the Mortgage Note, as applicable, (i) the amount of the original principal amount, and the unpaid principal amount, (ii) the rate of interest, (iii) the date payments of interest and/or principal were last paid, (iv) any offsets or defenses to payment, and if any are alleged, the nature thereof, (v) that no modifications have taken place, or if modified, giving particulars of such modification and (vi) that there has occurred and is then continuing no Default or if such Default exists, the nature thereof, the period of time it has existed, and the action being taken to remedy such Default.

(b)    Within fifteen (15) days after written request by Borrower, Lender shall furnish to Borrower a written statement confirming the Principal Amount of the Loan, the maturity date of the Note and the date to which interest has been paid.

Section 2.17. <u>Corporate Actions</u>. Without the prior written consent of Lender, Borrower will not and will not cause or allow the Corporations, LLCs or Partnerships at any time, to (and, without limiting the foregoing, will not vote to enable, or take any other action to permit, the Corporations, LLCs or Partnerships to):

(a)    make any Distribution or payment, under the Organizational Documents or otherwise in violation of this Agreement or any of the other Loan Documents; or

(b)    purchase or redeem or obligate itself to purchase or redeem any Equity Interests,

cancel any Equity Interests or issue or authorize to be issued any additional Equity Interests; or

(c)     merge into or merge or consolidate with any corporation, partnership or limited liability company or entity or cause itself to dissolve or liquidate its assets; or

(d)     enter into, or cause or permit any affiliate of any of the Corporations, LLCs or Partnerships to enter into, (x) any transaction with a Person or entity affiliated with or related to itself, except upon arms-length terms and conditions, or (y) any transaction which is motivated by an intent to evade this Agreement; or

(e)     breach any of the covenants or obligations of the Corporations, LLCs or Partnerships pursuant to this Agreement.

Section 2.18. <u>Conduct of Operations</u>. To the extent that such matters are within the control of Borrower pursuant to the terms of the Organizational Documents and applicable laws, Borrower shall cause the Corporations, LLCs and Partnerships to conduct their operations and to manage, protect and preserve their assets and to act in a commercially reasonable manner to preserve the value of the Collateral.

Section 2.19. <u>Voting Rights; Etc</u>. (a) So long as an Event of Default shall not have occurred and be continuing, Borrower shall be permitted (i) to receive any and all regular Distributions and dividends paid in cash and in the ordinary course of business of the Partnerships, the LLCs and the Corporations with respect to the Equity Interests and (ii) to exercise all voting and other rights with respect to the Equity Interests as long as no vote shall be cast, or right exercised or other action taken which would, directly or indirectly, materially impair the value of any Collateral or which would be inconsistent with or result in a default under this Agreement or any of the other Loan Documents. Upon the receipt of a written request from Borrower, Lender shall execute and deliver (or cause to be executed and delivered) to Borrower all such proxies and other instruments as Borrower may reasonably request for the purpose of enabling Borrower to exercise the voting and other rights which it is entitled to exercise and to receive the dividends or interest payments which it is authorized to receive and retain pursuant to this Agreement. Upon the occurrence and during the continuance of an Event of Default, the aforesaid rights shall immediately and automatically vest in Lender.

(b)     If Borrower shall receive, by virtue of Borrower's being or having been an owner of any Equity Interest, (i) any Distributions or dividends payable in cash (except such Distributions and dividends permitted to be retained by Borrower pursuant to sub-section (a) above) or in securities or other property, or (ii) any Distributions or dividends in connection with a partial or total liquidation or dissolution or a reclassification, increase or reduction of capital, capital surplus or paid-in capital, Borrower shall receive the same in trust for Lender, segregate the same from its other assets and promptly deliver the same to Lender in the exact form received, with any necessary endorsement and/or appropriate powers or other instruments of assignment or conveyance, to be held by Lender as Collateral pursuant to this Agreement.

Section 2.20. <u>Admission of New Equity</u>. Borrower will not agree to admit any new or substitute shareholders, members or partners into the Corporations, LLCs or Partnerships or transfer its interests in the Corporations, LLCs or Partnerships unless such new shareholder,

member or partner executes and delivers, and agrees to be bound by, an agreement, in form and content substantially identical to this Agreement, pursuant to which such new shareholder, member or partner pledges its interests in the Corporations, LLCs or Partnerships to Lender and such admission is otherwise in accordance with the terms of the applicable Organizational Documents and the Loan Documents.

Section 2.21. Proceeds of Collateral. Upon the occurrence and during the continuance of an Event of Default, all Proceeds of the Collateral received by Borrower shall be promptly delivered to Lender, in the same form as received, with the addition only of such endorsements and assignments as may be necessary to transfer title to Lender, and pending such delivery, such Proceeds shall be held in trust for Lender; and such Proceeds shall be applied to the Debt secured hereby pursuant to the terms of the Loan Agreement.

Section 2.22. Admission of Lender As Shareholder, Member, Partner. In the event that Lender forecloses on the Collateral, notwithstanding anything to the contrary in the Organizational Documents, Lender shall automatically be admitted as a shareholder, member or partner of the Corporations, LLCs or Partnerships, respectively, and shall be entitled to receive all benefits and exercise all rights in connection therewith pursuant to the Organizational Documents; provided, however, that Lender shall have no liability for matters in connection with the Equity Interests arising or occurring, directly or indirectly, prior to Lender's becoming a shareholder, member or partner of the Corporations, LLCs or Partnerships.

