thereof) of Lender by the laws of the United States or any political subdivision thereof (other than Section 2.26 Taxes).

(c)    Borrower hereby agrees to make all filings required in connection with any Section 2.26 Tax promptly when due, and to provide copies of all such filings simultaneously to Lender. Lender shall provide such information to Borrower as Borrower shall reasonably require from Lender make any Foreign Exchange Tax filings relating to the Loan when due. Borrower hereby agrees to pay for (or reimburse Lender for) any fees or costs (including reasonable third-party professional expenses) incurred by Lender in connection with any tax filings required to be made by Lender in Aruba (if any).

(d)    Borrower hereby agrees to indemnify Lender (and its successors and assigns) for, and to hold each of them harmless against, the full amount Section 2.26 Taxes of any kind imposed by any jurisdiction, imposed on or paid by Lender and any liability (including penalties, additions to tax, interest and expenses, and reasonable third-party costs of filing or preparing tax filings or returns) arising therefrom or with respect thereto. The indemnity by Borrower provided for in this Section 2.26(d) shall apply and be made whether or not the Section 2.26 Taxes for which indemnification hereunder is sought have been correctly or legally asserted. Amounts payable by Borrower under the indemnity set forth in this Section 2.26(d) shall be paid within ten (10) days from the date on which Lender makes written demand therefor.

(e)    Lender shall take all reasonable actions (consistent with its internal policy and legal and regulatory restrictions) reasonably requested by Borrower to assist Borrower, at the sole expense of Borrower, to recover from the relevant taxation authority or other Governmental Authority any Section 2.26 Taxes in respect of which amounts were paid by Borrower pursuant to Sections 2.26(b), (c) and (d). However, Lender and Agent will not be required to take any action that would be, in the sole judgment of Lender, legally inadvisable, or commercially or otherwise disadvantageous to Lender in any respect, and in no event shall Lender be required to disclose any tax returns or any other information that, in the sole judgment of Lender is confidential.

(f)    Without limiting the generality of any of the foregoing, Borrower agrees that it (or any Person making such payment on behalf of Borrower) shall furnish to Lender, within thirty (30) days after the date of any payment of Section 2.26 Taxes, a certified copy of the original official receipt evidencing payment thereof. In the case of any payment under or in respect of this Agreement or any of the other Loan Documents by or on behalf of Borrower through an account or branch outside the United States, or on behalf of Borrower by a payor that is not a United States person, if Borrower determines that no Section 2.26 Taxes are payable in respect thereof, Borrower shall furnish, or shall cause such payor to furnish, to Lender an opinion of counsel reasonably acceptable to Lender stating that such payment is exempt from Section 2.26 Taxes. For purposes of this Section 2.26(f), the terms "United States" and "United States person" shall have the meanings specified in Section 7701 of the Internal Revenue Code.

Section 2.27. Central Cash Management. (a) All amounts paid by the issuer of the Rate Cap Agreement (the "Counterparty") to Borrower or Lender, together with all rents, issues, profits, insurance proceeds, condemnation proceeds, refinancing proceeds and all other sums received with respect to the Premises or distributed with respect to the Equity Interests after all

sums which are then due and payable have been paid to Mortgage Lender pursuant to the terms of the Mortgage Loan Documents, including, without limitation, in funding any escrows, reserves or "cash traps" in accordance with the terms of the Mortgage Loan Documents (collectively, "Remaining Rents"), shall be paid by federal wire transfer or automatic clearing house funds ("ACH") to Lender and shall be deposited immediately into an Eligible Account located at a bank satisfactory to Lender (the "Mezzanine Lockbox Account"), it being acknowledged that as of the date hereof Wachovia Bank, National Association is such a bank satisfactory to Lender. Lender has established the Mezzanine Lockbox Account in the name of Borrower, for the benefit of Lender as secured party. The Mezzanine Lockbox Account shall be under the sole dominion and control of Lender. The Mezzanine Lockbox Account shall contain the Debt Service Payment Account (an "Account" and together with the other accounts now or hereafter required to be established pursuant to this Section 2.27, collectively, the "Accounts") to which certain funds shall be allocated and from which disbursements shall be made pursuant to the terms of the Lockbox Agreement. Borrower hereby irrevocably directs and authorizes Lender to withdraw funds from the Mezzanine Lockbox Account, all in accordance with the terms and conditions of the Lockbox Agreement. Borrower shall have no right of withdrawal in respect of the Mezzanine Lockbox Account. Each transfer of funds to be made hereunder shall be made only to the extent that funds are on deposit in the Mezzanine Lockbox Account, and Lender shall have no responsibility to make additional funds available in the event that funds on deposit are insufficient. Borrower shall enter into or shall cause Owner to enter into a substitute cash management agreement and related lockbox agreement (collectively, the "Substitute CMA Agreements") with substantially the same terms as the agreements entered into as of the date hereof in connection with the Mortgage Loan as a condition to the satisfaction of the Mortgage Loan or if Mortgage Lender is not requiring that sums be deposited into any Reserve Funds. Such substitute agreements shall provide that all Remaining Rents shall be deposited into the Mezzanine Lockbox Account for disbursement in accordance with the terms of the Substitute CMA Agreements, the Lockbox Agreement (as amended to conform with the Substitute CMA Agreements) and this Agreement. Additionally, on or before the Closing Date, Borrower shall establish or cause Owner to establish such escrow and reserve accounts and deposit such amounts into such accounts as required pursuant to the terms of the Mortgage Loan Documents. After the occurrence and during the continuance of an Event of Default, the funds on deposit in the Mezzanine Lockbox Account, and all other funds received by Lender in respect of the Loan, shall be disbursed and applied in such order and such manner as Lender shall elect in its sole discretion. If Borrower shall receive any Remaining Rents other than in accordance with this Agreement, Borrower shall hold all such payments in trust for Lender, will not co-mingle such payments with other funds of Borrower, and will immediately pay and deliver in kind, all such payments directly to Lender for application by Lender in accordance with this Agreement.

(b)     Borrower shall maintain the Rate Cap Agreement at all times during the term of the Loan and pay all fees, charges and expenses incurred in connection therewith. Borrower shall comply with all of its obligations under the terms of the Rate Cap Agreement. All amounts paid by the Counterparty to Borrower or Lender shall be deposited immediately into the Mezzanine Lockbox Account. Borrower shall take all actions reasonably requested by Lender to enforce Lender's rights under the Rate Cap Agreement in the event of a default by the Counterparty. In the event that (a) the long-term unsecured debt obligations of the Counterparty are downgraded by the Rating Agency below "AA–" or its equivalent or (b) the Counterparty shall default in any of its obligations under the Rate Cap Agreement, Borrower shall, at the

request of Lender, promptly but in all events within five (5) Business Days, replace the Rate Cap Agreement with an agreement having identical payment terms and maturity as the Rate Cap Agreement and which is otherwise in form and substance substantially similar to the Rate Cap Agreement and otherwise acceptable to Lender with a cap provider, the long-term unsecured debt of which is rated at least "AA" (or its equivalent) by each Rating Agency, or which will allow each Rating Agency to reaffirm their then current ratings of all rated certificates issued in connection with the Securitization. In the event that Borrower fails to maintain the Rate Cap Agreement as provided in this Section, Lender may purchase the Rate Cap Agreement and the cost incurred by Lender in connection therewith shall be paid by Borrower to Lender with interest thereon at the Default Rate from the date such cost is incurred until such cost is paid by Borrower to Lender. On or prior to the Payment Date preceding the expiration of the Rate Cap Agreement, Borrower shall deliver to Lender a replacement Rate Cap Agreement with a term expiring not earlier than the Maturity Date and otherwise in form and substance acceptable to Lender which is issued by a Counterparty having a long-term unsecured debt rating of "AA" (or its equivalent) or better from each Rating Agency (the "Replacement Rate Cap Agreement").

