shall be due, and without prejudice to the right of Lender thereafter to bring an action of foreclosure, or any other action, for a default or defaults by Borrower existing at the time such earlier action was commenced.

Section 3.13. Control By Lender After Default. Notwithstanding the appointment of any custodian, receiver, liquidator or trustee of Borrower, or of any of its property, or of the Collateral or any part thereof, to the extent permitted by Legal Requirements, Lender shall be entitled to obtain possession and control of all Collateral.

## ARTICLE IV. INDEMNIFICATION

Section 4.01. Indemnification Covering Property. In addition, and without limitation, to any other provision of this Agreement or any other Loan Document, Borrower shall protect, indemnify and save harmless Lender and its successors and assigns, and each of their agents, employees, officers, directors, stockholders, partners and members (collectively, "Indemnified Parties") for, from and against any claims, demands, penalties, fines, liabilities, settlements, damages, costs and expenses of whatever kind or nature, known or unknown, contingent or otherwise, whether incurred or imposed within or outside the judicial process, including, without limitation, reasonable attorneys' fees and disbursements imposed upon or incurred by or asserted against any of the Indemnified Parties by reason of (a) ownership of this Agreement or the Collateral; (b) any accident, injury to or death of any person or loss of or damage to property occurring in, on or about the Premises or the Collateral or any part thereof or on the adjoining sidewalks, curbs, parking areas, streets or ways; (c) any use, nonuse or condition in, on or about, or possession, alteration, repair, operation, maintenance or management of, the Premises or any part thereof or on the adjoining sidewalks, curbs, parking areas, streets or ways; (d) any failure on the part of Borrower to perform or comply with any of the terms of this Agreement; (e) performance of any labor or services or the furnishing of any materials or other property in respect of the Premises or any part thereof; (f) any claim by brokers, finders or similar Persons claiming to be entitled to a commission in connection with any Lease or other transaction involving the Premises or any part thereof; (g) any Taxes and Other Charges (including, without limitation, any Taxes and Other Charges attributable to the execution, delivery, filing, or recording of any Loan Document, Lease or memorandum thereof) and any amounts payable by Borrower pursuant to Section 2.26 hereof (including, without limitation, Section 2.26 Taxes); (h) any lien or claim arising on or against the Premises or any part thereof under any Legal Requirement or any liability asserted against any of the Indemnified Parties with respect thereto; (i) any claim arising out of or in any way relating to any tax or other imposition on the making and/or recording of this Agreement, the Note or any of the other Loan Documents; (j) a Default under Sections 2.02(f), 2.02(g), 2.02(k) or 2.02(s) hereof, (k) the failure of any Person to file timely with the Internal Revenue Service an accurate Form 1099-B, Statement for Recipients of Proceeds from Real Estate, Broker and Barter Exchange Transactions, which may be required in connection with the Loan, or to supply a copy thereof in a timely fashion to the recipient of the proceeds of the Loan; (l) the claims of any lessee or any Person acting through or under any lessee or otherwise arising under or as a consequence of any Lease; or (m) the actual or alleged presence, disposal, escape, seepage, leakage, spillage, discharge, emission, release or threat of release of any Hazardous Materials in, on, over, under, from or affecting the Premises. Notwithstanding the foregoing provisions of this Section to the contrary, Borrower shall have no obligation to indemnify the Indemnified Parties pursuant to this Section for liabilities,

obligations, claims, damages, penalties, causes of action, costs and expenses relative to the foregoing which result from Lender's, and its successors' or assigns', willful misconduct or gross negligence. Any amounts payable to Lender by reason of the application of this Section shall constitute a part of the Loan secured by this Agreement and the other Loan Documents and shall become immediately due and payable and shall bear interest at the Default Rate from the date the liability, obligation, claim, cost or expense is sustained by Lender, as applicable, until paid. The provisions of this Section shall survive the termination of this Agreement whether by repayment of the Loan, foreclosure of this Agreement, assignment or otherwise. In case any action, suit or proceeding is brought against any of the Indemnified Parties by reason of any occurrence of the type set forth in (a) through (m) above, Borrower shall, at Borrower's expense, resist and defend such action, suit or proceeding or will cause the same to be resisted and defended by counsel at Borrower's expense for the insurer of the liability or by counsel designated by Borrower (unless reasonably disapproved by Lender promptly after Lender has been notified of such counsel); provided, however, that nothing herein shall compromise the right of Lender (or any other Indemnified Party) to appoint its own counsel at Borrower's expense for its defense with respect to any action which, in the reasonable opinion of Lender or such other Indemnified Party, as applicable, presents a conflict or potential conflict between Lender or such other Indemnified Party that would make such separate representation advisable. Any Indemnified Party will give Borrower prompt notice after such Indemnified Party obtains actual knowledge of any potential claim by such Indemnified Party for indemnification hereunder. The Indemnified Parties shall not settle or compromise any action, proceeding or claim as to which it is indemnified hereunder without notice to Borrower.

