# EXHIBIT E




M.C. Meelhuysen
Beëdigd vertaler/Sworn translator
Tanki Leendert 139-I
Aruba

Tel: 297-9926977
Fax: 297-5889036
E-mail: mcmtransl@rainbownet4u.com

NV/2055

AMENDMENT TO THE ARTICLES OF INCORPORATION

This third day of May, two thousand and six, appeared before me, *mr.* Faride Eloisa Elixie Tjon Ajong, civil law notary resident in Aruba, in the presence of the two witnesses to be named hereinafter: ---

1. Mr. *mr.* Eugene Harold James Martis, lawyer, living in Aruba, Moko 259, by these presents acting in the capacity of Managing Director of the corporation DCT Trust & Management Company N.V., domiciled in Aruba, having its registered offices at Wayaca 31-C, which corporation is registered in the Trade Register of the Chamber of Commerce and Industry of Aruba under file number 26087, and as such validly representing this corporation; ---
2. a. Ms. *mr.* Gwendolyn Beatrix Steward, lawyer, living in Aruba, c/o Lloyd Gaston Smith Boulevard 64; and ---
   b. Mr. *mr.* Quincy Dimitri Andrew Carrega, lawyer, living in Curaçao, presently being in Aruba, c/o Lloyd Gaston Smith Boulevard 64. ---

The appearers, acting as set forth above, declared that the General Meeting of Shareholders of the corporation **ARUBA HOTEL ENTERPRISES N.V.**, domiciled in Aruba and having its registered offices there at the address Juan Enrique Irausquin Boulevard 77, which corporation is registered in the Trade Register of the Chamber of Commerce and Industry of Aruba under file number 2440, resolved in the General Meetings of Shareholders held on the eighteenth day of November, two thousand and five, and on the third day of May, two thousand and six, respectively

- to reduce the Corporation's capital; and ---
- to amend the Articles of Incorporation in their entirety in the manner as set forth hereinafter; and ---
- to authorize aforementioned appearers to sign the deed of amendment in question, to apply for the Certificate of No Objection for same, and to apply those changes the granting of this certificate might depend on. ---

The business transacted is evidenced by an extract from the minutes of aforementioned General Meetings of Shareholders, one (1) copy of which will be attached to the original of this deed. ---

For the execution of aforementioned shareholders' decisions, the appearers, acting as set forth above, declared to amend the Articles of Incorporation of aforementioned corporation in their entirety, and to lay down them down as follows: ---

ARTICLES OF INCORPORATION ---

NAME, SEAT AND DURATION ---

Article 1 ---

1. The Corporation shall bear the name of: ---

--- **"ARUBA HOTEL ENTERPRISES N.V."**. ---

In dealings with foreign countries it may replace the abbreviation "N.V." in its name in the English language by "LLC." or "Ltd." and in the Spanish and French language by "S.A.". ---
2. The Corporation is domiciled in Aruba. ---
3. The Corporation has been entered into for an indefinite period of time. ---

OBJECT ---

Article 2 ---



1. The Corporation's object shall be: ---

a. To run a hotel. ---

To operate a casino (cause same to be operated). ---

Within its object, the Corporation may perform any acts related to this hotel and casino operation in the broadest sense, both for its own account and for the account of third parties, all this with due observance of the Licensing Ordinance. ---

b. To – whether or not in relation to aforementioned hotel and casino operation, but not limited thereto – acquire, possess, alienate, build and cause to be built, manage and develop, lease and rent out, sell, lease out, create restricted real rights (of enjoyment) and security rights on, and to mortgage and/or in general encumber registered property and/or real estate, and/or any right to or interest in registered property and/or real estate. ---

c. To acquire, keep, possess, alienate, pledge participating interests or interests in – as well as to conduct the management of other enterprises and corporations that are related to aforementioned hotel and casino operation or have a similar object, including, but not limited to, corporations and enterprises with i.a. the following object: the operation of a night club, a bar and restaurant business; the operation of a mini-market and so-called drugstore; the operation of a souvenir and gift shop; the operation of a so-called sports and health shop and spa, and the operation of a so-called watersports business. ---

d. To conclude agreements of loans and/or credits, and to provide security for same. ---

e. Other than as a credit institution, to finance (cause to be financed), whether or not by providing security, including holding oneself jointly and severally liable, for legal entities affiliated to the Corporation and/or enterprises with which the Corporation is associated in a group. ---

2. Within its object, the Corporation may perform any acts related to this object in the broadest sense, both for its own account and for account of third parties. ---

CAPITAL AND SHARES ---

Article 3 ---

The authorized capital shall amount to one hundred and twenty-nine million one hundred and eight thousand United States dollars (US$ 129,108,000.00), divided into one hundred and twenty-nine thousand one hundred and eight (129,108) shares with a nominal value of one thousand United States dollars (US$ 1,000.--) each. ---

