# EXHIBIT AA

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ARUBA HOTEL ENTERPRISES N.V. | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| v. | : | 3:07-cv-1297 (JCH) |
| | : | |
| MICHAEL BELFONTI, | : | |
| MCR PROPERTY MANAGEMENT INC. | : | |
| and CEB IRREVOCABLE TRUST, | : | |
| | : | JANUARY 17, 2008 |
| Defendants. | : | |

**RULING RE: DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR, ALTERNATIVELY, ON GROUNDS OF <u>FORUM NON CONVENIENS</u> (DOC. NO.s 29 and 32) AND DEFENDANTS' MOTION FOR PROTECTIVE ORDER (DOC. NO. 20)**

**I.   INTRODUCTION**

Plaintiff Aruba Hotel Enterprises N.V. ("AHE") brings this action seeking a declaratory judgment pursuant to the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201(a), stating that monies claimed to be loaned by defendants Michael Belfonti, MCR Property Management Inc. ("MCR"), and CEB Irrevocable Trust("CEB")(collectively "defendants") are not owed by AHE.  See Complaint at 8 (Doc. No. 1).  Defendants move this court to dismiss AHE's complaint for lack of subject matter jurisdiction under the DJA, or alternatively, to dismiss the case on grounds of forum non conveniens. Defendants have also moved for a protective order staying discovery until the resolution of their Motions to Dismiss.

**II.   FACTS**[1]

In 2006, Belfonti, a resident of Connecticut, secured two loans through corporate

---

[1] All facts are taken from the Complaint unless otherwise stated.

entities he owned and controlled, to purchase a hotel in Aruba, now known as the Westin Aruba Resort ("the Hotel"). The first mortgage was secured by the Hotel itself, and the second, or "Mezzanine," loan was secured by the equity in a holding company that owned the Hotel through its indirect subsidiary, AHE. AHE is an Aruban limited liability company with its principal place of business in Aruba. When Belfonti defaulted on both loans, Petra Fund REIT Corp., through its nominee, foreclosed on the loan and became the beneficial owner of AHE.

On August 21, 2007, AHE received a letter from defendants MCR and CEB along with two other corporate entities owned and controlled by Belfonti. The letter stated that all of these entities had made loans to AHE during the time that Belfonti was the controlling principal of AHE. The loans claimed by MCR and CEB included three transactions totaling US $3,017,735.80, all made for payments of AHE's mortgage on the Hotel. The letter demanded payment of these loans by August 24, 2007. On August 23, 2007, AHE responded to these demands by letter denying that any such loans were made. See Letter, Ex. B to Affidavit of Allan Kuster (Doc. No. 31). On August 24, 2007, MCR and CEB initiated litigation in Aruba concerning the alleged loans to AHE. See Id. at Ex. C. That same day, AHE commenced litigation in the Southern District of New York against Belfonti and other corporate entities seeking a declaratory judgment that no such loans were made. AHE commenced the instant claim in this court for declaratory judgment on August 27, 2007.

### III.   STANDARD OF REVIEW

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate

it. Marakova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In assessing a motion to dismiss for lack of subject matter jurisdiction, the court "accept[s] as true all material factual allegations in the complaint." Shipping Fin. Serv. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir.1998) (citing Scheuer, 416 U.S. at 236). However, the court refrains from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]." Id. (citing Norton v. Larney, 266 U.S. 511, 515 (1925)). On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff must establish by a preponderance of the evidence that the court has subject matter jurisdiction over the complaint. Makarova, 201 F.3d at 113; see also Malik v. Meissner, 82 F.3d 560, 562 (2d Cir.1996); In re Joint E. & So. Dist. Asbestos Litig., 14 F.3d 726, 730 (2d Cir.1993).

### III.  DISCUSSION

  A. Jurisdiction under the Declaratory Judgment Act

  AHE requests a declaratory judgment pursuant to the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201(a). The DJA gives federal courts discretionary jurisdiction to "declare the rights and other legal relations of any interested party seeking such declaration." Dow Jones & Co., Inc. v. Harrods, Ltd., 237 F.Supp.2d 394, 405 (S.D.N.Y. 2002), aff'd, 201 F.3d 110 (2d Cir. 2003)(citing Public Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241 (1952) and 28 U.S.C. § 2201(a)). Defendants argue that this court lacks subject matter jurisdiction over AHE's claim because AHE's claim does not raise an "actual controversy" as required by the DJA. Alternately, they argue that the circumstances surrounding this claim do not warrant the exercise of this court's discretionary jurisdiction under the DJA. See Def.s MCR and CEB's Mem. in Supp. of their Mot. to Dismiss ("Def.'s Mem.") at 4 (Doc. No. 30).

To be justiciable under the DJA, a claim must state an "actual controversy," which is the equivalent of a "case or controversy" under Article III of the Constitution. Dow Jones, 237 F.Supp.2d at 406 (internal citation omitted). The Supreme Court explained that the question is "whether the facts alleged, under the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Casualty Co. v Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941).

