UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ARUBA HOTEL ENTERPRISES, N.V.,       :

                                        :

              Plaintiffs,          :

                                          :

      - against -             :

                                          :

MICHAEL BELFONTI, BELFONTI HOLDINGS  :
LLC, and BELFONTI CAPITAL PARTNERS,  :
LLC,                                 :

              Defendants.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: <u>November 21, 2011</u>

07 Civ. 07564 (PAC)

<u>OPINION & ORDER</u>

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Aruba Hotel Enterprises N.V. ("AHE") seeks a declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), that funds advanced to AHE by defendants Michael Belfonti, Belfonti Holdings LLC, and Belfonti Capital Partners, LLC ("BCP") (collectively "Defendants"), are capital investments, and not loans repayable to Defendants. AHE also seeks a permanent injunction (the "anti-suit injunction") prohibiting Defendants from attempting to enforce these transactions as loans in other jurisdictions, specifically Aruba.

On July 25, 2008, AHE moved for summary judgment on its claims. On September 5, 2008, Defendants opposed AHE's motion for summary judgment and cross-moved for summary judgment denying AHE's request for a permanent injunction. On January 26, 2009, in a related action filed by AHE against Belfonti and MCR Property Management, Inc. ("MCR") in the United States District Court for the District of Connecticut, the parties made similar motions and the district court granted both parties' motions for summary judgment. See <u>Aruba Hotel Enter's N.V. v. Belfonti</u>, 611 F. Supp. 2d 203 (D. Conn. 2009) (the "Connecticut Action"). That court held that funds advanced by a Belfonti entity to AHE were not loans subject to repayment

because the Connecticut Statute of Frauds was not satisfied.  Belfonti never appealed and the
district court's decision is final.

Following the Connecticut decision, and a change of counsel, the parties filed
supplemental briefs on their motions for summary judgment to address the impact of the
decision, as well as to bring additional new facts to this Court's attention.  In its supplemental
brief, AHE now asks this Court to find that Defendants are collaterally estopped from relitigating
the same declaratory judgment issues decided in the Connecticut Action.  In addition, AHE
argues that Defendants' conduct since the decision in the Connecticut Action further warrants an
anti-suit injunction.  Defendants argue that collateral estoppel does not apply and request that the
Court deny the anti-suit injunction.

For the following reasons, Plaintiff's motion for summary judgment is GRANTED and
Defendants' cross-motion for summary judgment is GRANTED in part.

## BACKGROUND[1]

In May 2006, Michael Belfonti became the beneficial owner and control person of AHE,
an Aruban entity in which he had a seventy-five percent interest.  AHE's principal asset was a
resort hotel now known as the Westin Aruba Resort (the "Hotel") on the island of Aruba.  To
finance the purchase of the Hotel in May 2006, Belfonti arranged for two loans.

A.  The Mortgage and Mezzanine Loans

The first loan (the "Mortgage Loan") was made to AHE by WIBC Aruba N.V.
("WIBC"), an affiliate of Wachovia Bank, National Association ("Wachovia") in the amount of
$230,000,000.00.  The terms of the Mortgage Loan were memorialized in a loan agreement
between AHE and WIBC, dated May 3, 2006 and signed by Belfonti on behalf of AHE.

---

[1] For purposes of AHE's motion for summary judgment, the Court accepts as true the undisputed facts set forth in
Plaintiff's Statement of Undisputed Material Facts Pursuant to L. Civ. R. 56.1. (Doc. No. 40).  Any disputed facts
are resolved in favor of Defendants, where there is evidence to support their allegations.

The Second loan (the "Mezzanine Loan") was made by Petra Mortgage Capital Corp. LLC ("Petra Mortgage")[2] in the amount of $19,450,000.00 to BCP Florin, LLC ("BCP Florin"), a Belfonti-controlled entity.  The terms of the Mezzanine Loan were memorialized in a loan and security agreement executed on or about June 9, 2006 and signed by Belfonti on behalf of BCP Florin.  The Mezzanine Loan was secured by a first priority security interest in one hundred percent of the issued and outstanding equity of Twilight Holdings, LLC ("Twilight").  Twilight is a Delaware LLC that was an indirect subsidiary of BCP Florin and was, at the time, majority beneficially owned by Belfonti.