Section 2.23. Purchase of Mortgage Loan, Etc. Neither Borrower nor any Affiliate thereof or any other Person acting upon their direction or request shall, directly or indirectly, acquire or agree to acquire, obtain, purchase or control the Mortgage Loan, or any portion thereof or any interest therein, or any direct or indirect ownership interest in the holder of, or participant in, the Mortgage Loan in any manner whatsoever. If, solely by operation of applicable subrogation law, Borrower or any Affiliate thereof shall be in breach of or fail to comply with the foregoing, then such breach or failure shall not be an Event of Default provided that Borrower (a) shall immediately upon obtaining knowledge thereof notify Lender of such failure or breach, and (b) shall cause Borrower and Affiliates thereof acquiring any interest in the Mortgage Loan Documents (i) not to enforce the Mortgage Loan Documents, and (ii) upon the request of Lender, to the extent any Borrower or such Affiliate has the power or authority to do so, to promptly (A) cancel, reconvey and release its interest in the Mortgage Loan Documents, (B) discontinue and terminate any enforcement proceeding(s) under the Mortgage Loan Documents and (C) assign and transfer its interest in the Mortgage Loan Documents to Lender.

Section 2.24. Deed-In-Lieu, etc. Without the prior written consent of Lender, Borrower shall not, and shall not cause or permit Owner or any Equity Holder to, enter into any deed-in-lieu or consensual foreclosure or transfer or assignment with or for the benefit of Mortgage Lender or any of Mortgage Lender's Affiliates or designees. Without the express prior written consent of Lender, Borrower shall not, and shall not cause or permit Owner or any Equity Holder to, enter into any consensual sale, transfer or assignment or other similar transaction, impair or otherwise adversely affect the interests of Lender in the Collateral or any portion thereof or any interest therein.

22

Section 2.25. Intercreditor Agreement. Borrower acknowledges and agrees that Lender and Mortgage Lender have entered into an intercreditor agreement regarding their respective rights under the Mortgage Loan and Loan (the "Intercreditor Agreement"). Borrower acknowledges and agrees that: (a) no Person other than Lender and Mortgage Lender has any rights whatsoever, direct or indirect, beneficial or otherwise, under the Intercreditor Agreement and Borrower is not a third party beneficiary thereof; (b) Lender and Mortgage Lender may amend, modify, cancel, terminate, supplement or waive the Intercreditor Agreement at any time without notice to, or the consent of Borrower, Owner or any other Person, and (c) except as expressly set forth in this Agreement, any restriction or other agreement between Lender and Mortgage Lender set forth in the Intercreditor Agreement is personal between Lender and Mortgage Lender and, as between Lender, on the one hand, and Borrower, on the other hand, no such agreement or restriction will be deemed to benefit or otherwise modify any of the rights of Lender under the Loan Documents.

Section 2.26. Payment of Taxes. (a) Borrower shall pay and discharge all taxes now or hereafter imposed on it, or its income or profits, on any of its property or upon the liens provided for herein prior to the date on which penalties attach thereto; provided that Borrower shall have the right to contest the validity or amount of any such tax in good faith and by proper proceedings. Borrower shall promptly pay any valid, final judgment enforcing any such tax and cause the same to be satisfied of record.

(b)    Any and all payments (of any nature, including in the nature of fees, charges or reimbursement of expenses) by Borrower to or on behalf of Lender under or in respect of this Agreement or any other Loan Document, all transfers to or from the Mezzanine Lockbox Account, and all payments to Lender from Borrower or the Mezzanine Lockbox Account (or otherwise from the Property or by or through Owner or any Equity Holder), shall be made free and clear of, and without deduction or withholding for or on account of, any Profits Tax, any Foreign Exchange Tax or any and all present or future taxes, levies, imposts, deductions, charges or withholdings, and all liabilities (including penalties, interest and additions to tax) with respect thereto, including without limitation Other Taxes and any Section 2.5 Taxes, whether now or hereafter imposed, levied, collected, withheld or assessed by any taxation authority or other Governmental Authority (collectively, "Section 2.26 Taxes"). If Borrower shall be required under any applicable Legal Requirement to deduct or withhold any Section 2.26 Taxes from or in respect of any sum payable under or in respect of this Agreement or any of the other Loan Documents to or on behalf of Lender or if any Section 2.26 Taxes shall be required to be withheld or deducted from any payments out of the Mezzanine Lockbox Account to Lender or otherwise, (i) Borrower shall make all such deductions and withholdings in respect of Section 2.26 Taxes, (ii) Borrower shall pay the full amount deducted or withheld in respect of Section 2.26 Taxes directly to the relevant taxation authority or other Governmental Authority in accordance with the applicable Legal Requirement, and (iii) the sums payable by Borrower to Lender shall be increased as may be necessary so that after Borrower has made all required deductions and withholdings (including deductions and withholdings applicable to additional sums payable under this Section 2.26) and/or payments, Lender receives an amount equal to the sum it would have received had no such deductions or withholdings been made or amounts been payable in respect of Non-Excluded Taxes. For purposes of this Agreement "Non-Excluded Taxes" are taxes that are imposed on the overall net income (and franchise taxes imposed in lieu