(c)     At any time that sums are not being deposited into the Reserve Funds pursuant to the terms of the Mortgage Loan Documents, Borrower shall establish and maintain one or more sub-accounts of the Mezzanine Lockbox Account into which Remaining Rents shall be deposited for the purposes of paying Basic Carrying Costs, Ground Rent, PIP Work, Foreign Exchange Tax and the Profits Tax. In connection therewith, Borrower and Lender shall modify the Lockbox Agreement to provide that, if sums are required to be deposited into the Mezzanine Lockbox Account pursuant to this Section 2.27(c), such funds shall be allocated in the order of priority set forth in the Mortgage Loan Documents and Borrower hereby irrevocably appoints Lender as its attorney-in-fact, coupled with an interest, to execute any such amendment to the Lockbox Agreement. The amounts to be deposited in such sub-accounts shall equal the amounts required to be deposited in the Reserve Funds pursuant to the terms of the Cash Management Agreement (as in effect on the Closing Date or as amended with Lender's approval) and sums deposited into such sub-accounts may be released on the same terms and conditions as set forth in the Cash Management Agreement (as in effect on the Closing Date or as amended with Lender's approval).

(d)     Borrower hereby agrees for the benefit of itself, Equity Holders and Owner that all payments actually received by Lender shall be deemed payments to Borrower by Equity Holders and Owner. Lender shall apply any and all such payments actually received by Lender for application in accordance with this Agreement. After payment of all sums due and payable with respect to the Loan, Lender shall return to Borrower that portion of any payments actually received by Lender from Borrower, Equity Holders or Owner which is required to be paid to Borrower pursuant to the Loan Documents.

(e)     On the Closing Date, Borrower has deposited with Lender in a debt service reserve (the "Debt Service Reserve") an amount equal $4,500,000. Provided that no Event of Default has occurred and is continuing, commencing on the Payment Date occurring in July 2006 and on each Payment Date thereafter, an amount to be determined by Lender in its sole discretion shall be transferred from the Debt Service Reserve to the Debt Service Payment Account. Should an Event of Default occur, sums on deposit in the Debt Service Reserve may be applied by Lender to the payment of the Debt or any other charges affecting all or any portion

CURRENT 8555596v8

of the Property as Lender in its sole discretion may determine; provided, however, that no such application shall be deemed to have been made by operation of law or otherwise until actually made by Lender as herein provided.

Section 2.28. Certain Additional Rights of Lender. Notwithstanding anything to the contrary which may be contained in this Agreement, Lender shall have:

(a)    the right to routinely consult on a regular basis (no less frequently than quarterly) with and advise Borrower's management regarding the significant business activities and business and financial developments of Borrower, provided, however, that such consultations shall not include discussions of environmental compliance programs or disposal of hazardous substances, and, provided, further, that Lender shall have the right to call special meetings at any reasonable times;

(b)    the right, without restricting any other rights of Lender under this Agreement (including any similar right), to restrict financing to be obtained in connection with future property transactions, refinancing of any acquisition financings, and unsecured debt unless the Loan has been paid in full;

(c)    the right, without restricting any other right of Lender under this Agreement (including any similar right), to restrict, upon the occurrence of an Event of Default, Borrower's payments of management, consulting, director or similar fees to Affiliates of Borrower (or their personnel);

(d)    the right, without restricting any other rights of Lender under this Agreement (including any similar right), to approve any operating expenditures and/or capital expenditures of Borrower that (i) vary by more than 15% from the expenses set forth in the related approved operating budget and/or approved capital plan for the immediately preceding fiscal year or (ii) when added to all prior operating and capital expenditures for the year, exceed 15% of aggregate budgeted operating and capital expenditures set forth in the related approved operating budget and/or approved capital plan for the immediately preceding fiscal year;

(e)    the right, without restricting any other rights of Lender under this Agreement (including any similar right), to approve any acquisition by Borrower of any other significant property (other than personal property required for the day to day operation of the Premises);

(f)    the right, without restricting any other rights of Lender under this Agreement (including any similar right), in the event of an Event of Default, to vote the owners' interests in Borrower pursuant to irrevocable proxies granted, at the request of Borrower in advance for this purpose; and

(g)    the right, without restricting any other rights of Lender under this Agreement (including any similar right), to restrict the transfer of voting interests in Borrower held by its members, and the right to restrict the transfer of interests in such member.

The rights contained in this Section 2.28 may be exercised by any Person which owns or Controls, directly or indirectly, substantially all of the interests in Lender or the Loan.

Section 2.29. Refinancing, Liens, etc. Borrower shall not and shall not permit Equity Holders or Owner to, without the prior written consent of Lender, which consent may be withheld, delayed or conditioned in the sole discretion of Lender, give its consent or approval or agree to any of the following:

(a)    (i) any refinancing of the Mortgage Loan, (ii) any prepayment in full of the Mortgage Loan, (iii) any Transfer (for purposes of this Section 2.29(a) only, as defined in the Mortgage Loan Agreement (as in effect on the Closing Date or as amended with Lender's approval)) of the Premises, or (iv) any action in connection with or in furtherance of the foregoing;

(b)    placing or permitting to attach any additional liens or encumbrances on the Premises or any direct or indirect ownership therein or in Owner (except for liens and encumbrances permitted under the Mortgage Loan Documents (as in effect on the Closing Date or as amended with Lender's approval) not requiring the consent of Mortgage Lender); or

(c)    any modification, amendment, consolidation, spread, restatement or waiver of any provision of the Mortgage Loan Documents.

Section 2.30. Insurance. (a) The insurance described in the Mortgage Loan Agreement and Section 2.30(c) hereof (except policies for worker's compensation) shall be in the form and amount and with deductibles as, from time to time, shall be reasonably acceptable to Lender, under valid and enforceable policies issued by financially responsible insurers authorized to do business in the State where the Premises is located, with a general policyholder's service rating of not less than A and a financial rating of not less than XIII as rated in the most currently available Best's Insurance Reports (or the equivalent, if such rating system shall hereafter be altered or replaced) and shall have a claims paying ability rating and/or financial strength rating, as applicable, of not less than "AA" (or its equivalent), or such lower claims paying ability rating and/or financial strength rating, as applicable, as Lender shall, in its sole and absolute discretion, consent to, from a Rating Agency (one of which after a Securitization in which Standard & Poor's rates any securities issued in connection with such Securitization, shall be Standard & Poor's) and Borrower shall cause Owner to carry all such insurance (whether or not the Mortgage Loan is outstanding) for so long as any portion of the Debt remains outstanding. All such policies (except policies for worker's compensation) shall name Lender as an additional named insured (subject to the rights of Mortgage Lender), with respect to the insurance required pursuant to Section 5.1.1(a)(iii) of the Mortgage Loan Agreement, shall provide, subsequent to the satisfaction of the Mortgage Loan, for loss payable to Lender and shall contain (or have attached): (i) standard "non-contributory mortgagee" endorsement or its equivalent relating, inter alia, to recovery by Lender notwithstanding the negligent or willful acts or omissions of Borrower; (ii) a waiver of subrogation endorsement as to Lender; (iii) an endorsement indicating that neither Lender nor Borrower shall be or be deemed to be a co-insurer with respect to any casualty risk insured by such policies and shall provide for a deductible per loss of an amount not more than that which is customarily maintained by owners of similar properties similarly situated, and (iv) a provision that such policies shall not be canceled, terminated, denied renewal or amended, including, without limitation, any amendment reducing the scope or limits of coverage, without at least thirty (30) days' prior written notice to Lender in each instance. Not less than thirty (30) days prior to the expiration dates of the insurance policies obtained pursuant

28

to this Agreement, originals or certified copies of renewals of such policies (or certificates evidencing such renewals) bearing notations evidencing the payment of premiums or accompanied by other reasonable evidence of such payment (which premiums shall not be paid by Borrower or Owner through or by any financing arrangement which would entitle an insurer to terminate a policy) shall be delivered by Borrower to Lender.  Borrower shall not carry separate insurance, concurrent in kind or form or contributing in the event of loss, with any insurance required under Section 5.1 of the Mortgage Loan Agreement or Section 2.30(c) hereof.

(b)    If Borrower fails to maintain and deliver to Lender the original policies or certificates of insurance required by this Agreement, Lender may, at its option and after five (5) days written notice to Borrower (unless the policies would have lapsed or would lapse within such time period, in which event no such notice shall be required), procure such insurance, and Borrower shall pay, or as the case may be, reimburse Lender for, all premiums thereon promptly, upon demand by Lender, with interest thereon at the Default Rate from the date paid by Lender to the date of repayment and such sum shall constitute a part of the Debt.