## ARTICLE V. SECURITY AGREEMENT

Section 5.01. Security Agreement. (a) This Agreement is a "security agreement" within the meaning of the UCC. If an Event of Default shall occur and be continuing, Lender, in addition to any other rights and remedies which it may have, shall have and may exercise with respect to the Collateral, immediately and without demand, any and all rights and remedies granted to a secured party upon default under the UCC, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Lender may deem necessary for the care, protection and preservation of the Collateral. Upon request or demand of Lender following the occurrence and during the continuance of an Event of Default, Borrower shall, at its expense, assemble the Collateral and make it available to Lender at a convenient place acceptable to Lender. Borrower shall pay to Lender on demand any and all expenses, including reasonable legal expenses and attorneys' fees and all transfer taxes, incurred or paid by Lender in protecting its interest in the Collateral and in enforcing its rights hereunder with respect to the Collateral. Any notice of sale, disposition or other intended action by Lender with respect to the Collateral given to Borrower in accordance with the provisions hereof at least ten (10) days prior to such action shall constitute reasonable notice to Borrower.

(b)     Borrower hereby irrevocably appoints Lender as its attorney-in-fact, coupled with an interest, to file with the appropriate public office on its behalf any financing or other statements signed only by Lender, as secured party, or, to the extent permitted under the UCC, unsigned, in connection with the Collateral covered by this Agreement. Such financing statements may, at the option of Lender, describe the Collateral as "all assets" or "all personal

property" of Borrower.

(c)     Borrower will furnish to Lender from time to time statements and schedules further identifying and describing the Collateral and such other reports in connection with the Collateral as Lender may reasonably request, all in reasonable detail.

(d)     The powers conferred on Lender hereunder are solely to protect Lender's interest in the Collateral and shall not impose any duty upon it to exercise any such powers. Except for the safe custody of any Collateral in its possession and the accounting for moneys actually received by it hereunder, Lender shall have no duty (and neither Lender nor any of its partners, members, officers, directors, employees or agents shall be responsible to Borrower for any act or failure to act) as to any Collateral, as to ascertaining or taking action with respect to calls, conversions, exchanges, maturities, tenders or other matters relating to any Collateral, whether or not Lender has or is deemed to have knowledge of such matters, or as to the taking of any necessary steps to preserve rights against any parties or any other rights pertaining to any Collateral. Lender shall be deemed to have exercised reasonable care in the custody and preservation of any Collateral in its possession if such Collateral is accorded treatment substantially equal to that which it accords its own property.

## ARTICLE VI. PREPAYMENT

Section 6.01. <u>Prepayment</u>. (a) Except as set forth in Section 6.01(b) hereof, no prepayment of the Debt may be made in whole or in part.

(b)     Borrower may prepay the Loan, in whole, but not in part, as of the last day of an Interest Accrual Period in accordance with the following provisions:

(i)     Lender shall have received from Borrower, not less than thirty (30) days', nor more than ninety (90) days', prior written notice specifying the date proposed for such prepayment and the amount which is to be prepaid.

(ii)     Borrower shall also pay to Lender all interest due through and including the last day of the Interest Accrual Period in which such prepayment is being made, together with any and all other amounts due and owing pursuant to the terms of the Note, this Agreement or the other Loan Documents.

Section 6.02. <u>Additional Interest</u>. Upon any repayment or prepayment of the Loan on or prior to the Payment Date occurring in June 2010, Borrower may, in its sole discretion, pay to Lender the Exit Additional Interest Payment on the date of such repayment or prepayment in lieu of paying to Lender Additional Interest (as defined in the Note). As used herein, "<u>Exit Additional Interest Payment</u>" shall mean, if paid on or prior to the Payment Date occurring in June 2008, $13,450,000 or, if paid subsequent to such date but prior to the Payment Date occurring in June 2010, an amount equal to the IRR, in each case less any sums previously paid to Lender pursuant to clauses (i) - (iii) of Section 2.1(a) of the Note (as adjusted pursuant to Section 2.1(f) of the Note).

CURRENT 8555596v8

## ARTICLE VII.  MISCELLANEOUS

Section 7.01.  <u>Notices</u>.  Any notice, demand, statement, request or consent made hereunder shall be in writing and delivered personally or sent to the party to whom the notice, demand or request is being made by Federal Express or other nationally recognized overnight delivery service, as follows and shall be deemed given when delivered personally or one (1) Business Day after being deposited with Federal Express or such other nationally recognized delivery service:

| | |
|---|---|
| If to Lender: | Petra Mortgage Capital Corp. LLC<br>1370 Avenue of the Americas, 23rd Floor<br>New York, NY  10019<br>Attn:  Joseph K. Iacono<br>Facsimile:  (212) 489-1629 |
| with a copy to: | Proskauer Rose LLP<br>1585 Broadway<br>New York, New York 10036<br>Attn:  David J. Weinberger, Esq.<br>Facsimile:  (212) 969-2900 |
| If to Borrower: | To Borrower, at the address first written above, |
| with a copy to: | Paul, Hastings, Janofsky & Walker LLP<br>75 East 55th Street<br>New York, New York 10019<br>Attn:  Robert J. Wertheimer, Esq.<br>Facsimile:  (212) 318-6936 |
| | and |
| | Harlow, Adams & Friedman<br>300 Bic Drive<br>Milford, Connecticut 06460<br>Attn:  Dana Eric Friedman<br>Facsimile:  (203) 878-9568 |

or such other address as Borrower or Lender shall hereafter specify by not less than ten (10) days prior written notice as provided herein; provided, however, that notwithstanding any provision of this Section to the contrary, such notice of change of address shall be deemed given only upon actual receipt thereof.  Rejection or other refusal to accept or the inability to deliver because of changed addresses of which no notice was given as herein required shall be deemed to be receipt of the notice, demand, statement, request or consent.