Article 4 ---

1. The shares shall be registered. ---
2. Share certificates may be issued. ---

Article 5 ---

1. a. Issue of shares shall be effected pursuant to a resolution of the Board of Managing Directors by means of an instrument, meant for this purpose, between the Corporation and the shareholder. ---

   b. The Board of Managing Directors shall determine the price and the further terms and conditions of the issue, pursuant to the provisions in these Articles of Incorporation, and the time of payment of the nominal value of the shares. ---

2. In the event of such issue of shares, the shareholders have the pre-emption right in proportion to their shareholding. ---

   The pre-emption right in respect of issue may not be transferred. ---

Article 6 ---

1. The Board of Managing Directors shall keep a register containing the names and addresses of all holders of shares, stating the date on which they acquired the shares, the date of acknowledgement, and the amount paid up on each share. ---
2. In the register, the shares shall be numbered consecutively as of one. ---



3. The register shall also contain the names and addresses of those who have a right of usufruct or a pledge on those shares, stating the date on which they acquired same, and the date of acknowledgement. ---
4. It shall also be entered in the register whether share certificates have been issued. ---
5. Each shareholder, usufructuary, and pledgee of shares is obligated to see to it that the Corporation knows his address. ---
6. The register shall be in the hands of the Board of Managing Directors and shall regularly be kept up-to-date. ---
7. The Board of Managing Directors shall place the register at the offices of the Corporation for inspection by the shareholders. ---

Article 7 ---

1. If requested, the Board of Managing Directors shall provide the shareholder with a copy from the register with regard to his right to a share. ---
2. In as far as a shareholder requests this in writing, numbered share certificates may be issued for his account, which share certificates shall be signed by the Board of Managing Directors, all bearing the number of the share to which they belong. ---
3. At the shareholder's request, share certificates may be issued for several shares at the same time. The holder of such share certificates may request exchange for share certificates for another number of shares at all times. ---
4. If somebody has proven to the satisfaction of the Board of Managing Directors that a share certificate belonging to him is lost or missing, duplicate certificates may be issued at his request, on such terms and conditions and under such guarantees as the Corporation will determine. ---
5. By the issue of new share certificates, on which it shall be stated that they are duplicates, the originals shall become void. ---
6. Damaged share certificates may be exchanged by the Board of Managing Directors for new ones. The damaged documents that were handed in shall immediately be destroyed by the Board of Managing Directors. ---
7. All expenses in connection with the issue of duplicates or new documents shall be for the applicant's account, and, if so requested, shall be paid by him in advance. ---

Article 8 ---

1. Usufruct may only be created on shares with the approval of the General Meeting of Shareholders.
2. A pledge may only be created on shares with the approval of the General Meeting of Shareholders.
3. In the event that there is usufruct on a share, the rights to acquire shares, originating from the share, shall belong to the shareholder, provided that he pays the usufructuary the value hereof in as far as the latter is entitled to it by virtue of his right of usufruct. ---
4. In the event that there is a pledge on a share, the provisions in these Articles of Incorporation with regard to alienation and transfer of shares shall apply to the alienation and transfer of the shares by the pledgee or the shares being in the hands of the pledgee, provided that the pledgee exercises all rights belonging to the shareholder with regard to alienation and transfer and meets his obligations in this respect. ---

Article 9 ---

1. With the authorization or approval of the General Meeting of Shareholders, the Corporation may acquire fully paid up shares in its capital for its own account under onerous title, provided that at least one-fifth (1/5) of the authorized capital remains placed with others than the Corporation. ---
2. For shares in its capital, held by the Corporation, no right to vote or pre-emption right shall be exercised; nor shall any distribution of profit or payment of the balance left upon liquidation take place on such shares, nor shall they count for determining a quorum in any meeting. ---
3. The Board of Managing Directors is authorized to conclude agreements as meant in Article 60 of the Code of Commerce of Aruba, without instructions of the General Meeting of Shareholders. ---

Article 10 ---

M.C. MEELHUYSEN SWORN TRANSLATOR

1. The delivery of shares shall take place either by serving a deed of transfer on the Corporation, or by written acknowledgement of the transfer by the Corporation, which acknowledgement, if share certificates have been issued, may only take place by endorsement on the share certificate by the Board of Managing Directors. ---
2. The provision in the preceding paragraph shall be similarly applicable to the devolution of shares in case of allocated shares in the partition of any community. ---