The court finds that AHE's complaint states an "actual controversy" that is justiciable under the DJA. The August 21, 2007 letter AHE received demanding payment by August 24 suffices to establish both that a substantial controversy exists between the parties and that the controversy is sufficiently immediate to warrant a declaratory judgment. Defendants incorrectly rely on Dow Jones to support their position. See Def.'s Mem. at 5-8. In Dow Jones, the plaintiff sought a declaration that any future judgment in a foreign court would be unenforceable in American courts. See Dow Jones, 237 F.Supp.2d at 407. The Dow Jones court found that the "mere prospect that such a ruling may be rendered at some indefinite point in the future" was too hypothetical to establish an actual controversy. Id. In contrast, AHE seeks a declaration of the obligations of the parties with respect to the amounts demanded by defendants; their claim does not rely on the hypothetical outcome of any Aruban litigation.

Defendants next argue that the circumstances of this claim do not warrant an exercise of this court's discretionary jurisdiction under the DJA. See Def.'s Mem. at 8. The parties agree, as does the court, that the five factor test used in Dow Jones

4

provides the correct framework for determining when discretionary jurisdiction under the DJA is appropriate in the context of a pending parallel proceeding in a foreign court. See Dow Jones, 237 F.Supp.2d at 432 (internal quotations omitted); see also Boeing Co. v. Egyptair, 392 F.Supp.2d 461, 472-3 (E.D.N.Y. 2005)("[T]he Second Circuit gave its approbation to the district court's reliance on the [five factor test]."). These five factors are:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata; (4) whether the use of a declaratory action would increase friction between our [courts] and [courts of another country] and improperly encroach upon [the other country's] jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

Dow Jones, 237 F.Supp.2d at 432.

Defendants argue that a declaratory judgment by this court would not settle the controversy between the parties because "[t]he loan transactions . . . are governed by Aruban law" and "[t]he Aruban court is not bound to follow a decision of this Court." Def.'s Mem. at 9. In contrast, AHE argues that Connecticut law will govern the dispute both here and in the Aruban courts. See Pl.'s Mem. in Opp. to Mot. to Dismiss ("Pl.'s Mem.") at 12 (Doc. No. 39). It is not clear to the court at this time what effect, if any, a declaration by this court would have on settling the controversy between the parties as to the ongoing litigation in Aruba regardless of which jurisdiction's laws apply. However, it seems more likely that a declaration by this court would settle the matter if the governing law were the law of Connecticut rather than Aruba. Therefore, the court will undertake to determine whether Connecticut law will likely govern this dispute based on

the facts currently before the court.

"A federal court sitting in diversity applies the choice of law rules of the forum state," in this case, Connecticut. Maryland Casualty Co. v Continental Casualty Co., 332 F.3d 145, 151 (2d Cir. 2003)(internal citation omitted.). For the purposes of analyzing a contract where, as here, the parties did not select the law to be applied, "Connecticut courts apply the 'most significant relationship' test of § 188 of the Restatement (Second) of Conflict of Laws (1971) to determine which state's law applies." Heublein v. Rudder, 2007 WL 2472018 (D.Conn. 2007)(quoting Am. States Ins. Co. v. Allstate Ins. Co., 282 Conn. 454, 459 (2007)). Section 188 directs courts to consider "(1) the place of contracting, (2) where the negotiations took place, (3) the place of performance, (4) the location of the contract's subject matter, and (5) the domicile of the residence of the parties when conducting this analysis." Id. (internal quotation omitted).

The facts available to the court for the purposes of determining this motion are limited, making the choice of law analysis far from clear. However, accepting the factual allegations in the Complaint as true for the purposes of deciding this motion, the court finds that, because the transactions at issue took place between entities under Belfonti's control, the place of contracting and negotiation is most likely Connecticut given that both Belfonti and the corporate defendants are citizens here. The place of performance is North Carolina, where the mortgage payments were made. The location of the loan's subject matter was the hotel in Aruba. Defendants were all domiciled in Connecticut. AHE is domiciled in Aruba.

Taking all of these facts into consideration, the court determines that this

6

transaction relates to Aruba only in the sense that the subject property is located there. However, no negotiation or other activity regarding these loans took place in Aruba. A transaction conceived of and executed in the United States cannot necessarily be governed by the laws of a foreign country merely because it involves a foreign investment. The conclusion that the epicenter of this transaction was in Connecticut is supported by the court's finding that these transactions were strictly financial arrangements and did not involve or implicate ownership of the Hotel.