B.  Additional Fund Transfers to AHE

Between May 2006 and March 2007, AHE received additional funds from several Belfonti-controlled entities[3] in order to cover closing and operational costs, as well as to satisfy the Mortgage Loan payments.  Defendants contend that these payments were loans, and Plaintiffs allege that these funds were capital contributions.  These six fund transfers were as follows:

1.  BCP Transactions

BCP alleges that it made three loans to AHE:  (1) $4,873,702.86 on or about May 3, 2006 to enable AHE to pay closing costs associated with the Hotel transaction; (2) $393,000 on or about December 8, 2006 to satisfy AHE's monthly payment obligation under the Mortgage Loan; and (3) $548,250 on or about January 8, 2007 for an additional monthly payment on the Mortgage Loan.  For each of these transactions, there were no terms negotiated, no maturity

---

[2] Petra Mortgage subsequently assigned its rights under the Mezzanine Loan agreement to Petra Fund REIT Corp. (collectively "Petra").

[3] Belfonti held a seventy-five percent controlling interest in Defendant BCP from June 1, 2005 through December 4, 2007 and now holds a one hundred percent interest in BCP.  (Declaration of Michael T. Mervis ("Mervis Decl."), Ex. A.)  Belfonti has also held the controlling interest in Defendant Belfonti Holdings since June 1, 2005.  (Id.) Belfonti testified that he had the ultimate decision making authority for these entities.  (Belfonti Dep. at 52-53.)

dates set, no payment schedules, and no security.  (Belfonti Dep. at 71-72, 111-12, 131, 146.)

Nor were there any written agreements memorializing these alleged loans.  (Id. at 77-78, 114,

150.)  Neither BCP nor AHE was represented by counsel in connection with these alleged loans.

(Id. at 90, 114, 151.)  Belfonti also did not ask AHE's supervisory board to approve the

transactions.  (Id. at 78, 116-17, 129.)

      2.   Belfonti Holdings Transaction

Belfonti Holdings alleges that it made a loan of $499,950 to AHE on or about July 25,

2006 to satisfy AHE's working capital requirements under its agreement with Westin.  This

payment was necessary to avoid possible default under the Westin agreement, which would in

turn trigger a default under the Mortgage Loan Agreement allowing WIBC to foreclose on the

Hotel.  (Declaration of Joseph Iacono ("Iacono Decl."), Exs. A, D.)  Like the BCP transaction,

there was no written agreement memorializing this alleged loan, nor was there any negotiation,

security, payment schedule, or due date for repayment.  (Belfonti Dep. at 95-96, 98-99.)

      3.   MCR Transactions[4]

MCR is a property management company that was owned by Belfonti's mother and

father in 2006.  MCR made two purported loans to AHE in the amount of $1,307,611 on January

8, 2007[5] and $1,161,874 on or about March 9, 2007.  Both payments were made to satisfy

AHE's monthly payment obligations under the Mortgage Loan.  Like the BCP and Belfonti

Holdings transactions, there were no negotiations, no written agreements memorializing terms,

no security for the alleged loans, and no payment schedules.  (Belfonti Dep. at 122-124, 161,

163.)  With respect to both of these MCR transactions, Belfonti made the alleged loans on behalf

---

[4] These transactions were at issue in the Connecticut Action and are not before the Court, but are included for purposes of AHE's collateral estoppel argument.
[5] This alleged loan was aggregated with BCP's third alleged loan to AHE of $548,250.  This combined amount was paid directly to Wachovia.  (Belfonti Dep. at 128-30, 146, 167-68; Carpenter Dep. at 137-38.)

of MCR and accepted the funds on behalf of AHE.  (Id. at 165.)