(c)    Borrower shall deliver to Lender such other insurance as may from time to time be required by Lender and which is then customarily required by Institutional Lenders for similar properties similarly situated, against other insurable hazards, including, but not limited to, malicious mischief, vandalism, acts of terrorism, windstorm and/or earthquake, due regard to be given to the size and type of the Premises, Improvements, Fixtures and Equipment and their location, construction and use.  Additionally, Borrower shall carry such insurance coverage as Lender may from time to time require if the failure to carry such insurance may result in a downgrade, qualification or withdrawal of any class of securities issued in connection with a Securitization.

Section 2.31.  Casualty.  Borrower shall give Lender prompt notice of any loss or damage to the Premises and, subject to the rights of the Mortgage Lender under the Mortgage Loan Documents (which shall in all respects supercede the rights of Lender under this Section 2.31):

(a)    After the Mortgage Loan has been paid in full, in the event of any loss or damage covered by any insurance, Lender is hereby authorized (i) if an Event of Default shall have occurred or, if no Event of Default shall have occurred but Borrower, Equity Holders or Owner fails to settle and adjust any claim within ninety (90) Business Days after such casualty has occurred, to settle and adjust any claim under such insurance without the consent of Borrower, Equity Holders or Owner, or (ii) if no Event of Default has occurred, to allow Borrower, Equity Holders or Owner within ninety (90) Business Days after such casualty to settle and adjust such claim with, if any settlement may reasonably be anticipated to result in proceeds in excess of $250,000.00, the consent of Lender, not to be unreasonably withheld; provided, however, that in either case Lender shall, and is hereby authorized to, collect and receive any such insurance proceeds, subject, however, to the rights of Mortgage Lender under the Mortgage Loan Documents. The expenses incurred by Lender in the adjustment and collection of such proceeds of insurance shall be additional Debt of Borrower, and shall be reimbursed to Lender upon demand or, at Lender's option, in the event and to the extent sufficient proceeds are available, deducted by Lender from such proceeds of insurance prior to any other application thereof.  If the Mortgage Loan has been paid in full, each insurance company which has issued insurance is hereby authorized and directed to make payment for all losses covered by such insurance to

Lender alone, and not to Lender and Borrower, Equity Holders or Owner jointly. Borrower agrees to execute and cause Owner and Equity Holders to execute all documents and make all deliveries required in order to permit adjustment and payment of insurance proceeds as provided above.

(b)    Borrower hereby assigns to Lender the proceeds of all insurance (other than worker's compensation and liability insurance) obtained pursuant to this Agreement, all of which proceeds shall be payable to Lender as collateral and further security for the payment of the Debt and the performance of Borrower's obligations hereunder and under the other Loan Documents, and Borrower hereby authorizes and directs the issuer of any such insurance to, subject to the rights of Mortgage Lender under the Mortgage Loan Documents, make payment of such proceeds directly to Lender. Lender may, in its sole discretion, apply the proceeds of insurance received upon any casualty either (i) to reduce the Debt, in such order or manner as Lender may elect, or (ii) at Lender's election, to reimburse Borrower, Equity Holders or Owner for or to pay the costs of restoring, repairing, replacing or rebuilding (collectively, a "Restoration") the loss or damage caused by such casualty, in accordance with and subject to such conditions as Lender may determine in its sole discretion.

Section 2.32.  Management of Premises.  Borrower shall cause Owner to operate and manage the Premises or cause the Premises to be operated and managed in a manner which is consistent with the Approved Manager Standard. Borrower covenants and agrees with Lender that (a) the Premises will be managed at all times by Manager pursuant to the Management Agreements, (b) after Borrower has knowledge of a fifty percent (50%) or more change in control of the ownership of Manager, Borrower will promptly give Lender notice thereof (a "Manager Control Notice"), (c) the Management Agreement may be terminated by Lender at any time to the extent permitted thereunder or as otherwise agreed to by Manager for cause (including, but not limited to, Manager's gross negligence, misappropriation of funds, willful misconduct or fraud) or. if not prohibited under the Mortgage Loan Documents, at any time following (A) the occurrence of an Event of Default or (B) the receipt of a Manager Control Notice and a substitute managing agent shall be appointed by Lender, subject to Lender's prior written approval, which may be given or withheld in Lender's sole discretion, and (d) Borrower shall not permit any Management Agreement to be terminated, amended, supplemented or otherwise modified without the prior written consent of Lender. Borrower may from time to time appoint a successor manager to manage the Premises with Lender's prior written consent. Borrower further covenants and agrees that Borrower shall require the Manager (or any successor managers) to maintain at all times during the term of the Loan worker's compensation insurance as required by Governmental Authorities.

Section 2.33.  Power of Attorney.  Borrower hereby irrevocably appoints and instructs Lender as its attorney-in-fact, with full authority in the place and stead of Borrower and in the name of Borrower, Lender or otherwise, from time to time in Lender's discretion to take any and all actions necessary and proper, to carry out the intent of this Agreement and (a) to perfect and protect the lien, pledge, assignment and security interest of Lender created hereunder, (b) from and during the continuance of an Event of Default, (i) to ask, demand, collect, sue for, recover, compromise, receive and give acquittance and receipts for moneys due and to become due under or in respect of any of the Collateral, (ii) to file any claims or take any action or institute any proceedings for the collection of any of the Collateral or otherwise to enforce the rights of

30

Lender with respect to any of the Collateral, and (iii) in connection with the exercise of any power, right, privilege or remedy pursuant to this Agreement, to make all necessary assignments, transfers and deliveries of the Collateral and rights and to execute all applications, certificates, instruments, assignments and other documents and papers, (c) to collect and receive any insurance proceeds paid with respect to any portion of the insurance policies required to be maintained hereunder, and to endorse any checks, drafts or other instruments representing any insurance proceeds whether payable by reason of loss thereunder or otherwise, (d) to exercise any option to extend or renew the term of the Ground Lease in the name of and on behalf of Borrower or Owner and (e) from and during the continuance of an Event of Default, to file and prosecute, to the exclusion of Borrower and Owner, any proofs of claim, complaints, motions, applications, notices and other documents, in any case in respect of the Ground Lessor under the Bankruptcy Code. Borrower hereby ratifies, approves and confirms all actions taken by Lender and its attorneys-in-fact pursuant to this Section 2.33. Neither Lender nor any said Lender or attorney-in-fact will be liable for any acts of commission or omission nor for any error of judgment or mistake of fact or law with respect to its dealings with the Collateral. This power of attorney, being coupled with an interest, is irrevocable until the date upon which the Debt has been indefeasibly satisfied in full. Without limiting the foregoing, if Borrower fails to perform any agreement or obligation contained herein, Lender may itself perform, or cause performance of, where necessary or advisable in the name or on behalf of Borrower, and at the expense of Borrower, as applicable.

Section 2.34. Leases. (a) Borrower covenants and agrees that, from the date hereof and until payment in full of the Debt, Borrower shall, or shall cause Owner to, comply with the terms and provisions of Section 4.19 of the Mortgage Loan Agreement and, to the extent such term, covenants and conditions require any consents, approvals or waivers by Mortgage Lender, Lender shall have the same rights to consent, approve or waive.

(b)        Subject to the rights of Mortgage Lender in respect of the Rents under the Mortgage Loan Documents at any time that (i) payments are not being made to the Mortgage Lockbox Account, (ii) following repayment of the Mortgage Loan or (iii) following the occurrence of an Event of Default, then Lender shall have the immediate right to notify all tenants and other third parties to make payments directly to the Mezzanine Lockbox Account. Borrower hereby authorizes and directs the tenants and other third parties to make such payments directly to the Mezzanine Lockbox Account upon notice by Lender. Subject to the rights of Mortgage Lender under the Mortgage Loan Documents, security and other refundable deposits of tenants, whether held in cash or any other form, shall, after and during the continuance of an Event of Default, be turned over to Lender (together with any undisbursed interest earned thereon) upon Lender's request therefor to be held by Lender subject to the terms of the Leases. Any letter of credit or other instrument which Borrower or Owner holds in lieu of cash security deposit shall be maintained in full force and effect in the full amount of such deposits unless replaced by cash deposits as herein-above described and shall in all respects comply with any applicable Legal Requirements and otherwise be satisfactory to Lender. Borrower shall, upon request, provide Lender with evidence satisfactory to Lender of Borrower's, Equity Holders' and Owner's compliance with the foregoing.