Section 7.02.  <u>Exhibits Incorporated</u>.  The information set forth on the cover hereof, and the Exhibits annexed hereto, are hereby incorporated herein as a part of this Agreement with the same effect as if set forth in the body hereof.

Section 7.03. <u>Severable Provisions</u>. If any term, covenant or condition of the Loan Documents including, without limitation, the Note or this Agreement, is held to be invalid, illegal or unenforceable in any respect, such Loan Document shall be construed without such provision.

Section 7.04. <u>Cumulative Rights</u>. The rights, powers and remedies of Lender under this Agreement shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Lender shall not be limited exclusively to the rights and remedies herein stated but shall be entitled, subject to the terms of this Agreement, to every right and remedy now or hereafter afforded by law.

Section 7.05. <u>Duplicate Originals</u>. This Agreement may be executed in any number of duplicate originals and each such duplicate original shall be deemed to constitute but one and the same instrument.

Section 7.06. <u>Waiver of Notice</u>. Borrower shall not be entitled to any notices of any nature whatsoever from Lender except with respect to matters for which this Agreement specifically and expressly provides for the giving of notice by Lender to Borrower and except with respect to matters for which Borrower is not, pursuant to applicable legal requirements permitted to waive the giving of notice.

Section 7.07. <u>Joint and Several Liability</u>. If Borrower consists of more than one Person, the obligations and liabilities of each such Person hereunder shall be joint and several.

Section 7.08. <u>No Oral Change</u>. The terms of this Agreement, together with the terms of the Note and the other Loan Documents constitute the entire understanding and agreement of the parties hereto and supersede all prior agreements, understandings and negotiations between Borrower and Lender with respect to the Loan. This Agreement, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

Section 7.09. <u>WAIVER OF COUNTERCLAIMS, ETC.</u> BORROWER HEREBY WAIVES THE RIGHT TO ASSERT A COUNTERCLAIM, OTHER THAN A COMPULSORY COUNTERCLAIM, IN ANY ACTION OR PROCEEDING BROUGHT AGAINST IT BY LENDER OR ITS AGENTS, AND WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING BROUGHT BY EITHER PARTY HERETO AGAINST THE OTHER OR IN ANY COUNTERCLAIM BORROWER MAY BE PERMITTED TO ASSERT HEREUNDER OR WHICH MAY BE ASSERTED BY LENDER OR ITS AGENTS, AGAINST BORROWER, OR IN ANY MATTERS WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS AGREEMENT OR THE DEBT.

Section 7.10. <u>Headings; Construction of Documents, etc.</u> The headings and captions of various paragraphs of this Agreement are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

Borrower acknowledges that it was represented by competent counsel in connection with the negotiation and drafting of this Agreement and the other Loan Documents and that neither this Agreement nor the other Loan Documents shall be subject to the principle of construing the meaning against the Person who drafted same.

Section 7.11.  Sole Discretion of Lender.  Whenever Lender exercises any right given to it to approve or disapprove, or any arrangement or term is to be satisfactory to Lender, the decision of Lender to approve or disapprove or to decide that arrangements or terms are satisfactory or not satisfactory shall be in the sole discretion of Lender and shall be final and conclusive, except as may be otherwise specifically provided herein.

Section 7.12.  APPLICABLE LAW.  THIS AGREEMENT WAS NEGOTIATED IN NEW YORK, AND MADE BY BORROWER AND ACCEPTED BY LENDER IN THE STATE OF NEW YORK, AND THE PROCEEDS OF THE NOTE WERE DISBURSED FROM NEW YORK, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE.  THIS AGREEMENT AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA.

Section 7.13.  Actions and Proceedings.  Lender has the right to appear in and defend any action or proceeding brought with respect to the Collateral in its own name or, if required by Legal Requirements, or, if in Lender's reasonable judgment, it is necessary, in the name and on behalf of Borrower, which Lender believes will adversely affect the Collateral or this Agreement and to bring any action or proceedings, in its name or in the name and on behalf of Borrower, which Lender, in its discretion, decides should be brought to protect its interest in the Note, this Agreement and the other Loan Documents.

Section 7.14.  Usury Laws.  This Agreement and the Note are subject to the express condition, and it is the expressed intent of the parties, that at no time shall Borrower be obligated or required to pay interest on the principal balance due under the Note at a rate which could subject the holder of the Note to either civil or criminal liability as a result of being in excess of the maximum interest rate which Borrower is permitted by law to contract or agree to pay.  If by the terms of this Agreement or the Note, Borrower is at any time required or obligated to pay interest on the principal balance due under the Note at a rate in excess of such maximum rate, such rate of interest shall be deemed to be immediately reduced to such maximum rate and the interest payable shall be computed at such maximum rate and all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the principal balance of the Note.  No application to the principal balance of the Note pursuant to this Section shall give rise to any requirement to pay any prepayment fee or charge of any kind due hereunder, if any.

Section 7.15.  Remedies of Borrower.  In the event that a claim or adjudication is made

that Lender has acted unreasonably or unreasonably delayed acting in any case where by law or under the Note, this Agreement or the Loan Documents, it has an obligation to act reasonably or promptly, Lender shall not be liable for any monetary damages, and Borrower's remedies shall be limited to injunctive relief or declaratory judgment.