TRANSFER RESTRICTION ---

Article 11 ---

1. Transfer of shares may only take place with due observance of the following provisions. ---
2. If a shareholder wishes to alienate one or more of his shares, irrespective of under which title, he is obligated to offer them first to his co-shareholders, and he shall notify the Board of Managing Directors hereof by certified letter, accurately stating the numbers of the shares and the price at which he wishes to alienate them, as well as of the person or persons to whom he wishes to transfer the shares. ---
3. Within fourteen days after receipt of the certified letter, the Board of Managing Directors shall inform the other shareholders of its contents. ---
4. Within one month after this notification, each shareholder may then inform the Board of Managing Directors that he wishes to buy one or more of the shares offered at the price asked for them, or that he wishes the value of the shares to be appraised by experts. ---
5. In the first case, if none of the shareholders have requested an appraisal, the offerer is obligated, unless he then withdraws his offer with regard to all shares offered, to transfer the shares against cash payment of the purchase price asked to those who want to buy them, provided that all shares offered are bought up. ---
6. If one or more shareholders want an appraisal, the value of the shares shall be determined by one or more independent experts, who will be appointed by the shareholder(s) who wants/want an appraisal and the offerer in joint consultation. If they do not reach a consensus on this within fourteen days after the period of time stated in paragraph 4 has lapsed, the offerer shall request the Judge in the Court of First Instance of Aruba to appoint an independent expert. ---
   Within one month after appointment, the expert(s) shall fix the value of the shares and notify the Board of Managing Directors hereof. ---
   Within fourteen day upon receipt of this notice, the Board of Managing Directors shall notify the shareholders of the value fixed. ---
   Subsequently, within one month after the announcement as meant above, each shareholder may inform the Board of Managing Directors and the offerer that he wishes to buy one or more shares at the value fixed or the price originally asked, in which case the offerer, unless he withdraws his offer with regard to all shares, is obligated to deliver the shares to the shareholder(s) in question against cash payment. ---
7. In the event that several shareholders declare to be willing to buy as described above, whether or not after an appraisal, the shares shall be allotted by the Board of Managing Directors as much as possible in proportion to each shareholder's holding. If, and in as far as, such an allotment is impossible, the allotment shall take place by lot. ---
8. In the event that the shareholders have not exercised their right to buy within the stipulated period of time, either without or after appraisal, in such a way that all shares offered are bought, the offerer shall be free for a period of six months to transfer his shares to the persons indicated by him at the price asked by him or at the value fixed (but not at a lower price), unless the Corporation itself decides to buy the shares offered, either without or after an appraisal. ---
9. If a shareholder who is obligated to deliver a share pursuant to the above fails to comply with the obligation to deliver after the lapse of a period of one month, in spite of a demand to do so, the Corporation is irrevocably authorized to deliver and, if a share certificate has been issued, a



new share certificate may be issued, bearing the same number as the share certificate of the shareholder in default.

During the period the shareholder fails to meet his obligation to deliver, he cannot exercise the meeting right and voting right attached to the share and the right to dividend is suspended, all in as far as these rights do not belong to others.

10. The share certificate of aforementioned shareholder shall become void towards the Corporation on account hereof.
11. The offer as meant in this Article shall not take place if all shareholders have agreed to it in writing, provided that the transfer shall then take place within three months after the consent required has been obtained.

Article 12

1. In case of death, suspension of payment, bankruptcy, or placement under guardianship of a shareholder, dissolution of a corporation, foundation or association holding one or more shares, his/its shares shall be offered for sale to the shareholders with due observance of the provisions in the following paragraphs.

   In the event of death this obligation shall not apply:

   a. in the event that the shares have come to belong to a community to which no other persons are entitled than the widow or widower and/or one or more descendants of the shareholder in whose name shares were registered at the time the community was created;
   b. in the event that the shares have come to belong to a community to which, apart from one or more persons as meant under a, one or more other persons are entitled, in as far as these shares will have been assigned to one or more persons as meant under a within thirty days after this community was created;
   c. in the event that, as a result of the shareholder's death, the shares have passed to his widow or her widower, or to one of his/her descendants;
   d. in the event that all other shareholders declare in writing that they approve of the new holder or new holders of the shares.
2. In the event that the obligation to offer for sale as meant in the preceding paragraph exists, the provisions in Article 11 shall be similarly applicable as much as possible, it being understood that:
   a. the holders shall not have the right to withdraw their offer;
   b. the holders may keep their shares if no or no full use is made of the offer;
   c. the Corporation itself may entertain the offer with due observance of the provision in Article 9, paragraph 1, with the approval of all shareholders;
   d. the trustee in bankruptcy does not have to state the price at which he wishes to alienate the shares of the bankrupt, and the person or persons to whom he wishes to transfer the shares;
   e. any co-shareholder may notify the Board of Managing Directors that he wishes the value of the shares to be appraised by experts;
   f. in the event that the co-shareholders wish not to exercise at all, or only in part, their right to buy in respect of the shares offered in this way, the trustee in bankruptcy is authorized and obligated, with due observance of the provisions in the Bankruptcy Ordinance, to sell the shares which were not bought by the co-shareholders, unless the Corporation itself decides to buy the shares offered but not sold to the co-shareholders at the value already fixed or still to be fixed.