Having concluded that, for the purposes of this Motion and based on the limited record before the court, the transactions at issue had the most significant relationship with Connecticut, and that Connecticut law would likely govern the dispute, the court will exercise its discretionary powers to retain jurisdiction over AHE's complaint under the DJA. See Boeing, 392 F.Supp.2d at 473 (finding courts generally found the appropriate forum to be "the forum where the underlying dispute had its principal origins and the primary controlling legal issues were to be governed by the substantive law of that forum.") Given that the law of Connecticut appears to be the governing law, the court concludes that a declaration by this court may settle the controversy between the parties and serve a useful purpose in that an Aruban court would presumably be persuaded by an American court's ruling under governing American law. See Boeing, 392 F.Supp.2d 461, 477-8 (finding that an American court's ruling would serve the useful purpose of settling the dispute because defendant failed to demonstrate that an Egyptian court would not comply with an American court's interpretation and application of governing American law.). Furthermore, a declaration of this court of the parties' rights under Connecticut law would not interfere with the Aruban litigation, nor does the

7

Aruban litigation provide a better or more effective forum for such a determination. Finally, the court does not find that AHE was merely forum shopping "since it was entirely appropriate for [AHE] to seek declaratory relief in a United States court." Id. at 478.

### B.   Forum Non Conveniens

Alternatively, defendants contend that AHE's complaint should be dismissed based on grounds of forum non conveniens. Def.s' Mem. at 12. The analysis of a motion to dismiss on the grounds of forum non conveniens "proceeds in several stages." Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 70 (2d Cir. 2003). First the court must determine "whether the plaintiff's choice of forum is entitled to more or less deference." Id. (quoting Iragorri v. United Technologies Corp., 274 F.3d 65, 73 (2d Cir. 2001)(en banc). Second the court must determine if an adequate alternative forum exists. Id. Finally, the court must "balance factors of private and public interest to decide, based on weighing the relative hardships involved, whether the case should be adjudicated in the plaintiff's chosen forum or in the alternative forum suggested by the defendant." Id. (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507-09 (1947)).

The court must first determine how much deference AHE's choice of forum is due. "The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice." Iragorri, 274 F.3d at 71-2. That is,

> the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more that it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for forum non conveniens.

8

Id. As discussed above, the court finds that the transactions at issue were conceived and executed in Connecticut by citizens of the state and were connected to Aruba only to the extent that they concerned a real estate investment there. AHE's choice of Connecticut as a forum is based on this lawsuit's "bona fide connection to the United States" and is therefore accorded more deference than would a foreign plaintiff's choice of forum who was merely forum-shopping. Id.

The parties agree that the Aruban courts offer an "adequate alternative forum," therefore the court will assume that to be the case. See Pl.'s Mem. at 24.

Finally, the court must weigh public and private interest factors weighing in favor of each available fora. The degree of deference due to the plaintiff's choice of forum dictates how strong a showing of inconvenience the defendant must make to justify a dismissal on grounds of forum non conveniens. Iragorri, 274 F.3d at 74 ("the greater degree of deference to which the plaintiff's choice of forum is entitled, the stronger showing of inconvenience the defendant must make to prevail."). "The action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable." Id.

Defendants argue that this is an inconvenient forum because "the relevant proof will be found predominantly in Aruba." Def.'s Mem. at 16. However, the proof identified by defendants belongs almost entirely to AHE, which they intend to provide in this forum. See Def.'s Mem. at 16 and Pl.'s Mem. at 25. The only evidence that defendants identify which may not be producable in this forum is testimony from AHE's external accountants. See Def.'s Mem. at 17. Defendants also argue that this is an

9

inconvenient forum because many of the documents relevant to this dispute are "likely located in Aruba and are likely written in one of Aruba's national languages . . . thereby necessitating additional resources for translation." Def.'s Mem. at 17.  The potential necessity of translating hypothetical documents and the potential lack of evidence from AHE's external accountants combined are not inconveniences sufficient to outweigh the deference due to plaintiff's choice of forum.

Finally, defendants argue that the public interest factors weigh in favor of dismissing AHE's claims.  See Def.'s Mem at 18.  Specifically, defendants argue that this action should proceed in Aruba because "Aruba has a significant interest in governing the contracts and financial relations between the Hotel and others" whereas "Connecticut . . . has no interest in the resolution of this dispute." Id. at 18.  The court disagrees.  When a resident of Connecticut demands payment by a foreign company for loans made in Connecticut, Connecticut certainly has an interest in adjudicating any dispute arising from those demands.  Furthermore, given that Connecticut law will likely govern this case, the public interest in having Connecticut law applied by an American court weighs heavily against dismissal.

## IV.   CONCLUSION

For the forgoing reasons, defendants' Motions to Dismiss for Lack of Subject Matter Jurisdiction or, Alternatively on Grounds of Forum Non Conveniens (Doc. No.s 29 and 32) are DENIED.  Defendants' Motion for Protective Order to Stay Discovery Pending Resolution of the Motion to Dismiss (Doc. No. 20) is DENIED as moot.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 17th day of January, 2008.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge

11