C.  Default

In April 2007, AHE defaulted on the Mortgage Loan and BCP Florin defaulted on the

Mezzanine Loan.  (Iacono Decl. ¶ 5; Belfonti Dep. at 21-22.)  Petra Mortgage then foreclosed on

the Mezzanine Loan and voluntarily cured the default on the Mortgage Loan.  As a result, Petra

became the beneficial owner of AHE.  (Iacono Decl. ¶ 5.)  On August 21, 2007, AHE received a

letter from an attorney on behalf of the Defendants claiming that each made loans to AHE during

the time that Belfonti was the controlling principal of AHE.  (Id. ¶6.)  The letter demanded

payment of the alleged loans by August 24, 2007 at noon.

Beginning November 2008, AHE failed to make its payments on the Mortgage Loan and

WIBC issued notices of default on a monthly basis.  (See Declaration of Michael N. Abdo, Ex.

A).  On March 26, 2009, WIBC terminated the Mortgage Loan and accelerated payment of the

remaining amount then due.  (Id.)  WIBC foreclosed on its equity interest in AHE, and on May

20, 2009, the Court of First Instance of Aruba held that AHE's shares will accrue to WIBC.  (Id.)

D.  Parallel Litigation

On August 24, 2007, Defendants commenced litigation in Aruba (the "Aruba Litigation")

against AHE seeking repayment of six transactions they alleged were loans.  On that same day,

AHE filed its Complaint in this action seeking (1) a declaratory judgment that the funds

Defendants advanced to AHE were capital contributions, not loans; and (2) an injunction

precluding the Defendants from attempting to obtain repayment of these funds until this action is

resolved.  On August 27, 2007, AHE filed the Connecticut Action against Defendant Belfonti

and MCR seeking identical relief with respect to the MCR transactions.

**DISCUSSION**

**A.  Standard of Review**

Summary judgment is appropriate where the record demonstrates that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is material if it "might affect the outcome of the suit under governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The moving party bears the initial burden of producing evidence on each material element of its claim or defense demonstrating that it is entitled to relief.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The evidence on each material element must be sufficient to entitle the movant to relief as a matter of law.  See Vt. Teddy Bear Co. v. 1–800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

Once the moving party has made an initial showing that no genuine issue of material fact remains, the nonmoving party may not refute this showing solely by means of "[c]onclusory allegations, conjecture, and speculation," Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir.2003) (internal citations and quotations omitted), but must instead present specific evidence in support of its contention that there is a genuine dispute as to material facts.  Fed. R. Civ. P. 56(e).  The court resolves all ambiguities and draws all factual inferences in favor of the nonmovant, but "only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c)).

**B.  Collateral Estoppel**

AHE contends that Defendants are collaterally estopped from asserting that the four transactions at issue here are enforceable as loans, because the issues here "are in substance the same as those resolved in the Connecticut Action" and that all controlling facts and legal

6

principles remain the same.  (Pl's Supp. Mem. at 8-9.)

Collateral estoppel gives preclusive effect to a prior federal judgment when:  "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."  Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006) (citation omitted).  "The party seeking to invoke the doctrine bears the burden of establishing its applicability."  Tracy v. Freshwater, 623 F.3d 90, 99 (2d Cir. 2010).

The doctrine can apply against a nonparty to a prior proceeding "only if that nonparty was represented by a party to the prior proceeding, or exercised some degree of actual control over the presentation on behalf of a party to that proceeding."  Stichting v. Schreiber, 327 F.3d 173, 185 (2d Cir. 2003).  This privity based on representation exists "only if the interests of the person alleged to be in privity were represented [in the prior proceeding] by another vested with the authority of representation."  Id. (internal quotation omitted).  Whether parties are in privity is "a factual determination of substance, not mere form."  Expert Elec. Inc. v. Levine, 554 F.2d 1227, 1233 (2d Cir. 1977).