(c)        Borrower (i) shall cause Owner to observe and perform all of its material obligations under the Leases pursuant to applicable Legal Requirements and shall not do or

31

permit to be done anything to impair the value of the Leases; (ii) shall cause Owner to promptly send copies to Lender of all notices of material default which Owner shall receive under the Leases; (iii) shall, consistent with the Approved Manager Standard, enforce all of the terms, covenants and conditions contained in the Leases to be observed or performed; (iv) shall not permit Owner to collect any of the Rents under the Leases more than one (1) month in advance (except that Owner may collect in advance such security deposits as are permitted pursuant to applicable Legal Requirements and are commercially reasonable in the prevailing market); (v) shall not permit Owner to cancel or terminate any of the Leases or accept a surrender thereof in any manner inconsistent with the Approved Manager Standard; (vi) shall not permit Owner to alter, modify or change the terms of any guaranty of any Major Lease or cancel or terminate any such guaranty; (vii) shall cause Owner, in accordance with the Approved Manager Standard, to make all reasonable efforts to seek lessees for space as it becomes vacant and enter into Leases in accordance with the terms hereof; and (viii) shall not permit Owner to materially modify, alter or amend any Major Lease or Property Agreement without Lender's consent, which consent will not be unreasonably withheld or delayed. In all instances that Owner is required to obtain the consent of Mortgage Lender prior to entering into any Lease, Lease amendment, modification or termination, Borrower shall cause Owner to obtain Lender's consent to such proposed Lease, Lease amendment, modification or termination prior to permitting or causing Owner to submit the proposed Lease, Lease amendment, modification or termination to Mortgage Lender. Borrower shall, and shall cause Equity Holders and Owner to, promptly send copies to Lender of all notices of material default which any Equity Holder or Owner shall receive under the Leases.

Section 2.35. <u>Condemnation</u>. In the event that all or any portion of the Premises shall be damaged or taken through condemnation (which term shall include any damage or taking by any governmental authority, quasi-governmental authority, any party having the power of condemnation, or any transfer by private sale in lieu thereof), or any such condemnation shall be threatened, Borrower shall give prompt written notice to Lender. Lender acknowledges that Owner's rights to any condemnation award are subject to the terms of the Mortgage Loan Documents. Notwithstanding the foregoing, Borrower may not and shall not permit Owner or any Equity Holder to settle or compromise any claim, action or proceeding relating to such damage or condemnation without the prior written consent of Lender, which shall not be unreasonably withheld, delayed or denied; provided, further, that either Owner or any Equity Holder may settle, adjust and compromise any such claim, action or proceeding which is of an amount less than $250,000 provided no Event of Default has occurred. Any proceeds remaining after the application of any award to reconstruct or repair the Premises or to the payment of the Mortgage Loan shall be paid to Lender and applied to the payment of the Debt whether or not then due. In the event that Owner is permitted pursuant to the terms of the Mortgage Loan Documents to reconstruct, restore or repair the Premises following a condemnation of any portion of the Premises, Borrower shall cause Owner to promptly and diligently repair and restore the Premises in the manner and within the time periods required by the Mortgage Loan Documents, the Leases and any other agreements affecting the Premises. In the event that Owner is permitted pursuant to the terms of the Mortgage Loan Documents to elect not to reconstruct, restore or repair the Premises following a condemnation of any portion of the Premises, Borrower shall not permit Owner to elect not to reconstruct, restore or repair the Property without the prior written consent of Lender.

Section 2.36. <u>Ground Lease</u>.

32

(a)     Borrower will, and will cause Owner to, comply in all material respects with the terms and conditions of the Ground Lease. Borrower will not, and will not permit Owner to, do or permit anything to be done, the doing of which, or refrain from doing anything, the omission of which, will impair or tend to impair the security of the Premises under the Ground Lease or will be grounds for declaring a forfeiture of the Ground Lease. Borrower shall, and shall cause Owner to, promptly send copies of all notices of default which Owner may receive under the Ground Lease to Lender.

(b)     Borrower shall, and shall cause Owner to, enforce the Ground Lease and not terminate, modify, cancel, change, supplement, alter or amend the Ground Lease, or waive, excuse, condone or in any way release or discharge Ground Lessor of or from any of the material covenants and conditions to be performed or observed by Ground Lessor.

(c)     Lender shall have the right, but not the obligation, to perform any obligations of Borrower or Owner under the terms of the Ground Lease during the continuance of an Event of Default. All costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) so incurred, shall be treated as an advance secured by this Agreement, shall bear interest thereon at the Default Rate from the date of payment by Lender until paid in full and shall be paid by Borrower to Lender during the continuance of an Event of Default on demand. No performance by Lender of any obligations of Borrower or Owner shall constitute a waiver of any Event of Default arising by reason of Borrower's or Owner's failure to perform the same. If Lender shall make any payment or perform any act or take action in accordance with this Section 2.36(c), Lender will notify Borrower of the making of any such payment, the performance of any such act, or the taking of any such action.

(d)     Borrower shall cause Owner to exercise each individual option, if any, to extend or renew the term of the Ground Lease not less than thirty (30) days prior to the last day upon which any such option may be exercised (and in all events within five (5) days after demand by Lender made at any time within one (1) year of the last day upon which any such option may be exercised), and Borrower hereby expressly authorizes and appoints Lender its attorney-in-fact to exercise any such option on behalf of Owner to so exercise such option if Borrower fails to cause Owner to exercise as herein required, which power of attorney shall be irrevocable and shall be deemed to be coupled with an interest. Borrower shall give Lender notice of Owner's exercise of any such option to extend or renew the term of the Ground Lease within five (5) days of the exercise of any such option.

(e)     Subject to Mortgage Lender's rights under the Mortgage Loan, Borrower shall cause Owner to assign, transfer and set over to Lender all of Borrower's claims and rights to the payment of damages arising from any rejection by the Ground Lessor of the Ground Lease under the Bankruptcy Code. Borrower shall notify Lender promptly (and in any event within ten (10) days) of any claim, suit, action or proceeding relating to the rejection of the Ground Lease. Lender is hereby irrevocably appointed as Borrower's attorney-in-fact, coupled with an interest, with exclusive power to file and prosecute, to the exclusion of Borrower, any proofs of claim, complaints, motions, applications, notices and other documents, in any case in respect of the Ground Lessor under the Bankruptcy Code during the continuance of an Event of Default. Borrower may make any compromise or settlement in connection with such proceedings (subject to Lender's reasonable approval); provided, however, that Lender shall be authorized and

entitled to compromise or settle any such proceeding if such compromise or settlement is made after the occurrence and during the continuance of an Event of Default. Borrower shall promptly execute and deliver to Lender any and all instruments reasonably required in connection with any such proceeding after request therefor by Lender. Except as set forth above, Borrower shall not, nor permit Owner to, adjust, compromise, settle or enter into any agreement with respect to such proceedings without the prior written consent of Lender, which consent shall not be unreasonably withheld or delayed.

(f)     Borrower shall not permit Owner to, without Lender's prior written consent, elect to treat the Ground Lease as terminated under the Bankruptcy Code. Any such election made without Lender's prior written consent shall be void.

(g)     If pursuant to the Bankruptcy Code, Owner seeks to offset against the rent reserved in the Ground Lease the amount of any damages caused by the non-performance by the Ground Lessor of any of the Ground Lessor's obligations under the Ground Lease after the rejection by the Ground Lessor of the Ground Lease under the Bankruptcy Code, Borrower shall, prior to Owner effecting such offset, notify Lender of its intention to do so, setting forth the amounts proposed to be so offset and the basis therefor. If Lender has failed to object as aforesaid within ten (10) days after notice from Borrower in accordance with the first sentence of this Section 2.35(g), Borrower may permit Owner to proceed to effect such offset in the amounts set forth in Borrower's notice. Neither Lender's failure to object as aforesaid nor any objection or other communication between Lender and Borrower relating to such offset shall constitute an approval of any such offset by Lender. Borrower shall indemnify and save Lender harmless from and against any and all claims, demands, actions, suits, proceedings, damages, losses, costs and expenses of every nature whatsoever (including, without limitation, reasonable attorneys' fees and disbursements) arising from or relating to any such offset by Owner against the rent reserved in the Ground Lease.