Section 7.16. <u>Offsets, Counterclaims and Defenses</u>. Any assignee of this Agreement and the Note shall take the same free and clear of all offsets, counterclaims or defenses which are unrelated to this Agreement which Borrower may otherwise have against any assignor of this Agreement and the Note and no such unrelated counterclaim or defense shall be interposed or asserted by Borrower in any action or proceeding brought by any such assignee upon this Agreement or the Note and any such right to interpose or assert any such unrelated offset, counterclaim or defense in any such action or proceeding is hereby expressly waived by Borrower.

Section 7.17. <u>Restoration of Rights</u>. In case Lender shall have proceeded to enforce any right under this Agreement and such proceedings shall have been discontinued or abandoned for any reason or shall have been determined adversely, then, in every such case, Borrower and Lender shall be restored to their former positions and rights hereunder with respect to the Collateral subject to the lien hereof.

Section 7.18. <u>Waiver of Statute of Limitations</u>. The pleadings of any statute of limitations as a defense to any and all obligations secured by this Agreement are hereby waived to the full extent permitted by Legal Requirements.

Section 7.19. <u>Advances</u>. This Agreement shall cover any and all advances made pursuant to the Loan Documents, rearrangements and renewals of the Loan and all extensions in the time of payment thereof, even though such advances, extensions or renewals be evidenced by new promissory notes or other instruments hereafter executed and irrespective of whether filed or recorded. Likewise, the execution of this Agreement shall not impair or affect any other security which may be given to secure the payment of the Loan, and all such additional security shall be considered as cumulative. The taking of additional security, execution of partial releases of the security, or any extension of time of payment of the Loan shall not diminish the force, effect or lien of this Agreement and shall not affect or impair the liability of Borrower and shall not affect or impair the liability of any maker, surety, or endorser for the payment of the Loan.

Section 7.20. <u>Application of Default Rate Not a Waiver</u>. Application of the Default Rate shall not be deemed to constitute a waiver of any Default or Event of Default or any rights or remedies of Lender under this Agreement, any other Loan Document or applicable Legal Requirements, or a consent to any extension of time for the payment or performance of any obligation with respect to which the Default Rate may be invoked.

Section 7.21. <u>Intervening Lien</u>. To the fullest extent permitted by law, any agreement hereafter made pursuant to this Agreement shall be superior to the rights of the holder of any intervening lien.

Section 7.22. <u>No Joint Venture or Partnership</u>. Borrower and Lender intend that the relationship created hereunder be solely that of pledgor and pledgee or borrower and lender, as

CURRENT 8555596v8

the case may be. Nothing herein is intended to create a joint venture or partnership relationship between Borrower and Lender nor to grant Lender any interest in the Collateral other than that of pledgee or lender.

Section 7.23. <u>Time of the Essence</u>. Time shall be of the essence in the performance of all obligations of Borrower hereunder.

Section 7.24. <u>Borrower's Obligations Absolute</u>. Borrower acknowledges that Lender and/or certain Affiliates of Lender are engaged in the business of financing, owning, operating, leasing, managing, and brokering real estate and in other business ventures which may be viewed as adverse to or competitive with the business, prospect, profits, operations or condition (financial or otherwise) of Borrower. Except as set forth to the contrary in the Loan Documents, all sums payable by Borrower hereunder shall be paid without notice or demand, counterclaim, set-off, deduction or defense and without abatement, suspension, deferment, diminution or reduction, and the obligations and liabilities of Borrower hereunder shall in no way be released, discharged, or otherwise affected (except as expressly provided herein) by reason of: (a) any bankruptcy proceeding relating to Owner, any Equity Holder, Borrower, any General Partner, or any guarantor or indemnitor, or any action taken with respect to this Agreement or any other Loan Document by any trustee or receiver of Owner, any Equity Holder, Borrower or any such General Partner, guarantor or indemnitor, or by any court, in any such proceeding; (b) any claim which Borrower has or might have against Lender; (c) any default or failure on the part of Lender to perform or comply with any of the terms hereof or of any other agreement with Borrower; or (d) any other occurrence whatsoever, whether similar or dissimilar to the foregoing, whether or not Borrower shall have notice or knowledge of any of the foregoing.

Section 7.25. <u>Publicity</u>. All promotional news releases, publicity or advertising by Borrower or its Affiliates through any media intended to reach the general public shall not refer to the Loan Documents or the financing evidenced by the Loan Documents, or to Lender or to any of its Affiliates without the prior written approval of Lender or such Affiliate, as applicable, in each instance, such approval not to be unreasonably withheld or delayed. Lender shall be authorized to provide information relating to the Collateral, the Loan and matters relating thereto to rating agencies, underwriters, potential securities investors, auditors, regulatory authorities and to any Persons which may be entitled to such information by operation of law and may use basic transaction information (including, without limitation, the name of Borrower, the name and address of the Property and the Loan Amount) in press releases or other marketing materials.

Section 7.26. <u>Securitization Opinions</u>. In the event the Loan is included as an asset of a Securitization by Lender or any of its Affiliates, Borrower shall, within ten (10) Business Days after Lender's written request therefor, at Borrower's sole cost and expense, deliver opinions in form and substance and delivered by counsel reasonably acceptable to Lender and the Rating Agency, as may be reasonably required by Lender and/or the Rating Agency in connection with such securitization. Borrower's failure to deliver the opinions required hereby within such ten (10) Business Day period shall constitute an "Event of Default" hereunder.