MANAGEMENT

Article 13



1. The management of the Corporation shall be entrusted to a Board of Managing Directors, consisting of one or more Managing Directors, under the supervision of a Board of Supervisory Directors; at least one of the Managing Directors shall be a natural person living in Aruba in



the sense of Article 1, first paragraph, of the State Ordinance Income Tax (Statute Publication Gazette 1991, number GT 51). Legal entities may also be appointed Managing Director. ——
With due observance of the provisions in paragraph 2 of Article 2 and Article 15, the Board of Managing Directors is charged with the management of the Corporation. ——
The Board of Managing Directors may grant its members personal titles, such as President, Vice-President, Secretary, and Treasurer. ——

2. The Managing Directors shall be appointed by the General Meeting of Shareholders. ——
3. The Managing Directors may be suspended and/or dismissed by the General Meeting of Shareholders at all times, provided that the Board of Supervisory Directors is always heard in case of a suspension and/or dismissal and renders written advice in advance. In both cases, the Managing Director in question shall be given the opportunity to render account before the General Meeting of Shareholders. A suspension may be extended once or several times, but in total shall not last longer than three (3) months. If no resolution has been passed to lift the suspension or the dismissal after the lapse of that period of time, the suspension shall end. ——
4. The Board of Supervisory Directors is authorized to suspend the Managing Director. In that case, the Board of Supervisory Directors is obligated to discuss the suspension within fourteen days in a General Meeting of Shareholders to be convened for this purpose. In this meeting, a resolution shall be passed on the lawfulness of the suspension and on the other measures to be taken with regard to the suspended person, with due observance of the procedure as stipulated in the preceding paragraph. ——
   The suspension shall absolutely not be given any publicity before the meeting has expressed itself accordingly. ——
5. With the approval of the Board of Supervisory Directors, the Board of Managing Directors is authorized to instruct an expert, including an organization of experts, each year to conduct an inspection with regard to compliance with the conditions for the status of "Imputation N.V.". ——
6. The Managing Directors shall enjoy a salary which will be determined by the General Meeting of Shareholders. ——

Article 13-A ——

As long as any obligation remains outstanding under a loan in the amount of TWO HUNDRED AND THIRTY MILLION UNITED STATES DOLLARS (US$ 230,000,000.00) between the Corporation and the corporation WIBC Aruba N.V., domiciled in Aruba, or the one to whom the latter has transferred or assigned its debt, for the security of which a mortgage will be or has been entered in the public registers of Aruba, the Board of Managing Directors: ——

I. is obligated to observe the following when carrying out its duties, namely: ——

a. maintain books, records, and bank accounts separate from any other person or entity; ——
b. conduct its own business in its own name, and strictly comply with all organizational formalities to maintain its separate existence; ——
c. maintain separate financial statements, showing its assets and liabilities separate and apart from those of any other person or entity, and not have its assets listed on the financial statement of any other entity; provided, however, that the Corporation's assets may be included in a consolidated financial statement of its affiliate, provided that (i) appropriate notation shall be made on such consolidated financial statement to indicate the separateness of the Corporation from such affiliate, and to indicate that the Corporation's assets and credit are not available to satisfy any debts and other obligations of such affiliate or of any other person, and (ii) such assets shall also be listed on the Corporation's own separate Balance Sheet; ——
d. pay its own liabilities and expenses only out of its own funds; ——
e. hold itself out as a separate legal entity and observe all necessary corporate formalities; ——
f. except for capital contributions or capital distributions permitted under the provisions of these Articles of Incorporation, not enter into any transaction with an affiliate of the Corporation



except on commercially reasonable terms similar to those available to unaffiliated parties in a transaction at arm's length; ---

g. pay the salaries of its own employees, if any, from its own funds; ---
h. maintain a sufficient number of employees, if any, in light of its contemplated business operations; ---
i. file its tax returns separate from those of any other entity, and not file a consolidated tax return with any other entity; ---
j. allocate fairly and reasonably any overhead expenses that are shared with an affiliate, including paying for office space and services performed by any employee of an affiliate; ---
k. use separate stationery, invoices, and checks bearing its own name; ---
l. promptly correct any known misunderstanding regarding its separate identity; and ---
m. maintain adequate capital in light of its contemplated business operations. ---

II. is not authorized to carry out the following: ---

1. to own any assets other than participation in existing subsidiaries and its own assets necessary for its own business operations or operations of these subsidiaries; ---
2. to commingle its assets with those of any other (legal) person or entity; the Corporation shall hold its assets in its own name; ---
3. to guarantee or become obligated for the debts of any other entity or person; ---
4. to hold out its credit as being available to satisfy the obligations of any other person or entity;
5. to acquire obligations or securities of its affiliates, members, shareholders, or partners; ---
6. to grant loans to any other person or entity or to buy or hold evidence of indebtedness issued by any other person or entity (other than cash and investment-grade securities); ---
7. to pledge its assets to secure the obligations of any other person or entity; ---
8. to identify itself as a division of any other person or entity; ---
9. except for existing interests, to form, hold, or acquire any participating interest in an entity; --
10. to transfer or consent to the transfer of any direct or indirect ownership interest in the Corporation. ---