AHE has met the threshold inquiry to show that Belfonti, Belfonti Holdings and BCP were in privity with Belfonti and MCR in the Connecticut Action.  It is correct that Belfonti Holdings and BCP were not parties to that case, but Belfonti is common to both and the Belfonti entities here share substantially similar interests with MCR in the Connecticut Action.  In both cases, the defendants argued that the funds they advanced to AHE were not capital investments, but loans subject to repayment.  See Aruba Hotel Enter's N.V., 611 F. Supp. 2d at 206-207.  The two MCR transactions were made under virtually identical conditions to those alleged in this

case; in each case, funds were transferred without terms, maturity dates, payment schedules,

security, or documentation.  Moreover, Belfonti was a party to both cases and had authority to

represent the interests of Belfonti Holdings and BCP in the Connecticut Action.[6]  He was the

beneficial owner of Belfonti Holdings and BCP and had ultimate decision making authority for

those entities.  See supra n.3.  Belfonti "is in substance the one whose interests were at stake in

the prior litigation."  See Expert Elec. Inc., 554 F.2d at 1233.  AHE may therefore invoke

collateral estoppel against Belfonti Holdings and BCP.

The elements of collateral estoppel are satisfied here.  In the Connecticut Action, AHE

contended that the alleged loans at issue were unenforceable because the terms were not

sufficiently definite and the alleged loans were not reduced to writing as required by the

Connecticut Statute of Frauds.  AHE also argued that principles of unjust enrichment do not

create an obligation for AHE to repay the funds because Belfonti had no expectation of

repayment unless AHE proved successful.  Those issues are identical to the issues in this case.[7]

See Aruba Hotel Enter's N.V., 611 F. Supp. 2d at 211; Pl. Mem. at 13, 18, 21-22.

In the Connecticut Action, the court ruled that the Connecticut Statute of Frauds barred

the alleged loan transactions between MCR and AHE.  Defendants argued that BCP's financial

records "reflect the [MCR] transactions as long term liabilities," and that this ledger entry was a

sufficient writing to defeat the Statute of Frauds.  See Aruba Hotel Enter's N.V., 611 F. Supp. 2d

at 211.  The district court disagreed, and observed that the writing was not signed by AHE, nor

did the entry reflect "any of the terms of the alleged loans."  Id.  The court found that "as a

---

[6] AHE notes that the same law firm initially represented all defendants in this case as well as in the Connecticut Action.  (Pl's Suppl. Mem. at n.6.)  This factor also suggests that Belfonti Holdings and BCP were in privity with the defendants in the prior litigation.  See Stichting, 327 F.3d at 185 n.13 (stating that "privity can be found if a person's fiduciary or agent exercised actual control over the presentation of a party's case in the previous litigation").

[7] The parties conceded that Connecticut substantive law applies to the transactions at issue in both the Connecticut Action and this case.  See Aruba Hotel Enter's N.V., 611 F. Supp. 2d at 209; Def's Mem. at 17 n.16.  Those controlling legal principles have not changed since the district court issued its opinion on January 26, 2009.

matter of law, . . . the entries made on the defendants' financial records do not constitute a writing sufficient to defeat the Statute of Frauds." Id.  As a result, the court declared that the MCR transactions were "barred by the Connecticut Statute of Frauds from being enforced as loans" and granted summary judgment for AHE on its declaratory judgment claim.  Id. at 215.

The court also rejected Belfonti's arguments that AHE was unjustly enriched.  According to the court, it was undisputed that when Belfonti made the MCR transactions, he "did not expect AHE to repay the alleged loans made by MCR until AHE started making money and was able to meet its operational needs and its other obligations." Id. at 213.  Given that expectation, AHE's "failure of repayment [was] not to the defendants' detriment." Id.