(h)     Borrower shall immediately, after obtaining knowledge thereof, notify Lender of any filing by or against the Ground Lessor of a petition under the Bankruptcy Code. Borrower shall thereafter forthwith give written notice of such filing to Lender, setting forth any information available to Borrower or Owner as to the date of such filing, the court in which such petition was filed, and the relief sought therein. Borrower shall promptly deliver to Lender following receipt any and all notices, summonses, pleadings, applications and other documents received by Borrower or Owner in connection with any such petition and any proceedings relating thereto.

(i)     Borrower shall, and shall cause Owner to, perform all other covenants with respect to the Ground Lease as set forth in the Mortgage Loan Documents for so long as any portion of the Debt remains outstanding (regardless of whether the Mortgage Loan remains outstanding).

Section 2.37. Environmental.

(a)     Covenants, Representations and Warranties. (i) None of Borrower, Equity Holders nor Owner has, at any time, and, to Borrower's best knowledge after due inquiry and investigation, except as set forth in the Environmental Report, no other Person has at any time,

34

handled, buried, stored, retained, refined, transported, processed, manufactured, generated, produced, spilled, allowed to seep, leak, escape or leach, or pumped, poured, emitted, emptied, discharged, injected, dumped, transferred or otherwise disposed of or dealt with Hazardous Materials on, to or from the Premises or any other real property owned and/or occupied by Borrower, Equity Holders or Owner, and Borrower, Equity Holders and Owner do not intend to and shall not use the Premises or any part thereof or any such other real property for the purpose of handling, burying, storing, retaining, refining, transporting, processing, manufacturing, generating, producing, spilling, seeping, leaking, escaping, leaching, pumping, pouring, emitting, emptying, discharging, injecting, dumping, transferring or otherwise disposing of or dealing with Hazardous Materials, except for use and storage for use of heating oil, cleaning fluids, pesticides and other substances customarily used in the operation of properties that are being used for similar purposes as the Premises are presently being used, provided such use and/or storage for use is in compliance with the requirements hereof and the other Loan Documents and does not give rise to liability under applicable Legal Requirements or Environmental Statutes or be the basis for a lien against the Premises or any part thereof. In addition, without limitation to the foregoing provisions, Borrower represents and warrants that, to the best of its knowledge, after due inquiry and investigation, except as previously disclosed in the Environmental Report, there is no asbestos in, on, over, or under all or any portion of the fire-proofing or any other portion of the Premises.

(ii)    Borrower, after due inquiry and investigation, knows of no seepage, leak, escape, leach, discharge, injection, release, emission, spill, pumping, pouring, emptying or dumping of Hazardous Materials into waters on, under or adjacent to the Premises or any part thereof or any other real property owned and/or occupied by Borrower, Equity Holders or Owner, or onto lands from which such Hazardous Materials might seep, flow or drain into such waters, except as disclosed in the Environmental Report.

(iii)    None of Borrower, Equity Holders nor Owner shall permit any Hazardous Materials to be handled, buried, stored, retained, refined, transported, processed, manufactured, generated, produced, spilled, allowed to seep, leak, escape or leach, or to be pumped, poured, emitted, emptied, discharged, injected, dumped, transferred or otherwise disposed of or dealt with on, under, to or from the Premises or any portion thereof at any time, except for use and storage for use of heating oil, ordinary cleaning fluids, pesticides and other substances customarily used in the operation of properties that are being used for similar purposes as the Premises is presently being used, provided such use and/or storage for use is in compliance with the requirements hereof and the other Loan Documents and does not give rise to liability under applicable Legal Requirements or be the basis for a lien against the Premises or any part thereof.

(iv)    Borrower represents and warrants that no actions, suits, or proceedings have been commenced, or are pending, or to the best knowledge of Borrower, are threatened with respect to any Legal Requirement governing the use, manufacture, storage, treatment, transportation, or processing of Hazardous Materials with respect to the Premises or any part thereof. None of Borrower, Equity Holders nor Owner has received any notice of, and, except as disclosed in the Environmental Report, after due inquiry, has no knowledge of any fact, condition, occurrence or circumstance which with notice or passage of time or both would give rise to a claim under or pursuant to any Environmental Statute pertaining to Hazardous Materials on, in, under or originating from the Premises or any part thereof or any other real property

owned or occupied by Borrower, Equity Holders or Owner or arising out of the conduct of Borrower, Equity Holders or Owner, including, without limitation, pursuant to any Environmental Statute.

(v)    None of Borrower, Equity Holders nor Owner has waived any Person's liability with regard to Hazardous Materials in, on, under or around the Premises, nor have Borrower, Equity Holders or Owner retained or assumed, contractually or by operation of law, any other Person's liability relative to Hazardous Materials or any claim, action or proceeding relating thereto.

(vi)    In the event that there shall be filed a lien against the Premises or any part thereof pursuant to any Environmental Statute pertaining to Hazardous Materials, Borrower shall, within sixty (60) days or, in the event that the applicable Governmental Authority has commenced steps to cause the Premises or any part thereof to be sold pursuant to the lien, within fifteen (15) days, from the date that Borrower, Equity Holders or Owner receives notice of such lien, either (i) pay the claim and remove the lien from the Premises, or (ii) furnish at Borrower's election (A) a bond reasonably satisfactory to Lender in the amount of the claim out of which the lien arises, (B) a cash deposit in the amount of the claim out of which the lien arises, or (C) other security reasonably satisfactory to Lender in an amount sufficient to discharge the claim out of which the lien arises.

(vii)    Borrower represents and warrants that except as disclosed in the Environmental Report, Borrower has no knowledge of any violation of any Environmental Statute or any Environmental Problem in connection with the Premises, nor have Borrower, Equity Holders or Owner been requested or required by any Governmental Authority to perform any remedial activity or other responsive action in connection with any Environmental Problem.

(viii)    Borrower covenants that it shall promptly notify Lender of the presence (other than heating oil, cleaning fluids, pesticides and other substances customarily used in the operation of properties that are being used for similar purposes as the Premises are presently being used in compliance with applicable Legal Requirements) and/or release of any Hazardous Materials and of any request for information or any inspection of the Premises or any part thereof by any Governmental Authority with respect to any Hazardous Materials and provide Lender with copies of such request and any response to any such request or inspection. Borrower covenants that it shall, in compliance with applicable Legal Requirements, conduct or cause to be conducted and complete all investigations, studies, sampling and testing (and promptly shall provide Lender with copies of any such studies and the results of any such test) and all remedial, removal and other actions necessary to clean up and remove all Hazardous Materials in, on, over, under, from or affecting the Premises or any part thereof in accordance with all such Legal Requirements applicable to the Premises or any part thereof to the reasonable satisfaction of Lender.

(ix)    Following the occurrence of an Event of Default hereunder, and without regard to whether Lender shall have taken possession of the Collateral or a receiver has been requested or appointed or any other right or remedy of Lender has or may be exercised hereunder or under any other Loan Document, Lender shall have the right (but no obligation), to conduct such investigations, studies, sampling and/or testing of the Premises or any part thereof as

36

Lender may, in its discretion, determine to conduct, relative to Hazardous Materials. All costs and expenses incurred in connection therewith including, without limitation, consultants' fees and disbursements and laboratory fees, shall constitute a part of the Debt and shall, upon demand by Lender, be immediately due and payable and shall bear interest at the Default Rate from the date so demanded by Lender until reimbursed. Borrower shall and shall cause Owner to, at its sole cost and expense, expeditiously cooperate in all reasonable respects in all such investigation, studies, samplings and/or testings including, without limitation, providing all relevant information and making knowledgeable people available for interviews.

(x)    Borrower represents and warrants that except in accordance with all applicable Environmental Statutes and as disclosed in the Environmental Report, (i) no underground treatment or storage tanks or pumps or water, gas, or oil wells are or have been located on the Premises, (ii) no PCBs or transformers, capacitors, ballasts or other equipment that contain dielectric fluid containing PCBs are located on the Premises, (iii) no insulating material containing urea formaldehyde is located on the Premises and (iv) no asbestos-containing material is located on the Premises.