Section 7.27. <u>Sale of Loan, Participations, Securitization</u>. (a) Nothing contained in this Agreement shall be construed as preventing Lender, at any time after the date hereof, from selling, pledging, assigning or transferring the Note and in connection with any such sale, pledge,

assignment or transfer from assigning this Agreement and transferring possession of the Collateral, if any, in Lender's possession, to the purchaser of the Note. Upon any sale, pledge, assignment or transfer of the Note and upon assignment of this Agreement and a transfer in connection therewith of possession of the Collateral, if any, in Lender's possession to the purchaser of the Note, Lender shall be released and discharged from any liability or responsibility with respect to the Loan Documents and references to "Lender" in this Agreement shall, with respect to any matters thereafter occurring, be deemed to be references to the purchaser of the Note.

(b)     Borrower acknowledges that Lender may on or after the Closing Date sell and assign participation interests in and to the Loan, or pledge, hypothecate or encumber, or sell and assign all or any portion of the Loan, to or with such domestic or foreign banks, insurance companies, pension funds, trusts or other institutional lenders or other Persons, parties or investors (including, without limitation, grantor trusts, owner trusts, special purpose corporations, real estate investment trusts or other similar or comparable investment vehicles) as may be selected by Lender in its sole and absolute discretion and on terms and conditions satisfactory to Lender in its sole and absolute discretion. Borrower and all Affiliates of Borrower shall cooperate in all respects with Lender in connection with the sale of participation interests in, or the pledge, hypothecation or encumbrance or sale of all or any portion of, the Loan, and shall, in connection therewith, execute and deliver such estoppels, certificates, instruments and documents as may be reasonably requested by Lender. Borrower grants to Lender the right to distribute financial and other information concerning Borrower, Owner, the Premises, the Collateral, and all other pertinent information with respect to the Loan to any Person who has purchased a participation interest in the Loan, or who has purchased the Loan, or who has made a loan to Lender secured by the Loan or who has expressed an interest in purchasing a participation interest in the Loan, or expressed an interest in purchasing the Loan or the making of a loan to Lender secured by the Loan. If requested by Lender, Borrower shall execute and deliver, and shall cause each Affiliate of Borrower to execute and deliver, at no cost or expense to Borrower, such documents and instruments as may be necessary to split the Loan into two or more loans evidenced by separate sets of notes and secured by separate sets of other related Loan Documents to the full extent required by Lender to facilitate the sale of participation interests in the Loan or the sale of the Loan or the making of a loan to Lender secured by the Loan, it being agreed that (a) any such splitting of the Loan will not adversely affect or diminish the rights of Borrower as presently set forth herein and in the other Loan Documents and will not increase the respective obligations and liabilities of Borrower or any other Person associated or connected with the Loan or the Collateral, (b) the Loan Documents securing the Loan as so split will have such priority of lien as may be specified by Lender, and (c) the retained interest of Lender in the Loan as so split shall be allocated to or among one or more of such separate loans in a manner specified by Lender in its sole and absolute discretion. From and after the effective date of any assignment of all or any portion of the Loan to any Person (an "Assignee") (a) such Assignee shall be a party hereto and to each of the other Loan Documents to the extent of the applicable percentage or percentages assigned to such Assignee and, except as otherwise specified herein, shall succeed to the rights and obligations of Lender hereunder in respect of such applicable percentage or percentages and (b) Lender shall relinquish its rights and be released from its obligations hereunder and under the Loan Documents to the extent of such applicable percentage or percentages. The liabilities of Lender and each of the other Assignees shall be separate and not joint and several. Neither Lender nor any Assignee shall be responsible for the obligations of

any other Assignee. Borrower acknowledges that the information provided by Borrower to Lender may be incorporated into the offering documents for a Securitization and to the fullest extent permitted, Borrower irrevocably waives all rights, if any, to prohibit such disclosures including, without limitation, any right of privacy. Lender and each Rating Agency shall be entitled to rely on the information supplied by, or on behalf of, Borrower and Borrower indemnifies Lender as to any liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses, (including, without limitation, reasonable attorney's fees and expenses, whether incurred within or outside the judicial process) that arise out of or are based upon any untrue statement or alleged untrue statement of any material fact contained in such information or arise out of or are based upon the omission or alleged omission to state therein a material fact required to be stated in such information or necessary in order to make the statements in such information, or in light of the circumstances under which they were made, not misleading.

(c)    Lender, at its option, may elect to effect a Securitization by means of the issuance of certificates of interest therein or notes secured thereby (the "Securities") rated by one or more Rating Agencies. In such event and upon request by Lender to seek to effect such a Securitization, Borrower shall promptly thereafter cooperate in all reasonable respects with Lender in the Securitization including, without limitation, providing such information as may be requested in connection with the preparation of a private placement memorandum or registration statement required to privately place or publicly distribute the Securities in a manner which does not conflict with federal or state securities laws.