REPRESENTATION ---

Article 14 ---

1. The Corporation shall be represented in and out of court by each individual Managing Director, with due observance of the provisions in Article 15. ---
2. If the Managing Director concludes an agreement with the Corporation in his private capacity, or conducts any proceedings against the Corporation in his private capacity, other than against a resolution of the Board of Supervisory Directors or of the General Meeting of Shareholders, the Corporation shall in that case be represented by another Managing Director or for lack hereof by a Supervisory Director to be designated by the Board of Supervisory Directors. ---
3. In the event that one or more Managing Directors are absent or prevented, the management of the Corporation shall be entirely in the hands of the remaining Managing Directors; and in the event that all Managing Directors or the only Managing Director are/is absent or prevented, the Corporation shall temporarily be managed by the person(s) designated for this purpose by the Board of Supervisory Directors. ---
In the event of prevention, the Board of Supervisory Directors shall take the necessary measures to cause final provisions to be made as soon as possible. ---
4. Without prejudice to the provision in Article 15, paragraph 1, under 1, the Board of Managing Directors is authorized to appoint proxies with general or restricted powers of representation with written approval of the Board of Supervisory Directors. ---
Each of them shall represent the Corporation with due observance of the restrictions imposed on his powers. Their titles shall be determined by the Board of Managing Directors in writing. ---
At all times, the Board of Managing Directors may withdraw this power of attorney without stating reasons. ---

M.C. MEELHUYSEN SWORN TRANSLATOR

APPROVAL OF RESOLUTIONS

Article 15

1. The resolutions of the Board of Managing Directors and/or the Managing Director on the following subjects shall be subject to approval of the Board of Supervisory Directors, without prejudice to what is stipulated elsewhere in these Articles of Incorporation.
   a. direct or indirect participation in the capital of another corporation or enterprise and the change of such participation;
   b. to exercise the right to vote on shares in the capital of (an)other corporation(s), owned by the Corporation;
   c. a motion to amend the Articles of Incorporation;
   d. a motion to reduce the issued capital;
   e. a motion to dissolve the Corporation;
   f. filing of bankruptcy and applying for a suspension of payment;
   g. provision of guarantees or surety towards third parties or third companies by the Corporation, with the exception of personnel guarantees;
   h. entering into bank credit agreements and debenture loans for account of the Corporation with the exception of the loan stated in Article 13-A;
   i. loaning moneys, as well as borrowing moneys, not including the use of a bank credit granted to the Corporation as meant under h;
   j. to acquire, alienate, encumber, lease and rent out registered property;
   k. to create a restricted right on movable goods and/or property rights;
   l. to appoint proxies and to define their powers and titles, as well as termination of such appointment and/or change of the powers and/or titles;
   m. the appointment of the expert as meant in Article 13, paragraph 5;
   n. conducting legal proceedings, including conducting arbitration proceedings, but with the exception of taking such legal measures as cannot be postponed;
   o. entering into agreements determining the legal relationship between parties, exceeding an amount of FIFTY THOUSAND UNITED STATES DOLLARS (US$ 50,000.00);
   p. termination of the employment of a considerable number of employees of the Corporation at the same time or within a short period of time;
   q. making arrangements for bonuses;
   r. creating pension plans (including changing same) and awarding pension rights except for those that originate from the presently existing plans;
   s. entering into or amending collective labor agreements (CLA);
   t. adopting the annual investment budget and operating budget;
   u. paying interim dividends;
   v. entering into investments when the amount of the interest that can be valued in money exceeds FIFTY THOUSAND UNITED STATES DOLLARS (US$ 50,000.00), provided that legal acts with regard to the same investment involving a lower amount than the maximum stated there shall be considered to be one (1) legal act;

   it being understood that as long as any obligation remains outstanding under a loan in the amount of TWO HUNDRED AND THIRTY MILLION UNITED STATES DOLLARS (US$ 230,000,000.00) between the Corporation and the corporation WIBC Aruba N.V., domiciled in Aruba, or the one to whom the latter has transferred or assigned its debt, for the security of which a mortgage will be or has been entered in the public registers of Aruba,
   the Board of Supervisory Directors shall not grant its cooperation with regard to a request for approval of what is stated in Article 13-A under II.
2. Without prejudice to the provision in paragraph 1, letter f, the Board of Managing Directors may only file bankruptcy of the Corporation on instructions of the Board of Supervisory Directors. A

M.C. MEELHUYSEN SWORN TRANSLATOR

resolution to give such instructions shall be passed unanimously by the Board of Supervisory Directors. ---

BOARD OF SUPERVISORY DIRECTORS ---

Article 16 ---

1. The Board of Supervisory Directors shall consist of at least three (3) members, who shall all be entered in the Trade Register of the Chamber of Commerce and Industry by the Board of Managing Directors. ---
2. One (1) member of the Board of Supervisory Directors shall be appointed by the corporation WIBC Aruba N.V., domiciled in Aruba. ---
3. The other members shall be appointed by the General Meeting of Shareholders. ---
4. The members of the Board of Supervisory Directors shall appoint a President-Supervisory Director among themselves. ---
5. The member meant in paragraph 2 shall be suspended and dismissed by the corporation WIBC Aruba N.V. The members meant in paragraph 3 shall be suspended and dismissed by the General Meeting of Shareholders. ---
6. The Supervisory Directors enjoy a remuneration which shall be determined by the General Meeting of Shareholders. ---