In light of its holding on the Statute of Frauds, the court did not reach the issue of whether the alleged loan terms were sufficiently definite.  See id. at 213 n.9.  The district court's remaining rulings, however, were necessary to reach a final judgment on the merits of the Connecticut Action.  Defendants do not suggest that Belfonti and MCR did not have a full and fair opportunity to litigate those issues in the Connecticut Action.  See Teachout v. New York City Dep't of Educ., No. 04 Civ. 945 (GEL), 2006 WL 452022, at *16 (S.D.N.Y. Feb. 22, 2006) (stating that the opponent of collateral estoppel has the "burden to show the lack of a full and fair opportunity to litigate a particular issue").

In opposing collateral estoppel, Defendants argue only that the Connecticut Action "involves different parties and different loans." (Defs' Supp. Mem. at 9.)  Here Defendants rely on Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591 (1948), which held that in income tax cases, collateral estoppel "must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding . . . ." Id. at 599-600.  This argument is misplaced, however, as the Supreme Court has confined this

9

"separable facts" doctrine to tax cases.  See United States v. Stauffer Chem. Co., 464 U.S. 165, 172 n.5 (1984) ("Whatever applicability [the Sunnen separable facts doctrine] may have in the tax context, . . . we reject its general applicability outside of that context.").

As discussed, the Defendants in both actions were in privity, and the essential facts of the transactions at issue in both the Connecticut Action and this case are virtually identical.  Each of these transactions lacked any negotiations, written agreements memorializing terms, maturity dates, security for the alleged loans, or payment schedules.  See discussion supra at 3-4. Although "changes in facts essential to a judgment will render collateral estoppel inapplicable in a subsequent action raising the same issues," Montana v. United States, 440 U.S. 155, 159 (1979), this exception "applies only when these changes 'significant[ly] affect the overall complexion of the record.'"  Hickerson v. City of New York, 146 F.3d 99, 112 (2d Cir. 1998) (quoting Montana, 440 U.S. at 157).  That standard is not met here.  To the extent that the Connecticut Action involved different transactions from those in this case, they differed only in dollar amount.   Indeed, Defendants in this case "accept [the district court's] decision on the application of Connecticut's Statute of Frauds and concede that the transactions in the present case are not evidenced by a signed writing . . . ."  (Defs' Supp. Mem. at 9.)  Defendants' argument that collateral estoppel does not apply in this case is therefore rejected.

Accordingly, AHE has met its burden to show that Defendants Belfonti, Belfonti Holdings, and BCM are collaterally estopped from arguing that the four transactions at issue in this case were loans subject to repayment.  Because the ultimate issues in this case were already determined in the Connecticut Action, AHE is entitled to a declaratory judgment that the funds advanced by BCP and Belfonti Holdings were not loans subject to repayment.

Even if collateral estoppel did not apply, this Court would still grant summary judgment

for AHE because these so-called loans are not enforceable under Connecticut law.  The

Connecticut Statute of Frauds bars the enforcement of "an agreement for a loan" which exceeds

fifty thousand dollars "unless the agreement, or a memorandum of the agreement, is made in

writing and signed by the party, or the agent of the party, to be charged . . . ."  Conn. Gen.Stat. §

52—550(a)(6).   As discussed, for each of the Belfonti Holdings and BCP transactions, there

were no terms negotiated, no maturity dates set, no payment schedules, and no security.

Moreover, as noted, Defendants "concede that the transactions in the present case are not

evidenced by a signed writing . . . ."  (Defs' Supp. Mem. at 9.)  Summary judgment is therefore

appropriate for AHE on this question.

### C.  Anti-Suit Injunction

Before a court may enjoin a foreign litigation, a court must first consider whether:

(1) the parties are the same in both matters; and (2) resolution of the case before the enjoining

court is dispositive of the action to be enjoined.  China Trade & Dev. Corp. v. M.V. Choong

Yong, 837 F.2d 33, 36 (2d Cir. 1987).  If these two threshold requirements are satisfied, a court

must then consider whether the parallel litigation would (1) frustrate a policy in the enjoining

forum; (2) be vexatious; (3) threaten the issuing court's in rem or quasi in rem jurisdiction; (4)

prejudice other equitable considerations; or (5) result in delay, inconvenience, expense,

inconsistency, or a race to judgment.  Id. at 35.  "[P]rinciples of comity counsel that injunctions

restraining foreign litigation be used sparingly and granted only with care and great restraint."

Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tech., Inc., 369 F.3d 645,

652 (2d Cir. 2004) (internal quotation omitted).

In the Connecticut Action, the district court held that the threshold requirements of China

Trade were satisfied.  Aruba Hotel Enter's N.V., 611 F. Supp. 2d at 214.  It was undisputed that

the parties in the Connecticut Action were the same as those in the pending Aruba Litigation.[8]

Id.  Although defendants contended that Aruban choice of law rules and Aruban substantive law

would dictate a different outcome in the Aruba Litigation, the court took the view that the

Aruban courts would give *res judicata* effect to its judgment as a matter of comity "because the

cases involve the same transactions and the issues are the same."  Id. at 215 (citing cases).

The court then considered two of the five additional China Trade factors and found that

an injunction was not warranted.  First, the court stated that "[t]he Aruban court does not appear

to be threatening this court's jurisdiction, and thus, there is no need for the court to protect its

jurisdiction."   Id. at 215.  Here the district court accepted counsel for AHE's representation

"that it has no basis to believe that the Aruban court would not observe *res judicata* if this court

granted summary judgment in its favor."  Id.  Second, the court concluded that the Aruban action

did not threaten any important public policies of the district court's judgment.  Id.  The district

court therefore denied AHE's request for an injunction and granted defendants' cross-motion for

summary judgment.

AHE now argues that because Defendants "continue to press their claim that the

transactions in [the Aruba Litigation] and in this action are enforceable loans," Defendants have

refused to honor the Connecticut district court's decision.  (Pl's Supp. Mem. at 3.)  AHE

contends that this situation threatens the jurisdiction of this Court and constitutes "a subsequent

change in facts" that renders collateral estoppel inapplicable to AHE's request for a permanent

injunction.  (Id. at 3-4.)  In response, Defendants deny that they have violated the Connecticut

district court's ruling and assert that if AHE believes otherwise, AHE should return to the

Connecticut district court to seek enforcement of that court's judgment.  (Def's Supp. Mem. at

7.)  Defendants also argue that the district court 's decision does not prohibit Defendants from

---

[8] Defendants BCP and Belfonti Holdings are also parties to the Aruban Litigation.  (See Mervis Decl. Exs. G-J.)

arguing to the Aruban court that Aruban law applies to the transactions at issue in the Aruba Litigation. (Id. (citing Aruba Hotel Enter's N.V., 611 F. Supp. 2d at 215 n.10).)

AHE's request for an anti-suit injunction is denied for the same reasons expressed in the Connecticut district court's decision. AHE does not challenge the district court's view that the Aruban court would give *res judicata* effect to its judgment. Indeed, in the Connecticut Action, counsel for AHE represented to the district court "that it has no basis to believe that the Aruban court would not observe *res judicata* if this court granted summary judgment in its favor." Aruba Hotel Enter's N.V., 611 F. Supp. 2d at 215 (citation omitted). This Court has no reason to disagree with the Connecticut court's position on this point.

Moreover, on September 27, 2011, counsel for AHE represented that in or around November 2009, the Aruba court stayed the Aruba Litigation pending a decision from this Court on AHE's motion for summary judgment. It would now be bad faith for this Court to enjoin that foreign proceeding when the Aruba court has waited for nearly three years for this Court to decide this case and where there is no threat to the American courts' jurisdiction.

## CONCLUSION

For the foregoing reasons, AHE's motion for summary judgment is GRANTED and the Court DECLARES that the transactions at issue are not enforceable as loans. The Court DENIES AHE's request for an anti-suit injunction and GRANTS partial summary judgment for Defendants on that issue. The Clerk of Court is directed to enter judgment and close this case.

Dated: New York, New York
        November 21, 2011

SO ORDERED

PAUL A. CROTTY
United States District Judge

13