## ARTICLE III. EVENTS OF DEFAULT/REMEDIES

Section 3.01. Events of Default. The Loan shall become immediately due at the option of Lender upon any one or more of the following events ("Event of Default"):

(a)    if the final payment, Exit Additional Interest Payment or prepayment premium, if any, due under the Note shall not be paid on Maturity;

(b)    if any monthly payment of interest and/or principal due under the Note (other than the sums described in (a) above) shall not be fully paid on the date upon which the same is due and payable thereunder;

(c)    if any Taxes or Other Charges or Section 2.26 Taxes or other amounts payable under Section 2.26 hereof are not paid when due;

(d)    if payment of any sum (other than the sums described in (a) above, (b) above or (c) above) required to be paid pursuant to the Note, this Agreement or any other Loan Document shall not be paid within five (5) days after Lender delivers written notice to Borrower that same is due and payable thereunder or hereunder;

(e)    if Borrower, any Equity Holder, Owner, Guarantor or, if Borrower, any Equity Holder, Owner or Guarantor is a partnership, any general partner of Borrower, such Equity Holder, Owner or Guarantor, or, if Borrower, any Equity Holder, Owner or Guarantor is a limited liability company, any member of Borrower, such Equity Holder, Owner or Guarantor, shall institute or cause to be instituted any proceeding for the termination or dissolution of Borrower, any Equity Holder, Owner, Guarantor or any such general partner or member;

(f)    if a default beyond applicable notice and grace periods shall occur under any of the Mortgage Loan Documents, or any other event or condition shall exist, if the effect of such event or condition is to accelerate or permit Mortgage Lender to accelerate the maturity of any portion of the Mortgage Loan;

(g)     if Borrower, any Equity Holder, Owner or Guarantor attempts to assign its rights under this Agreement or any other Loan Document or any interest herein or therein, or if any Transfer occurs in breach of the terms of Section 2.11;

(h)     if any representation or warranty of Borrower, any Equity Holder, Owner or Guarantor made herein or in any other Loan Document or in any certificate, report, financial statement or other instrument or agreement furnished to Lender shall prove false or misleading in any material respect;

(i)     if Borrower, any Equity Holder, Owner, Guarantor or, if Borrower, any Equity Holder, Owner or Guarantor is a partnership, any general partner of Borrower, such Equity Holder, Owner or Guarantor, or, if Borrower, any Equity Holder, Owner or Guarantor is a limited liability company, any member of Borrower, such Equity Holder, Owner or Guarantor, shall make an assignment for the benefit of creditors or shall admit in writing its inability to pay its debts generally as they become due;

(j)     if a receiver, liquidator or trustee of Borrower, any Equity Holder, Owner or Guarantor or any general partner of Borrower, any Equity Holder, Owner or Guarantor shall be appointed or if Borrower, any Equity Holder, Owner or Guarantor or their respective general partners shall be adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by or against, consented to, or acquiesced in by, Borrower, any Equity Holder, Owner, Guarantor or their respective general partners or if any proceeding for the dissolution or liquidation of Borrower, any Equity Holder, Owner, Guarantor or their respective general partners shall be instituted; however, if such appointment, adjudication, petition or proceeding was involuntary and not consented to by Borrower, Equity Holders, Owner, Guarantor or their respective general partners, as applicable, upon the same not being discharged, stayed or dismissed within sixty (60) days or if Borrower, any Equity Holder, Owner, Guarantor or their respective general partners shall generally not be paying its debts as they become due;

(k)     if Borrower consummates a transaction which would cause this Agreement or Lender's rights under this Agreement, the Note or any other Loan Document to constitute a non-exempt prohibited transaction under ERISA or result in a violation of a state statute regulating government plans subjecting Lender to liability for a violation of ERISA or a state statute;

(l)     if a default beyond applicable notice and grace periods shall occur under any loan and security agreement executed by Borrower or any Affiliate of Borrower which secures, in whole or in part, the Debt;

(m)     if any pledge or security interest made or granted or purported to be made or granted pursuant to this Agreement or any of the other Loan Documents shall cease to be in full force and effect or shall not be enforceable or shall not be of the effect or have the priority stated herein or therein for such pledge or security interest;

(n)     if a sale of the Premises occurs and concurrently therewith the Loan is not repaid in full; or

(o)     if a default shall occur under any of the other terms, covenants or conditions of

38

the Note, this Agreement or any other Loan Document, other than as set forth in (a) through (n) above, for ten (10) days after notice from Lender in the case of any default which can be cured by the payment of a sum of money, or for thirty (30) days after notice from Lender in the case of any other default; provided, however, that if such non monetary default is susceptible of cure but cannot reasonably be cured within such 30-day period and provided further that Borrower shall have commenced to cure such non-monetary default within such 30-day period and thereafter diligently and expeditiously proceeds to cure the same, such 30-day period shall be extended for such time as is reasonably necessary for Borrower in the exercise of due diligence to cure such non-monetary default, such additional period not to exceed sixty (60) days.

Section 3.02. Remedies. (a) Upon the occurrence and during the continuance of any Event of Default, Lender may, in addition to any other rights or remedies available to it hereunder or under any other Loan Document, at law or in equity, take such action, without notice or demand, as it reasonably deems advisable to protect and enforce its rights against Borrower and in and to the Collateral, including, but not limited to, the following actions, each of which may be pursued singly, concurrently or otherwise, at such time and in such order as Lender may determine, in its sole discretion, without impairing or otherwise affecting any other rights and remedies of Lender hereunder, at law or in equity: (i) declare all or any portion of the unpaid Loan to be immediately due and payable; provided, however, that upon the occurrence of any of the events specified in Section 3.01(j), the entire Loan will be immediately due and payable without notice or demand or any other declaration of the amounts due and payable; or (ii) bring an action to foreclose this Agreement and thereupon Lender may (A) exercise all rights and powers of Borrower with respect to the Collateral or any part thereof, whether in the name of Borrower or otherwise and (B) apply the receipts from the Collateral to the payment of the Debt, after deducting therefrom all expenses (including, without limitation, reasonable attorneys' fees and disbursements and all applicable transfer taxes) reasonably incurred in connection therewith, as well as just and reasonable compensation for the services of Lender's third-party agents; or (iii) sell the Collateral or institute proceedings for the complete foreclosure of this Agreement, or take such other action as may be allowed pursuant to Legal Requirements, at law or in equity, for the enforcement of this Agreement; or (iv) pursue any or all such other rights or remedies as Lender may have under applicable law or in equity (including, without limitation, all rights and remedies to a secured party under the UCC); provided, however, that the provisions of this Section shall not be construed to extend or modify any of the notice requirements or grace periods provided for hereunder or under any of the other Loan Documents.

(b)    In addition to the remedies described in subsection (a) above, if any Event of Default shall occur, so long as such Event of Default shall be continuing, (i) Lender and/or its nominees or designees shall have the right to receive any and all dividends, payments or Distributions paid with respect to the Equity Interests and the other Collateral, as applicable, and make application thereof in accordance with this Agreement (and any dividends and other payments received in trust by Borrower for the benefit of Lender shall be segregated from the other funds of Borrower) and (ii) at Lender's election, all Equity Interests shall be transferred to Lender and/or one (1) or more nominee(s) or designee(s) thereof, and Lender and/or such nominee(s) or designee(s) may in the name of Borrower or in Lender's and/or such nominee's(s') or designee's(s') own name, collect all payments and assets due Borrower pursuant to the Equity Interests and/or the applicable Organizational Documents, and Lender and/or such nominee(s) or designee(s) may thereafter exercise (A) all voting and other rights

pertaining to the Equity Interests and/or the other Collateral under the Organizational Documents, and (ii) any and all rights of conversion, exchange, subscription any and other rights, privileges or options pertaining to the Equity Interests as if they were the absolute owners thereof (including the right to exchange at their discretion any and all of the Equity Interests upon the merger, consolidation, reorganization, recapitalization or other change in the structure of any Corporation, LLC or Partnership), or upon the exercise by Borrower or Lender and/or such nominee(s) or designee(s) of any right, privilege or option pertaining to such Equity Interests, and, in connection therewith, the right to deposit and deliver evidences of the Equity Interests with any committee, depository, transfer agent, registrar or other designated agency (upon such terms and conditions as they may determine), all without liability except to account for property actually received by them, but neither Lender nor any such nominee or designee shall have any duty to exercise any such right, privilege or option and shall not be responsible for any failure to do so or delay in so doing. Further, unless and until Lender and/or such nominee(s) or designee(s) succeeds to actual ownership thereof, pursuant to the exercise of Lender's remedies described in subsection (a) above, neither Lender nor any such nominee or designee shall be obligated to perform or discharge any obligation, duty or liability in connection with the Equity Interests or the other Collateral. The rights of Lender hereunder shall not be conditioned or contingent upon the pursuit by Lender of any other right or remedy against Borrower or any guarantor of any of the Debt, or against any other Person which may be or become liable in respect of all or any part of the Debt or against any other collateral security therefor, guarantee thereof or right of offset with respect thereto. Neither Lender nor any of its nominees or designees shall be liable for any failure to demand, collect or realize upon all or any part of the Collateral or for any delay in doing so, nor shall they be under any obligation to sell or otherwise dispose of any Collateral upon the request of Borrower or any other Person or to take any other action whatsoever with regard to the Collateral or any part thereof.