Section 7.28. <u>Expenses</u>. Borrower shall reimburse Lender upon receipt of notice for all reasonable costs and expenses (including reasonable attorneys' fees and disbursements) incurred by Lender in connection with (i) the preparation, negotiation, execution and delivery of the Loan Documents and the consummation of the transactions contemplated thereby; (ii) Borrower's, its Affiliates' and Lender's ongoing performance under and compliance with the Loan Documents, including confirming compliance with environmental and insurance requirements; (iii) the negotiation, preparation, execution, delivery and administration of any consents, amendments, waivers or other modifications of or under any Loan Document and any other documents or matters requested by Lender; (iv) filing and recording of any Loan Documents; (v) surveys, inspections and appraisals; (vi) enforcing or preserving any rights, in response to third party claims or the prosecuting or defending of any action or proceeding or other litigation, in each case against, under or affecting Borrower, any Equity Holder, Owner, the Loan Documents, the Collateral, the Premises, or any other security given for the Loan; and (vii) enforcing any obligations of or collecting any payments due from Borrower, any Equity Holder or Owner under any Loan Document or with respect to the Collateral, the Premises or in connection with any refinancing or restructuring of the Loan in the nature of a "work-out", or any insolvency or bankruptcy proceedings. Any costs and expenses due and payable to Lender hereunder which are not paid by Borrower within ten (10) days after demand may be paid from any amounts in the Mezzanine Lockbox Account. The obligations and liabilities of Borrower under this Section shall survive the Maturity Date and the exercise by Lender of any of its rights or remedies under the Loan Documents.

Section 7.29. <u>Mortgage Loan Defaults</u>.

(a)    Without limiting the generality of the other provisions of this Agreement, and

without waiving or releasing Borrower from any of its obligations hereunder, if there shall occur any event of default under the Mortgage Loan Documents (without regard to any other defenses or offset rights Owner may have against Mortgage Lender), Borrower hereby expressly agrees that Lender shall have the immediate right, without notice to or demand on Borrower or Owner, but shall be under no obligation: (i) to pay all or any part of the Mortgage Loan and any other sums, that are then due and payable and to perform any act or take any action on behalf of Owner and/or any Equity Holder, as applicable, as may be appropriate, to cause all of the terms, covenants and conditions of the Mortgage Loan Documents on the part of Owner and/or Equity Holders, as applicable, to be performed or observed thereunder to be promptly performed or observed; and (ii) to pay any other amounts and take any other action as Lender, in its sole and absolute discretion, shall deem advisable to protect or preserve the rights and interests of Lender in the Loan and/or the Collateral. Lender shall have no obligation to complete any cure or attempted cure undertaken or commenced by Lender. All sums so paid and the third party costs and expenses actually incurred by Lender in exercising rights under this Section (including, without limitation, reasonable attorneys' and other professional fees), with interest at the Default Rate, for the period from the date of demand by Lender to Borrower for such payments to the date of payment to Lender, shall constitute a portion of the Debt, shall be secured by this Agreement and shall be due and payable to Lender within two (2) Business Days following demand therefor. In the event that Lender makes any payment in respect of the Mortgage Loan, Lender shall be subrogated to all of the rights of Mortgage Lender or Equity Holders under the Mortgage Loan Documents against the Property and Owner and/or Equity Holders, as applicable, in addition to all other rights Lender may have under the Loan Documents or applicable law.

(b)     Subject to the rights of tenants under Leases, Borrower hereby grants, and shall cause Owner to grant, Lender and any Person designated by Lender the right to enter upon the Property at any time for the purpose of carrying out the rights granted to Lender under this Section 7.29. Borrower shall not, and shall not cause or permit Owner or any other Person to impede, interfere with, hinder or delay, any effort or action on the part of Lender to cure any Event of Default under the Mortgage Loan as permitted by this Section 7.29, or to otherwise protect or preserve Lender's interests in the Loan and the Collateral, including the Property in accordance with the provisions of this Agreement and the other Loan Documents.

(c)     Borrower hereby indemnifies Lender from and against all liabilities, obligations, losses, damages, penalties, assessments, actions, or causes of action, judgments, suits, claims, demands, costs, expenses (including, without limitation, reasonable attorneys' and other professional fees, whether or not suit is brought, and settlement costs), and disbursements of any kind or nature whatsoever which may be imposed on, incurred by or asserted against Lender as a result of the foregoing actions described in Section 7.29(a) or (b) except to the extent they are caused by the gross negligence or willful misconduct of Lender. Lender shall have no obligation to Borrower, Owner or any other Person to make any such payment or performance.

(d)     If Lender shall receive a copy of any notice of default under the Mortgage Loan Documents sent by Mortgage Lender to Owner, such notice shall constitute full protection to Lender for any action taken or omitted to be taken by Lender, in good faith, in reliance thereon. As a material inducement to Lender's making the Loan, Borrower hereby absolutely and unconditionally releases and waives all claims against Lender arising out of Lender's exercise of its rights and remedies provided in this Section other than claims arising out of the fraud, illegal

56

acts, gross negligence or willful misconduct of Lender.

Section 7.30. <u>Discussions With Mortgage Lender; Etc.</u>  In connection with the exercise of its rights set forth in the Loan Documents, Lender shall have the right at any time to discuss the Premises, the Mortgage Loan, the Loan or any other matter directly with Mortgage Lender or Mortgage Lender's consultants, agents or representatives without notice to or permission from Borrower, nor shall Lender have any obligation to disclose such discussions or the contents thereof with Borrower.