TASK AND POWERS OF THE BOARD OF SUPERVISORY DIRECTORS ---

Article 17 ---

1. The Board of Supervisory Directors shall supervise the management of the Board of Managing Directors and the general course of business in the Corporation and the enterprise(s) affiliated to it, if any. In the fulfilment of their task, the Supervisory Directors shall aim at the interest of the Corporation and the enterprise(s) affiliated to it, if any. ---
2. The Board of Managing Directors shall provide the Board of Supervisory Directors with information necessary for the execution of the latter's task, and this without prejudice to the obligation of the Board of Managing Directors to provide any information or documents at the request of the Board of Supervisory Directors. ---
3. At all times, the Board of Supervisory Directors and each Supervisory Director individually shall have access to the buildings and premises of the Corporation, and is authorized to inspect the books and documents of the Corporation. The Board of Supervisory Directors may designate one or more persons from its midst or an expert to exercise these powers. ---
The Board of Supervisory Directors may also have itself assisted by experts in other matters. ---
4. The Board of Supervisory Directors shall have the right to attend General Meetings of Shareholders and to cast an advisory vote there. ---

WORKING METHOD AND DECISION-MAKING OF THE BOARD OF SUPERVISORY DIRECTORS ---

Article 18 ---

1. The Board of Supervisory Directors shall meet once every three months, and each time the Supervisory Director meant in Article 16, paragraph 2, or two (2) Supervisory Directors, or the Board of Managing Directors deems/deem this necessary. ---
2. The meetings of the Board of Supervisory Directors shall be convened in writing by the person(s) who deems/deem this necessary, with due observance of a period of at least fourteen (14) days, not counting the day of the notice and of the meeting. The notice shall state the place, date, and hour of the meeting, as well as the business to be transacted. If the Board of Supervisory Directors so desires, the Board of Managing Directors is obligated to attend the meeting. The Board of Managing Directors shall provide information desired by the Board of Supervisory Directors there and shall have an advisory vote. ---
3. In urgent cases, to be determined by the person(s) convening the meeting, the period of fourteen (14) days may be shortened and the Supervisory Directors may pass resolutions by telephone, fax,

M.C. MEELHUYSEN SWORN TRANSLATOR

electronic mail, or in another way. If a resolution has been passed in that way, it shall be placed on the agenda of the next meeting of the Board of Supervisory Directors. ---

4. The meetings of the Board of Supervisory Directors shall be chaired by the President-Supervisory Director. If and as long as a President-Supervisory Director has not been appointed, the Board of Supervisory Directors shall designate a Chairman from its midst, as well as a substitute Chairman and a Secretary. ---
   If there is a President-Supervisory Director, he shall designate the substitute Chairman and a Secretary. ---
5. All resolutions of the Board of Supervisory Directors shall be passed by absolute majority of the votes cast, unless these Articles of Incorporation prescribe otherwise.---
   In the event of a tie, the President-Supervisory Director shall decide. ---
6. The Board of Supervisory Directors may only pass valid resolutions in a meeting if the majority of the Supervisory Directors in office is present or represented in the meeting. ---
7. The Board of Supervisory Directors may also pass resolutions outside meetings, provided that this takes place in writing, by cable, by fax, or by electronic mail, and all Supervisory Directors express themselves on the matter. All this shall be entered in the register of minutes of the meetings of the Board of Supervisory Directors. ---
8. The Board of Supervisory Directors shall meet together with the Board of Managing Directors as often as the Board of Supervisory Directors or the Board of Managing Directors deems this necessary. ---
9. Required permission of the Board of Supervisory Directors shall only be granted in writing or by telex, fax, or cable, or by electronic mail, notably by two Supervisory Directors jointly. ---

MEETINGS ---

Article 19 ---

1. In the month of August at the latest, the Annual General Meeting of Shareholders shall be held, in which i.a. the following points are discussed: ---
   a. the written report of the Board of Managing Directors on the affairs of the Corporation and the management conducted in the past financial year; ---
   b. adoption of the financial statements with due observance of the provision in Article 19, paragraph 2, letter d, 3rd, of the State Ordinance Dividend Tax and Imputation Payments (Statute Publication Gazette 2003/91); ---
   c. adoption of the appropriation of profit; ---
   d. filling vacancies, if any, on the Board of Managing Directors and/or the Board of Supervisory Directors; ---
   e. other motions of the Board of Managing Directors or the Board of Supervisory Directors or shareholders, together representing at least one-tenth of the issued capital, provided it is stated on the agenda. ---
2. In addition to the annual meeting mentioned in paragraph 1, Extraordinary Meetings of Shareholders may also be held, pursuant to the provisions in Article 20. ---