(c)    Following the occurrence and during the continuance of an Event of Default, Lender may, at its election, and in addition to any other remedies available hereunder, in its sole and absolute discretion, no such duty being imposed hereby, pay, purchase, contest or compromise any encumbrance, charge or lien which is prior or superior to its security interest in the Collateral and pay all expenses incurred therewith (any payment or expense so incurred shall be deemed a part of the Debt and shall be immediately due and payable and secured hereby), all of which shall be deemed authorized by Borrower. All such expenses not paid when due shall accrue interest at the Default Rate.

(d)    Without limiting the generality of the other provisions of this Agreement, Lender is hereby authorized by Borrower, but not obligated, in the event of any Event of Default hereunder giving rise to Lender's rights to sell or otherwise dispose of the Collateral, and after the giving of any notices required herein, to sell all or any part of the Collateral at private sale, subject to an investment letter or in any other manner which will not require the Collateral, or any part thereof, to be registered in accordance with the Securities Act of 1933, as amended (the "Securities Act"), or other applicable rules and regulations promulgated thereunder, or any other law or regulation, at the best price reasonably obtainable by Lender at any such private sale or other disposition in the manner mentioned above, and Borrower specifically acknowledges that any such disposition shall be commercially reasonable under the UCC even though any such private sales may be at prices and on terms less favorable than those obtainable through a public sale without such restrictions, and agrees that Lender shall have no obligation to engage in public

40

CURRENT 8555596v8

sales and no obligation to delay the sale of any Collateral for the period of time necessary to permit the issuer thereof to register it for a form of public sale required by registration under the Securities Act or under applicable state securities laws, even if such issuer would, or should agree to, so register it. Lender is also hereby authorized by Borrower, but not obligated, to take such actions, give such notices, obtain such consents, and do such other things as Lender may deem required or appropriate in the event of a sale or disposition of any of the Collateral. If Lender determines to exercise its right to sell any or all of the Collateral, upon written request, Borrower shall and shall cause each issuer of any Pledged Interests or other Equity Interests owned by Borrower to be sold hereunder from time to time to furnish to Lender all such information as Lender may request in order to determine the number of shares and other instruments included in the Collateral which may be sold by Lender in exempt transactions under the Securities Act and the rules and regulations of the Securities and Exchange Commission thereunder, as the same are from time to time in effect. Borrower clearly understands that Lender may at its discretion approach a restricted number of potential purchasers and that a sale under such circumstances may yield a lower price for the Collateral, or any part or parts thereof, than would otherwise be obtainable if same were registered and sold in the open market. Borrower agrees: (i) in the event Lender shall, upon an Event of Default hereunder, sell the Collateral, or any portion thereof, at such private sale or sales, Lender shall have the right to rely upon the advice and opinion of any member firm of the National Security Exchange as to the best price reasonably obtainable upon such private sale thereof; and (ii) that such reliance shall be conclusive evidence that Lender handled such matter in a commercially reasonable manner under the UCC.

(e)     In order to permit Lender to exercise the voting and other consensual rights which it may be entitled to exercise pursuant to this Agreement and to receive all dividends and other Distributions which it may be entitled to receive under this Agreement, (i) Borrower shall promptly execute and deliver (or cause to be executed and delivered) to Lender all such proxies, dividend payment orders and other instruments as Lender may from time to time reasonably request and (ii) WITHOUT LIMITING THE EFFECT OF THE IMMEDIATELY PRECEDING CLAUSE (i), BORROWER HEREBY GRANTS TO LENDER AN IRREVOCABLE PROXY TO VOTE THE PLEDGED INTERESTS AND OTHER EQUITY INTERESTS PLEDGED BY BORROWER AND TO EXERCISE ALL OTHER RIGHTS, POWERS, PRIVILEGES AND REMEDIES TO WHICH A HOLDER OF THE PLEDGED INTERESTS OR OTHER EQUITY INTERESTS WOULD BE ENTITLED (INCLUDING WITHOUT LIMITATION GIVING OR WITHHOLDING WRITTEN CONSENTS OF SHAREHOLDERS, MEMBERS OR PARTNERS, AS APPLICABLE, CALLING SPECIAL MEETINGS OF SHAREHOLDERS, MEMBERS OR PARTNERS, AS APPLICABLE, AND VOTING AT SUCH MEETINGS), WHICH PROXY IS COUPLED WITH AN INTEREST AND SHALL BE EFFECTIVE, AUTOMATICALLY AND WITHOUT THE NECESSITY OF ANY ACTION (INCLUDING ANY TRANSFER OF ANY PLEDGED INTERESTS ON THE RECORD BOOKS OF THE ISSUER THEREOF) BY ANY OTHER PERSON (INCLUDING THE ISSUER OF THE PLEDGED INTERESTS OR ANY OFFICER OR AGENT THEREOF), UPON THE OCCURRENCE AND DURING THE CONTINUANCE OF AN EVENT OF DEFAULT AND WHICH PROXY SHALL ONLY TERMINATE UPON THE PAYMENT IN FULL OF THE DEBT OTHER THAN THE SURVIVING OBLIGATIONS (WHICH, HOWEVER, SHALL REMAIN SUBJECT TO THE PREFERENTIAL PAYMENT

PROVISIONS).

(f)     Any time after an Event of Default Lender shall have the power to sell the Collateral or any part thereof at public auction, in such manner, at such time and place, upon such terms and conditions, and upon such public notice as Lender may deem best for the interest of Lender, or as may be required or permitted by applicable law, consisting of advertisement in a newspaper of general circulation in the jurisdiction and for such period as applicable law may require and at such other times and by such other methods, if any, as may be required by law to convey the Collateral to and at the cost of the purchaser, who shall not be liable to see to the application of the purchase money. Notwithstanding anything contained in this Agreement or in any other Loan Document, the proceeds or avails of any sale made under or by virtue of this Section, together with any other sums which then may be held by Lender under this Agreement, whether under the provisions of this Section or otherwise, shall be applied as follows:

First: To the payment of the third-party costs and expenses reasonably incurred in connection with any such sale (including, without limitation, any transfer taxes) and to advances, fees and expenses, including, without limitation, reasonable fees and expenses of Lender's legal counsel as applicable, and of any judicial proceedings wherein the same may be made, and of all expenses, liabilities and advances reasonably made or incurred by Lender under this Agreement, together with interest as provided herein on all such advances made by Lender;

Second: To the payment of the whole amount then due, owing and unpaid under the Note for principal and interest thereon, with interest on such unpaid principal at the Default Rate from the date of the occurrence of the earliest Event of Default that formed a basis for such sale until the same is paid;

Third: To the payment of any other portion of the Loan required to be paid by Borrower pursuant to any provision of this Agreement, the Note, or any of the other Loan Documents; and

Fourth: The surplus, if any, to Borrower unless otherwise required by Legal Requirements.

Lender and any receiver or custodian of the Collateral or any part thereof shall be liable to account for only those rents, issues, proceeds and profits, as applicable, actually received by it.