Section 7.31. <u>Independent Approval Rights.</u>  If any action, proposed action or other decision is consented to or approved by Mortgage Lender, such consent or approval shall not be binding or controlling on Lender.  Borrower hereby acknowledges and agrees that (a) the risks of Mortgage Lender in making the Mortgage Loan are different from the risks of Lender in making the Loan, (b) in determining whether to grant, deny, withhold or condition any requested consent or approval Mortgage Lender and Lender may reasonably reach different conclusions, and (c) Lender has an absolute independent right to grant, deny, withhold or condition any requested consent or approval based on its own point of view in accordance with the terms hereof.  Further, the denial by Lender of a requested consent or approval in accordance with the Loan Documents shall not create any liability or other obligation of Lender if the denial of such consent or approval results directly or indirectly in a default under the Mortgage Loan, and Borrower hereby waives any claim of liability against Lender arising from any such denial.

Section 7.32. <u>Reinstatement.</u>  This Agreement and each other Loan Document shall continue to be effective or be reinstated, as the case may be, if at any time payment and performance of the Debt or any part thereof, is, pursuant to applicable law, rescinded or reduced in amount, or must otherwise be restored or returned by Borrower, whether as a "voidable preference", "fraudulent conveyance", or otherwise, all as though such payment or performance had not been made.  In the event that any payment, or any part thereof, is rescinded, reduced, restored or returned, the Debt shall be reinstated and deemed reduced only by such amount paid and not so rescinded, reduced, restored or returned.

Section 7.33. <u>Termination.</u>  Upon payment in full of all sums due under the Note, this Agreement and the other Loan Documents, (i) this Agreement shall terminate, except with respect to any provision contained in this Agreement that survives termination of this Agreement or payment in full of the Loan, and (ii) Lender, at Borrower's cost and expense, shall release the Collateral, return the Certificate to Borrower and execute and deliver to Lender any written instruments reasonably requested by Borrower and satisfactory to Lender to evidence such termination and release of the Collateral.

## ARTICLE VIII.  EXCULPATION

Section 8.01. <u>Exculpation.</u>  Notwithstanding anything herein or in any other Loan Document to the contrary, except as otherwise set forth in this Section 8.01 to the contrary, Lender shall not enforce the liability and obligation of Borrower or (a) if Borrower is a partnership, its constituent partners or any of their respective partners, (b) if Borrower is a trust, its beneficiaries or any of their respective Partners (as hereinafter defined), (c) if Borrower is a corporation, any of its shareholders, directors, principals, officers or employees, or (d) if

Borrower is a limited liability company, any of its members (the Persons described in the foregoing clauses (a) - (d), as the case may be, are hereinafter referred to as the "Partners") to perform and observe the obligations contained in this Agreement or any of the other Loan Documents by any action or proceeding wherein a money judgment shall be sought against Borrower or the Partners, except that Lender may bring a UCC sale, action for specific performance, or other appropriate action or proceeding (including, without limitation, an action to obtain a deficiency judgment) solely for the purpose of enabling Lender to realize upon (i) Borrower's interest in the Collateral, (ii) subject to the rights of Mortgage Lender, the Rent to the extent received by Borrower (or received by its Partners) after the occurrence of an Event of Default (all Rent covered by the foregoing clauses being hereinafter referred to as the "Recourse Distributions") and (iii) any other collateral given to Lender under the Loan Documents (the collateral described in the foregoing clauses (i) - (iii) is hereinafter referred to as the "Default Collateral"); provided, however, that any judgment in any such action or proceeding shall be enforceable against Borrower and the Partners only to the extent of any such Default Collateral. The provisions of this Section shall not, however, (a) impair the validity of the Debt evidenced by the Note or in any way affect or impair the lien of this Agreement or any of the other Loan Documents or the right of Lender to enforce this Agreement following the occurrence of an Event of Default; (b) impair the right of Lender to name Borrower as a party defendant in any action or suit for judicial foreclosure and sale under this Agreement; (c) affect the validity or enforceability of the Note, this Agreement, or any of the other Loan Documents, or impair the right of Lender to seek a personal judgment against the Guarantor; (d) impair the right of Lender to obtain the appointment of a receiver; (e) impair the right of Lender to bring suit for a monetary judgment with respect to fraud or material misrepresentation by Borrower, or any other Person in connection with this Agreement, the Note or the other Loan Documents, and the foregoing provisions shall not modify, diminish or discharge the liability of Borrower or the Partners with respect to same; (f) impair the right of Lender to bring suit for a monetary judgment to obtain the Recourse Distributions received by Borrower or any of its Affiliates including, without limitation, the right to bring suit for a monetary judgement to proceed against any Partner, to the extent of any such Recourse Distributions theretofore distributed to and received by such Partner, and the foregoing provisions shall not modify, diminish or discharge the liability of Borrower or the Partners with respect to same; (g) impair the right of Lender to bring suit for a monetary judgment with respect to Borrower's or Owner's misapplication of tenant security deposits or Rent collected more than one (1) month in advance, and the foregoing provisions shall not modify, diminish or discharge the liability of Borrower or the Partners with respect to same; (h) impair the right of Lender to obtain insurance proceeds due to Lender pursuant to this Agreement; (i) impair the right of Lender to enforce the provisions of Sections 2.02(g) and 4.01, inclusive of this Agreement, even after repayment in full by Borrower of the Debt or to bring suit for a monetary judgment against Borrower or the Partners with respect to any obligation set forth in said Sections; (j) prevent or in any way hinder Lender from exercising, or constitute a defense, or counterclaim, or other basis for relief in respect of the exercise of, any other remedy against any or all of the collateral securing the Note as provided in the Loan Documents; (k) impair the right of Lender to bring suit for a monetary judgment with respect to any misapplication or conversion of Loss Proceeds, and the foregoing provisions shall not modify, diminish or discharge the liability of Borrower or the Partners with respect to same; (l) impair the right of Lender to sue for, seek or demand a deficiency judgment against Borrower solely for the purpose of foreclosing the Premises or any part thereof, or realizing upon the Default Collateral;