GENERAL MEETINGS ---

Article 20 ---

1. The General Meetings of Shareholders shall be held in Aruba. ---
2. A General Meeting of Shareholders shall be convened by a notice, to be sent by the Board of Managing Directors to the shareholders to the addresses stated in the register meant in Article 6, not later than ten (10) days before that of the meeting, not counting the day of the notice and that of the meeting. The notice shall state the business to be transacted, all this without prejudice to the provisions in Articles 28, 29, and 30 with regard to motions to amend these Articles of Incorporation or to dissolve the Corporation. ---



3. In meetings of shareholders convened without observing the formalities stated in paragraph 2, no valid resolutions may be passed, unless unanimously in a meeting in which the entire issued capital is represented. ---

Article 21 ---

1. The General Meetings of Shareholders shall be chaired by the person designated for this purpose by the meeting itself. ---
2. The Chairman shall designate a Secretary; this person does not need to be a shareholder. The Secretary shall draw up the minutes, which shall be signed by the Chairman and the Secretary.

Article 22 ---

1. Without prejudice to the provision in Article 9, paragraph 2, each share shall be entitled to one vote. ---

   Shareholders may have themselves represented in a meeting by a proxy, authorized in writing. Managing Directors, Supervisory Directors, or in general persons employed by the Corporation may not act as proxies of shareholders in a meeting. ---
2. For the determination whether a certain part of the capital is represented, or whether a majority represents a certain part of the capital, the capital shall be reduced by the amount of the shares for which no vote can be cast. ---

Article 23 ---

1. Unless these Articles of Incorporation prescribe otherwise, all resolutions shall be passed by absolute majority of the valid votes cast. ---
2. If the absolute majority has not been obtained after two ballots, the motion shall be deemed to have been rejected, unless it concerns the appointment of persons, in which case another ballot shall take place between the two persons who obtained the most votes in the second ballot. If there is a tie in this last ballot, the lot shall decide which of those persons has been elected. ---

DECISION-MAKING OUTSIDE A MEETING ---

Article 24 ---

The shareholders can also pass all resolutions they can pass in a meeting outside a meeting. A resolution passed outside a meeting shall only be valid if all shareholders have cast their votes in favor of the motion in question in writing, by cable, by telex, by fax, or by electronic mail. ---

FINANCIAL YEAR ---

Article 25 ---

The Corporation's financial year shall run from the first day of January through the thirty-first day of December. ---

ACCOUNTING/FINANCIAL STATEMENTS ---

Article 26 ---

1. The Board of Managing Directors is obligated to keep accounts of the Corporation's financial position and all that is related to the Corporation's operations in accordance with the requirements originating from these operations in such a way, and to keep the books, documents, and other data carriers belonging thereto in such a way, that its rights and obligations can be known at all times. The Board of Managing Directors is obligated to keep the books, documents, and other data carriers as well as the financial statements described hereinafter for ten years. ---
2. Each year at the end of the financial year the Corporation's books shall be balanced. The Board of Managing Directors shall draw up the Balance Sheet and the Profit and Loss Statement with an Explanatory Note ("the financial statements" hereinafter) within four (4) months after the financial year has ended, without prejudice to extension of this period by four (4) months at the most, based on special circumstances. The financial statements shall be drawn up with due observance of the standards deemed acceptable in Aruban society with regard to financial statements, as meant in the State Decree containing General Administrative Orders for the



implementation of Article 19, second paragraph, letter d, 1st, of the State Ordinance Dividend Tax and Imputation Payments (SPG 2003/91). ----------------------------------------

3. The financial statements shall be audited by an expert, including an organization of experts, designated for this purpose by the General Meeting of Shareholders, who reports to the General Meeting of Shareholders and the Board of Supervisory Directors. ----------------------------
The designation of aforementioned expert shall take place for a maximum period of two (2) years. --------------------------------------------------------------------------------
Aforementioned expert shall be an expert as meant in the State Decree containing General Administrative Orders for the implementation of Article 19, second paragraph, letter d, 2nd, of the State Ordinance Dividend Tax and Imputation Payments (SPG 2004/2). --------------------
4. The financial statements shall be signed by all Managing Directors and all Supervisory Directors in office, and presented to the General Meeting of Shareholders for adoption. --------
In the event that one or more of their signatures is missing, this shall be mentioned, stating reasons. -----------------------------------------------------------------------------
5. The financial statements shall be open for inspection by the shareholders at the offices of the Corporation from the day of the notice of the General Meeting as meant in Article 19, paragraph 1, in which the financial statements will be discussed, until the end of this Meeting. ----------------
6. Adoption of the financial statements by the General Meeting of Shareholders shall discharge the Board of Managing Directors with regard to its management conducted in the financial year in question, and shall discharge the Board of Supervisory Directors for its supervision conducted during aforementioned period of time, without prejudice to the provisions in Articles 116 and 127 of the Code of Commerce of Aruba. -----------------------------------------------------

PROFIT ------------------------------------------------------------------------------

Article 27 --------------------------------------------------------------------------