(g)     Lender may adjourn from time to time any sale by it to be made under or by virtue of this Agreement by announcement at the time and place appointed for such sale or for such adjourned sale or sales and, except as otherwise provided by any applicable provision of Legal Requirements, Lender, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

(h)     Upon the completion of any sale or sales made by Lender under or by virtue of this Section, Lender, or any officer of any court empowered to do so, shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument, or good and sufficient instruments, granting, conveying, assigning and transferring all estate, right, title and interest in and to the Collateral. Lender is hereby irrevocably appointed the true and lawful attorney-in-fact

of Borrower (coupled with an interest), in its name and stead, to make all necessary conveyances, assignments, transfers and deliveries and for that purpose Lender may execute all necessary instruments of conveyance, assignment, transfer and delivery, and may substitute one or more Persons with like power, Borrower hereby ratifying and confirming all that its said attorney-in-fact or such substitute or substitutes shall lawfully do by virtue hereof. Nevertheless, Borrower, if so requested by Lender, shall ratify and confirm any such sale or sales by executing and delivering to Lender, or to such purchaser or purchasers all such instruments as may be advisable, in the sole judgment of Lender, for such purpose, and as may be designated in such request. Any such sale or sales made under or by virtue of this Section shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Borrower in and to the Collateral, and shall, to the fullest extent permitted under Legal Requirements, be a perpetual bar, both at law and in equity against Borrower and against any and all Persons claiming or who may claim the same, or any part thereof, from, through or under Borrower.

(i)     In the event of any sale made under or by virtue of this Section, the entire Loan immediately thereupon shall, anything in the Loan Documents to the contrary notwithstanding, become due and payable.

(j)     Upon any sale made under or by virtue of this Section (whether made under the power of sale herein granted or under or by virtue of judicial proceedings or a judgment or decree of foreclosure and sale), Lender may bid for and acquire the Collateral or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the Loan the net sales price after deducting therefrom the expenses of the sale (including, without limitation, transfer taxes) and the costs of the action.

(k)     No recovery of any judgment by Lender and no levy of an execution under any judgment upon the Collateral or upon any other property of Borrower shall release the lien of this Agreement upon the Collateral or any part thereof, or any liens, rights, powers or remedies of Lender hereunder, but such liens, rights, powers and remedies of Lender shall continue unimpaired until all amounts due under the Note, this Agreement and the other Loan Documents are paid in full.

(l)     Upon the exercise by Lender of any power, right, privilege, or remedy pursuant to this Agreement which requires any consent, approval, registration, qualification, or authorization of any Governmental Authority, Borrower agrees to execute and deliver, or will cause the execution and delivery of, all applications, certificates, instruments, assignments and other documents and papers that Lender or any purchaser of the Collateral may be required to obtain for such governmental consent, approval, registration, qualification, or authorization and Lender is hereby irrevocably appointed the true and lawful attorney-in-fact of Borrower (coupled with an interest), in its name and stead, to execute all such applications, certificates, instruments, assignments and other documents and papers.

(m)     Lender may comply with any applicable Legal Requirements in connection with the disposition of the Collateral, and Lender's compliance therewith will not be considered to adversely affect the commercial reasonableness of any sale of the Collateral.

(n)    Lender may sell the Collateral without giving any warranties as to the Collateral. Lender may specifically disclaim any warranties of title, possession, quiet enjoyment or the like. This procedure will not be considered to adversely affect the commercial reasonableness of any sale of the Collateral.

(o)    If Lender sells any of the Collateral upon credit, Borrower will be credited only with payments actually made by the purchaser, received by Lender and applied to the indebtedness of the purchaser. In the event the purchaser of the Collateral fails to fully pay for the Collateral, Lender may resell the Collateral and Borrower will be credited with the proceeds of such sale.

Section 3.03.  No Conditions Precedent to Exercise of Lender's Remedies.  Borrower waives any and all legal requirements that Lender institute any action or proceeding at law or in equity against Borrower or any other party or exhaust its remedies against Borrower or any other party in respect of any other security held by Lender for the Debt or any portion thereof as a condition precedent to exercising its right and remedies pursuant to this Agreement.

Section 3.04.  Additional Security.  Borrower authorizes Lender without notice or demand and without affecting its liability under this Agreement or under the Note (i) to take and hold security in addition to the security interest in the Collateral granted by Borrower to Lender pursuant to this Agreement, for the payment of the Debt or any part thereof, and to exchange, waive or release any such other security and (ii) to release or substitute Borrower.

Section 3.05.  Rights and Remedies Continue.  Until the Debt shall have been paid in full, all rights, powers and remedies granted to Lender under this Agreement shall continue to exist and may be exercised by Lender at any time and from time to time irrespective of the fact that the Debt or any part thereof may have become barred by any statute of limitations or that the liability of Borrower therefor may have ceased.

Section 3.06.  Right to Terminate Proceedings.  Lender may terminate or rescind any proceeding or other action brought in connection with its exercise of the remedies provided in Section 3.02 at any time before the conclusion thereof, as determined in Lender's sole discretion and without prejudice to Lender.

Section 3.07.  No Waiver or Release.  The failure of Lender to exercise any right, remedy or option provided in the Loan Documents shall not be deemed a waiver of such right, remedy or option or of any covenant or obligation contained in the Loan Documents. No acceptance by Lender of any payment after the occurrence of an Event of Default and no payment by Lender of any payment or obligation for which Borrower is liable hereunder shall be deemed to waive or cure any Event of Default. No sale of all or any portion of the Collateral, no forbearance on the part of Lender, and no extension of time for the payment of the whole or any portion of the Loan or any other indulgence given by Lender to Borrower or any other Person, shall operate to release or in any manner affect the interest of Lender in the Collateral or the liability of Borrower to pay the Loan. No waiver by Lender shall be effective unless it is in writing and then only to the extent specifically stated.

Section 3.08.  Payment of Debt After Default.  If following the occurrence of any Event

CURRENT 8555596v8

of Default, Borrower shall tender payment of an amount sufficient to satisfy the Debt in whole or in part at any time prior to a UCC sale of the Collateral, and if at the time of such tender prepayment of the principal balance of the Note is not permitted by the Note and this Agreement, Borrower shall, in addition to the entire Debt, also pay to Lender a sum equal to interest which would have accrued on the principal balance of the Note at an interest rate equal to the LIBOR Margin for the Note plus the greater of (x) the then current LIBOR Rate and (y) the then current average yield for "This Week" as published by the Federal Reserve Board during the most recent full week preceding the date on which Borrower tenders such payment in Federal Reserve Statistical Release H.15 (519) for instruments having a ten (10) year maturity, from the date of such tender to the earlier of (a) the Maturity Date or (b) the first day of the period during which prepayment of the principal balance of the Note would have been permitted together with a prepayment consideration equal to the prepayment consideration which would have been payable as of the first day of the period during which prepayment would have been permitted. If at the time of such tender, prepayment of the principal balance of the Note is permitted, such tender by Borrower shall be deemed to be a voluntary prepayment of the principal balance of the Note and Borrower shall, in addition to the entire Debt, also pay to Lender the applicable Exit Additional Interest Payment and prepayment consideration specified in the Note and this Agreement.

Section 3.09.  No Impairment; No Releases.  The interests and rights of Lender under the Loan Documents shall not be impaired by any indulgence, including (a) any renewal, extension or modification which Lender may grant with respect to any of the Loan; (b) any surrender, compromise, release, renewal, extension, exchange or substitution which Lender may grant with respect to the Loan Documents or any portion thereof; or (c) any release or indulgence granted to any maker, endorser, or surety of any of the Loan.

Section 3.10.  Interest After Default.  If any amount due under the Note, this Agreement or any of the other Loan Documents is not paid within any applicable notice and grace period after same is due, whether such date is the stated due date, any accelerated due date or any other date or at any other time specified under any of the terms hereof or thereof, then, in such event, Borrower shall pay interest on the amount not so paid from and after the date on which such amount first becomes due at the Default Rate; and such interest shall be due and payable at such rate until the earlier of the cure of all Events of Default or the payment of the entire amount due to Lender, whether or not any action shall have been taken or proceeding commenced to recover the same or to foreclose this Agreement. All unpaid and accrued interest shall be secured by this Agreement as part of the Debt.  Nothing in this Section or in any other provision of this Agreement shall constitute an extension of the time for payment of the Debt.

Section 3.11.  Late Payment Charge.  If any portion of the Debt is not paid in full on or before the date on which it is due and payable hereunder, Borrower shall pay to Lender an amount equal to five percent (5%) of such unpaid portion of the Debt ("Late Charge") to defray the expense incurred by Lender in handling and processing such delinquent payment, and such amount shall constitute a part of the Debt.

Section 3.12.  Recovery of Sums Required To Be Paid.  Lender shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due and payable hereunder (after the expiration of any grace period or the giving of any notice herein provided, if any), without regard to whether or not the balance of the Debt