58

provided, however, that any such deficiency judgment referred to in this clause (l) shall be enforceable against Borrower and the Partners (but only to the extent distributed to and actually received by such Partner) only to the extent of any of the Default Collateral; (m) impair the ability of Lender to bring suit for monetary judgment with respect to damage, arson or waste to or of the Collateral; (n) impair the right of Lender to bring a suit for a monetary judgment in the event of the exercise of any right or remedy under any federal, state or local forfeiture laws resulting in the loss of the lien of this Agreement, or the priority thereof, against the Collateral; (o) be deemed a waiver of any right which Lender may have under Sections 506(a), 506(b), 1111(b) or any other provision of the Bankruptcy Code to file a claim for the full amount of the Debt or to require that all collateral shall continue to secure all of the Debt; (p) impair the right of Lender to bring suit for monetary judgment with respect to any losses resulting from any claims, actions or proceedings initiated by Borrower (or any Affiliate of Borrower) alleging that the relationship of Borrower and Lender is that of joint venturers, partners, tenants in common, joint tenants or any relationship other than that of debtor and creditor; (q) impair the right of Lender to bring suit for a monetary judgment in the event of a Transfer in violation of the provisions of this Agreement; (r) impair the right of Lender to bring suit for a monetary judgment in the event that Borrower fails (or fails to cause Owner) to maintain the insurance required pursuant to Section 5.1.1(a)(iii) of the Mortgage Loan Agreement in an amount equal to at least $204,450,000.00; provided, however, upon delivery by Borrower to Lender of evidence that Owner is maintaining such insurance in such amount, which evidence shall be in the form of a valid and effective original certificate of insurance in the form attached hereto as Exhibit E issued by the insurer(s) listed thereon, the terms of this clause (r) shall terminate with respect to any casualty that occurs after the effective date of such insurance; (s) impair the right of Lender to bring suit for a monetary judgment in the event that Lender incurs any losses due to any termination fee or other amount due in connection with the termination of that certain Wyndham Hotel Franchise Agreement dated as of January 1, 2006 between Wyndham Worldwide, Inc. and Owner, and any claim that may be made in connection with such agreement or the termination thereof and/or any tax or other liabilities in Owner or AHE Holding N.V. arising or accruing prior to the date hereof, including without limitation that certain litigation currently before the courts of Aruba, instituted by High Points, Inc., as plaintiff, against Amoco Development, Inc., Alfonso Riveroll Estrada and Jose Luis De Caleya, as defendants (Case No. 1590/95 and 108/96-H-330/00); provided, however, in no event shall the liability of Borrower under this clause (s) exceed $5,000,000 in the aggregate; or (t) impair the right of Lender to bring suit for a monetary judgment with respect to the failure of Owner to complete the Pre-Flagging PIP (as such term is defined in the Westin Management Agreement (as defined in the Mortgage Loan Agreement)) as required in the Westin Management Agreement, including, without limitation, as a result of the termination of the Westin Management Agreement by the manager thereunder solely by reason of such failure; (u) impair the right of Lender to bring suit for a monetary judgment upon the failure of Owner to complete the Post-Flagging PIP (as such term is defined in the Westin Management Agreement) as required in the Westin Management Agreement, for the cost to complete the Post-Flagging PIP as required in the Westin Management Agreement; provided, however, in no event shall the liability of Borrower under this clause (t) exceed $5,000,000 in the aggregate. The provisions of this Section shall be inapplicable to Borrower if (a) any proceeding, action, petition or filing under the Bankruptcy Code, or any similar state or federal law now or hereafter in effect relating to bankruptcy, reorganization or insolvency, or the arrangement or adjustment of debts, shall be filed by, consented to or acquiesced in by or with

respect to Borrower or Owner, or if Borrower or Owner shall institute any proceeding for its dissolution or liquidation, or shall make an assignment for the benefit of creditors or (b) Borrower or any Affiliate contests or in any material way interferes with, directly or indirectly (collectively, a "Contest") any UCC sale or other material remedy exercised by Lender upon the occurrence of any Event of Default under the Loan Documents whether by making any motion, bringing any counterclaim, claiming any defense, seeking any injunction or other restraint, commencing any action, or otherwise (provided that if any such Person obtains a non-appealable order successfully asserting a Contest, Borrower shall have no liability under this clause (b)) or (c) Borrower (i) fails to cause Owner to deliver notice of default under the Ground Lease to Lender or any other Person designated in writing by Lender or (ii) fails to prevent Owner from amending or modifying the Ground Lease without the prior written consent of Lender, in which event Lender shall have recourse against all of the assets of Borrower including, without limitation, any right, title and interest of Borrower in and to the Premises; any partnership interests in Borrower and any Recourse Distributions received by the Partners of Borrower (but excluding the other assets of such Partners to the extent Lender would not have had recourse thereto other than in accordance with the provisions of this Section).

* * * * *

IN WITNESS WHEREOF, Borrower has duly executed this Agreement the day and year first above written.

Borrower's Organizational Identification
Number: 4163683

BCP FLORIN, LLC, Borrower

By:

Name: Michael Belfonti
Title: President

CURRENT 8555596v6