1. The profit, which shall be understood to be the net profit as per the Profit and Loss Statement, shall be entirely at the disposal of the General Meeting of Shareholders, after reservations necessary for the continuity and/or expansion have sufficiently been taken into account. ----------
2. If and as long as the Profit and Loss Statement of any year shows a loss that cannot be recovered from a reserve or extinguished otherwise, no distribution of profit shall take place in the following years until such a loss has been cleared off. ----------------------------------------------
3. Without prejudice to the provisions in the preceding paragraphs, distribution of profit shall take place after adoption of the financial statements, showing that this is allowed, and with due observance of Article 19, paragraph 1, letter c. ------------------------------------------
4. If and in as far as the profit of the Corporation so allows, the Board of Managing Directors may decide – after approval obtained for this purpose from the Board of Supervisory Directors – to pay interim dividends for account of the dividend to be anticipated, all this with due observance of the provisions in this Article. -----------------------------------------------------------

AMENDMENT TO THE ARTICLES OF INCORPORATION ----------------------------------

Article 28 --------------------------------------------------------------------------

1. A resolution to amend these Articles of Incorporation can only be passed on a proposal of the Board of Supervisory Directors. A resolution by the Board of Supervisory Directors to make such a proposal shall be passed unanimously. --------------------------------------------------
2. The notice shall also include a literal copy of this motion, and it shall be open for inspection by each shareholder at the offices of the Corporation. ------------------------------------------
3. A resolution to amend the Articles of Incorporation shall be passed by the General Meeting of Shareholders by a majority of at least two-thirds (2/3) of the votes cast, representing more than half of the issued capital. ------------------------------------------------------------
4. In the event that not more than half of the issued capital is represented, the motion shall be decided on in a second Meeting, to be held two (2) weeks after the first at the latest. Then, irrespective of

M.C. MEELHUYSEN SWORN TRANS...

the number of shares represented in this second meeting, a majority of at least two-thirds (2/3) of the votes cast shall also be required to adopt the motion. ----------

LACK OF AUTHORIZATION TO PROPOSE A MOTION ----------
TO AMEND THE ARTICLES OF INCORPORATION ----------

Article 29 ----------

As long as any obligation remains outstanding under a loan in the amount of TWO HUNDRED AND THIRTY MILLION UNITED STATES DOLLARS (US$ 230,000,000.00) between the Corporation and the corporation WIBC Aruba N.V., domiciled in Aruba, or the one to whom the latter has transferred or assigned its debt, for the security of which a mortgage will be or has been entered in the public registers of Aruba, the General Meeting of Shareholders is not authorized to amend Article 2, paragraph 2, Article 14, Article 15, Article 16, Article 28, Article 30 and this Article 29 of these Articles of Incorporation. ----------

DISSOLUTION ----------

Article 30 ----------

The provisions contained in Article 28 shall be similarly applicable when the Corporation is dissolved. ----------

LIQUIDATION ----------

Article 31 ----------

1. In the event of dissolution of the Corporation, the liquidation shall be effected by the Board of Managing Directors, unless the General Meeting of Shareholders should decide otherwise when passing a resolution for dissolution. ----------
2. During the liquidation, the provisions of these Articles of Incorporation shall remain effective as much as possible. ----------
3. The balance remaining upon liquidation after all the Corporation's debts have been paid shall be used to pay the shareholders in proportion to each one's shareholding. ----------
4. After the liquidation, the books and documents of the dissolved Corporation shall remain in custody of the liquidator, unless the General Meeting of Shareholders decides otherwise when passing a resolution for dissolution. ----------

FINAL DECLARATION ----------

Finally, the appearers, acting as set forth above, declared: ----------

- that by virtue of Article 68 of the Code of Commerce of Aruba, no objection has been filed with the Court of First Instance against the resolution for aforementioned change in capital, as appears from the statement of the Clerk of the Court of the twenty-second day of March, two thousand and six, a copy of which will be attached to this deed; ----------
- that when these Articles of Incorporation become effective, one hundred and twenty-nine thousand one hundred and eight (129,108) shares have been placed; ----------
- that the current financial year shall end on the thirty-first day of December, two thousand and six; ----------
- that on a draft of this deed, the Certificate of No Objection as meant in Article 97 of the Code of Commerce of Aruba will be applied for. ----------

---------- IN WITNESS WHEREOF

this deed was drawn up in one original copy and executed in Aruba, the day first written above, in the presence of: Ms. Rosana Paola Hernandez, née Petrocchi, assistant office manager, and Ms. Nadia Priscilla Janati, office assistant, and both living in Aruba, as witnesses, who, as the appearers, are known to me, civil law notary. ----------

Immediately upon reading, this deed was signed by the appearer, the witnesses, and me, civil law notary, ----------

at sixteen hours and forty-five minutes. ----------

Signatures follow

I CERTIFY THIS TO BE A TRUE COPY!

M.C. MEELHUYSEN SWORN TRANSLATOR

[was signed] [stamp:] *mr.* F.E.E. Tjon Ajong
Civil law notary in Aruba

End of translation




TRANSLATED FROM Dutch INTO English
BY M.C. Meelhuysen
ARUBA, May 23, 2006